UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | |
|---|---|
| SFA SYSTEMS, LLC | |
| v. | 6:07-CV-067-LED |
| INFOR GLOBAL SOLUTIONS (MICHIGAN), INC., et al. | JURY |

**PLAINTIFF'S OPENING CLAIM CONSTRUCTION BRIEF**

Andrew W. Spangler - LEAD COUNSEL
Spangler Law P.C.
208 N. Green Street, Suite 300
Longview, Texas 75601
(903) 753-9300
(903) 553-0403 (fax)
spangler@spanglerlawpc.com

David M. Pridham
Law Office of David Pridham
25 Linden Road
Barrington, Rhode Island 02806
(401) 633-7247
(401) 633-7247 (fax)
david@pridhamiplaw.com

John J. Edmonds
The Edmonds Law Firm, PC
709 Sabine Street
Houston, Texas 77007
(713) 858-3320
(832) 415-2535 (fax)
johnedmonds@edmondslegal.com

ATTORNEYS FOR PLAINTIFF SFA
SYSTEMS, LLC

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................................... iii

I. INTRODUCTION .................................................................................................. 1

II. BACKGROUND .................................................................................................. 1

III. CLAIM CONSTRUCTION PRINCIPLES ........................................................ 2

IV. THE CLAIMS .................................................................................................... 2

V. CONSTRUCTION OF THE DISPUTED CLAIM TERMS ................................ 2

    A.  Action ........................................................................................................... 2

        1.  An action is not limited to computer operations.\ ................................ 3

        2.  Infor's "carried out during the sales process" renders moot the claim
            language "performed during at least one phase of the sales process." ... 5

    B.  Changes in State Characteristics of an Event ............................................. 7

        1.  State characteristics are information relating to the status of an event ... 7

        2.  Infor's proposed construction ignores express claim language. ......... 8

    C.  Context ......................................................................................................... 8

    D.  Coupled ...................................................................................................... 11

    E.  Event Manager ........................................................................................... 13

        1.  An event manager is hardware and/or software that takes or directsan
            action relative to an event. ................................................................. 14

        2.  There is no support for limiting an event manager to a software
            module. ................................................................................................ 14

        3.  An event manager performs many functions beyond controlling the
            flow of information between subsystems. ........................................... 15

    F.  Expert System ............................................................................................ 17

    G.  Inferring ..................................................................................................... 19

1.  Infor implicitly admits that Plaintiff's proposal is consistent with
    the ordinary meaning of the term.                                      20

2.  Inferring does not require the "application of logical rules using
    the inference engine of an expert system within the event manager."    20

H.  Inferring Occurrence of an Event                                       22

I.  Inferring…a Context in Which the Event Occurred                        24

J.  Subsystem                                                              25

1.  A subsystem is not limited to hardware or software module              26

2.  Not all subsystems correspond to a phase of the sales process         27

VI. THE CLAIMS TERMS OF THE '525 PATENT ARE NOT INDEFINITE                 28

VII. CONCLUSION                                                            29

# TABLE OF AUTHORITIES

**Cases**

*AdvanceMe. v. RapidPay*, 2006 U.S. Dist. LEXIS 92444                                   6
(E.D. Tex. Dec. 21, 2006)

*Agere Systems v. Sony*, 2008 WL 2078308 at *5 (E.D.Tex. May 15, 2008)          5, 25

*Anchor Wall Sys. v. Rockwood Retaining Walls*, 340 F.3d 1298 (Fed.Cir. 2003)   4,11,16,23,28

*Brainy Ideas v. Media Group*, 169 F.Supp.2d 361, 363 n.2 (E.D. Pa. 2001)          6

*Curtiss-Wright Flow Control  v. Velan*, 438 F.3d 1374 (Fed. Cir. 2006)              5, 25

*Elekta Instrument v. O.U.R. Scientific Intern.*,                                       6
214 F.3d 1302 (Fed. Cir. 2000)

*Energizer Holdings v. Int'l Trade Comm'n*,                                             30
435 F.3d 1366 (Fed. Cir. 2006)

*Honeywell Int'l v. Int'l Trade Comm'n*, 341 F.3d 1338-39 (Fed. Cir. 2003)            30

*Jack Guttman v. KopyKake Enter.*, 302 F.3d 1352, 1357 (Fed. Cir. 2002)          5, 25

*Johnson Worldwide Assocs. v. Zebco*, 175 F.3d 985, 992 (Fed. Cir. 1999)             12

*Laitram Corp. v. NEC Corp.*, 163 F.3d 1342, 1348 (Fed. Cir. 1998)                   13

*Merck & Co. v. Teva Pharms, USA*, 395 F.3d 1364, 1372 (Fed. Cir. 2005)              6

*Oak Tech. v. ITC*, 248 F.3d 1316, 1329 (Fed. Cir. 2001)                              23

*Oatey v. IPS*, 514 F.3d 1271, 1277 (Fed. Cir. 2008)                                 23

*OPTi v. nVidia*, 2006 WL 1133331 (E.D. Tex. Apr. 4, 2006)                            11

*Phillips v. AWH Corp.*, 415 F.3d. 1303 (Fed. Cir. 2005)                           Passim

*Playtex Prods. v. Procter & Gamble*, 400 F.3d 901 (Fed. Cir. 2005)                  22

*Rockefeller Univ. v. Centocor*, Cause No. 2:04-CV-168 at Dkt. 73                    19

*SunRace Roots Enter.  v. SRAM*, 336 F.3d 1298, 13030 (Fed. Cir. 2003)               11

*Verizon Cal.  v. Ronald A. Katz Tech. Licensing*,
326 F. Supp. 2d 1060 (C.D. Cal 2003)                                    12

*Vision Advancement v. Vistakon*,
2007 U.S. Dist. LEXIS 5742 (E.D. Tex. Jan. 26, 2007)                    6,25

**Other**

AMERICAN HERITAGE DICTIONARY OF THE ENGLISH LANGUAGE:
Fourth Edition (2000) at www.bartleby.com                          3,14,19,21

ANSWERS.COM at www.answers.com                                         27

INFOPLEASE DICTIONARY at http://dictionary.infoplease.com              19

MERRIAM-WEBSTER'S ONLINE DICTIONARY, 10th Edition (2008)
at www.merriam-webster.com                                             3

MICROSOFT PRESS DICTIONARY (1991)                                      7

PCMAG.COM Encyclopedia at http://www.pcmag.com/encyclopedia            13

WHATIS.COM at www.whatis.com (2008)                                    19

WIKIPEDIA at www.wikipedia.com (2008)                                  19,27

WORDSMYTH ENGLISH DICTIONARY-THESAURUS
at www.wordsmyth.com (2008)                                            27

Plaintiff SFA Systems, LLC ("SFA"), through its undersigned legal counsel and pursuant to P.R. 4-5(a), respectfully submits its opening Claim Construction Brief.

## I. INTRODUCTION

Plaintiff is the owner of U.S. Patent No. 6,067,525 ("the '525 Patent")[1]. Plaintiff contends that Infor Global Solutions (Michigan), Inc. and Infor Global Solutions (Chicago), Inc. (collectively "Infor") infringe claims 1-8, 10, 12, 20, 24, 34, 35, 37 and 40-42 of the '525 Patent.

## II. BACKGROUND

The '525 Patent is generally directed to sales force automation systems that facilitate the sale of an item or service through the integration of various computer implemented tools used by a salesperson during the sales process. Sales systems pre-dating the invention embodied in the '525 Patent were limited in the tasks that they could handle. For example, these systems were developed without regard for other events occurring in the overall sales process. While a particular event occurring in one phase of the sales process may be relevant to tasks or events in another phase of the process, conventional systems failed to recognize the significance of the event or to use the information consistently throughout the sales process. As a result, these systems failed to provide full support for the salesperson.

The invention of the '525 Patent overcomes deficiencies of earlier systems in a number of ways. For example, the systems covered by the '525 Patent generally include a plurality of subsystems. These subsystems are used to facilitate events occurring in the sales process. In addition, systems covered by the '525 Patent also typically include an event manager coupled to each of the subsystems that recognizes an event carried out by a subsystem, determines the context of the event and automatically initiates an operation as a result of the context of the

---

[1] The '525 Patent is attached as Exhibit 1. The file history for the '525 patent is attached as Exhibit 2.

recognized event.

Finally, the '525 Patent discloses an event manager that can be coupled to various subsystems to detect the occurrence of an event in the sales process.  Upon detection, the event manager will link the event in the sales process with a second event in the sales process based on prior sales experience.  The system would then initiate an operation using one of the subsystems to facilitate the second event.

The '525 Patent revolutionized sales force automation systems from systems that were focused only on the event that was occurring into a system that recognized other facts and events related to a potential sale (e.g., prior purchases of a customer, special customer requirements, seller capacity and seller financial constraints).  Systems that predated the '525 Patent were generally solely focused on an event in a vacuum and not on the broader sales process.

## III. CLAIM CONSTRUCTION PRINCIPLES

In light of the Court's experience in patent cases, familiarity with the governing law is presumed.

## IV. THE CLAIMS

The '525 Patent has three independent claims -- Claims 1, 20, and 40 -- which have multiple similarities.  All of the disputed claim terms fall within at least one of these independent claims.  A chart of the elements of Claims 1, 20 and 40 is attached as Exhibit 3.

## V. CONSTRUCTION OF THE DISPUTED CLAIM TERMS

### A.    Action

| PLAINTIFF'S CONSTRUCTION | DEFENDANTS' CONSTRUCTION |
|---|---|
| Something done or to be done. | A computer operation carried out during the sales process. |

To construe the term "action," we start with the presumption that words have "their ordinary and customary meaning."[2]  More specifically, "the ordinary and customary meaning of a claim term is the meaning that the term would have to a person of ordinary skill in the art."[3]  To one of ordinary skill in the art, the term "action" means "something done or to be done."

While not as important as the intrinsic record, the Court should consider extrinsic evidence when construing terms.[4]  Doing so reveals that Plaintiff's construction is consistent with the plain meaning of the term.[5]  Infor does not assert (nor can it) that "action" is a term of art.  Nor can Infor assert that the prosecution history expressly limits "action" in any way.  Accordingly, the plain meaning should apply.

### 1.   An action is not limited to computer operations.

Infor seeks to limit an "action" to computer operations.  However, the patent does not limit actions in that manner.  The patent explains that a salesperson can take into account the information provided by the system in order to determine what actions the salesperson should take, for example:

> "Such facts related to the event may be taken into consideration by an experienced **salesperson** to determine if and how the new incentive program should be presented to a particular customer**.** As can be appreciated, a large number of pieces of information available in the sales system may each be related to whether a **subsequent action (e.g., sending out a letter)** should be initiated."[6]

> "This information can be transferred to the lead generation component 102 so that the prospective lead can be used **for further action by the salesperson** when using the lead generation component 102"[7]

---

[2] *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005).

[3] *Id.*, at 1313.

[4] *Id.*, at 1318.

[5] *See* AMERICAN HERITAGE DICTIONARY OF THE ENGLISH LANGUAGE: Fourth Edition (2000) @ www.bartleby.com (defining action as something done or accomplished); *see also* MERRIAM-WEBSTER'S ONLINE DICTIONARY, 10th Edition (2008) @ www.merriam-webster.com; deed) (collectively attached hereto as Exhibit 4).

[6] '525 Patent at Column 34:13-20 (emphasis added).

[7] *Id*. at Column 11:32-37 (emphasis added).

"This information may then be used by the sales system to facilitate (or initiate) specified application events (e.g., to enter tasks into a to-do list for ***actions to be taken by the salesperson*** or to automatically carry out a task in the sales process)."[8]

In addition, Fig. 21A (sheet 24 of 50) refers to notify[ing the] salesperson of the recommended "actions," so the salesperson can conduct them.

The patentee therefore disclosed that a salesperson can take an action as a result of the events processed by the system. The term action appears in every independent claim in the '525 Patent. Consequently, limiting actions to "computer operations" would read out the preferred embodiments disclosed above. "[I]t is axiomatic that a claim construction that excludes a preferred embodiment . . . is rarely, if ever, correct and would require highly persuasive evidentiary support."[9]

Even more importantly, the claims evidence that an action and a computer operation are not the same thing. Claims 1, 20, and 40 state in relevant part:

| Claim 1 | Claim 20 | Claim 40 |
|---------|----------|----------|
| automatically initiating an ***operation*** in one or more particular subsystems of the computer to facilitate a new ***action*** based on the inferred context. | automatically initiating an ***operation*** in one or more particular subsystems of the computer to facilitate a new ***action*** based on the inferred context. | automatically initiate an ***operation*** using one or more of the plurality of subsystems of the computer to facilitate the ***action*** to be performed based on the inferred context. |

The claims therefore distinguish between actions and computer operations. Specifically, the claim language requires that an "operation" facilitate an "action." Different claim terms are

---

[8] *Id.* at Column 30:53-59 (emphasis added).
[9] *Anchor Wall Sys. v. Rockwood Retaining Walls*, 340 F.3d 1298, 1308 (Fed. Cir. 2003) (internal citations omitted).

presumed to have different meanings.[10]   Accordingly, because action and operation cannot have

the same meaning in the same claim, Infor's "computer operation" limitation must be rejected.

      **2.**      <u>Infor's "carried out during the sales process" renders moot the claim</u>
                      <u>language "performed during at least one phase of the sales process."</u>

As it relates to the term "action," Infor seeks to include another limitation, namely -

"carried out during the sales process."   There is nothing about the ordinary meaning of "action"

that requires it to be carried out during the sales process.   Nor can Infor point to anything in the

'525 Patent or the prosecution history that requires including this limitation.

Moreover, Claims 1, 20, and 40 of the '525 Patent each recite the separate limitation of

subsystems configured to facilitate actions performed in the sales process.   All of the claims of

the '525 Patent therefore already include the limitation that the action is performed during the

sale process.

Incorporating Infor's duplicative "carried out during the sales process" limitation would

render the "performed during the sales process" claim limitation of Claim 40 redundant and

moot.[11]   However, a construction that creates redundancies in the claims should be rejected.[12]   In

the case of *Agere Systems v. Sony Corp.*,[13] Magistrate Judge Everingham directly addressed this

issue.   In that case, the defendant sought a construction of "code set" that included the limitation

of "requiring formation of extended code sets."[14]   The Court found that the extended code set

---

[10] *Board of Regents of the University of Texas v. BENQ America,* 533 F.3d 1362, 1371 (Fed. Cir. 2008) (*citing CAE Screenplates v. Heinrich Fiedler GmbH,* 224 F.3d 1308, 1317 (Fed.Cir. 2000) ("In the absence of any evidence to the contrary, we must presume that the use of these different terms in the claims connotes different meanings.")).

[11] Infor's construction would also render moot the phrase "performed during at least one phase of the sales process" found in claims 1 and 20.

[12] *See Curtiss-Wright Flow Control v. Velan,* 438 F.3d 1374 (Fed. Cir. 2006); *see also Jack Guttman v. KopyKake Enter.,* 302 F.3d 1352, 1357 (Fed. Cir. 2002).

[13] 2008 WL 2078308 (E.D.Tex. May 15, 2008).

[14] *Id.* at *5.

limitation was already separately required by the claims and therefore rejected the defendant's proposed construction.[15]

Magistrate Judge Love has also addressed this issue. In *AdvanceMe. v. RapidPay*[16] the defendants sought to incorporate the limitation "as payment" to the claim term "debit card."[17] The plaintiff asserted that including that limitation in the claim term "debit card" would render portions of Claims 1 and 10 "superfluous." The Court agreed and held that the plaintiff was correct because the limitation was already specified elsewhere in the claims.[18]

In *Vision Advancement v. Vistakon*,[19] Magistrate Judge Love again rejected the mootness methodology. In that case, one party urged the Court to adopt a construction that included a "continuous" limitation.[20] The Court found that this definition "would appear to make [the claim term] superfluous" and therefore rejected it.[21]

For the reasons stated above, the Court should reject Infor's "carried out during the sales process" construction.

### B.      Changes in State Characteristics of an Event

| PLAINTIFF'S CONSTRUCTION | DEFENDANT'S CONSTRUCTION |
|---|---|
| Changes in information relating to the status of an event | Indefinite.  Alternatively, changes in a data field stored in the database of the event manager |

Both parties use the term "changes" in their construction and both parties have agreed that the term "event" needs no construction. Consequently, the only substantive dispute regarding the parties' respective constructions is whether or not "state characteristics of an

---

[15] *Id.*
[16] 2006 U.S. Dist. LEXIS 92444 (E.D. Tex. Dec. 21, 2006).
[17] *Id.* at 15.
[18] *Id.* (*citing Elekta Instrument v. O.U.R. Scientific Intern.,* 214 F.3d 1302, 1307 (Fed. Cir. 2000); *Brainy Ideas v. Media Group*, 169 F.Supp.2d 361, 363 n.2 (E.D. Pa. 2001).
[19] 2007 U.S. Dist. LEXIS 5742 (E.D. Tex. Jan. 26, 2007).
[20] *Id.* at *14.
[21] *Id.* (*citing Merck & Co. v. Teva Pharms, USA*, 395 F.3d 1364, 1372 (Fed. Cir. 2005) ("A claim construction that gives meaning to all of the terms of the claim is preferred over one that does not do so.")).

event" is "information relating to the status of an event" or "a data field in the database of an event manager."

      1.    <u>State characteristics are information relating to the status of an event</u>

Plaintiff's construction for "changes in state characteristics of an event" is consistent with the plain meaning of the term.  In the field of computers, the terms "state" and "status" are used interchangeably to mean the same thing.[22]  Although the word "state" is clear enough on its own, because one goal of claim construction is to construe the claims in words a lay jury would understand, Plaintiff submits that the commonly used word "status" makes for a more appropriate construction that the jury would better understand.

The specification supports this construction.  It states as follows:

> Typical operation of the event manager 201 will now be described. . . On the basis of rules and ***state information*** stored in the event manager database 1904, the event managing unit 1902 may be configured to dynamically bind event handlers (in the form of an event map) to the exposed events (as represented by line 1916). The event handlers typically dictate further action to be taken by the system resulting from the occurrence of the particular sales event represented by the business object 1908.[23]

In addition, state information (or status information) can be shared across the system.  "The Messaging function may be used to enable workflow in the system, such as by enabling the business objects to communicate state and status information with each other."[24]

The '525 Patent's prosecution history makes clear that Plaintiff's construction is correct. During prosecution the Examiner initially rejected the claims under 35 U.S.C. § 112 (for lack of written description) because "the Examiner was unable to find an explanation in the

---

[22] MICROSOFT PRESS DICTIONARY (1991) (defining state as "see status" and defining status as "also called state.  The condition at a particular time of any numerous elements of computing…") (attached hereto as Exhibit 5).
[23] '525 Patent at Column 32:13-29.
[24] '525 Patent at Column 32:8-12.

Specification of what constitutes 'changes in state characteristic of an event.'"[25]   The patentee responded by explaining the meaning of "changes in state characteristic of an event" in the context of the specification.  In particular, the patentee made clear that recognized events may be state characteristics for other events."[26]   In doing this, the patentee pointed to Column 32, lines 13-29, which refers to "state information" about events, as explaining changes in state characteristics of an event.[27]

The patentee was so clear in equating detecting state characteristic functionality with recognizing event functionality that the Examiner found that the patentee engaged in lexicography regarding the state characteristic elements:[28]

> "The Examiner recognizes that Applicants can be their own lexicographers and accepts their explanation regarding "state characteristic of an event".[29]

Accordingly, Plaintiff's construction is correct and should be adopted.

2.   Infor's proposed construction ignores express claim language.

Infor's proposed construction seeks to limit changes in state characteristics of events to changes in data fields stored in a database of an event manager.  This proposed construction is improper for several reasons.

First, independent Claim 20 and its dependent claims do not require an event manager. Infor is thus using its proposed construction of "changes in state characteristics of an event" to import an "event manager" limitation into those claims that lack this limitation.

Second, besides the express language of the claims not being limited to changes in a data field stored in the database of an event manager, Infor's proposed construction seeks to limit the

---

[25] 3/3/98 Office action, p. 4 (attached hereto as Exhibit 6).
[26] 7/14/98 Response to 3/3/98 Office action, p. 2 (attached hereto as Exhibit 7).
[27] *Id.*
[28] "The specification may reveal a special definition given to a claim term by the patentee that differs from the meaning it would otherwise possess.  In such cases, the inventor's lexicography governs." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1316 (Fed. Cir. 2005).
[29] 9/15/98 Office Action, p. 2 (attached hereto as Exhibit 8).

terms to a specific embodiment.  However, the '525 Patent discloses that data may be stored in back office systems and in the sales system "in order to maximize the efficient operation of the system."[30]

It is also important to note that Infor's construction never mentions an event even though: (1) the terms appear in the claimed phrase; and (2) the parties agreed that this term needed no construction.  Instead, Infor ignores the event term and seeks to make a state characteristic "a data field stored in the database of the event manager."

Accordingly, a state characteristic is not any piece of data in a database of an event manager, nor is it limited to such.  Infor's construction must be rejected.

## C.     Context

| PLAINTIFF'S CONSTRUCTION | DEFENDANTS' CONSTRUCTION |
| --- | --- |
| Information relevant to the occurrence of an event | Information relevant to the occurrence of an event, but not the fact that it occurred |

To construe the phrase "context," we start with the presumption that words have "their ordinary and customary meaning."[31]  More specifically, "the ordinary and customary meaning of a claim term is the meaning that the term would have to a person of ordinary skill in the art."[32] And while not as important as the intrinsic record, the Court should consider extrinsic evidence when construing terms.[33] There is nothing in the specification or prosecution history that would require the Court to construe this phrase as anything other than its ordinary meaning.  The ordinary meaning of context that is consistent with, but not limited to, the specification is "information relevant to the occurrence of an event."[34]

---

[30] '525 Patent at Column 9:5-6.
[31] *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005).
[32] *Id.*, at 1313.
[33] *Id.*, at 1318.
[34] *See* DICTIONARY.COM (2008) at www.dictionary.com (defining context as "the set of circumstances or facts that surround a particular event, situation, etc.) (attached hereto as Exhibit 9).

Infor recognizes the correctness of Plaintiff's construction as it uses nearly the exact same words. However, Infor goes one step further in what is yet another attempt to limit claim terms to what Infor perceives as preferred embodiments. As the Court is well aware, courts have repeatedly warned against limiting claims to the preferred embodiments[35] and Infor's attempt to do so here should be rejected.

Specifically, Infor adds the negative limitation that relevant information cannot include information about the fact that an event occurred. According to Infor, relevant information can include any information about an event other than the fact that it occurred. Infor has not explained how logically one is supposed to divorce information about an event from the fact of its occurrence. In addition, Infor has not explained why the occurrence of an event must be irrelevant to the context in which it resides. Finally, Infor has failed to point to any statement of express exclusion in the specification or prosecution history that supports its assertion that the occurrence of an event must be divorced from its context.

But more importantly, Infor's attempt to incorporate its negative limitation[36] ignores express claim language. Claim 3 states that the context includes information related to whether a previous event has occurred.[37] This claim language therefore contemplates that relevant information can include whether an event has occurred. Infor's construction would read out the embodiments of Claim 3. It is axiomatic that a claim construction that excludes an embodiment is "rarely, if ever, correct and would require highly persuasive evidentiary support."[38]

---

[35] *Phillips*, 415 F.3d at 1323.
[36] Negative limitations are generally disfavored. *See OPTi v. nVidia*, 2006 WL 1133331 (E.D. Tex. Apr. 4, 2006).
[37] A similar limitation is expressed in Claim 21.
[38] *Anchor Wall Sys. v. Rockwood Retaining Walls*, 340 F.3d 1298, 1308 (Fed. Cir. 2003) (internal citations omitted).

### D.   Coupled

| PLAINTIFF'S CONSTRUCTION | DEFENDANTS' CONSTRUCTION |
| --- | --- |
| No construction necessary | Communicating through an application programming interface (API) |

Infor requests that the Court construe the phrase "coupled."  However, no construction is necessary as the term "coupled" is not only well understood, but has also been considered for claim construction numerous times and found to have not required construction.[39]  Infor can make no credible argument that coupled is anything other than a simple, broad, and well-understood term.  Instead, Infor seeks to substitute coupled for a specific embodiment.

At the outset it is important to note that Infor seeks to convert the term "coupled" (a fixed term) to the term "communicating" (an active term).  In other words, Infor seeks a construction of how something is coupled and not the term "coupled" itself.

Even more importantly, the "how" Infor proposes is communicating only through an application programming interface (API).  Infor apparently thinks this is the only preferred embodiment, but it is not.  For example, the specification states:

> As illustrated in FIG. 2, each of the various components of the salesperson support system 100 are communicatively coupled to an event manager 20lA via respective lines 202, 204, 206, 210, 212 and 214. The various components of the salesperson support system 100 communicate with the event manager using respective application programming interfaces (APIs).[40]

Elsewhere in the specification the patent discloses that communicative coupling may be accomplished with "network connections and lines, modems, satellite communications

---

[39] *Johnson Worldwide Assocs. v. Zebco*, 175 F.3d 985, 992 (Fed. Cir. 1999) (holding that coupled is a "broad and general term"); *Nat'l Prods. v. Palmetto W. Trading Co.*, 2006 U.S. Dist. LEXIS 28682, *17 (W.D. Wa. May 4, 2006) ("The court declines to read a limitation into the broad term 'coupled.'"); *Verizon Cal.  v. Ronald A. Katz Tech. Licensing,* 326 F. Supp. 2d 1060, 1077 (C.D. Cal 2003) ("One of ordinary skill in the art understands the term 'coupled' to connote a broad range of associations between two things.").
[40] '525 Patent at Column 8:22-28.

technology, etc."[41]  Moreover, an API is not equated with coupling in its ordinary usage.  Rather,

APIs define languages and message formats used by programs or modules to communicate.[42]

APIs are implemented by writing function calls in the program, which provide the linkage to the

required subroutine for execution.  Thus, an API implies that a program module is available in

the computer to perform an operation or that it must be linked into the existing program to

perform tasks.  Even if using APIs was a preferred embodiment for coupling, the mere

"repetition in the written description of a preferred aspect of a claimed invention does not limit

the scope of an invention that is described in the claims in different and broader terms."[43]

Infor apparently relies on Figure 2 to support its construction because Infor contends the

patentee only discloses API for communicatively connecting elements.  However, that is not

true.  Not every element in Figure 2 uses an API for coupling.  This can be seen in that the two

communications components are communicatively connected to each other over line 1104.  At

no time is line 1104 directed through an API.  The specification supports this description as well:

> "Communications component 118A located in the salesperson support system 100
> is **communicatively coupled** to the communication component 118B of the back
> office system 200.  The **particular type of communicative coupling** between the
> salesperson support system 100 and the back office support system 200 will
> **depend on the physical proximity of the system**."[44]

Accordingly, the patentee expressly discloses that different types of coupling exist and

the type to be used depends on the circumstances.  Infor again commits the cardinal sin of claim

---

[41] *Id*. at Column 8:8-11.

[42] *See, e.g.,* PCMag.com Encyclopedia at http://www.pcmag.com/encyclopedia/ (API: (Application Programming
Interface) A language and message format used by an application program to communicate with the operating
system or some other control program such as a database management system (DBMS) or communications protocol.
APIs are implemented by writing function calls in the program, which provide the linkage to the required subroutine
for execution. Thus, an API implies that some program module is available in the computer to perform the operation
or that it must be linked into the existing program to perform the tasks.) (attached hereto as Exhibit 10).

[43] *Laitram Corp. v. NEC Corp*., 163 F.3d 1342, 1348 (Fed. Cir. 1998).

[44] '525 Patent at Column 9:10-15 (emphasis added).

construction by attempting to incorporate additional limitations from preferred embodiments into the simple term "coupled."[45]

### E.    Event Manager

| PLAINTIFF'S CONSTRUCTION | DEFENDANTS' CONSTRUCTION |
| --- | --- |
| Hardware and/or software that takes or directs an action relative to an event | A software module functionally separate and apart from the subsystems that intelligently controls the flow of information between the subsystems |

An event manager is literally something that manages events.  In this case, Plaintiff has formulated a construction that properly captures what an event manager is while at the same time allowing for the various abilities of the event manager as described in the claims and specification.

### 1.    An event manager is hardware and/or software that takes or directs an action relative to an event.

The event manager of independent claims 1 and 40 must be able to detect changes in the state characteristics of events, infer the occurrence of events and their context, and to automatically initiate operations.  Accordingly, Plaintiff's construction makes clear that an event manager can take or direct an action (e.g., detect, infer and initiate) relative to an event.  This construction is the only one offered by either party that: (1) incorporates the necessary functions of an event manager; and (2) supports the varied abilities of preferred embodiment event managers described in the specification.  In addition, Plaintiff's construction is consistent with the plain meaning of the word "manage," which is to direct or control.[46]

On the other hand, Infor's construction ignores express claim language, disclosures in the specification, and cannons of claim construction. Infor's construction of event manager as "a

---

[45] *Phillips*, 415 F.3d at 1323.
[46] *See, e.g.,* American Heritage Dictionary of the English Language: Fourth Edition (2000) @ www.bartleby.com (Manage: To direct or control the use of; handle) (attached hereto as Exhibit 11).

software module functionally separate and apart from the subsystems that intelligently controls the flow of information between the subsystems, and which has an expert system with an inference engine capable of drawing upon predetermined stored rules and stored factual state information to arrive at a nonlinear logical inference," must be rejected.

> 2.    There is no support for limiting an event manager to a software module.

Despite repeated reviews of the specification and prosecution history, Plaintiff can find no evidence that the patentee limited an event manager to a software module.  In fact, the statements in the specification indicate just the opposite.

The specification discloses that parts of the claimed system are not just software.  For example, Data component 116 and Communications component 118 are disclosed as "hardware."[47]  In addition, the patentee makes clear that subsystems disclosed in Figure 2 need not be implemented as software modules:

> "The various components and subsystems illustrated in Figure 2 *may* be implemented as software modules…*Alternatively*, separate processors or computing platforms may be used…"[48]

An event manager is referenced in Figure 2 and is disclosed in the figure as a subsystem.[49]  The disclosure above states that the subsystems "may" be implemented as software modules.  Simple application of basic grammar would require that subsystems may also *not* be implemented as software.

Not surprisingly, the very next statement in the specification makes this point clear.  The patent states that as an alternative to implementing the subsystems as software modules, the subsystems may be implemented on separate processors or computing platforms.  Implementing

---

[47] '525 Patent at Column 4:8.
[48] '525 Patent at Column 10:6-13 (emphasis added).
[49] An event manager is a subsystem as construed by Plaintiff.  *See* Section V.J below regarding the proper construction for "subsystem."

this alternative means that subsystems can be a combination of hardware and software (i.e., the processor is hardware and the application running on the processor would be software).

Moreover, Figure 19 "illustrates an event manager in accordance with an embodiment of the invention."[50]  The event manager of Figure 19 comprises: (1) an event managing unit, (2) a monitoring unit, (3) an event manager database, and (4) an editor.  At least each of the event managing unit, monitoring unit and event manager database are separate hardware or software elements.

Infor's construction limits the term to a preferred embodiment and reads out other disclosed embodiments.  "[I]t is axiomatic that a claim construction that excludes a preferred embodiment . . . is rarely, if ever correct and would require highly persuasive evidentiary support."[51]  Consequently, the Court should reject Infor's attempt to limit an event manager to a software module.

> **3.**    An event manager performs many functions beyond controlling the flow of information between subsystems.

Infor seeks a construction that an event manager simply controls the flow of information in the system and in doing so limits the construction of an event manager to a single function an event manager can do.  The claims and specification make clear that an event manager does far more than control the flow of information in the system.

The primary function of the event manager is not to control the sharing of information throughout the system.  It is to detect changes in the state characteristics of events (i.e., recognize

---

[50] Figure 22 is an alternative embodiment of an event manager that additionally includes an expert system. Otherwise the embodiments of Figures 19 and 20 are the same.
[51] *Anchor Wall Sys. v. Rockwood Retaining Walls, Inc.*, 340 F.3d 1298, 1308 (Fed. Cir. 2003) (internal citations omitted).

events),[52] infer the occurrence of events and their context, and to automatically initiate

operations.  This is seen in the Summary of the Invention:

> "The system also includes an ***event manager*** coupled to each of the subsystems
> which ***recognizes an event*** carried out by one of the subsystems**, *determines the***
> ***context*** in which the recognized event occurs and automatically ***initiates an***
> ***operation*** in a another subsystem to facilitate a new event in the sales process on
> the basis of the context in which the recognized event occurs."[53]

This primary functionality is repeated throughout the specification:

> "[T]he ***event manager recognizes events*** in the sales process, ***evaluates the events***
> and ***initiates appropriate action***."[54]

> "It is noted that the ***event manager*** 201A will ***recognize operations*** carried in the
> customer satisfaction module 602, ***the context*** in which the plan is developed and
> may direct the self management component 102 to ***automatically insert tasks and***
> ***to do lists*** to assist the salesperson in following the plan."[55]

> "As described above, each event occurring in the sales process is handled by an
> ***event manager*** which ***recognizes the event, notes the context in which the event***
> ***occurs and automatically initiates additional action*** based on the event and its
> context."[56]

Thus, the specification evidences that the primary function of the event manager is not limited to

controlling information.

Moreover, as noted above, the event manager of independent claims 1 and 40 must be

able to detect changes in the state characteristics of events (i.e., recognize events), infer the

occurrence of events and their context, and to automatically initiate operations.  Thus, the claim

language tracks the summary of the invention and the statements of the specification.  Infor's

proposed construction of "event manager" would limit the event manager so it could not meet

---

[52] As noted in Section V.B above, during the prosecution of the '525 patent, the patentee and Examiner agreed that
detecting changes in the state characteristics of events equates with recognizing events.
[53] '525 Patent at Column 2:28-34 (emphasis added).
[54] *Id.* at Column 13:32-34 (emphasis added).
[55] *Id*. at Column 19:21-25 (emphasis added).
[56] *Id*. at Column 30:13-17 (emphasis added).

the three necessary requirements of Claims 1 and 40 and their many dependent claims. A construction in conflict with the requirements of the claims is plainly wrong.

The limited functionality Infor seeks to incorporate in its construction is merely a bi-product of the primary function of an event manager.  There is no legitimate basis for Infor's construction that ignores the primary function of an event manager.  Plaintiff's construction, however, encompasses not only the sharing of information that Infor proposes but also encompasses the three-part function of an event manager.

### F.    Expert System

| PLAINTIFF'S CONSTRUCTION | DEFENDANT'S CONSTRUCTION |
|---|---|
| A system that learns successful actions and automatically implements them in the future. | A system that includes an inference engine to provide rules-based decision making using a knowledge base and a set of rules. |

While an expert system is a term not readily understood by a jury, and therefore needs construction, it is a well-known term for those of ordinary skill in the art.  To construe the term "expert system," we start with the presumption that words have "their ordinary and customary meaning" as that the term would mean to a person of ordinary skill in the art.[57]  While not as important as the intrinsic record, the Court should consider extrinsic evidence when construing terms.[58]  Doing so reveals that Plaintiff's construction is in harmony with the general meaning of the term.[59]  Accordingly, the phrase "expert system" means "a system that learns successful actions and automatically implements them in the future."

---

[57] *Phillips v. AWH Corp.*, 415 F.3d. 1303, 1312 (Fed. Cir. 2005).

[58] *Id.*, at 1318.

[59] WIKIPEDIA.COM (defining expert system as "software that attempts to reproduce the performance of one or more human experts, most commonly in a specific problem domain, and is a traditional application and/or subfield of artificial intelligence. *A wide variety of methods can be used to simulate the performance of the expert* however common to most or all are 1) the creation of a so-called "knowledgebase" which uses some knowledge representation formalism to capture the subject matter experts (SME) knowledge and 2) a process of gathering that knowledge from the SME and codifying it according to the formalism, which is called knowledge engineering.) (emphasis added); WHATIS.COM (defining expert system as a computer program that simulates the judgment and behavior of a human or an organization that has expert knowledge and experience in a particular field. *Typically*,

Plaintiff's construction of "a system that learns successful actions and automatically implements them in the future" is consistent with, but not limited to, the specification:

"FIG. 22 illustrates an alternative embodiment which incorporates an expert system 2002 which *allows the system to learn successful sales approaches* and *automatically implement such approaches in future sales process*.[60]

Infor's construction, on the other hand, is based on incorporating limitations from certain preferred embodiments that are not found in the claims. Specifically, Infor seeks to include the limitation of an inference engine that provides various functions. However, the specification makes clear that an inference engine is not required in an expert system. The patentee discloses that some expert systems will have inference engines and others will not: "*[f]or example*, an inference engine *may* be incorporated into the expert system 2002[.]"[61] The disclosure provided is just one example and should not limit the claim term. In addition, the qualification that an expert system "may" include an inference engine necessarily means that an expert system "may not" include an inference engine.[62]

Infor's proposed construction also seeks to limit expert systems to having "rules-based decision making using a knowledge base and a set of rules." A statement by the patent that expressly limits the term in this manner is neither found in the claims or the specification. To the

---

such a system contains a knowledge base containing accumulated experience and a set of rules for applying the knowledge base to each particular situation that is described to the program) (emphasis added); AMERICAN HERITAGE DICTIONARY OF THE ENGLISH LANGUAGE: FOURTH EDITION (2000) (defining an expert system as "a program that uses available information, heuristics, and inference to suggest solutions to problems in a particular discipline"); INFOPLEASE DICTIONARY at http://dictionary.infoplease.com (defining expert system as a "program that gives answers, solutions, or diagnoses, based on available information, by following procedures that attempt to duplicate the thought processes and apply the knowledge of an expert in some particular field"); DICTIONARY.COM @ www.dictionary.com (defining expert system as "a program that gives answers, solutions, or diagnoses, based on available information, by following procedures that attempt to duplicate the thought processes and apply the knowledge of an expert in some particular field") (collectively attached hereto as Exhibit 12).
[60] '525 Patent at Column 33:32-37.
[61] *Id*. at Column 33:63-64 (emphasis added).
[62] *Rockefeller Univ. v. Centocor*, Cause No. 2:04-CV-168 at Dkt. 73, pg. 9.

contrary, although expert systems typically have these characteristics, it is understood in the art that, "[a] *wide variety* of methods can be used to simulate the performance of the expert."[63]

Infor's construction again seeks to improperly limit terms to a single preferred embodiment.[64]   Moreover, with the requirement that an expert system have an inference engine, Infor reads out other preferred embodiments.   "[I]t is axiomatic that a claim construction that excludes a preferred embodiment . . . is rarely, if ever correct and would require highly persuasive evidentiary support."[65]  Infor's construction must be rejected.

### G.   Inferring

| PLAINTIFF'S CONSTRUCTION | DEFENDANTS' CONSTRUCTION |
|---|---|
| Deriving based upon one or more facts or circumstances. | Indefinite.  Alternatively, the computerized logical process by which a factual conclusion is derived from known facts by the application of logical rules using the inference engine of an expert system within the event manager. |

To construe the term "inferring," we start with the presumption that words have "their ordinary and customary meaning."[66]   Specifically, "the ordinary and customary meaning of a claim term is the meaning that the term would have to a person of ordinary skill in the art."[67] The term "inferring" is used throughout the specification in a manner consistent with its ordinary and plain meaning.   Although the patent focuses upon inferring relative to events and context, it never narrows the meaning of inferring in any way.   Inferring is simply "deriving based upon one or more facts or circumstances."[68]

---

[63] *See* n. 61 above (emphasis added).
[64] *Phillips*, 415 F.3d at 1323.
[65] *Anchor Wall Sys. v. Rockwood Retaining Walls*, 340 F.3d 1298, 1308 (Fed. Cir. 2003) (internal citations omitted).
[66] *Phillips*, 415 F.3d at 1312.
[67] *Id.*, at 1313.
[68] AMERICAN HERITAGE DICTIONARY OF THE ENGLISH LANGUAGE: FOURTH EDITION (2000) @ www.bartleby.com (defining infer as "to conclude from evidence or premises. 2. To reason from circumstance) (attached hereto as Exhibit 13).

The fact that inferring has a plain meaning is evident from jury instructions that commonly instruct jurors that they may make inferences. For example, in multiple instances, the Fifth Circuit Pattern Jury Instructions provide that jurors may "draw such reasonable inferences from the testimony and exhibits as you feel are justified."

Moreover, Plaintiff's construction is also internally consistent with the other "inferring" terms the Court must address. Accordingly, the Court should adopt Plaintiff's construction.

1.     <u>Infor implicitly admits that Plaintiff's proposal is consistent with the ordinary meaning of the term.</u>

Infor's construction includes the limitation "derived from known facts." While this limitation is written in past tense rather than present tense, the meaning of Infor's limitation coincides with Plaintiff's construction: "Deriving based upon one or more facts or circumstances." Thus, the only substantive difference between the two parties' constructions is Infor's incorporation of spurious limitations.

2.     <u>Inferring does not require the "application of logical rules using the inference engine of an expert system within the event manager."</u>

Infor's inferring construction suffers from a major flaw. Principally, the construction reads out preferred embodiments and express claim language. Infor's construction includes the limitation that inferring can only be done with the use of "an inference engine of an expert system within the event manager." Infor is incorrect.

First, Infor's proposed construction ignores the fact that Claim 20 and its dependent claims lack the requirement of an event manager.[69] Second, even for those claims requiring an event manager, Infor takes the incredible position that an event manager must include the limitation of "an expert system with an inference engine capable of drawing upon predetermined stored rules and stored factual state information to arrive at a nonlinear logical inference." In

---

[69] *See* Section IV above.

short, Infor seeks to have a special type of expert system read into an event manager.  Such an approach is consistent with Infor's continued attempts to read in preferred embodiments, ignore express language in the claims and specification, and render moot additional claim language.  As will be shown below, the patentee makes clear that event managers may include expert systems and they may not include them.

The '525 Patent states that "FIG 22 illustrates an **alternative** embodiment which incorporates an expert system…"[70]  Absent some statement of limitation, limiting the claims to the "alternative embodiment" of Figure 22 would be improper.[71]  Moreover, the patentee makes clear that Figure 22 is just one embodiment and that another embodiment exists.[72]

Figure 19 "illustrates an event manager in accordance with an embodiment of the invention."[73]  However, Figure 19, and its associated description in the specification, does not include an expert system.  The patentee therefore made clear that some embodiments of an event manager could include an expert system (Figure 22) and others need not have such inclusion (Figure 19).  Accordingly, Infor's construction would read out the preferred embodiment disclosed in Figure 19.[74]  "To construe the claims in the manner suggested…would read an express limitation out of the claims.  This we will not do[.]"[75]  "At least where claims can reasonably interpreted to include a specific embodiment, it is incorrect to construe the claims to

---

[70] '525 Patent at Column 33:32-33 (emphasis added).

[71] "By its reliance on the figures, the district court improperly limited claim 1 to a preferred embodiment.  We have consistently advised against this approach to claim construction."  *Playtex Prods., Inc. v. Procter & Gamble Co.*, 400 F.3d 901, 907 (Fed. Cir. 2005).

[72] "FIG 22 illustrates an **alternative** embodiment which incorporates an expert system…"  '525 Patent at Column 33:32-33 (emphasis added).

[73] '525 Patent at Column 36-37.

[74] *Anchor Wall Sys. v. Rockwood Retaining Walls*, 340 F.3d 1298, 1308 (Fed. Cir. 2003) (internal citations omitted).

[75] *Oak Tech. v. ITC*, 248 F.3d 1316, 1329 (Fed. Cir. 2001).

exclude that embodiment, absent probative evidence on the contrary."[76]  For these reasons, the

Court should reject Infor's construction.

Finally, because an event manager need not always include an expert system, Infor's

attempt to require the limitation "an inference engine of an expert system within the event

manager" must also be rejected.  Infor is attempting to use the construction of "inferring" to back

door in an expert system requirement that has already been found wanting.  Such an attempt

must be rejected.

### H.      Inferring Occurrence of an Event

| PLAINTIFF'S CONSTRUCTION | DEFENDANTS' CONSTRUCTION |
|---|---|
| Deriving the occurrence of an event based upon one or more facts or circumstances. | Indefinite.  Alternatively, [t]he computerized logical process by which the conclusion that the event has occurred is derived based in part upon the detected changes in a data field stored in the database of the event manager and by the application of logical rules using the inference engine of an expert system within the event manager. |

The parties agreed that the terms "event," "inferred event," and "link the inferred event

with an action to be performed" need no construction.   In addition, the Court is already

construing "inferring."  Every term in the above phrase is therefore being separately construed or

the parties agreed no construction was necessary.  Consequently, "inferring occurrence of an

event" does not need further construction.[77]  However, because Infor seeks to back door in an

extra (and redundant) limitation into the above phrases, Plaintiff will address the construction.

For "inferring occurrence of an event," it would be reasonable to expect that each party

would simply combine the individual constructions for "inferring" with the phrase "occurrence

---

[76] *Oatey v. IPS*, 514 F.3d 1271, 1277 (Fed. Cir. 2008).

[77] For clarity, and in light of recent rulings from the Federal Circuit, Plaintiff has provided a construction for this term but maintains that no construction is necessary in light of the construction of the underlying terms.

of an event." Plaintiff in fact does so.[78] Infor also partly engages in this correct approach to claim construction. However, Infor goes one step further. It seeks to incorporate an additional limitation into the phrase.

Infor seeks to include the additional limitation: "detected changes in a data field stored in the database of the event manager." As can be seen above at Section V.B, the "detected changes…." limitation Infor seeks to incorporate is the construction Infor proposes for the "changes in a state characteristic" claim term. Infor is therefore attempting to read in a state characteristic element in its construction even though "inferring occurrence of an event" does not include that claim element. Infor can offer no principled reason why this additional language must be applied to the above phrase when such a limitation does not appear in the construction of "inferring."

Moreover, when looking at the extra limitation Infor seeks to include, one can readily deduce that Infor's construction again makes other claim language redundant. Infor's construction would read out express claim language. Compare Infor's construction with the claim limitations immediately following the inferring limitations:

    Claim Language: based at least in part on the detected changes in state

    Infor's Construction: derived based in part upon the detected changes in state characteristics [what Infor describes as "a data field stored in the database of the event manager"].

Consequently, incorporating Infor's extra limitation would improperly render a claimed phrase moot. It is well-established that constructions that render additional claim language superfluous should be rejected.[79]

_____
[78] Plaintiff incorporates its arguments regarding the claim terms "inferring" in their entirety.
[79] *See Curtiss-Wright Flow Control v. Velan*, 438 F.3d 1374 (Fed. Cir. 2006); *see also Jack Guttman v. KopyKake Enter.*, 302 F.3d 1352, 1357 (Fed. Cir. 2002); *Agere Systems v. Sony*, 2008 WL 2078308 at *5 (E.D.Tex. May 15,

Infor's attempt to incorporate additional limitations that are not in the claimed phrase and that are claimed elsewhere should be rejected.  The Court has already construed every underlying term that needs construction so no further construction is necessary.

**I.      Inferring…a Context in Which the Event Occurred**

| PLAINTIFF'S CONSTRUCTION | DEFENDANT'S CONSTRUCTION |
| --- | --- |
| Deriving information relevant to the occurrence of an event based upon one or more facts or circumstances. | Indefinite. Alternatively, [t]he computerized logical process by which the conclusion of contextual facts are derived based in part on detected changes in a data field stored in the database of the event manager and by the application of logical rules using the inference engine of an expert system within the event manager. |

Many of the issues for the term "inferring occurrence of an event" at Section V.H above apply equally to the claimed phrase "inferring…a context in which the event occurred." The parties agreed that the terms "event" and "inferred event" and "link the inferred event with an action to be performed" need no construction.  In addition, the Court is already construing "inferring" and "context."  Every term in the above phrase is already being construed or the parties agreed no construction was necessary.  Consequently, "inferring…a context in which the event occurred" needs no further construction.[80]   However, because Infor seeks to include additional limitations into the "inferring…a context" claim element, Plaintiff will address the construction.

As it did with "inferring occurrence of an event," Plaintiff combines its constructions of the underlying terms to develop its construction of "inferring…a context in which the event

---

2008); *AdvanceMe, Inc. v. RapidPay, LLC*, 2006 U.S. Dist. LEXIS 92444 at *15 (E.D. Tex. Dec. 21, 2006); *Vision Advancement v. Vistakon*, 2007 U.S. Dist. LEXIS 5742 at *14 (E.D. Tex. Jan. 26, 2007).
[80] For clarity, and in light of recent rulings from the Federal Circuit, Plaintiff has provided a construction for this term but maintains that no construction is necessary in light of the construction of the underlying terms.

occurred."[81]   This makes the constructions internally consistent.   However, Infor does not implement the same procedure.

Infor again seeks to incorporate a "change in state characteristics" limitation into the "inferring…a context in which the event occurred" construction.   For the reasons stated above in Section V.H, such a construction is not supported by basic cannons of claim construction and renders additional claim language moot.   Accordingly, Infor's construction must be rejected on this basis alone.

Infor is also inconsistent with its construction.   On the one hand, Infor offers a construction of "context" above in Section V.C that reads "information relevant to the occurrence of an event, but not the fact the event occurred."   However, Infor's construction of "inferring…a context in which the event occurs" does not include Infor's proposed "context" construction.   Instead, Infor replaces the term "context" in the claimed phrase with "contextual information."

There are only two possible conclusions one can make from Infor's proposed construction.   First, Infor uses contextual information because it understands that "context" is a well-understood word that needs no construction.[82]   Or second, Infor's constructions are internally inconsistent.   In either event, the Court should reject Infor's construction and adopt Plaintiff's construction.

J.   **Subsystem**

| PLAINTIFF'S CONSTRUCTION | DEFENDANTS' CONSTRUCTION |
|---|---|
| A system that is part of a larger system | A hardware or software module independent of the event manager and corresponding to a phase of the sales process |

---

[81] Plaintiff incorporates its arguments regarding the claim terms "inferring" and "context" in their entirety.

[82] Plaintiff agrees with this position as it believes "context" is a well understood term that needs no construction. Moreover, if this was indeed Infor's position, the Court would not need to construe either "context" or "inferring…a context in which the event occurred."

To construe the phrase "subsystem," we start with the presumption that words have "their ordinary and customary meaning."[83]  Plaintiff's construction begins with the meaning one of ordinary skill in the art would ascribe to the term.  To one of ordinary skill in the art, the phrase "subsystem" is essentially self-defining and means "a system that is part of a larger system."[84]

Such a construction is amply supported by the specification.  "The back office system 200 includes a number of subsystems…"[85]  The back office system discussed in the specification is disclosed in Figure 2 (which is described as "a sales automation system in accordance with an embodiment of the invention").  As part of the back office system, Figure 2 discloses various subsystems.  For example, Figure 2 discloses a Data Tools subsystem, a System Tools subsystem, an Enterprise Systems subsystem, and a Dealer Systems subsystem.[86]  It is important to note that the names themselves connote that a subsystem is in itself a system as well (*e.g*., an Enterprise System is a subsystem).  Moreover, as they are a part of the overall system, they coincide exactly with Plaintiff's construction.

1.      A subsystem is not limited to hardware or software module

Infor proposes that a subsystem is a hardware or software module.  Substituting the word "module" for "subsystem" does not add any clarity to the term.  Rather, as is the case in most of Infor's proposed constructions, it appears to import unnecessary limitations.  Infor provides no explanation why a subsystem must consist of a "module," when common sense says that a subsystem could be comprised of multiple modules or no modules at all.  In addition, while SFA

---

[83] *Phillips v. AWH Corp.*, 415 F.3d. 1303, 1312 (Fed. Cir. 2005).
[84] THE WORDSMYTH ENGLISH DICTIONARY-THESAURUS @ www.wordsmyth.com (2008) (defining "subsystem" as "a system that is part of a larger system"); *see also* WIKIPEDIA @ www.wikipedia.com (2008) (defining "subsystem" as " system that is part of some larger system"); ANSWERS.COM at www.answers.com (defining "subsystem" as " A unit or device that is part of a larger system. . . A subsystem usually refers to hardware, but it may be used to describe software.") (collectively attached hereto as Exhibit 14).
[85] '525 Patent at Column 9:26-27.
[86] A detailed description of these subsystems can be found at Column 9:26-53 of the '525 Patent.

at least understands what constitutes a software module, the term hardware module is apparently non-standard.  Most importantly, the specification states that "[t]he various components and subsystems illustrated in Figure 2 may be implemented as software modules…"[87]  The application of basic grammar would require that subsystems may not be implemented as modules.

Infor's construction limits the term to a preferred embodiment and reads out other disclosed embodiments.  "[I]t is axiomatic that a claim construction that excludes a preferred embodiment . . . is rarely, if ever correct and would require highly persuasive evidentiary support."[88]  Consequently, the Court should reject Infor's attempt to limit a subsystem to a hardware or software module.

### 2.   Not all subsystems correspond to a phase of the sales process

To support its assertion that subsystems correspond to a phase of the sales process, Infor relies on examples of preferred embodiments.  Incorporating limitations from preferred embodiments should be rejected.[89]  Moreover, Infor's reliance upon preferred embodiments is selective.  In at least one preferred embodiment, the subsystems need only "*generally* relate to various phases of the sales process."[90]

Further, each of independent Claims 1, 20 and 40 require only subsystems configured to facilitate actions performed during at least one phase of the sales process, and independent Claim 40 requires only subsystems configured to facilitate actions performed during the sales process. Infor's proposed construction requiring the subsystems themselves to correspond to a phase in

---

[87] '525 Patent at Column 10:6-13 (emphasis added).
[88] *Anchor Wall Sys. v. Rockwood Retaining Walls*, 340 F.3d 1298, 1308 (Fed. Cir. 2003) (internal citations omitted).
[89] *Phillips*, 415 F.3d at 1323.
[90] '525 Patent at Column 3:61-64 (emphasis added).

the sales process, as opposed to the clamed actions corresponding, imports a limitation not present in any of the claims.

## VI. <u>THE CLAIMS TERMS OF THE '525 PATENT ARE NOT INDEFINITE</u>

Infor alleges that every claim of the '525 Patent is invalid because certain terms violate 35 U.S.C. § 112.  Specifically, Infor asserts that the following terms do not comply with § 112:

- Changes in state characteristics of an event
- Inferring occurrence of the event
- Inferring a context in which the event occurred

Infor's alleged basis is that these terms cannot be construed (i.e., are indefinite) and/or introduce new matter into the '525 patent claims (i.e., lack written description).[91]  Infor's claims are insupportable.  "Because a claim is presumed valid, a claim is indefinite only if the claim is insolubly ambiguous, and no narrowing construction can properly be adopted."[92]  "[I]f the meaning of the claim is discernible, even though the task may be formidable and the conclusion may be one over which reasonable persons will disagree, we have held the claim sufficiently clear to avoid invalidity on indefiniteness grounds."[93]

In this case, the task before the Court is not formidable.  Infor was able to propose constructions for all of the terms above so it cannot credibly contend that the terms under dispute are insolubly ambiguous.  As Infor can construe the terms, so too can the Court.

It is difficult for Plaintiff to address Infor's § 112 contentions without Infor briefing them first.  In its Reply *Markman* Brief, Plaintiff reserves the right to respond to any briefing on this issue in Infor's Responsive *Markman* Brief.

---

[91] The parties agreed that the issue of definiteness is appropriate to address in the *Markman* context since indefinite terms are incapable of being construed.  The parties also agreed that Infor's contentions regarding a lack of written description are not appropriate in the *Markman* context because the construction of a term is a separate issue from whether it is sufficiently described in the specification.

[92] *Honeywell Int'l v. Int'l Trade Comm'n*, 341 F.3d 1338-39 (Fed. Cir. 2003).

[93] *Energizer Holdings v. Int'l Trade Comm'n*, 435 F.3d 1366, 1371 (Fed. Cir. 2006).

## VII.    <u>CONCLUSION</u>

The constructions offered by the Plaintiff is consistent with, but not limited to, the specifications of the patents-in-suit.  Plaintiff accurately defines terms in light of both the intrinsic and extrinsic evidence.  Infor, on the other hand, fails to comply with the canons of claim construction.  Infor repeatedly seek to incorporate limitations from preferred embodiments into the claims, misconstrues the prosecution history, and renders express claim limitations moot. Accordingly, the Court should adopt Plaintiff's constructions and reject Infor's constructions.


November 28, 2008                          Respectfully submitted,

                                           By:/s/ Andrew W. Spangler (by permission JJE)
                                           Andrew W. Spangler - LEAD COUNSEL
                                           Spangler Law P.C.
                                           208 N. Green Street, Suite 300
                                           Longview, Texas 75601
                                           (903) 753-9300
                                           (903) 553-0403 (fax)
                                           spangler@spanglerlawpc.com

                                           David M. Pridham
                                           Law Office of David Pridham
                                           25 Linden Road
                                           Barrington, Rhode Island 02806
                                           (401) 633-7247
                                           (401) 633-7247 (fax)
                                           david@pridhamiplaw.com

                                           John J. Edmonds
                                           The Edmonds Law Firm, PC
                                           709 Sabine Street
                                           Houston, Texas 77007
                                           (713) 858-3320
                                           (832) 415-2535 (fax)
                                           johnedmonds@edmondslegal.com

                                           ATTORNEYS   FOR   PLAINTIFF   SFA
                                           SYSTEMS, LLC

**CERTIFICATE OF SERVICE**

I hereby certify that the counsel of record who are deemed to have consented to electronic service are being served today with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3).

November 28, 2008                                   /s/ John J. Edmonds
                                                    John J. Edmonds