Serial Number: 08/550,089                                          -2-
Art Unit: 2761

## Part III  DETAILED ACTION

### Notice

1.     **Effective November 16, 1997, the Examiner handling this application was
assigned to a new Art Unit as a result of the consolidation into Technology Center
2700.  See the Official Gazette notice dated November 11, 1997.  For any written or
facsimile communication submitted ON OR AFTER November 16, 1997, this
Examiner, who was assigned to Art Unit 2411, will be assigned to Art Unit 2761.
<u>Please include the new Art Unit in the caption or heading of any communication
submitted after the November 16, 1997 date.</u>  Your cooperation in this matter will
assist in the timely processing of the submission and is appreciated by the Office.**

### Status of Claims

2.     Of the original Claims 1 - 20, Claims 21 - 43 have been added by Applicants'
amendment filed December 10, 1997.  Therefore, Claims 1 - 43 are under prosecution in
this application.

### Summary of this Office Action

3.     Applicants' arguments filed December 10, 1997 have been fully considered, are
discussed in the next section below or within the following rejections under 35 U.S.C. §§
112 and 103, and except as where expressly noted, are not deemed to be persuasive.
Therefore,

           - Claims 1 - 43 are rejected under 35 U.S.C. § 112;

           - Claims 1 - 43 are rejected under 35 U.S.C. § 103 as unpatentable over the art

           cited below; and

Applicants' request for allowance is respectfully denied.

Serial Number: 08/550,089                                                    -3-
Art Unit: 2761

### *Response to Applicants' Amendment*

4.      The Examiner acknowledges Applicants' amendment to Claims 14 - 16 and 18 in
response to the prior office action's rejection of these Claims under 35 U.S.C. § 112,
second paragraph, and therefore withdraws the corresponding rejection.

5.      The Examiner acknowledges Applicants' amendment to Claim 11 and therefore
withdraws the corresponding objection to this Claims as regards duplicative wording.

6.      As regards the Negrino being limited to sales contact management, the Examiner
asserts that Negrino teaches in the art of sales automation software in which "every step
of the sales process" is under control of the system and expressly discloses capturing
initial sales leads, making sales presentations, scheduling meetings with customers,
submitting and refining bids, closing a sale, and following up for future sales.  See
Negrino at pages 1, 2, and 4.

7.      As regards Negrino being a linear system the Examiner asserts that Negrino
discloses a non-linear, automated branching system and for support therefore cites to
page 2 of the article where Market Master is discussed as permitting branching to any
part of the sales plan from any step and also permitting branching between plans.

8.      Applicants' remaining traversals are discussed under the 35 U.S.C. § 103 rejection
below.


### *Drawings*

9.      This application has been filed with informal drawings which are acceptable for
examination purposes only.  Formal drawings will be required when the application is
allowed.

10.     The drawings are objected to because of irregularities as noted on PTO 948,
enclosed.  Appropriate correction is required.

Serial Number: 08/550,089
Art Unit: 2761

-4-

## *Specification*

11.    The following is a quotation of the first paragraph of 35 U.S.C. § 112:

The specification shall contain a written description of the invention, and of the manner and process of making and using it, in such full, clear, concise, and exact terms as to enable any person skilled in the art to which it pertains, or with which it is most nearly connected, to make and use the same and shall set forth the best mode contemplated by the inventor of carrying out his invention.

(A)    The specification is objected to under 35 U.S.C. § 112, first paragraph, as not being written in such full, clear, concise, and exact terms as to enable any person skilled in the art to which it pertains, or with which it is most nearly connected, to make and use the same. In particular, the event manager is disclosed at page 15 of the Specification as recognizing the occurrence of events and determining the context in which the event occurred. The Examiner asserts that the recognition feature of the Specification appears to be contrary to the system recited in Claims 1, 13, and 17, in which the event manager "detect[s] one or more changes in state characteristic of an event . . . [and] infer[s] occurrence of the event". Furthermore, the Examiner was unable to find an explanation in the Specification of what constitutes "changes in state characteristic of an event".

## *Claim Rejections - 35 USC § 112*

12.    Claims 1, 13, and 17 are rejected under 35 U.S.C. § 112, first paragraph, for the reasons set forth in the objection to the specification.

13.    Claims 1 - 20 are rejected under 35 U.S.C. § 112, second paragraph, as being indefinite for failing to particularly point out and distinctly claim the subject matter which applicant regards as the invention. In particular, Claims 1, 13, and 17 recite the event

Serial Number: 08/550,089                                                    -5-
Art Unit: 2761

manager inferring occurrence of an event based on detecting a change in state characteristic to said event. However, the Specification at page 15 discloses the event manager as recognizing the occurrence of events and then determining the context in which the event occurred.

14.     Dependent Claims 2 - 12, 14 - 16, and 18 - 43 not specifically rejected under 35 U.S.C. § 112 above are rejected herein by virtue of their dependency on rejected independent claims.

### *Claim Rejections - 35 USC § 103*

15.     The following is a quotation of 35 U.S.C. § 103 which forms the basis for all obviousness rejections set forth in this Office action:

> A patent may not be obtained though the invention is not identically disclosed or described as set forth in section 102 of this title, if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains. Patentability shall not be negatived by the manner in which the invention was made.

> Subject matter developed by another person, which qualifies as prior art only under subsection (f) or (g) of section 102 of this title, shall not preclude patentability under this section where the subject matter and the claimed invention were, at the time the invention was made, owned by the same person or subject to an obligation of assignment to the same person.

16.     Claims 1 - 3, 5, 7, 8, 10 - 16, 21 - 35, and 37 - 43 are rejected under 35 USC § 103 as being unpatentable over Tom Negrino, "Sales-Automation Software", Macworld, v 10, n 10, pages 144 - 148, October, 1993 (hereinafter "Negrino").

(A)     As to Claims 1, 13, 21, and 24, Negrino discloses a computer-based sales automation system that is used to facilitate the steps of a sales process. Negrino teaches a

Serial Number: 08/550,089                                                        -6-
Art Unit: 2761

plurality of subsystems, each corresponding to a step in the sales process and each facilitating that respective sales step. Negrino also discloses an automated branching, or event, manager that automatically initiates the next particular step in the automated sales process based on detecting the outcome characteristic of a prior step.

(B)     As to Claim 2, 3, and 23, Negrino discloses that the context in which the current (recognized) task (event) occurs is a function of the occurrence of at least one prior event. Although Negrino does not expressly disclose available information related to a given step, it does disclose the automatic logging of information upon occurrence of events. The Examiner asserts that in order to log such information, the contextual environment of each step must necessarily include the related information which the system subsequently records in a central database. The Examiner further asserts that it would have been obvious to one of ordinary skill in the art to include information with respect to occurrence of a previous step in the automated sales/branching system disclosed by Negrino. One would be motivated to do so in order to have sufficient information with which to verify that the prior step had satisfactorily completed prior to initiating the subsequent step.

(C)     As to Claim 5, Negrino teaches an initial event of spending time with a customer in the form of learning about the prospect's needs and making a sales presentation, with the intent of converting an initial lead into a closed sale. Negrino further discloses a lead management subsystem. Although Negrino does not expressly teach using the lead management subsystem in converting a name to a potential customer, the Examiner asserts that a primary goal of a sales system is to make a sale, which necessarily requires converting initial leads, or prospects, into buying customers.

(D)     As to Claim 7, Negrino discloses a customer retention subsystem that includes post-sale contacts, letters, and meetings with clients for building a relationship

Serial Number: 08/550,089                                          -7-
Art Unit: 2761

with an existing customer for future sales.  The remaining limitations of Claim 7 are
found in Claim 5, and the remainder of this claim is rejected for the same reasons.

     (F)    As to Claim 8, Negrino teaches a self management subsystem of customer
contact management, to-do lists, calendars, and schedulers for assisting the salesperson in
fulfilling his/her sales responsibilities.  The remaining limitations of Claim 8 are found in
Claim 5, and the remainder of this claim is rejected for the same reasons.

     (G)    As to Claim 10, Negrino teaches a sales management subsystem that
includes sales plans that implement enterprise-wide strategies and means for
implementing said plans.  The remaining limitations of Claim 10 are found in Claim 5,
and the remainder of this claim is rejected for the same reasons.

     (H)    The limitations of Claim 11 are found in Claims 6 and 8, and this claim is
rejected for the same reasons.

     (I)    The limitations of Claim 12 are found in Claims 5 and 8, and this claim is
rejected for the same reasons.

     (J)    As to Claim 14, and as discussed above regarding Claims 2 and 3, Negrino
teaches performance of events based on the occurrence of prior events.  Although
Negrino does not expressly disclose determining whether or not such prior events
occurred, the Examiner asserts that such a determination would have been obvious prior
to the initiation of a subsequent, dependent event.  To do otherwise, would render the
sequential dependency of events as disclosed by Negrino meaningless.  Although Negrino
does not disclose determining whether the prior event was part of the context of the first
event, the Examiner asserts that recitation of "first" event is merely selection of one of a
plurality of possible events within the sales process.  The remaining limitations of Claim
14 are found in Claims 2 and 3, and the remainder of this claim is rejected for the same
reasons.

Serial Number: 08/550,089
Art Unit: 2761

-8-

    (K)    The limitations of Claim 15 are found in Claims 1 and 6, and this claim is rejected for the same reasons.

    (L)    The limitations of Claim 16 are found in Claims 1 and 5, and this claim is rejected for the same reasons.

    (M)    As to Claim 22, the Examiner asserts that events occurring within the sales process are well known to be indicative of more that one step of a sales process. For example, a telephone call from a customer may occur in several steps of the sales process. See Negrino at page 1.

    (N)    The limitations of Claims 25 and 33 are found in Claim 1, and these claims are rejected for the same reasons.

    (O)    The limitations of Claims 26, 31, and 34 are found in Claim 23, and these claims are rejected for the same reasons.

    (P)    The limitations of Claims 27, 32, and 35 are found in Claim 24, and these claims are rejected for the same reasons.

    (Q)    The limitations of Claim 28 are found in Claims 21 and 23, and this claim is rejected for the same reasons.

    (R)    The limitations of Claim 29 are found in Claim 21, and this claim is rejected for the same reasons.

    (S)    The limitations of Claim 30 are found in Claim 22, and this claim is rejected for the same reasons.

    (T)    The limitations of Claim 37 are found in Claims 1 and 5, and this claim is rejected for the same reasons.

    (U)    The limitations of Claim 38 are found in Claims 1 and 7, and this claim is rejected for the same reasons.

    (V)    The limitations of Claim 39 are found in Claims 1 and 8, and this claim is rejected for the same reasons.

Serial Number: 08/550,089                                                    -9-
Art Unit: 2761

    (W)    The limitations of Claim 40 are found in Claims 1 and 9, and this claim is rejected for the same reasons.

    (X)    The limitations of Claim 41 are found in Claims 1 and 10, and this claim is rejected for the same reasons.

    (Y)    The limitations of Claim 42 are found in Claims 1 and 11, and this claim is rejected for the same reasons.

    (Z)    The limitations of Claim 43 are found in Claims 1 and 12, and this claim is rejected for the same reasons.

17.    Claims 4, 17 - 20, and 36 are rejected under 35 USC § 103 as being unpatentable over Tom Negrino, "Sales-Automation Software", Macworld, v 10, n 10, pages 144 - 148, October, 1993 (hereinafter "Negrino") in view of Tony Seideman, "Way Cool! (Sales Force Automation)", Sales & Marketing Management, v 146, n 6, pages 10 - 13, June, 1994 (hereinafter "Seideman").

    (A)    As to Claim 4, while Negrino does not teach a rule-based sales automation system, Seideman does disclose an expert sales automation system in which rules direct the next recommended action to be taken, upon occurrence of a given event or step. Although Seideman does not expressly disclose storing a plurality of rules, expert systems are well known to be comprised of a stored knowledge base of rules in conjunction with an inference engine that enables the system to make decisions and direct actions based on contextual knowledge (information) and rules defined by experts in the field. See Computer Dictionary, Microsoft Press, 156, (Second Ed., 1994).

    Although Seideman does not disclose identifying an express rule governing response to an event, the Examiner asserts that expert systems are well known to initiate a subsequent step upon being provided a relevant knowledge base and contextual information regarding the present event. It would have been obvious to one of ordinary skill in the art to modify Negrino with the expert system of Seideman. One would be

Serial Number: 08/550,089                                                    -10-
Art Unit: 2761

motivated to do so in order to incorporate the well-known dynamic learning means of expert systems into the sales automation system of Negrino, and thereby permit Negrino's system to solve problems and initiate events based on the experience and rules of experts with minimal manual intervention.

(B)    As to Claim 17, and as discussed above regarding Claim 1 and 4, Negrino discloses a computer-based sales automation system that is used to facilitate the sales process. Although Negrino does not teach "electronically" facilitating sales events, Negrino does disclose use of computers with which to direct events, and the Examiner asserts that computers are well known to be powered by electricity. While Negrino does not expressly disclose linking to subsequent steps based on prior experience, it does disclose linking to subsequent steps based on the occurrence of prior steps. Also, Seideman teaches incorporating prior sales experience with which to direct the operation of the automated system. It would have been obvious to modify Negrino with the experience means of Seideman. One would be motivated to do so to take advantage of existing practical knowledge within the sales process so as to avoid prior mistakes and to use past successful sequences of events and subsystems with which to close a sale. The remaining limitations of Claim 17 are found in Claims 1 and 4, and the remainder of this claim is rejected for the same reasons.

(C)    As to Claims 18, 19, and 20, although Negrino does not disclose an expert system, Seideman does disclose an expert sales automation system that uses prior sales experience with which to build rules to drive the system. As discussed above regarding Claim 4, expert systems are well known to be comprised of knowledge bases of rules that represents expert experience in the field, and Seideman teaches learning from the sales process so as to implement strategies that will work best and further teaches guiding the system to direct the most efficient courses of action. Although Seideman does not expressly disclose monitoring sales process events, the Examiner asserts that it would

Serial Number: 08/550,089                                                    -11-
Art Unit: 2761

have been obvious, in view of Seideman, for an expert system to monitor those events comprising the system so as to "learn" what works and what leads to undesirable results and incorporate that knowledge in the expert system's well-known knowledge base. It would have been obvious to modify Negrino with the expert system of Seideman for the reasons discussed regarding claim 4.

(D)     The limitations of Claim 36 are found in Claim 4, and this claim is rejected for the same reasons.

18.     Claim 6 is rejected under 35 USC § 103 as being unpatentable over Tom Negrino, "Sales-Automation Software", Macworld, v 10, n 10, pages 144 - 148, October, 1993 (hereinafter "Negrino") in view of John Hiatt, "Empowering the Global Sales Force", International Business, v 7, n 9, pages 16 - 20, September, 1994 (hereinafter "Hiatt").

(A)     As to Claim 6, while Negrino does not teach an order management system for ensuring that the ordered product or service is delivered, Hiatt discloses a sales automation system that provides for automatic entry of orders and subsequent shipment of flawless orders to the customer. It would have been obvious to modify Negrino with the order management subsystem of Hiatt in order to ensure timely and accurate order shipments. One would be motivated to do so in order to deliver that which was promised to the customer and in order to preserve the order. The remaining limitations of Claim 6 are found in Claim 5, and the remainder of this claim is rejected for the same reasons.

19.     Claim 9 is rejected under 35 USC § 103 as being unpatentable over Tom Negrino, "Sales-Automation Software", Macworld, v 10, n 10, pages 144 - 148, October, 1993 (hereinafter "Negrino") in view of Colleen Frye, "Automation Integrating Phases of Sales Cycle", Software Magazine, v 13, n 14, pages 61 - 72, September, 1993 (hereinafter "Frye").

(A)     As to Claim 9, Negrino discloses a computer-based sales automation system that is used to facilitate the sales process, said system being comprised of a plurality of

Serial Number: 08/550,089                                                                -12-
Art Unit: 2761

subsystems, each corresponding to a step in the sales process and each facilitating that respective sales step. Although Negrino does not teach a training subsystem, Frye does disclose a sales force automation system in which the users (salespersons) are trained on the system. Although Frye is not clear whether or not the system actually does the training, the Examiner asserts that, in view of Frye and the well-known benefits that accrue from a well-trained staff, it would have been obvious to one of ordinary skill in the art of sales automation systems to provide for system-directed training of salespersons. One would be motivated to do so in order to take advantage of the automation and the knowledge (rules) built into the system to detect the progress of each individual salesperson and to provide training information relevant to his/her particular experience level and products being sold. One would be further motivated to do so to automatically load updated product information into the databases disclosed by Negrino and Frye to provide the salespersons with up to date information.

### *Conclusion*

20.     Applicants' amendment necessitated new grounds of rejection. Accordingly, **THIS ACTION IS MADE FINAL.** Applicants are reminded of the extension of time policy as set forth in 37 C.F.R. § 1.136(a).

        A SHORTENED STATUTORY PERIOD FOR RESPONSE TO THIS
        FINAL ACTION IS SET TO EXPIRE THREE MONTHS FROM THE DATE OF
        THIS ACTION. IN THE EVENT A FIRST RESPONSE IS FILED WITHIN
        TWO MONTHS OF THE MAILING DATE OF THIS FINAL ACTION AND
        THE ADVISORY ACTION IS NOT MAILED UNTIL AFTER THE END OF
        THE THREE-MONTH SHORTENED STATUTORY PERIOD, THEN THE
        SHORTENED STATUTORY PERIOD WILL EXPIRE ON THE DATE THE
        ADVISORY ACTION IS MAILED, AND ANY EXTENSION FEE PURSUANT
        TO 37 C.F.R. § 1.136(a) WILL BE CALCULATED FROM THE MAILING
        DATE OF THE ADVISORY ACTION. IN NO EVENT WILL THE

Serial Number: 08/550,089                                                                    -13-
Art Unit: 2761

STATUTORY PERIOD FOR RESPONSE EXPIRE LATER THAN SIX
MONTHS FROM THE DATE OF THIS FINAL ACTION.

21.     Any inquiry concerning this communication or earlier communications from the
examiner should be directed to William Hughet, whose telephone number is (703) 305-
9770.  The examiner can be reached on Monday through Friday from 8:00 a.m. to 5:00
p.m.
        If attempts to reach the examiner by telephone are unsuccessful, the examiner's
supervisor, Gail Hayes, can be reached at (703) 305-9711.  The fax phone number for
this Group is (703) 308-5357.
        Any inquiry of a general nature or relating to the status of this application should
be directed to the Group receptionist whose telephone number is (703) 305-3900.

William N. Hughet
March 01, 1998
(08550089.AC2)

GAIL O. HAYES
SUPERVISORY PATENT EXAMINER
GROUP 2700

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

| DOCKET NUMBER | ANTICIPATED CLASSIFICATION OF THIS APPLICATION: | | PRIOR APPLICATION | |
|---|---|---|---|---|
| | CLASS | SUBCLASS | EXAMINER | ART UNIT |
| 7709.72USF1 | | | W. HUGHET | 2761 |

CERTIFICATE UNDER 37 CFR 1.10:
"Express Mail" mailing label number:  EL039320337US
Date of Deposit:  June _3_, 1998

I hereby certify that this paper or fee is being deposited with the U.S. Postal Service "Express Mail Post Office to Addressee" service under 37 CFR 1.10 on the date indicated above and is addressed to Assistant Commissioner for Patents, Washington, D.C. 20231.

By: _____
Name: _Alan G. Gorman_

REQUEST FOR CONTINUED PROSECUTION APPLICATION UNDER 37 C.F.R. § 1.53(d)

Box CPA
Assistant Commissioner for Patents
Washington, DC 20231

Dear Sir:

    This is a request for filing a continued prosecution application under 37 CFR § 1.53(d) of prior pending patent application Serial No. 08/550,089, filed on October 30, 1995 entitled INTEGRATED COMPUTERIZED SALES FORCE AUTOMATION SYSTEM by the following inventor(s):

| Full Name Of Inventor | Family Name JOHNSON | First Given Name JEROME | Second Given Name DALE |
|---|---|---|---|
| Residence & Citizenship | City NORTH MANKATO | State or Foreign Country MINNESOTA | Country of Citizenship USA |
| Post Office Address | Post Office Address 2409 NORTHRIDGE DRIVE | City NORTH MANKATO | State & Zip Code/Country MINNESOTA 56003/USA |
| Full Name Of Inventor | Family Name LUNDBERG | First Given Name DAVID | Second Given Name ROBERT |
| Residence & Citizenship | City MANKATO | State or Foreign Country MINNESOTA | Country of Citizenship USA |
| Post Office Address | Post Office Address ROUTE 1, BOX 272-2A | City MANKATO | State & Zip Code/Country MINNESOTA 56001/USA |
| Full Name Of Inventor | Family Name KREBSBACH | First Given Name MICHAEL | Second Given Name PAUL |
| Residence & Citizenship | City AERDENHOUT | State or Foreign Country THE NETHERLANDS | Country of Citizenship USA |
| Post Office Address | Post Office Address VER.EUROPALAAN 5, 2111 WJ | City AERDENHOUT | State & Zip Code/Country THE NETHERLANDS |

The above-identified prior application in which no payment of the issue fee, abandonment of, or termination of proceedings has occurred, is hereby expressly abandoned as of the filing date of this new application.  Please use all the contents of the prior application file wrapper, including the drawings, as the basic papers for the new application.

1.  ☒     Enter the amendment previously filed on December 10, 1997, but unentered, in the prior application.

2.  ☐     A preliminary amendment is enclosed.

The filing fee is calculated below on the basis of the claims existing in the prior application as amended at 1 and 2 above:

1

CLAIMS AS FILED

| NUMBER FILED | | NUMBER EXTRA | | RATE | FEE |
|---|---|---|---|---|---|
| TOTAL CLAIMS:<br>43 | –20 | 23 | x | $11 | $253.00 |
| INDEPENDENT CLAIMS<br>3 | –3 | 0 | x | $41 | $0.00 |
| | | | | BASIC FILING FEE: | $395.00 |
| | | | | TOTAL FILING FEE: | $648.00 |
| | | | | | |

☒     A Verified Statement that this filing is by a small entity (37 CFR 1.9, 1.27, 1.28) is already filed in the prior application.

☐     A Verified Statement that this filing is by a small entity (37 CFR 1.9, 1.27, 1.28) is attached.

3.   ☒    Payment of fees:
       ☒    Attached is a check in the amount of $ 648.00.
       ☐    Please charge Deposit Account No. 13–2725.

4.   ☒    The Commissioner is hereby authorized to charge any additional fees as set forth in 37 CFR §§ 1.16 to 1.18 which may be required by this paper or credit any overpayment to Account No. 13–2725.

5.   ☐    Priority of application Serial No.   , filed on    in    , is claimed under 35 U.S.C. 119.

6.   ☐    The certified copy has been filed in prior application Serial No.   , filed   .

7.   ☒    The prior application is assigned of record to Clear With Computers located at Mankato, Minnesota.

8.   ☒    The Power of Attorney in the prior application is to:

                         Merchant, Gould, Smith, Edell
                         Welter & Schmidt, P.A.
                         3100 Norwest Center
                         90 South Seventh Street
                         Minneapolis, MN 55402
                         (612/332–5300)

9.   ☐    A petition and fee to extend the term in the prior application until    are enclosed herewith.

10. ☐    The inventor(s) in this application are less than those named in the prior application and it is requested that the following inventors identified above for the prior application be deleted:

11. ☐    Also Enclosed:

12. ☒    Address all future communications to the **Attention of Alan G. Gorman** (may only be completed by attorney or agent of record) at the address below.

2

13.   ☒      A return postcard is enclosed.

Respectfully submitted,
Merchant, Gould, Smith, Edell,
  Welter & Schmidt, P.A.
3100 Norwest Center
90 South Seventh Street
Minneapolis, MN  55402
612/332-5300

Dated: __June 3__ , 1998

Alan G. Gorman
Reg. No.  38,472
AGG:PSTslc

3

FROM MERCHANT&GOULD-MPLS                    (TUE)07. 14' 98 10:01      /NO. 3560721280 P  2

FAX RECEIVED

S/N   08/550,089        JUL 1 4 1998    **OFFICIAL** PATENT

GROUP ~300

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

| | | | |
|---|---|---|---|
| Applicant: | Johnson et al. | Examiner: | W. Hughet |
| Serial No.: | 08/550,089 | Group Art Unit: | 2411 |
| Filed: | October 30, 1995 | Docket No.: | 7709.72US01 |
| Title: | INTEGRATED COMPUTERIZED SALES FORCE AUTOMATION SYSTEM | | |

CERTIFICATE UNDER 37 CFR 1.8:  The undersigned hereby certifies that this correspondence is being deposited with the United States Postal Service, as first class mail, in an envelope addressed to:  Assistant Commissioner for Patents, Washington, D.C. 20231, on _____.

By: _____
Name:

AMENDMENT

Assistant Commissioner for Patents
Washington, D.C.  20231

Sir:

The following remarks are submitted in response to the Office Action dated

March 1, 1998.

REMARKS

Claims 1, 13 and 17 stand rejected under § 112, first paragraph, as not

being written in such full, clear, concise, and exact terms as to enable a person skilled in

the art to which it pertains, or with which it is most nearly connected , to make and use

the same.  Specifically the examiner asserts that page 15 of the specification appears to be

contrary to the system recited in claims 1, 13, and 17.  Applicant respectfully traverses this rejection.

Page 15 of the specification provides that the event manager recognizes events [detects state characteristics] occurring in the system and determines, on the basis of the event and the context in which the event occurs [state characteristics], what if any other actions or operations [inferring occurrence of the event] should be carried out by the system.  Applicant respectfully submits that the specification is consistent with claims 1, 13 and 17.  The "detecting of state characteristics function" in claim 1 is the same as the "recognizes events" function described on page 15 of the specification because actual occurring events are state characteristics for future events.  In the specification at page 62 lines 17 - 24, the connection between state characteristics and events is discussed. Specifically, the event manager data base includes rules and state information that may be used to bind event handlers to the (current) exposed events.  The event handlers dictate further action (events) to be taken by the system.  Accordingly, the rules and state information in the event manager database are utilized in view of current events in order to infer an event as described in claims 1, 13 and 17.  Applicants respectfully submit that the specification is written in such full, clear, concise, and exact terms as to enable a person skilled in the art to which it pertains to make and use the same in accordance with § 112, first paragraph.  In addition, by identifying the section in the specification wherein there is a discussion of state characteristics, and based on the above discussion of claims 1, 13 and 17, applicant respectfully requests that the rejection of claims 1-20 under 35 U.S.C. § 112 second paragraph be with drawn.

2

Claims 1 - 3, 5, 7, 8, 10 -16 and new claims  21 -35 and 37 43 20 stand

rejected under § 103 as being unpatentable over Tom Negrino, "Sales-Automation

Software," *Macworld*, v. 10, n. 10, pp. 144-48, October 1993 (hereinafter "Negrino").

Negrino is an article wherein sales-automation software products are reviewed. The sales-

automation software packages reviewed concern packages that "integrate features from

address book managers, calendar programs and word processors". (See Negrino pge 1.).

Applicant respectfully submits that the sales-automation software packages described in

Negrino involve the contact management side of the sales process.  It is believed that the

Examiner asserts that Negrino describes a plurality of software packages that each

include the subsystems and an event manager that corresponds to the steps in the sales

process that comprise the present invention.  Applicants respectfully disagrees.  Negrino

fails to disclose a sales automation software system having an event manager.

The present invention's event manager, as claimed in claims 1, 13, 21 and

24 coordinates the integration of a plurality of subsystems utilized to manage the entire

sales process, by detecting one or changes in state characteristics, inferring context of an

event and automatically initiating a new action based on that information.  The Examiner

seems to equate the present invention's event manager to automated branching that can

occur in the sales-automation packages discussed in Negrino.  Specifically at page 6 of

the Office action, the Examiner states "Negrino also discloses an automated branching, or

event, manager that automatically initiates the next particular step in the automated sales

process based on detecting the outcome characteristic of a prior step."  Applicant

respectfully disagrees.  Applicant has reviewed Negrino extensively and can find no

3

indication, teaching or suggestion in Negrino that the software packages it is describing

include the processing steps claimed in claims 1, 13, 21 and 24.

Regarding branching, Negrino provides as follows:

> *Control Classic, Contact Ease, and Market Master implement sales plans,*
> *but Control Classic's sales plans miss the boat on automation. For*
> *example, there is no true branching when a task is complete, so when you*
> *make a call, the program doesn't prompt you for the results and then start*
> *you on the next step. It only permits you to wait for a number of days*
> *before going to the next task, which requires manual intervention and*
> *defeats the entire idea of sales automation.*

> *Market Master provides for one plan of unlimited length, and all leads are*
> *assigned to that plan. If you don't want a lead to advance along the*
> *plan, you must assign it to an inactive plan step. You can, however,*
> *branch to any part of your plan from any step (see "Routine Sales").*
> *When it comes to sales plans, Market Master's features are good, but*
> *Contact Ease is more flexible. You can have any number of plans, and*
> *you can even branch between plans (see "Salesperson's In-Box"). (Box*
> *omitted) At each step, Market Master allows only three possible results,*
> *while Contact Ease allows for five and lets you have contacts that are not*
> *on a plan.*

Page 2 Negrino. Emphasis Added.  Applicant respectfully submits that the above

described system is linear in its processing and does not take into consideration the state

characteristics of events.  In fact, Negrino teaches away from taking state characteristics

into consideration by virtue of the requirement of having to assign leads that are not

desired to be advanced as inactive.  Such a requirement suggests that any deviation from

a linear plan of action of taking leads forward through a planned methodology of

processing requires human intervention.  The present invention automatically processes

the state characteristics associated with an event to automatically predict the next action,

be it advance the lead or discontinue it.

4

Applicant acknowledges the above text discussing sales process management software wherein the system (branches) prompts additional tasks based on tasks completed. Applicant believes this to be linear processing within a contact management sales module environment. The event manager of the present invention is gathering information from a number of different modules and directing events in accordance therewith. For example, as disclosed at page 28 lines 15 – 27, with respect to the quote module:

> As with the other modules, the quote module 408 is intelligently integrated to the rest of the system via the event manager 201A. The event manager may recognize that a firm quote has been given to a potential customer using the quote module 408. In an environment where product quantities are limited, the event manager may notify the back office system which in turn may automatically generate an order to increase the inventory on hand. Such an intelligent operation may be further enhanced using knowledge of how many firm quotes result in actual purchases. For example, the system may monitor the quote module 408 and order extra inventory every third quote when experience has indicated that one out of three quotes results in an order.

Applicant respectfully submits that this type of "automatic initiation of operation" in separate and distinct subsystems as claimed in claims 1, 13, 21 and 24 is not disclosed in Negrino. Negrino is limited to automatic initiation of operation within a contact management environment, not across and between individual subsystems as managed by the present invention's event manager. In contrast to the system disclosed in Negrino, the present invention automatically and intelligently manages communication between the following components within the system: lead generation, time with customer, order management, customer retention, self management, training, sales management component, data and communication. The context in which events are occurring are inferred as a result of the event manager understanding events occurring in each of the above modules and

compiling that information into an intelligent inference to be used in automatic initiation of
the next operation. Based on the above comments applicant respectfully requests
reconsideration of the rejection of claims 1 - 3, 5, 7, 8, 10 -16 16 and new claims  21 -35
and 37 43 20 under § 103 as being unpatentable over Negrino.

Claims 4, 17-20 and 36 stand rejected under § 103 as being unpatentable
over Tom Negrino, "Sales-Automation Software," *Macworld*, v. 10, n. 10, pp. 144-48,
October 1993 (hereinafter "Negrino") in view of Tony Seideman, "Way Cool! (Sales
Force Automation)," *Sales & Marketing Management*, v. 146, n. 6, pp. 10-13, June 1994
(hereinafter "Seideman"). As discussed above, Applicants respectfully submit that the
products described in Negrino are primarily directed to contact management, *e.g.*,
management of client histories and scheduling appointments. Negrino fails to teach or
suggest integration of a plurality of subsystems into a single system for facilitating a sales
process.

Moreover, it is respectfully asserted that the claimed invention infers
occurrence of an event and a context in which the event occurred based at least in part on
state changes in the system. It is believed that inferring the context suggests that a given
event can occur in different contexts and that the system has the ability, based on the
particular changes in state detected, to infer the particular context in which the event
occurred. The system can also, based on the inferred context, facilitate an appropriate
action to be performed during the sales process. By facilitating an action based on the
context in which the event occurred, the system improves the efficiency with which a
salesperson completes sales transactions.

Applicants believe that Negrino teaches systems that feature a linear progression from one step in a phase of the sales process to the next step in the phase. Accordingly, Negrino fails to adequately teach or suggest context-sensitive event recognition. While the present invention can handle sales processes characterized by a linear progression from one step to the next, it provides the additional ability to handle non-linear sales processes in which a salesperson might not follow a predetermined sequence of steps. Salespeople can thereby conduct business with enhanced flexibility and versatility. It is respectfully asserted that context recognition, especially in combination with the integration of a plurality of subsystems corresponding to distinct phases of the sales process, significantly and advantageously enhances the usefulness of the claimed invention in facilitating business efforts in various phases of the sales process.

Accordingly, the claimed invention is neither taught nor suggested by, and is patently distinct from, the prior art. Applicants respectfully request removal of the rejection of claim 1 under § 103. Claims 4, 17-20 and 36 depend from claim 1, and 13 and further define particular features of various embodiments of the present invention over the prior art. Further, the combination of Negrino with Seideman, Hiatt, and/or Frye fails to teach or suggest the dependent claim embodiments because Negrino neither teaches nor suggests the claimed features discussed above. Applicants therefore also respectfully request that the rejection of these claims under § 103 be removed. Further, Applicants submit that the above discussion regarding claims 1 and 13 is equally applicable to claims 4, 17-20 and 36 and request removal of the rejection of claims 4, 17-20 and 36 under § 103. Further, Applicants submit that the above discussion regarding

7

claims 1 and 13 is equally applicable to new claims 21-43 and respectfully request that

the  rejection of these claims under § 103 be removed.

   Applicants respectfully submit that the pending claims are in condition for

allowance.  A notice of allowance is respectfully requested.


                          Respectfully submitted,

                          Jerome Johnson et al.

                          By their agents
                          MERCHANT, GOULD, SMITH, EDELL,
                             WELTER & SCHMIDT, P.A.
                          3100 Norwest Center
                          90 South Sevent Street
                          Minneapolis, Minnesota  55402
                          (612) 336-4624

                          By:_____
                             Alan G. Gorman
                             Reg. No. 38,472

'ROM MERCHANT&GOULD-MPLS                (TUE) 07. 14' 98 10:01      /NO. 3560721280 P  1

# MERCHANT & GOULD

3100 Norwest Center
90 South Seventh Street
Minneapolis, MN 55402-4131                    **FAX RECEIVED**

### FAX TRANSMISSION                              'JUL 1 4 1998

                                              GROUP ~°00

Time:
                                    FROM:   Alan G. Gorman
TO:   Assistant Commissioner for
      Patents
      Attn: Examiner Hughet
      Patent Examining Corps
      Facsimile Center                  OUR REF:      7709.72US01
      Washington, D.C.  20231           TELEPHONE:   703-305-9770

Total pages, including cover letter:   9

    **PTO FAX NUMBER** 1-703-308-5357                 **OFFICIAL**

If you do NOT receive all of the pages, please telephone us at 612/371-5219, or fax us at
612/332-9081.

            Title of Document Transmitted:          Amendment
            Applicant:            Johnson et al.
            Serial No.:           08/550,089
            Filed:                October 30, 1995
            Group Art Unit:       2411
            Our Ref. No.:         7709.72-US-01

Please charge any additional fees or credit overpayment to Deposit Account No. 13-2725.

I hereby certify that this paper is being transmitted by facsimile to the U.S. Patent and Trademark
Office on the date shown below.

July 14, 1998

GEN033.DOT



**UNITED STATES DEPARTMENT OF COMMERCE**
**Patent and Trademark Office**
Address:   COMMISSIONER OF PATENTS AND TRADEMARKS
Washington, D.C. 20231

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | | ATTORNEY DOCKET NO. |
|---|---|---|---|---|
| 08/550,089 | 10/30/95 | JOHNSON | J | 7709.72US01 |

LM21/0915

MERCHANT GOULD SMITH EDELL
WELTER & SCHMIDT
3100 NORWEST CENTER
90 SOUTH SEVENTH STREET
MINNEAPOLIS MN 55402-4131

| EXAMINER |
|---|
| HUGHET,W |

| ART UNIT | PAPER NUMBER |
|---|---|
| 2761 | 12 |

DATE MAILED:        09/15/98

**Please find below and/or attached an Office communication concerning this application or proceeding.**

Commissioner of Patents and Trademarks

1- File Copy

| *Office Action Summary* | Application No.<br>08/550,089 | Applicant(s)<br>Jerome D. Johnson, et al. |
|---|---|---|
| | Examiner<br>William N. Hughet | Group Art Unit<br>2761 |

☒ Responsive to communication(s) filed on *CPA filed June 3, 1998; amendment filed July 14, 1998* _____ .

☐ This action is **FINAL**.

☐ Since this application is in condition for allowance except for formal matters, **prosecution as to the merits is closed** in accordance with the practice under *Ex parte Quayle*, 1935 C.D. 11; 453 O.G. 213.

A shortened statutory period for response to this action is set to expire _____ *3* _____ month(s), or thirty days, whichever is longer, from the mailing date of this communication. Failure to respond within the period for response will cause the application to become abandoned. (35 U.S.C. § 133). Extensions of time may be obtained under the provisions of 37 CFR 1.136(a).

**Disposition of Claims**

☒ Claim(s) *1-43* _____ is/are pending in the application.

Of the above, claim(s) _____ is/are withdrawn from consideration.

☐ Claim(s) _____ is/are allowed.

☒ Claim(s) *1-43* _____ is/are rejected.

☐ Claim(s) _____ is/are objected to.

☐ Claims _____ are subject to restriction or election requirement.

**Application Papers**

☐ See the attached Notice of Draftsperson's Patent Drawing Review, PTO-948.

☒ The drawing(s) filed on ___*Oct 30, 1995*___ is/are objected to by the Examiner.

☐ The proposed drawing correction, filed on _____ is ☐approved ☐disapproved.

☐ The specification is objected to by the Examiner.

☐ The oath or declaration is objected to by the Examiner.

**Priority under 35 U.S.C. § 119**

☐ Acknowledgement is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d).

  ☐ All ☐ Some* ☐ None of the CERTIFIED copies of the priority documents have been

    ☐ received.

    ☐ received in Application No. (Series Code/Serial Number) _____ .

    ☐ received in this national stage application from the International Bureau (PCT Rule 17.2(a)).

  *Certified copies not received: _____ .

☐ Acknowledgement is made of a claim for domestic priority under 35 U.S.C. § 119(e).

**Attachment(s)**

☒ Notice of References Cited, PTO-892

☐ Information Disclosure Statement(s), PTO-1449, Paper No(s). _____

☒ Interview Summary, PTO-413

☐ Notice of Draftsperson's Patent Drawing Review, PTO-948

☐ Notice of Informal Patent Application, PTO-152

--- *SEE OFFICE ACTION ON THE FOLLOWING PAGES* ---

J. S. Patent and Trademark Office
PTO-326 (Rev. 9-95)          wNH          **Office Action Summary**          Part of Paper No. 

Serial Number: 08/550,089                                                        -2-
Art Unit: 2761

## Part III  DETAILED ACTION

### *Status of Claims*

1.       At the time of the last Office Action (final action mailed March 3, 1998), Claims 1 - 43 were under prosecution in this application. The application is currently under a Continued Prosecution Application filed June 3, 1998. Applicants further filed a preliminary amendment herein on July 14, 1998, traversing the prior office action and amending no claims. Therefore, Claims 1 - 43 remain under prosecution in this Application.

2.       The Examiner notes that Applicants have requested, with their Continued Prosecution Application filing, entry of an amendment filed December 10, 1997, but allegedly unentered. The Examiner respectfully notes that Applicants' December 10, 1997 amendment was entered upon receipt and that said amendment was the basis of the final Office Action mailed herein on March 3, 1998.

### *Summary of this Office Action*

3.       Applicants' arguments filed July 14, 1998 have been fully considered, are discussed in the next section below or within the following rejection under 35 U.S.C. § 103, and except as where expressly noted, are not deemed to be persuasive. Therefore, Claims 1 - 43 are rejected under 35 U.S.C. § 103 as unpatentable over the art cited below; and Applicants' request for allowance is respectfully denied.

### *Response to Applicants' Amendment*

4.       The Examiner recognizes that Applicants can be their own lexicographers and accepts their explanation regarding "state characteristic of an event". The corresponding objection to the Specification and rejection under 35 U.S.C. § 112 is therefore withdrawn.

5.       To the extent that an "event manager" is recited in the claims as detecting a change and therefore the occurrence of an event and subsequently initiating a following operation

Serial Number: 08/550,089                                                                                    -3-
Art Unit: 2761

in the sales process, Negrino1 discloses such a function at page 1, lines 38 - 44.

Negrino2 also teaches this feature at page 1, lines 28 - 30 and 39 - 40. (For a citation to

Negrino1 and Negrino2, please refer to the rejection under 35 U.S.C.§ 103 below.)

6.        As regards Negrino being a linear system, the Examiner asserts that Negrino

discloses a non-linear, automated branching system and for support therefore cites to

Negrino1 at page 1, lines 42 - 44 and page 2, line 48 - page 3, line 3, where the disclosed

sales automation system dynamically branches to a subsequent step based on the detected

outcome of a previous event. The system can automatically advise the salesperson the

next step to take, based on the occurrence of prior events (Negrino 2 at page 1, lines 28 -

30).

7.        As regards Negrino's method of deactivating a lead, since no such feature is

claimed herein, how Negrino fulfills such a function is irrelevant.

8.        As regards Negrino differing from the automatic prediction feature of Applicants'

invention as traversed on page 4 of their July 14, 1998 response, the Examiner

respectfully asserts that no such prediction feature is recited; and, therefore, such a

difference, if it does indeed exist, is irrelevant.

9.        As regards the Negrino being limited to sales contact management, the Examiner

asserts that Negrino teaches in the art of sales automation software in which "every step

of the sales process" is under control of the system and expressly discloses capturing

initial sales leads, making sales presentations, scheduling meetings with customers,

submitting and refining bids, closing a sale, and following up for future sales. See

Negrino1 at page 1, line 20 - page 3, line 5; Negrino2 at page 1, lines 20 - 41.

Furthermore, the claims recited herein do not exclude sales contact management from

from the recited event management. See Claims 1 and 13; Specification at page 7, line 15

- page 8, line 11; page 15, lines 8 - 29).

Serial Number: 08/550,089                                                                -4-
Art Unit: 2761

10.     Applicants' remaining traversals are discussed under the 35 U.S.C. § 103 rejection
below.


## Drawings

11.     This application has been filed with informal drawings which are acceptable for
examination purposes only.  Formal drawings will be required when the application is
allowed.

12.     The drawings are objected to because of irregularities as noted on PTO 948,
enclosed.  Appropriate correction is required.


## Specification

13.     The application is objected to as not being in compliance with 37 C.F.R. § 1.77 regarding
the required elements of the application.  In particular, this application is lacking a section
entitled, "Cross-References to Related Applications" which should reference copending
application Nos. 08/798,850, filed February 12, 1997, and 08/879,070 filed June 19, 1997.


## Claim Rejections - 35 USC § 103

14.     The following is a quotation of 35 U.S.C. § 103 which forms the basis for all
obviousness rejections set forth in this Office action:

> A patent may not be obtained though the invention is not identically disclosed or
> described as set forth in section 102 of this title, if the differences between the
> subject matter sought to be patented and the prior art are such that the subject
> matter as a whole would have been obvious at the time the invention was made to
> a person having ordinary skill in the art to which said subject matter pertains.
> Patentability shall not be negatived by the manner in which the invention was
> made.

> Subject matter developed by another person, which qualifies as prior art only
> under subsection (f) or (g) of section 102 of this title, shall not preclude

Serial Number: 08/550,089
Art Unit: 2761

-5-

patentability under this section where the subject matter and the claimed invention were, at the time the invention was made, owned by the same person or subject to an obligation of assignment to the same person.

15.     Claims 1 - 3, 5, 7, 8, 10 - 16, 21 - 35, and 37 - 43 are rejected under 35 USC § 103 as being unpatentable over Tom Negrino, "Sales-Automation Software", Macworld, v 10, n 10, pages 144 - 148, October, 1993 (hereinafter "Negrino1") and Tom Negrino, "Market Master Manager 3.5", Macworld, v 10, n 10, page 57, October, 1993 (hereinafter "Negrino2"). The Examiner will refer to Negrino1 and Negrino2 collectively as "Negrino". The Examiner asserts that it would have been obvious to the person of ordinary skill in the art of sales force automation systems to treat these two articles collectively. One would be motivated to do so because they deal with the same subject matter (sales automation software), were published in the same issue of a magazine, and were authored by the same person.

(A)     As to Claims 1, 13, 21, and 24, Negrino discloses a computer-based sales automation system that is used to facilitate the steps of a sales process (Negrino1 at page 1, lines 25 - 44; Negrino2 at page 1, lines 20 - 32). Negrino teaches a plurality of subsystems, each corresponding to a step in the sales process and each facilitating that respective sales step (Id.). Negrino also discloses an automated branching, or event, manager that automatically initiates the next particular step in the automated sales process based on detecting the outcome characteristics of a prior step (Negrino1 at page 1, lines 42 - 44; page 2, lines 9 - 13; page 2, line 48 - page 3, line 3; Negrino2 at page 1, lines 28 - 30 and 39 - 40).

(B)     As to Claim 2, 3, and 23, Negrino discloses that the system directs the initiation of a subsequent step within a phase of the sales process based on the context in which a previous event may have occurred (Negrino1 at page 1, lines 37 - 44; Negrino2 at page 1, lines 28 - 30). Although Negrino does not expressly disclose available

Serial Number: 08/550,089
Art Unit: 2761

-6-

information related to a given step, it does disclose the automatic logging of information upon occurrence of events (Negrino1 at page 2, lines 9 - 13). The Examiner asserts that in order to log such information, the contextual environment of each step must necessarily include the related information which the system subsequently records in a central database. The Examiner further asserts that it would have been obvious to one of ordinary skill in the art to include information with respect to occurrence of a previous step in the automated sales/branching system disclosed by Negrino. One would be motivated to do so in order to have sufficient information with which to verify that the prior step had satisfactorily completed prior to initiating the subsequent step.

(C)    As to Claim 5, Negrino teaches an initial event of spending time with a customer in the form of learning about the prospect's needs and making a sales presentation, with the intent of converting an initial lead into a closed sale (Negrino1 at page 1, lines 25 - 28). Negrino further discloses a lead management subsystem (Negrino1 at page 1, lines 25 - 26; page 5, lines 19 - 21 and 44 - 46). Although Negrino does not expressly teach using the lead management subsystem in converting a name to a potential customer, the Examiner asserts that a primary goal of a sales system is to make a sale, which necessarily requires converting initial leads, or prospects, into buying customers.

(D)    As to Claim 7, Negrino discloses a customer retention subsystem that includes post-sale contacts, letters, and meetings with clients for building a relationship with an existing customer for future sales (Negrino1 at page 1, lines 28 - 29; page 2, lines 9 - 13; page 3, lines 9 - 12). The remaining limitations of Claim 7 are found in Claim 5, and the remainder of this claim is rejected for the same reasons.

(F)    As to Claim 8, Negrino teaches a self management subsystem of customer contact management, to-do lists, calendars, and schedulers for assisting the salesperson in fulfilling his/her sales responsibilities (Negrino1 at page 2, lines 27 - 34). The remaining

Serial Number: 08/550,089                                                           -7-
Art Unit: 2761

limitations of Claim 8 are found in Claim 5, and the remainder of this claim is rejected for the same reasons.

(G)    As to Claim 10, Negrino teaches a sales management subsystem that includes sales plans that implement enterprise-wide strategies and means for implementing said plans (Negrino1 at page 1, lines 38 - 44).  The remaining limitations of Claim 10 are found in Claim 5, and the remainder of this claim is rejected for the same reasons.

(H)    The limitations of Claim 11 are found in Claims 6 and 8, and this claim is rejected for the same reasons.

(I)    The limitations of Claim 12 are found in Claims 5 and 8, and this claim is rejected for the same reasons.

(J)    As to Claim 14, and as discussed above regarding Claims 1 - 3, Negrino teaches performance of events based on the occurrence of prior events.  Although Negrino does not expressly disclose determining whether or not a particular prior event occurred, the Examiner asserts that such a determination would have been obvious prior to the initiation of a subsequent, dependent event in a sequence of events.  To do otherwise, would render the sequential dependency of events as disclosed by Negrino meaningless (see Negrino1 at page 1, lines 42 - 44).  The remaining limitations of Claim 14 are found in Claims 2 and 3, and the remainder of this claim is rejected for the same reasons.

(K)    The limitations of Claim 15 are found in Claims 1 and 6, and this claim is rejected for the same reasons.

(L)    The limitations of Claim 16 are found in Claims 1 and 5, and this claim is rejected for the same reasons.

(M)    As to Claim 22, the Examiner asserts that events occurring within the sales process are well known to be indicative of more that one step of a sales process.  For

Serial Number: 08/550,089                                                    -8-
Art Unit: 2761

example, a telephone call from a customer may occur in several steps of the sales process.
See Negrino1 at page 1, lines 29 - 35.

    (N)    The limitations of Claims 25 and 33 are found in Claim 1, and these claims
are rejected for the same reasons.

    (O)    The limitations of Claims 26, 31, and 34 are found in Claim 23, and these
claims are rejected for the same reasons.

    (P)    The limitations of Claims 27, 32, and 35 are found in Claim 24, and these
claims are rejected for the same reasons.

    (Q)    The limitations of Claim 28 are found in Claims 21 and 23, and this claim
is rejected for the same reasons.

    (R)    The limitations of Claim 29 are found in Claim 21, and this claim is
rejected for the same reasons.

    (S)    The limitations of Claim 30 are found in Claim 22, and this claim is
rejected for the same reasons.

    (T)    The limitations of Claim 37 are found in Claims 1 and 5, and this claim is
rejected for the same reasons.

    (U)    The limitations of Claim 38 are found in Claims 1 and 7, and this claim is
rejected for the same reasons.

    (V)    The limitations of Claim 39 are found in Claims 1 and 8, and this claim is
rejected for the same reasons.

    (W)    The limitations of Claim 40 are found in Claims 1 and 9, and this claim is
rejected for the same reasons.

    (X)    The limitations of Claim 41 are found in Claims 1 and 10, and this claim is
rejected for the same reasons.

    (Y)    The limitations of Claim 42 are found in Claims 1 and 11, and this claim is
rejected for the same reasons.

Serial Number: 08/550,089                                                    -9-
Art Unit: 2761

(Z)     The limitations of Claim 43 are found in Claims 1 and 12, and this claim is
rejected for the same reasons.

16.     Claims 4, 17 - 20, and 36 are rejected under 35 USC § 103 as being unpatentable
over Negrino1 and Negrino2 as applied to Claims 1 and 13 above, and further in view of
Tony Seideman, "Way Cool! (Sales Force Automation)", Sales & Marketing
Management, v 146, n 6, pages 10 - 13, June, 1994 (hereinafter "Seideman").

(A)     As to Claim 4, while Negrino does not teach a rule-based sales automation
system, Seideman does disclose an expert sales automation system in which rules direct
the next recommended action to be taken, upon occurrence of a given event or step
(Seideman at page 1, lines 37 - 45).  A decision subsystem directs the salesperson to the
next proper step based on the context in which the prior steps occurred (page 4, lines 34 -
40).  Although Seideman does not expressly disclose storing a plurality of rules, expert
systems are well known to be comprised of a stored knowledge base of rules in
conjunction with an inference engine that enables the system to make decisions and direct
actions based on contextual knowledge (information) and rules defined by experts in the
field.  See Seideman at page 4, lines 39 - 43; Computer Dictionary, Microsoft Press, 156,
(Second Ed., 1994).

Although Seideman does not disclose identifying an express rule governing
response to an event, the Examiner asserts that expert systems are well known to initiate a
subsequent step upon being provided a relevant knowledge base and contextual
information regarding the present event.  It would have been obvious to one of ordinary
skill in the art to modify Negrino with the expert system of Seideman.  One would be
motivated to do so in order to incorporate the well-known dynamic learning means of
expert systems into the sales automation system of Negrino, and thereby permit Negrino's
system to solve problems and initiate events based on the experience and rules of experts
with minimal manual intervention.

Serial Number: 08/550,089                                                     -10-
Art Unit: 2761

(B)     As to Claim 17, and as discussed above regarding Claim 1 and 4, Negrino
discloses a computer-based sales automation system that is used to facilitate the sales
process. Although Negrino does not teach "electronically" facilitating sales events,
Negrino does disclose use of computers with which to direct events, and the Examiner
asserts that computers are well known to be powered by electricity. While Negrino does
not expressly disclose linking to subsequent steps based on prior experience, it does
disclose linking to subsequent steps based on the occurrence of prior steps. Also,
Seideman teaches incorporating prior sales experience with which to direct the operation
of the automated system (Seideman at page 4, lines 39 - 43). It would have been obvious
to modify Negrino with the experience means of Seideman. One would be motivated to
do so to take advantage of existing practical knowledge within the sales process so as to
avoid prior mistakes and to use past successful sequences of events and subsystems with
which to close a sale (see Seideman at page 4, lines 41 - 43). The remaining limitations
of Claim 17 are found in Claims 1 and 4, and the remainder of this claim is rejected for
the same reasons.

(C)     As to Claims 18,19, and 20, although Negrino does not disclose an expert
system, Seideman does disclose an expert sales automation system that uses prior sales
experience with which to build rules to drive the system. As discussed above regarding
Claim 4, expert systems are well known to be comprised of knowledge bases of rules that
represents expert experience in the field, and Seideman teaches learning from the sales
process so as to implement strategies that will work best and further teaches guiding the
system to direct the most efficient courses of action (Seideman at page 4, lines 39 - 43).
Although Seideman does not expressly disclose monitoring sales process events, the
Examiner asserts that it would have been obvious, in view of Seideman, for an expert
system to monitor those events comprising the system so as to "learn" what works and
what leads to undesirable results and incorporate that knowledge in the expert system's

well-known knowledge base.  It would have been obvious to modify Negrino with the expert system of Seideman for the reasons discussed regarding claim 4.

     (D)   The limitations of Claim 36 are found in Claim 4, and this claim is rejected for the same reasons.

17.    Claim 6 is rejected under 35 USC § 103 as being unpatentable over Negrino1 and Negrino2 as applied to Claim 1 above, and further in view of John Hiatt, "Empowering the Global Sales Force", International Business, v 7, n 9, pages 16 - 20, September, 1994 (hereinafter "Hiatt").

     (A)   As to Claim 6, while Negrino does not teach an order management system for ensuring that the ordered product or service is delivered, Hiatt discloses a sales automation system that provides for automatic entry of orders and subsequent shipment of flawless orders to the customer.  It would have been obvious to modify Negrino with the order management subsystem of Hiatt in order to ensure timely and accurate order shipments.  One would be motivated to do so in order to deliver that which was promised to the customer and in order to preserve the order.  The remaining limitations of Claim 6 are found in Claim 5, and the remainder of this claim is rejected for the same reasons.

18.    Claim 9 is rejected under 35 USC § 103 as being unpatentable over Negrino1 and Negrino2 as applied to Claim 1 above, and further in view of Colleen Frye, "Automation Integrating Phases of Sales Cycle", Software Magazine, v 13, n 14, pages 61 - 72, September, 1993 (hereinafter "Frye").

     (A)   As to Claim 9, Negrino discloses a computer-based sales automation system that is used to facilitate the sales process, said system being comprised of a plurality of subsystems, each corresponding to a step in the sales process and each facilitating that respective sales step.  Although Negrino does not teach a training subsystem, Frye does disclose a sales force automation system in which the users (salespersons) are trained on the system.  Although Frye is not clear whether or not the system actually does the

Serial Number: 08/550,089                                                                    -12-
Art Unit: 2761

training, the Examiner asserts that, in view of Frye and the well-known benefits that
accrue from a well-trained staff, it would have been obvious to one of ordinary skill in the
art of sales automation systems to provide for system-directed training of salespersons.
One would be motivated to do so in order to take advantage of the automation and the
knowledge (rules) built into the system to detect the progress of each individual
salesperson and to provide training information relevant to his/her particular experience
level and products being sold. One would be further motivated to do so to automatically
load updated product information into the databases disclosed by Negrino and Frye to
provide the salespersons with up to date information.

### Conclusion

19.     Any inquiry concerning this communication or earlier communications from the
examiner should be directed to William Hughet, whose telephone number is (703) 305-
9770. The examiner can be reached on Monday through Friday from 8:00 a.m. to 5:00
p.m.

       If attempts to reach the examiner by telephone are unsuccessful, the examiner's
supervisor, Todd Voeltz, can be reached at (703) 305-9714. The fax phone number for
this Group is (703) 308-5357.

       Any inquiry of a general nature or relating to the status of this application should
be directed to the Group receptionist whose telephone number is (703) 305-3900.

William N. Hughet
September 9, 1998
(08550089 AC3)        WNH

STEPHEN R. TKACS
PRIMARY EXAMINER

| ***Interview Summary*** | Application No.<br>**08/550,089** | Applicant(s)<br>**Jerome D. Johnson, et al.** |
|---|---|---|
| | Examiner<br>**William N. Hughet** | Group Art Unit<br>**2761** |

All participants (applicant, applicant's representative, PTO personnel):

(1) *William Hughet* _____   (3) _____

(2) *Alan G. Gorman* _____   (4) _____

Date of Interview _____ *Jun 15, 1998* _____

Type:  ☒ Telephonic   ☐ Personal (copy is given to   ☐ applicant   ☐ applicant's representative).

Exhibit shown or demonstration conducted:   ☐ Yes   ☒ No.  If yes, brief description: _____

_____

Agreement   ☐ was reached.   ☒ was not reached.

Claim(s) discussed: _____

Identification of prior art discussed:
*Article by Tom Negrino.* _____

Description of the general nature of what was agreed to if an agreement was reached, or any other comments:
*Telephone interview at request of Mr. Gorman, who noted that Negrino reference is not the single, integrated system claimed.  The Examiner cited to In re Kaufman for the proposition that a combination of known steps is not inventive unless the results are unexpected.  The Examiner reminded Mr. Gorman that the case is under at CPA, for which the Examiner has two months from receipt with which to reply (no preliminary amendment was filed with the June 3, 1998 CPA filing).  Mr. Gorman indicated that he will try to fax an amendment within a week.*

_____
_____
_____

(A fuller description, if necessary, and a copy of the amendments, if available, which the examiner agreed would render the claims allowable must be attached.  Also, where no copy of the amendments which would render the claims allowable is available, a summary thereof must be attached.)

1. ☒   It is not necessary for applicant to provide a separate record of the substance of the interview.

Unless the paragraph above has been checked to indicate to the contrary, A FORMAL WRITTEN RESPONSE TO THE LAST OFFICE ACTION IS NOT WAIVED AND MUST INCLUDE THE SUBSTANCE OF THE INTERVIEW.  (See MPEP Section 713.04).  If a response to the last Office action has already been filed, APPLICANT IS GIVEN ONE MONTH FROM THIS INTERVIEW DATE TO FILE A STATEMENT OF THE SUBSTANCE OF THE INTERVIEW.

2. ☐   Since the Examiner's interview summary above (including any attachments) reflects a complete response to each of the objections, rejections and requirements that may be present in the last Office action, and since the claims are now allowable, this completed form is considered to fulfill the response requirements of the last Office action.  Applicant is not relieved from providing a separate record of the interview unless box 1 above is also checked.

*William Hughet*  9/9/98

Examiner Note:  You must sign and stamp this form unless it is an attachment to a signed Office action.

## *Notice of References Cited*

| Application No.<br>08/550,089 | Applicant(s)<br>Jerome D. Johnson, et al. | | |
|---|---|---|---|
| Examiner<br>William N. Hughet | Group Art Unit<br>2761 | | Page 1 of 2 |

### U.S. PATENT DOCUMENTS

| * | | DOCUMENT NO. | DATE | NAME | CLASS | SUBCLASS |
|---|---|---|---|---|---|---|
| | A | | | | | |
| | B | | | | | |
| | C | | | | | |
| | D | | | | | |
| | E | | | | | |
| | F | | | | | |
| | G | | | | | |
| | H | | | | | |
| | I | | | | | |
| | J | | | | | |
| | K | | | | | |
| | L | | | | | |
| | M | | | | | |

### FOREIGN PATENT DOCUMENTS

| * | | DOCUMENT NO. | DATE | COUNTRY | NAME | CLASS | SUBCLASS |
|---|---|---|---|---|---|---|---|
| | N | | | | | | |
| | O | | | | | | |
| | P | | | | | | |
| | Q | | | | | | |
| | R | | | | | | |
| | S | | | | | | |
| | T | | | | | | |

### NON-PATENT DOCUMENTS

| * | | DOCUMENT (Including Author, Title, Source, and Pertinent Pages) | DATE |
|---|---|---|---|
| x | U | John Hiatt, "Empowering the Global Sales Force," International Business, v 7, n 9, pages 18 - 20. | 09/94 |
| | V | Tony Seideman, "Way Cool! (Sales Force Automation)", Sales & Marketing Management, v 146, n 6, pages 10 - 13. | 06/94 |
| | W | Tom Negrino, "Sales-Automation Software", Macworld, v 10, n 10, pages 144 - 148. | 10/93 |
| | X | Tom Negrino, "Market Master Manager 3.5", Macworld, v 10, n 10, page 57. | 10/93 |

\* A copy of this reference is not being furnished with this Office action.
(See Manual of Patent Examining Procedure, Section 707.05(a).)

PATENT

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

| | | | |
|---|---|---|---|
| Applicant: | JOHNSON ET AL. | Examiner: | W. HUGHET |
| Serial No.: | 08/550,089 | Group Art Unit: | 2761 |
| Filed: | OCTOBER 30, 1995 | Docket No.: | 7709.72USF1 |
| Title: | INTEGRATED COMPUTERIZED SALES FORCE AUTOMATION SYSTEM | | |

CERTIFICATE UNDER 37 CFR 1.10:
"Express Mail" mailing label number: EL301827374US
Date of Deposit: March 15, 1999

I hereby certify that this paper or fee is being deposited with the U.S. Postal Service "Express Mail Post Office to Addressee" service under 37 CFR 1.10 on the date indicated above and is addressed to Assistant Commissioner for Patents, Washington, D.C. 20231.

By: _____
Name: _____

PETITION FOR EXTENSION OF TIME

RECEIVED
MAR 1 8 1999
Group 2700

Assistant Commissioner for Patents
Washington, D.C. 20231

Dear Sir:

In accordance with the provisions of 37 C.F.R. §1.136(a), it is respectfully requested that a three–month extension of time be granted in which to respond to the outstanding Office Action mailed September 15, 1998, said period of response being extended from December 15, 1998 to March 15, 1999.

Our check in the amount of $435.00 is enclosed to cover the required extension fee for a small entity.

Respectfully submitted,

03/17/1999 CHOANG   00000032 08550089
01 FC:217                435.00 OP

MERCHANT, GOULD, SMITH, EDELL,
   WELTER & SCHMIDT, P.A.
3100 Norwest Center
90 South Seventh Street
Minneapolis, MN 55402
612/332–5300

Date: March 15, 1999

Alan G. Gorman
Reg. No. 38,472
AGG:PSTkls

## *Notice of References Cited*

| Application No.<br>08/550,089 | Applicant(s)<br>Jerome D. Johnson, et al. | | |
|---|---|---|---|
| Examiner<br>William N. Hughet | Group Art Unit<br>2761 | Page 2 of 2 | |

### U.S. PATENT DOCUMENTS

| * | | DOCUMENT NO. | DATE | NAME | CLASS | SUBCLASS |
|---|---|---|---|---|---|---|
| | A | | | | | |
| | B | | | | | |
| | C | | | | | |
| | D | | | | | |
| | E | | | | | |
| | F | | | | | |
| | G | | | | | |
| | H | | | | | |
| | I | | | | | |
| | J | | | | | |
| | K | | | | | |
| | L | | | | | |
| | M | | | | | |

### FOREIGN PATENT DOCUMENTS

| * | | DOCUMENT NO. | DATE | COUNTRY | NAME | CLASS | SUBCLASS |
|---|---|---|---|---|---|---|---|
| | N | | | | | | |
| | O | | | | | | |
| | P | | | | | | |
| | Q | | | | | | |
| | R | | | | | | |
| | S | | | | | | |
| | T | | | | | | |

### NON-PATENT DOCUMENTS

| * | | DOCUMENT (Including Author, Title, Source, and Pertinent Pages) | DATE |
|---|---|---|---|
| X | U | Colleen Frye, "Automation Integrating Phases of Sales Cycle", Software Magazine, v 13, n 14, pages 61 - 72. | 09/93 |
| | V | | |
| | W | | |
| | X | | |

\* A copy of this reference is not being furnished with this Office action.
(See Manual of Patent Examining Procedure, Section 707.05(a).)

Date Mailed: February 6, 1996

| FORM 1449* | | Docket Number | Application Number |
|---|---|---|---|
| | | 7709.72US01 | 08/550,089 |
| **INFORMATION DISCLOSURE STATEMENT** | | Applicant | |
| **IN AN APPLICATION** | | Jerome D. Johnson et al. | |
| | | Filing Date | Group Art Unit |
| (Use several sheets if necessary) | | October 30, 1995 | N/A |

| U.S. PATENT DOCUMENTS | | | | | | |
|---|---|---|---|---|---|---|
| EXAMINER INITIAL | DOCUMENT NO. | DATE | NAME | CLASS | SUBCLASS | FILING DATE IF APPROPRIATE |
| WNH | 5,056,029 | 10/08/91 | Cannon | | | |
| " | 4,359,631 | 11/16/82 | Lockwood, et al. | | | |
| " | 4,553,206 | 11/12/85 | Smutek, et al. | 364 | 253 | |
| " | 4,706,212 | 11/10/87 | Toma | 364 | 419 | |
| " | 4,899,292 | 02/06/90 | Montagna, et al. | 364 | 521 | |
| " | 4,899,299 | 02/06/90 | MacPhail | 364 | 570 | |
| " | 4,905,094 | 02/27/90 | Pocock, et al. | 358 | 342 | |
| " | 4,992,940 | 02/12/91 | Dworkin | 364 | 401 | |
| " | 4,992,939 | 02/12/91 | Tyler | 364 | 401 | |
| " | 5,212,634 | 05/18/93 | Washizaki, et al. | 364 | 400 | 03/07/90 |
| " | 5,241,464 | 08/31/93 | Greulich, et al. | 364 | 401 | 08/17/90 |

| FOREIGN PATENT DOCUMENTS | | | | | | TRANSLATION | |
|---|---|---|---|---|---|---|---|
| | DOCUMENT NO. | DATE | COUNTRY | CLASS | SUBCLASS | YES | NO |
| WNH | 8 503 152 | 07/18/85 | PCT | | | | |
| " | 0 344 976 | 12/06/89 | Europe | | | | |
| " | 2 105 075 | 04/28/82 | Great Britain | | | | |
| " | 2 177 245A | 01/14/87 | Great Britain | | | | |

| OTHER DOCUMENTS (Including Author, Title, Date, Pertinent Pages, Etc.) | | |
|---|---|---|
| WNH | | Truck Force Tools Sales and Training System Operator's Manual, Ford Trucks, Clear With Computers, 1992. |
| " | | ISIS Isuzu Sales Information System, Australia, ISIS Operator's Manual, Clear With Computers, 1992. |
| " | | Detroit Diesel Corporation, Bus Upgrade System Operator's Manual, Clear With Computers, 1990. |

| EXAMINER | | DATE CONSIDERED   6/3/97 |
|---|---|---|

EXAMINER: Initial if reference considered, whether or not citation is in conformance with MPEP 609; draw line through citation if not in conformance and not considered. Include copy of this form for next communication to the Applicant.

*Substitute Disclosure Statement Form (PTO-1449)          Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE

Date Mailed: February 6, 1996

| FORM 1449* | | Docket Number | Application Number |
|---|---|---|---|
| | | 7709.72US01 | 08/550,089 |
| **INFORMATION DISCLOSURE STATEMENT** | | Applicant | |
| **IN AN APPLICATION** | | Jerome D. Johnson et al. | |
| | | Filing Date | Group Art Unit |
| **(Use several sheets if necessary)** | | October 30, 1995 | N/A |

| U.S. PATENT DOCUMENTS | | | | | | |
|---|---|---|---|---|---|---|
| EXAMINER INITIAL | DOCUMENT NO. | DATE | NAME | CLASS | SUBCLASS | FILING DATE IF APPROPRIATE |
| WNH | 4,670,798 | 06/02/87 | Campbell, et al. | 360 | 12 | |
| " | 4,775,935 | 10/04/88 | Yourick | 364 | 401 | |
| " | 5,072,536 | 12/17/91 | Matthews, et al. | 40 | 587 | |
| " | 5,117,354 | 04/26/92 | Long, et al. | 364 | 401 | |
| " | 4,863,384 | 09/05/89 | Slade | 434 | 107 | |
| " | 5,053,956 | 10/01/91 | Donald, et al. | 364 | 401 | |
| " | 5,099,422 | 03/24/92 | Foresman, et al. | 364 | 401 | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |

| FOREIGN PATENT DOCUMENTS | | | | | | | |
|---|---|---|---|---|---|---|---|
| | DOCUMENT NO. | DATE | COUNTRY | CLASS | SUBCLASS | TRANSLATION | |
| | | | | | | YES | NO |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |

| OTHER DOCUMENTS (Including Author, Title, Date, Pertinent Pages, Etc.) | | |
|---|---|---|
| WNH | | WhiteGMC Volvo, TruckMatch Read Me First, TruckMatch, Clear With Computers, 1990. |
| " | | GM Truck Compass, Read Me First, Operator's Manual, Clear With Computers, 1991. |
| " | | Bob Gatty - "Setting Up Shop On Computer Screens", Nation's Business, March 1984, pp. 57-58. |

| EXAMINER | | DATE CONSIDERED 6/3/97 |
|---|---|---|

EXAMINER:  Initial if reference considered, whether or not citation is in conformance with MPEP 609; draw line through citation if not in conformance and not considered.  Include copy of this form for next communication to the Applicant.

*Substitute Disclosure Statement Form (PTO-1449)       Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE

Date Mailed: February 6, 1996                                                    Sheet 3 of 8

| FORM 1449* | Docket Number | Application Number |
|---|---|---|
| | 7709.72US01 | 08/550,089 |
| **INFORMATION DISCLOSURE STATEMENT** | Applicant | |
| **IN AN APPLICATION** | Jerome D. Johnson et al. | |
| | Filing Date | Group Art Unit |
| (Use several sheets if necessary) | October 30, 1995 | N/A |

| U.S. PATENT DOCUMENTS | | | | | | |
|---|---|---|---|---|---|---|
| EXAMINER INITIAL | DOCUMENT NO. | DATE | NAME | CLASS | SUBCLASS | FILING DATE IF APPROPRIATE |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |

| FOREIGN PATENT DOCUMENTS | | | | | | | |
|---|---|---|---|---|---|---|---|
| | DOCUMENT NO. | DATE | COUNTRY | CLASS | SUBCLASS | TRANSLATION | |
| | | | | | | YES | NO |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |

| OTHER DOCUMENTS (Including Author, Title, Date, Pertinent Pages, Etc.) | |
|---|---|
| ⲱNH | Lois Schneider - "On Your Screen!", EPB, Vol. 2, No. 5, September 1984, pp. 14-16. |
| " | Larry Riggs - "Direct Marketing Goes Electronic", S&MM, January 14, 1985, pp. 59-60. |
| " | Emily Leinfuss - " 'Infowindow Display' Shown by IBM at NCC", Management Info. Sys. Week, June 23, 1986, page 25. |

| EXAMINER | *[signature]* | DATE CONSIDERED | 6/3/97 |
|---|---|---|---|

EXAMINER:  Initial if reference considered, whether or not citation is in conformance with MPEP 609; draw line through citation if not in conformance and not considered.  Include copy of this form for next communication to the Applicant.

*Substitute Disclosure Statement Form (PTO-1449)          Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE

Date Mailed:  February 6, 1996                                                    Sheet 4 of 8

| FORM 1449* | | Docket Number | Application Number |
|---|---|---|---|
| **INFORMATION DISCLOSURE STATEMENT** **IN AN APPLICATION** (Use several sheets if necessary) | | 7709.72US01 | 08/550,089 |
| | | Applicant Jerome D. Johnson et al. | |
| | | Filing Date October 30, 1995 | Group Art Unit N/A |

| U.S. PATENT DOCUMENTS | | | | | | |
|---|---|---|---|---|---|---|
| EXAMINER INITIAL | DOCUMENT NO. | DATE | NAME | CLASS | SUBCLASS | FILING DATE IF APPROPRIATE |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |

| FOREIGN PATENT DOCUMENTS | | | | | | | |
|---|---|---|---|---|---|---|---|
| | DOCUMENT NO. | DATE | COUNTRY | CLASS | SUBCLASS | TRANSLATION | |
| | | | | | | YES | NO |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |

| OTHER DOCUMENTS (Including Author, Title, Date, Pertinent Pages, Etc.) | | |
|---|---|---|
| WHH | | Rozen, "Electronic Stores Sell:  Shoes to Cars", Dun's Business Month, Vol. 125, p.101, Jan. 1985. |
| " | | "VIDEODISC Product Search System Launched for Architects and Interior Designers", Videodisc and Optical Disk, July - August 1985, Vol. 5, No. 4, pp. 244-247. |
| " | | "Touchcom™ Interactive Videodisc Catalog Markets Furniture at Dayton's", Videodisc and Optical Disk, Vol. 5, No. 5, September - October 1985, pp. 343-345. |

| EXAMINER | DATE CONSIDERED  6/3/97 |
|---|---|

EXAMINER:  Initial if reference considered, whether or not citation is in conformance with MPEP 609; draw line through citation if not in conformance and not considered.  Include copy of this form for next communication to the Applicant.

*Substitute Disclosure Statement Form (PTO-1449)          Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE

Date Mailed:  February 6, 1996                                              Sheet 5 of 8

| FORM 1449* | | Docket Number | Application Number |
|---|---|---|---|
| | | 7709.72US01 | 08/550,089 |
| **INFORMATION DISCLOSURE STATEMENT** | | Applicant | |
| **IN AN APPLICATION** | | Jerome D. Johnson et al. | |
| | | Filing Date | Group Art Unit |
| *(Use several sheets if necessary)* | | October 30, 1995 | N/A |

| U.S. PATENT DOCUMENTS | | | | | | |
|---|---|---|---|---|---|---|
| EXAMINER INITIAL | DOCUMENT NO. | DATE | NAME | CLASS | SUBCLASS | FILING DATE IF APPROPRIATE |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |

| FOREIGN PATENT DOCUMENTS | | | | | | | |
|---|---|---|---|---|---|---|---|
| | DOCUMENT NO. | DATE | COUNTRY | CLASS | SUBCLASS | TRANSLATION | |
| | | | | | | YES | NO |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |

| OTHER DOCUMENTS (Including Author, Title, Date, Pertinent Pages, Etc.) | |
|---|---|
| WNA | Paul Hurly, Boosting Sales...ELECTRONICALLY, INDUSTRY WEEK, March 31, 1986, pp. 33-35. |
| " | "HOW TO MAKE THE MOST OF EPIC", user's guide, Electronic Product Information, Buick Motor Division, 902 East Hamilton Avenue, Flint, Michigan 48550. |
| " | "EPIC Quick Reference Flip Chart", Buick Motor Division, General Motors Corporation (1986). |

| EXAMINER | DATE CONSIDERED  6/3/97 |
|---|---|
| EXAMINER:  Initial if reference considered, whether or not citation is in conformance with MPEP 609; draw line through citation if not in conformance and not considered.  Include copy of this form for next communication to the Applicant. | |

*Substitute Disclosure Statement Form (PTO-1449)          Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE

Date Mailed:  February 6, 1996

| FORM 1449* | Docket Number | Application Number |
|---|---|---|
| | 7709.72US01 | 08/550,089 |
| **INFORMATION DISCLOSURE STATEMENT** | Applicant | |
| **IN AN APPLICATION** | Jerome D. Johnson et al. | |
| | Filing Date | Group Art Unit |
| **(Use several sheets if necessary)** | October 30, 1995 | N/A |

| | | U.S. PATENT DOCUMENTS | | | | |
|---|---|---|---|---|---|---|
| EXAMINER INITIAL | DOCUMENT NO. | DATE | NAME | CLASS | SUBCLASS | FILING DATE IF APPROPRIATE |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |

| | | FOREIGN PATENT DOCUMENTS | | | | TRANSLATION | |
|---|---|---|---|---|---|---|---|
| | DOCUMENT NO. | DATE | COUNTRY | CLASS | SUBCLASS | YES | NO |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |

| | | OTHER DOCUMENTS (Including Author, Title, Date, Pertinent Pages, Etc.) |
|---|---|---|
| ωNH | | Ronnie Telzer; "The 'Silent Salesman'", Marketing Communications, Vol. 14, Number 5, May 1989, pp. 20-24. |
| " | | Mary Beth Vander Schaaf, DEALING WITH DEALERS, Automotive News, November 21, 1988, p. 67. |
| 4 | | Jeffrey Young, "Can Computers REALLY BOOST SALES?", FORBES ASAP, August 28, 1995, pp. 85-98. |

| EXAMINER | DATE CONSIDERED   6/3/97 |
|---|---|

EXAMINER:  Initial if reference considered, whether or not citation is in conformance with MPEP 609; draw line through citation if not in conformance and not considered.  Include copy of this form for next communication to the Applicant.

*Substitute Disclosure Statement Form (PTO-1449)          Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE

Date Mailed:  February 6, 1996

| FORM 1449* | Docket Number | Application Number |
|---|---|---|
| | 7709.72US01 | 08/550,089 |
| **INFORMATION DISCLOSURE STATEMENT** | Applicant | |
| **IN AN APPLICATION** | Jerome D. Johnson et al. | |
| | Filing Date | Group Art Unit |
| (Use several sheets if necessary) | October 30, 1995 | N/A |

**U.S. PATENT DOCUMENTS**

| EXAMINER INITIAL | DOCUMENT NO. | DATE | NAME | CLASS | SUBCLASS | FILING DATE IF APPROPRIATE |
|---|---|---|---|---|---|---|
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |

**FOREIGN PATENT DOCUMENTS**

| | DOCUMENT NO. | DATE | COUNTRY | CLASS | SUBCLASS | TRANSLATION | |
|---|---|---|---|---|---|---|---|
| | | | | | | YES | NO |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |

**OTHER DOCUMENTS** (Including Author, Title, Date, Pertinent Pages, Etc.)

| WJH | | Product Catalog, Calico Technology, Inc., 1995 (12 pages). |
|---|---|---|
| " | | SalesBUILDER Product Catalog, Triology Development Group, 1995 (11 pages). |
| " | | Saratoga Systems, Inc. Product Catalog, "An Account Management and Sales Information System," Saratoga Systems, Inc., 1994 (10 pages). |

| EXAMINER | DATE CONSIDERED  6/3/97 |
|---|---|

EXAMINER:  Initial if reference considered, whether or not citation is in conformance with MPEP 609; draw line through citation if not in conformance and not considered.  Include copy of this form for next communication to the Applicant.

*Substitute Disclosure Statement Form (PTO-1449)       Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE

Date Mailed: February 6, 1996                                              Sheet 8 of 8

| FORM 1449* | Docket Number | Application Number |
|---|---|---|
| | 7709.72US01 | 08/550,089 |
| INFORMATION DISCLOSURE STATEMENT | Applicant | |
| IN AN APPLICATION | Jerome D. Johnson et al. | |
| | Filing Date | Group Art Unit |
| (Use several sheets if necessary) | October 30, 1995 | N/A |

### U.S. PATENT DOCUMENTS

| EXAMINER INITIAL | DOCUMENT NO. | DATE | NAME | CLASS | SUBCLASS | FILING DATE IF APPROPRIATE |
|---|---|---|---|---|---|---|
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |

### FOREIGN PATENT DOCUMENTS

| | DOCUMENT NO. | DATE | COUNTRY | CLASS | SUBCLASS | TRANSLATION | |
|---|---|---|---|---|---|---|---|
| | | | | | | YES | NO |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |

### OTHER DOCUMENTS (Including Author, Title, Date, Pertinent Pages, Etc.)

| | | |
|---|---|---|
| WW lf | | Siebel Sales Information Systems Product Catalog, Siebel Systems, Inc., 1995 (8 pages). |
| " | | Volpe, Welty & Company Equity Research - CONCENTRA, dated March 28, 1995, Concentra's SalesGenerator™, (18 pages), Volpe, Welty & Company, 1995 (18 pages). |
| | | |

| EXAMINER | DATE CONSIDERED 6/3/97 |
|---|---|

EXAMINER: Initial if reference considered, whether or not citation is in conformance with MPEP 609; draw line through citation if not in conformance and not considered. Include copy of this form for next communication to the Applicant.

*Substitute Disclosure Statement Form (PTO-1449)          Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

| DOCKET NUMBER | ANTICIPATED CLASSIFICATION OF THIS APPLICATION: | | PRIOR APPLICATION | |
|---|---|---|---|---|
| | CLASS | SUBCLASS | EXAMINER | ART UNIT |
| 7709.72USF1 | | | W HUGHET | 2761 |

CERTIFICATE UNDER 37 CFR 1.10:
"Express Mail" mailing label number:  EL301827374US
Date of Deposit:  March 15, 1999

I hereby certify that this paper or fee is being deposited with the U.S. Postal Service "Express Mail Post Office to Addressee" service under 37 CFR 1.10 on the date indicated above and is addressed to Assistant Commissioner for Patents, Washington, D.C. 20231.

By: _____
Name: WADE KLINGS(SN)

### REQUEST FOR CONTINUED PROSECUTION APPLICATION UNDER 37 C.F.R. § 1.53(d)

Box CPA
Assistant Commissioner for Patents
Washington, DC 20231

**RECEIVED**

**MAR 1 8 1999**

Dear Sir:

**Group 2700**

This is a request for filing a continued prosecution application under 37 CFR § 1.53(d) of prior pending patent application Serial No.  08/550,089, filed on October 30, 1995 entitled INTEGRATED COMPUTERIZED SALES FORCE AUTOMATION SYSTEM by the following inventor(s):

| Full Name Of Inventor | Family Name JOHNSON | First Given Name JEROME | Second Given Name DALE |
|---|---|---|---|
| Residence & Citizenship | City NORTH MANKATO | State or Foreign Country MINNESOTA | Country of Citizenship USA |
| Post Office Address | Post Office Address 2409 NORTHRIDGE DRIVE | City NORTH MANKATO | State & Zip Code/Country MINNESOTA 56003/USA |
| Full Name Of Inventor | Family Name LUNDBERG | First Given Name DAVID | Second Given Name ROBERT |
| Residence & Citizenship | City MANKATO | State or Foreign Country MINNESOTA | Country of Citizenship USA |
| Post Office Address | Post Office Address ROUTE 1, BOX 272–2A | City MANKATO | State & Zip Code/Country MINNESOTA 56001/USA |
| Full Name Of Inventor | Family Name KREBSBACH | First Given Name MICHAEL | Second Given Name PAUL |
| Residence & Citizenship | City AERDENHOUT | State or Foreign Country THE NETHERLANDS | Country of Citizenship USA |
| Post Office Address | Post Office Address VER.EUROPALAAN 5, 2111 WJ | City AERDENHOUT | State & Zip Code/Country THE NETHERLANDS |

The above–identified prior application in which no payment of the issue fee, abandonment of, or termination of proceedings has occurred, is hereby expressly abandoned as of the filing date of this new application.  Please use all the contents of the prior application file wrapper, including the drawings, as the basic papers for the new application.

1.   ☐   Enter the amendment previously filed on    , but unentered, in the prior application.

2.   ☐   A preliminary amendment is enclosed.

The filing fee is calculated below on the basis of the claims existing in the prior application as amended at 1 and 2 above:

1/17/1999 CHOANG   00000032 08550089

! FC:231        380.00 OP
! FC:203        207.00 OP

1

CLAIMS AS FILED

| NUMBER FILED | | NUMBER EXTRA | | RATE | FEE |
|---|---|---|---|---|---|
| **TOTAL CLAIMS:** 43 | −20 | 23 | x | $9 | $207.00 |
| **INDEPENDENT CLAIMS** 3 | −3 | 0 | x | $39 | $0.00 |
| | | | | BASIC FILING FEE: | $380.00 |
| | | | | TOTAL FILING FEE: | $587.00 |
| | | | | | |

☒     A Verified Statement that this filing is by a small entity (37 CFR 1.9, 1.27, 1.28) is already filed in the prior application.

☐     A Verified Statement that this filing is by a small entity (37 CFR 1.9, 1.27, 1.28) is attached.

3.  ☒    Payment of fees:
        ☒   Attached is a check in the amount of $ 587.00.
        ☐   Please charge Deposit Account No. 13−2725.

4.  ☒    The Commissioner is hereby authorized to charge any additional fees as set forth in 37 CFR §§ 1.16 to 1.18 which may be required by this paper or credit any overpayment to Account No. 13−2725.

5.  ☐    Priority of application Serial No.   , filed on   in   , is claimed under 35 U.S.C. 119.

6.  ☐    The certified copy has been filed in prior application Serial No.   , filed   .

7.  ☒    The prior application is assigned of record to Clear With Computers located at Mankato, Minnesota.

8.  ☒    The Power of Attorney in the prior application is to:

<div align="center">Merchant, Gould, Smith, Edell<br>Welter &amp; Schmidt, P.A.<br>3100 Norwest Center<br>90 South Seventh Street<br>Minneapolis, MN 55402<br>(612/332−5300)</div>

**RECEIVED**

**MAR 1 8 1999**

**Group 2700**

9.  ☒    A petition and fee of $435.00 to extend the term in the prior application until March 15, 1999 are enclosed herewith.

10.  ☐   The inventor(s) in this application are less than those named in the prior application and it is requested that the following inventors identified above for the prior application be deleted:

11.  ☐   Also Enclosed:

12.  ☒   Address all future communications to the **Attention of Alan G. Gorman** (may only be completed by attorney or agent of record) at the address below.

2

13.  ☒  A return postcard is enclosed.

Respectfully submitted,

MERCHANT, GOULD, SMITH, EDELL,
 WELTER & SCHMIDT, P.A.
3100 Norwest Center
90 South Seventh Street
Minneapolis, MN 55402
612/332–5300

Date: *March 15, 1999*

Alan G. Gorman
Reg. No. 38,472
AGG:PSTkls

3



**UNITED STATES DEPARTMENT OF COMMERCE**
**Patent and Trademark Office**
Address:   COMMISSIONER OF PATENTS AND TRADEMARKS
Washington, D.C. 20231

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | | ATTORNEY DOCKET NO. |
|---|---|---|---|---|
| 08/550,089 | 10/30/95 | JOHNSON | J | 7709.72US01 |

| | EXAMINER |
|---|---|
| | POINVIL.F |

MERCHANT GOULD SMITH EDELL
WELTER & SCHMIDT
3100 NORWEST CENTER
90 SOUTH SEVENTH STREET
MINNEAPOLIS MN 55402-4131

LM02/0407

| ART UNIT | PAPER NUMBER |
|---|---|
| 2761 | |

**DATE MAILED:**
04/07/99

**Please find below and/or attached an Office communication concerning this application or proceeding.**

Commissioner of Patents and Trademarks

| **Office Action Summary** | Application No.<br>08/550,089 | Applicant(s)<br>Jerome D. Johnson et al. |
|---|---|---|
| | Examiner<br>Frantzy Poinvil | Group Art Unit<br>2761 |

☒ Responsive to communication(s) filed on _Mar 15, 1999_____ .

☒ This action is **FINAL**.

☐ Since this application is in condition for allowance except for formal matters, **prosecution as to the merits is closed** in accordance with the practice under *Ex parte Quayle*, 1935 C.D. 11; 453 O.G. 213.

A shortened statutory period for response to this action is set to expire ____ _3_ ____ month(s), or thirty days, whichever is longer, from the mailing date of this communication. Failure to respond within the period for response will cause the application to become abandoned. (35 U.S.C. § 133). Extensions of time may be obtained under the provisions of 37 CFR 1.136(a).

**Disposition of Claims**

    ☒ Claim(s) _1-43_____ is/are pending in the application.

      Of the above, claim(s) _____ is/are withdrawn from consideration.

    ☐ Claim(s) _____ is/are allowed.

    ☒ Claim(s) _1-43_____ is/are rejected.

    ☐ Claim(s) _____ is/are objected to.

    ☐ Claims _____ are subject to restriction or election requirement.

**Application Papers**

    ☐ See the attached Notice of Draftsperson's Patent Drawing Review, PTO-948.

    ☐ The drawing(s) filed on _____ is/are objected to by the Examiner.

    ☐ The proposed drawing correction, filed on _____ is ☐approved ☐disapproved.

    ☐ The specification is objected to by the Examiner.

    ☐ The oath or declaration is objected to by the Examiner.

**Priority under 35 U.S.C. § 119**

    ☐ Acknowledgement is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d).

      ☐ All ☐ Some* ☐ None  of the CERTIFIED copies of the priority documents have been

        ☐ received.

        ☐ received in Application No. (Series Code/Serial Number) _____ .

        ☐ received in this national stage application from the International Bureau (PCT Rule 17.2(a)).

      *Certified copies not received: _____ .

    ☐ Acknowledgement is made of a claim for domestic priority under 35 U.S.C. § 119(e).

**Attachment(s)**

    ☐ Notice of References Cited, PTO-892

    ☐ Information Disclosure Statement(s), PTO-1449, Paper No(s). _____

    ☐ Interview Summary, PTO-413

    ☐ Notice of Draftsperson's Patent Drawing Review, PTO-948

    ☐ Notice of Informal Patent Application, PTO-152

--- *SEE OFFICE ACTION ON THE FOLLOWING PAGES* ---

Serial Number: 08/550,089                                        Page 2

Art Unit: 2761

## DETAILED ACTION

### *Status of Claims*

1.      Claims 1-43 were under prosecution in this application in the final action mailed September 15, 1998.  The application is under a Continued Prosecution Application filed March 15,1999.  No amendment has been filed.  Therefore, Claims 1-43 remain under prosecution in this application.

2.      The Examiner notes that Applicants have requested, with their Continued Prosecution Application filing entry of an amendment filed December 10, 1997, but allegedly unentered.  The Examiner respectfully notes that Applicant's December 10, 1997 amendment was entered upon receipt and that said amendment was the basis of the final Office action mailed herein on March 3, 1998.

### *Summary of this Office Action*

3.      Applicant's arguments filed July 14, 1998 been fully considered, are discussed in the next section below or within the following rejection under 35 USC 103, and except as where expressly noted, are moot deemed to be persuasive.  Therefore, Claims 1-43 are rejected under 35 USC 103 as unpatentable over the art cited below; and Applicants' requests for allowance is respectfully denied.

Serial Number: 08/550,089                                              Page 3

Art Unit: 2761


*Response to Applicant's Amendment*


4.      The Examiner recognizes that Applicants can be their own lexicographers and accepts

their explanations regarding "state characteristics of an event". The corresponding objection to

the Specification and rejection under 35 USC 112 is therefore withdrawn.

5.      To the extent that an "event manager" is recited in the claims as detecting a change and

therefore the occurrence of an event and subsequently initiating a following operation in the sales

process, Negrino1 discloses such a function at page 1, lines 38-43.  Negrino 2 also teaches this

feature at page 1, lines 28-30 and 39-40.  (For a citation to Negrino1 and Negrino2, please refer

to the rejection under 35 USC 103 below).

6.      As regards Negrino being linear system, the Examiner asserts that Negrino discloses a

non-linear, automated branching system and for support therefore cites to Negrino1 at page 1,

lines 42-44 and page 2, line 48-page 3 line 3, where the disclosed sales automation system

dynamically branches to a subsequent step based on the detected outcome of a previous event.

The system can automatically advise the salesperson the next step to take, based on the

occurrence of prior events (Negrino2 at page 1, lines 28-30).

7.      As regards, Negrino's method of deactivating a lead, since no such feature is claimed

herein, how Negrino fulfills such a function is irrelevant.

8.      As regards Negrino differing from the automated prediction feature of applicant's

invention as traversed on page 4 of their July 14, 1998 response, the Examiner respectfully asserts

Serial Number: 08/550,089                                                  Page 4

Art Unit: 2761

that no such prediction feature is recited; and, therefore, such a difference, if it does indeed exist,

is irrelevant.

9.       As regards the Negrino being limited to sales contact management, the Examiner asserts

that Negrino teaches in the art of sales automation software in which "every step of the sales

process" is under control of the system and expressly discloses capturing initial sales leads,

making sales presentations, scheduling meetings with customers, submitting and refining bids,

closing a sale, and following up for future sales.  See Negrino1 at page 1, line 20 - page 3, line 5,;

Negrino2 at page 1, lines 20-41.  Furthermore, the claims recited herein do not exclude sales

contact management from the recited event management.  See claims 1 and 13, specification at

page 7, line 15- page 8, line 11 and page 15, lines 8-29.

10.      Applicant's remaining traversals are discussed under the 35 USC 103 rejection below.

*Drawings*

11.      This application has been filed with informal drawings which are acceptable for

examination purposes only.  Formal drawings will be required when the application is allowed.

12.      The drawings are objected to because of irregularities as noted on PTO 948.  Appropriate

correction is required.

*Specification*

13.      The application is objected to as not being in compliance with 37 CFR 1.77 regarding the

required elements of the application.  In particular, this application is lacking a section entitled,

Serial Number: 08/550,089

<div align="right">Page 5</div>

Art Unit: 2761

"Cross-References to Related Applications" which should reference copending application Nos. 08/798,850, filed February 12, 1997, and 08/879,070 filed June 19,1997.

## *Claim Rejections - 35 USC § 103*

14.    The following is a quotation of 35 U.S.C. 103(a) which forms the basis for all obviousness rejections set forth in this Office action:

> (a) A patent may not be obtained though the invention is not identically disclosed or described as set forth in section 102 of this title, if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains. Patentability shall not be negatived by the manner in which the invention was made.

15.    Claims 1-3, 5, 7, 8, 10-16, 21-35 and 37-43 are rejected under 35 U.S.C. 103(a) as being unpatentable over Ton Negrino, "Sales-Automation Software", Macworld, v10, n10 pages 144-148, October, 1993 (hereinafter "Negrino1") and Tom Negrino, "Market Master Manager 3.5", Macworld, v10, n10, page 57, October, 1993 (herein after "Negrino2"). The Examiner will refer to Negrino1 and Negrino2 collectively as "Negrino". The Examiner asserts that it would have been obvious to the person of ordinary skill in the art of sales force automation systems to treat these two articles collectively. One would have been motivated to do so because they deal with the same subject matter (sales automation software), were published in the same issue of a magazine and were authored by the same person.

Serial Number: 08/550,089

Art Unit: 2761

   (A)   As to Claims 1, 13, 21 and 24, Negrino discloses a computer-based sales automation system that is used to facilitate the steps of a sales process (Negrino1 at page 1, lines 25-44; Negrino2 at page 1, lines 20-32). Negrino teaches a plurality of subsystems, each corresponding to a step in the sales process and each facilitating that respective sales step (Id). Negrino also discloses an automated branching, or event, manager that automatically initiates the next particular step in the automated sales process based on detecting the outcome characteristics of a prior step (Negrino1 at page 1, lines 42-44; page 2, lines 9-13; page 2, line 48- page 3, line 3; Negrino2 at page 1, lines 28-30 and 39-40).

   (B)   As to claims 2, 3 and 23, Negrino discloses that the system directs the initiation of a subsequent step within a phase of the sales process based on the context in which a previous event may have occurred (Negrino1 at page 1, lines 37-44; Negrino2 at page 1, lines 28-30). Although Negrino does not expressly disclose available information related to a given step, it does disclose the automatic logging of information upon occurrence of events (Negrino1 at page 2, lines 9-13). The Examiner asserts that in order to log such information, the contextual environment of each step must necessarily include the related information which the system subsequently records in a central database. The Examiner asserts that it would have been obvious to one of ordinary skill in the art to include information with respect to occurrence of a previous step in the automated sales/branching system disclosed by Negrino. One would be motivated to do so in order to have sufficient information with which to verify that the prior step had satisfactorily completed prior to initiating the subsequent step.

Serial Number: 08/550,089                                      Page 7

Art Unit: 2761

©       As to claim 5, Negrino teaches an initial event of spending time with a customer in

the form of learning about the prospect's needs and making a sales presentation, with the intent of

converting an initial lead into a closed sale (Negrino1 at page 1, lines 25-28).  Negrino further

discloses a lead management subsystem (Negrino1 at page 1, lines 25-26; page 5, lines 19-21 and

44-46).  Although Negrino does not expressly teach using the lead management subsystem in

converting a name to a potential customer, the Examiner asserts that a primary goal of a sales

system is to make a sale, which necessarily requires converting initial leads, or prospects, into

buying customers.

(D)      As to claim 7, Negrino discloses a customer retention subsystem that includes

post-sale contacts, letters and meetings with clients for building a relationship with an existing

customer for future sales (Negrino1 at page 1, lines 28-29; page 2, lines 9-13; page 3, lines 9-12).

The remaining limitations of Claim 7 are found in Claim 5, and the remainder of this claim is

rejected for the same reasons.

(F)      As to Claim 8, Negrino teaches a self management subsystem of customer contact

management, to-do-lists, calendars, and schedulars for assisting the sales person in fulfilling

his/her sales responsibilities (Negrino1 at page 2, lines 27-34).  The remaining limitations of Claim

8 are found in Claim 5, and the remainder of this claim is rejected for the same reasons.

(G)      As to claim 10, Negrino teaches a sales management subsystem that includes sales

plans that implement enterprise-wide strategies and means for implementing said plans (Negrino1

Serial Number: 08/550,089

Art Unit: 2761

at page 1, lines 38-44). The remaining limitations of claim 10 are found in claim 5 and the remainder of this claim is rejected for the same reasons.

(H)   The limitations of Claim 11 are found in claims 6 and 8 and this claim is rejected for the same reasons.

(I)   The limitations of claim 12 are found in claims 5 and 8, and this claim is rejected for the same reasons.

(J)   As to claim 14, and as discussed above regarding claims 1-3, Negrino teaches performance of events based on the occurrence of prior events. Although Negrino does not expressly disclose determining whether or not a particular prior event occurred, the Examiner asserts that such a determination would have been obvious prior to the limitation of a subsequent, dependent event in a sequence of events. To do otherwise, would render the sequential dependency of events as disclosed by Negrino meaningless (see Negrino1 at page 1, lines 42-44). The remaining limitations of claim 14 are found in claims 2 and 3 and the remainder of this claim is rejected for the same reasons.

(K)   The limitations of Claim 15 are found in claims 1 and 6 and this claim is rejected for the same reasons.

(L)   The limitations of claim 16 are found in claims 1 and 5 and this claim is rejected for the same reasons.

(M)   As to claim 22, the Examiner asserts that events occurring within the sales process are well known to be indicative of more that one step of a sales process. For example, a

Serial Number: 08/550,089

Page 9

Art Unit: 2761

telephone call from a customer may occur in several steps of the sales process.  See Negrino 1 at page 1, lines 29-35.

(N)     The limitations of claims 25 and 33 are found in claim 1, and these claims are rejected for the same reasons.

(O)     The limitations of claims 26, 31, and 34 are found in claim 23 and these claims are rejected for the same reasons.

(P)     The limitations of claims 27, 32 and 35 are found in claim 24, and these claims are rejected for the same reasons.

(Q)     The limitations of claim 28 are found ind in claims 21 and 23, and this claim is rejected for the same reasons.

(R)     The limitations of claim 29 are found in claim 21, and this claim is rejected for the same reasons.

(S)     The limitations of claim 30 are found in claim 22 and this claim is rejected for the same reasons.

(T)     The limitations of claim 37 are found in claims 1 and 5, and this claim is rejected for the same reasons.

(U)     The limitations of claim 38 are found in claims 1 and 7, and this claim is rejected for the same reasons.

(V)     The limitations of claim 39 are found in claims 1 and 8, and this claim is rejected for the same reasons.

Art Unit: 2761

(W)   The limitations of claim 40 are found in claims 1 and 9, and this claim is rejected for the same reasons.

(X)   The limitations of claim 41 are found in claims 1 and 10, and this claim is rejected for the same reasons.

(Y)   The limitations of claim 42 are found in claims 1 and 11, and this claim is rejected for the same reasons.

(Z)   The limitations of claim 43 are found in claims 1 and 12, and this claim is rejected for the same reasons.

16.   Claims 4, 17-20 and 36 are rejected under 35 U.S.C. 103(a) as being unpatentable over Negrino1 and Negrino2 as applied to claims 1 and 13 above, and further in view of Tony Seideman, "Way Cool! (Sales Force Automation)", Sales & Marketing Management, v146, n6 pages 10-13, June, 1994, (hereinafter "Seideman").

(A)   As to claim 4, while Negrino does not teach a rule-based sales automation system, Seideman does disclose an expert sales automation system in which rules direct the next recommended action to be taken, upon occurrence of a given event or step (Seideman at page 1, lines 37-45). A decision subsystem directs the salesperson to the next proper step based on the context in which the prior steps occurred (page 4, lines 34-40). Although Seideman does not expressly disclose storing a plurality of rules, expert systems are well known to be comprised of a stored knowledge base of rules in conjunction with an inference engine that enables the system to make decisions and direct actions based on contextual knowledge (information) and rules defined

Serial Number: 08/550,089                                          Page 11

Art Unit: 2761

by experts in the field. <u>See</u> Seideman at page 4, lines 39-43; Computer Dictionary, Microsoft

Press, 156, (Second Ed. 1994).

     Although Seideman does not disclose identifying an express rule governing response to an

event, the Examiner asserts that expert systems are well known to initiate a subsequent step upon

being provided a relevant knowledge base and contextual information regarding the present event.

It would have been obvious to one of ordinary skill in the art to modify Negrino with the expert

system of Seideman. One would have been motivated to do so in order to incorporate the well

known dynamic learning means of expert systems into the sales automation system of Negrino,

and thereby permit Negrino's system to solve problems and initiate events based on the

experience and rules of experts with minimal manual intervention.

     (B) As to claim 17, and as discussed above regarding claims 1 and 4, Negrino discloses a

computer-based sales automation system that is used to facilitate the sales process. Although

Negrino does not teach "electronically" facilitating sales events, Negrino does disclose use of

computers with which to direct events, and the Examiner asserts that computers are well known

to be powered by electricity. While Negrino does not expressly disclose linking to subsequent

steps based on prior experience, it does disclose linking to subsequent steps based on the

occurrence of prior steps. Also, Seideman teaches incorporating prior sales experience with

which to direct the operation of the automated system (Seideman at page 4, lines 39-43). It

would have been obvious to modify Negrino with the experience means of Seideman. On would

be motivated to do so to take advantage of existing practical knowledge within the sales process

Serial Number: 08/550,089                                                     Page 12

Art Unit: 2761


so as to avoid prior mistakes and to use past successful sequences of events and subsystems with

which to close a sale (see Seideman at page 4, lines 41-43). The remaining limitations of claim 17

are found in claims 1 and 4, and the remainder of this claim is rejected for the same reasons.

© As to claims 18, 19 and 20, although Negrino does not disclose an expert system,

Seideman does disclose an expert sales automation system that uses prior sales experience with

which to build rules to drive the system.   As discussed above regarding claim 4, expert systems

are well known to be comprised of knowledge bases of rules that represents expert experience in

the field, and Seideman teaches learning from the sales process so as to implement strategies that

will work best and further teaches guiding the system to direct the most efficient courses of action

(Seideman at page 4, lines 39-43). Although Seideman does not expressly disclose monitoring

sales process events, the Examiner asserts that it would have been obvious, in view of Seideman,

for an expert system to monitor those events comprising the system so as to learn what works and

what leads to undesirable results and incorporate that knowledge in the expert system's well

known knowledge base. It would have been obvious to modify Negrino with the expert system of

Seideman for the reasons regarding claim 4.

(D)     The limitations of claim 36 are found in claim 4 and this claim is rejected for the

same reasons.

17.     Claim 6 is rejected under 35 U.S.C. 103(a) as being unpatentable over Negrino1 and

Negrino2 as applied to claim 1 above, and further in view of John Hiatt, "Empowering the Global

Sales Force", International Business, v7, n9, pages 16-20, September, 1994 (hereinafter "Hiatt").

Serial Number: 08/550,089

Art Unit: 2761

As to claim 6, while Negrino does not teach an order management system for ensuring that the ordered product or service is delivered, Hiatt discloses a sales automation system that provides for automatic entry of orders and subsequent shipment of flawless orders to the customer. It would have been obvious to modify Negrino with the order management subsystem of Hiatt in order to ensure timely and accurate order shipments. One would be motivated to do so in order to deliver that which was promised to the customer and in order to preserve the order. The remaining limitations of claim 6 are found in claim 5, and the remainder of this claim is rejected for the same reasons.

18.    Claim 9 is rejected under 35 U.S.C. 103(a) as being unpatentable over Negrino1 and Negrino2 as applied to claim 1 above, and further in view of Colleen Frye, "Automation Integrating Phases of Sales Cycle", Software Magazine, v13. n14, pages 61-72, September, 1993 (hereinafter "Frye").

(A)    As to claim 9, Negrino discloses a computer-based sales automation system that is used to facilitate the sales process, said system being comprised of a plurality of subsystems, each corresponding to a step in the sales process and each facilitating that respective sales step. Although Negrino does not teach a training subsystem, Frye does disclose a sales force automation in which users (salespersons) are trained on the system. Although Frye is not clear whether or not the system does the training, the Examiner asserts that, in view of Frye and the well-known benefits that accrue from a well-trained staff, it would have been obvious to one of ordinary skill in the art of sales automation systems to provide for system-directed training of

Serial Number: 08/550,089                                                    Page 14

Art Unit: 2761

sales persons.  One would be motivated to do so in order to take advantage of the automation and

the knowledge (rules) built into the system to detect the progress of each individual salsesperson

and to provide training information relevant to his/her particular experience level and products

being sold.  One would be further motivated to do so to automatically load updated product

information into the databases disclosed by Negrino and Frye to provide the salespersons with up-

to-date information.

19.     **THIS ACTION IS MADE FINAL.**  Applicant is reminded of the extension of time

policy as set forth in 37 CFR 1.136(a).

        A shortened statutory period for reply to this final action is set to expire THREE

MONTHS from the mailing date of this action.  In the event a first reply is filed within TWO

MONTHS of the mailing date of this final action and the advisory action is not mailed until after

the end of the THREE-MONTH shortened statutory period, then the shortened statutory period

will expire on the date the advisory action is mailed, and any extension fee pursuant to 37

CFR 1.136(a) will be calculated from the mailing date of the advisory action.  In no event,

however, will the statutory period for reply expire later than SIX MONTHS from the mailing date

of this final action.

20.

*Conclusion*

Serial Number: 08/550,089

Page 15

Art Unit: 2761

Any inquiry concerning this communication or earlier communications from the examiner should be directed to Frantzy Poinvil, whose telephone number is (703) 305-9779. The examiner can normally be reached on Monday through Friday from 8:30 AM to 5:00 PM.

The fax phone number for this Art Unit is (703) 308-5397.

Any inquiry of a general nature or relating to the status of this application should be directed to the Group receptionist whose telephone number is (703) 305-3800.

FP
28Mar99

*FPo.../*
**Frantzy Poinvil**
**Primary Examiner**
**Art Unit 2761**

S/N 08/550,089                                                           PATENT

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

| | | | |
|---|---|---|---|
| Applicant: | JOHNSON ET AL. | Examiner: | F. POINVIL |
| Serial No.: | 08/550,089 | Group Art Unit: | 2761 |
| Filed: | OCTOBER 30, 1995 | Docket No.: | 7709.72USF1 |
| Title: | INTEGRATED COMPUTERIZED SALES FORCE AUTOMATION SYSTEM | | |

CERTIFICATE UNDER 37 CFR 1.10:
"Express Mail" mailing label number:  EL435537780US
Date of Deposit:  August 9, 1999

I hereby certify that this paper or fee is being deposited with the U.S. Postal Service "Express Mail Post Office to Addressee" service under 37 CFR 1.10 on the date indicated above and is addressed to Assistant Commissioner for Patents, Washington, D.C. 20231.

By: _Hassen Buie_
Name:        Hassen Buie

PETITION FOR EXTENSION OF TIME

Assistant Commissioner for Patents
Washington, D.C.  20231

Dear Sir:

        In accordance with the provisions of 37 C.F.R. §1.136(a), it is respectfully requested that

a one-month extension of time be granted in which to respond to the outstanding Office Action

mailed April 7, 1999, said period of response being extended from July 7, 1999 to August 7,

1999.

        Our check in the amount of $55.00 is enclosed to cover the required extension fee for a

small entity.

                                        Respectfully submitted,

                                        MERCHANT & GOULD P.C.
                                        3100 Norwest Center
                                        90 South Seventh Street
                                        Minneapolis, Minnesota 55402
                                        (612) 332-5300

Date: _9 Aug 99_

                                        Richard J. Gregson
                                        Reg. No. 41,804
                                        RG:PSTpmc

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

| DOCKET NUMBER | ANTICIPATED CLASSIFICATION OF THIS APPLICATION: | | PRIOR APPLICATION | |
|---|---|---|---|---|
| | CLASS | SUBCLASS | EXAMINER | ART UNIT |
| 7709.72USF1 | | | F. POINVIL | 2761 |

CERTIFICATE UNDER 37 CFR 1.10:
"Express Mail" mailing label number: EL435537780US
Date of Deposit: August 9, 1999

I hereby certify that this paper or fee is being deposited with the U.S. Postal Service "Express Mail Post Office to Addressee" service under 37 CFR 1.10 on the date indicated above and is addressed to Assistant Commissioner for Patents, Washington, D.C. 20231.

By: _Hassen Buie_
Name:    Hassen Buie

## REQUEST FOR CONTINUED PROSECUTION APPLICATION UNDER 37 C.F.R. § 1.53(d)

Box CPA
Assistant Commissioner for Patents
Washington, DC 20231

Dear Sir:

This is a request for filing a continued prosecution application under 37 CFR § 1.53(d) of prior pending patent application Serial No. 08/550,089, filed on October 30, 1995 entitled INTEGRATED COMPUTERIZED SALES FORCE AUTOMATION SYSTEM by the following inventor(s):

| Full Name Of Inventor | Family Name JOHNSON | First Given Name JEROME | Second Given Name DALE |
|---|---|---|---|
| Residence & Citizenship | City NORTH MANKATO | State or Foreign Country MINNESOTA | Country of Citizenship USA |
| Post Office Address | Post Office Address 2409 NORTHRIDGE DRIVE | City NORTH MANKATO | State & Zip Code/Country MINNESOTA 56003/USA |
| Full Name Of Inventor | Family Name LUNDBERG | First Given Name DAVID | Second Given Name ROBERT |
| Residence & Citizenship | City MANKATO | State or Foreign Country MINNESOTA | Country of Citizenship USA |
| Post Office Address | Post Office Address ROUTE 1, BOX 272-2A | City MANKATO | State & Zip Code/Country MINNESOTA 56001/USA |
| Full Name Of Inventor | Family Name KREBSBACH | First Given Name MICHAEL | Second Given Name PAUL |
| Residence & Citizenship | City AERDENHOUT | State or Foreign Country THE NETHERLANDS | Country of Citizenship USA |
| Post Office Address | Post Office Address VER.EUROPALAAN 5, 2111 WJ | City AERDENHOUT | State & Zip Code/Country THE NETHERLANDS |

The above-identified prior application in which no payment of the issue fee, abandonment of, or termination of proceedings has occurred, is hereby expressly abandoned as of the filing date of this new application. Please use all the contents of the prior application file wrapper, including the drawings, as the basic papers for the new application.

1.    ☐    Enter the amendment previously filed on    , but unentered, in the prior application.

2.    ☐    A preliminary amendment is enclosed.

The filing fee is calculated below on the basis of the claims existing in the prior application as amended at 1 and 2 above:

1

CLAIMS AS FILED

| NUMBER FILED | | NUMBER EXTRA | | RATE | FEE |
|---|---|---|---|---|---|
| **TOTAL CLAIMS:**<br>43                    −20 | | 23 | x | $9 | $207.00 |
| **INDEPENDENT CLAIMS**<br>3                    −3 | | 0 | x | $39 | $0.00 |
| | | | | BASIC FILING FEE: | $380.00 |
| | | | | TOTAL FILING FEE: | $587.00 |

☒    A Verified Statement that this filing is by a small entity (37 CFR 1.9, 1.27, 1.28) is already filed in the prior application.

☐    A Verified Statement that this filing is by a small entity (37 CFR 1.9, 1.27, 1.28) is attached.

3.    ☒    Payment of fees:
   ☐    Attached is a check in the amount of $    .
   ☒    PAYMENT OF THE FEES IS BEING DEFERRED.

4.    ☐    The Commissioner is hereby authorized to charge any additional fees as set forth in 37 CFR §§ 1.16 to 1.18 which may be required by this paper or credit any overpayment to Account No. 13−2725.

5.    ☐    Priority of application Serial No.    , filed on    in    , is claimed under 35 U.S.C. 119.

6.    ☐    The certified copy has been filed in prior application Serial No.    , filed    .

7.    ☒    The prior application is assigned of record to Clear With Computers located at Mankato, Minnesota.

8.    ☒    The Power of Attorney in the prior application is to:

Merchant & Gould P.C.
3100 Norwest Center
90 South Seventh Street
Minneapolis, MN 55402
(612/332−5300)

9.    ☒    A petition and fee to extend the term in the prior application until August 7, 1999 are enclosed herewith.

10.    ☐    The inventor(s) in this application are less than those named in the prior application and it is requested that the following inventors identified above for the prior application be deleted:

11.    ☐    Also Enclosed:

12.    ☒    Address all future communications to the **Attention of Richard J. Gregson** (may only be completed by attorney or agent of record) at the address below.

2

13.   ☒      A return postcard is enclosed.

Respectfully submitted,

MERCHANT & GOULD P.C.
3100 Norwest Center
90 South Seventh Street
Minneapolis, Minnesota 55402
(612) 332-5300

Date: 9 Aug 99

Richard J. Gregson
Reg. No. 41,804
RG:PSTpmc

3



**UNITED STATES DEPARTMENT OF COMMERCE**
**Patent and Trademark Office**
Address:   COMMISSIONER OF PATENTS AND TRADEMARKS
Washington, D.C. 20231

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | | ATTORNEY DOCKET NO. |
|---|---|---|---|---|
| 08/550,089 | 10/30/95 | JOHNSON | J | 7709.72US01 |

```
        ┌                        LM71/0826        ┐
MERCHANT GOULD SMITH EDELL
WELTER & SCHMIDT
3100 NORWEST CENTER
90 SOUTH SEVENTH STREET
MINNEAPOLIS MN 55402-4131
```

| EXAMINER |
|---|
| POINVIL,F |

| ART UNIT | PAPER NUMBER |
|---|---|
| 2761 | |

**DATE MAILED:** 08/26/99

**Please find below and/or attached an Office communication concerning this application or proceeding.**

**Commissioner of Patents and Trademarks**



UNITED STATES DEPARTMENT OF COMMERCE
**Patent and Trademark Office**
Address: COMMISSIONER OF PATENTS AND TRADEMARKS
Washington, D.C. 20231

| APPLICATION NUMBER | FILING/RECEIPT DATE | FIRST NAMED APPLICANT | ATTY. DOCKET NO./TITLE |
|---|---|---|---|

08/550,089    10/30/95    JOHNSON                3    7709.720801

UM71/0926

MERCHANT GOULD SMITH EDELL                    POINVIL,F
WELTER & SCHMIDT                      **DATE MAILED:**
3100 NORWEST CENTER
90 SOUTH SEVENTH STREET                         2761
MINNEAPOL **NOTICE TO FILE MISSING PARTS OF APPLICATION (CPA)**     05/26/99
                *Filing Date Granted*

The Continued Prosecution Application (CPA) request filed on **8/9/99** is entitled to a filing date under 37 CFR 1.53(d)(1). The CPA request, however, lacks the filing fee(s) and/or items indicated below.

**Applicant is given TWO MONTHS FROM THE DATE OF THIS NOTICE within which to file the fee(s), item(s), and any surcharge required below to avoid abandonment of this CPA.** Extensions of time may be obtained by filing a petition accompanied by the extension fee under the provisions of 37 CFR 1.136(a).

*The total amount owed by applicant is the sum of items 1(a) or (b), 2, and 3 (if checked) below.*

☒ 1. The statutory basic filing fee is:
    ☒ missing.
    ☐ insufficient.

    *(a) Applicant must submit $_____ to complete the basic filing fee and the $130.00 surcharge set forth in 37 CFR 1.16(e) (non-small entity), or $_____ to complete the basic filing fee as a small entity and the $65.00 surcharge set forth in 37 CFR 1.16(e) and file a small entity statement under 37 CFR 1.27 claiming such status (if the prior application was entitled to small entity status and such status is still proper and desired, a new small entity statement is not required (37 CFR 1.28)).*

    *(b) Applicant must submit $__380.__ to complete the basic filing fee as a small entity and the $65.00 surcharge set forth in 37 CFR 1.16(e).*

☐ 2. Additional claim fees of
    $_____ (non-small entity) or $_____ (small entity) for _____ independent claims over 3.
    $_____ (non-small entity) or $__207__ (small entity) for __25__ claims over 20.
    $_____ (non-small entity) or $_____ (small entity) for multiple dependent claim surcharge.

    *Applicant must either submit the additional claim fees or cancel additional claims for which fees are due.*

☐ 3. A $50.00 processing fee is required since your check was returned without payment (37 CFR 1.21(m)).

☐ 4. The CPA request is unsigned. Applicant must file a signed duplicate or ratification of the CPA request.

☐ 5. Other: _____

### A copy of this Notice *MUST* be returned with the reply.

Direct the reply and any questions about this Notice to:

*Mr. Patience Gregg*

Examining Group **2700**

(703) 305-**9616**

**FORM PTO-2016 (Rev. 12/97)**          PART 1 - ATTORNEY/APPLICANT COPY

S/N 08/550,089                                                     PATENT

### IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

| | | | | |
|---|---|---|---|---|
| Applicant: | JOHNSON ET AL. | Examiner: | POINVIL, F. |
| Serial No.: | 08/550,089 | Group Art Unit: | 2761 |
| Filed: | OCTOBER 30, 1995 | Docket No.: | 7709.72USFI |
| Title: | INTEGRATED COMPUTERIZED SALES FORCE AUTOMATION SYSTEM | | |

CERTIFICATE UNDER 37 CFR 1.8:  The undersigned hereby certifies that this correspondence is being deposited in the United States Postal Service, as first class mail, with sufficient postage, in an envelope addressed to:  Assistant Commissioner for Patents, Washington, D.C. 20231 on *October 25, 1999*

By:

Name: *Susan Cook*

### Preliminary Amendment

Assistant Commissioner for Patents
Washington, D.C. 20231

Dear Sir:

This is a preliminary amendment filed in accordance with 37 CFR 1.53(d).  This preliminary amendment is filed in response to the Office Action dated April 7, 1999 which was a final rejection of all the claims in the case.  That Office Action necessitated the CPA to which this amendment applies.  This Office Action is also responsive to the notice of missing parts dated August 26, 1999.

### Remarks

The applicants provide the foregoing amendment and remarks in response to the office action mailed on April 7, 1999.  Claims 1−43 are pending.

The Examiner objected to the specification as not being in compliance with 37 CFR 1.77 for failing to reference co−pending applications.  Applicants respectfully traverse this objection.  This application is not claiming benefit of an earlier filing date through the related applications, and Applicant cannot find any law requiring that cross−references be made when no priority is being asserted.  Applicant has found that MPEP 201.11(c ) recites that cross−

es to other related applications not assigned the same application number as the CPA may be made when appropriate. Therefore, Applicant believes that cross–referencing the applications noted by the Examiner is optional. Applicant elects not to make such cross–references but agrees to fully disclose the existence of the related applications in the included Information Disclosure Statement. However, Applicant will gladly include such cross–references in the application if the Examiner will kindly point out where in the patent laws or rules such a requirement is found.

The Examiner rejected Claims 1–43 under 35 USC 103(a). Claims 1–3, 5, 7, 8, 10–16, 21–35, and 37–43 are rejected as being unpatentable over Tom Negrino, "Sales–Automation Software," (hereinafter referred to as Negrino1) and Tom Negrino, "Market Master Manager 3.5," (hereinafter referred to as Negrino2). Claims 4, 17–20, and 36 are rejected as being unpatentable over Negrino1 and Negrino2 and further in view of Tony Seideman, "Way Cool! (Sales Force Automation)," (hereinafter referred to as Seideman). Claim 6 is rejected as being unpatentable over Negrino1 and Negrino2 and further in view of John Hiatt, "Empowering the Global Sales Force," (hereinafter referred to as Hiatt). Claim 9 is rejected as being unpatentable over Negrino1 and Negrino2 and further in view of Colleen Frye, "Automation Integrating Phases of Sales Cycle," (hereinafter referred to as Frye). Applicants respectfully traverse these rejections.

Claim 1 recites that the computer implemented sales system comprises a plurality of subsystems and an event manager. Claim 1 further recites that the event manager detects one or more changes in state characteristics of an event, infers the occurrence of the event and a context in which the event occurred that is based at least in part on the detected change in state, and automatically initiates an operation in one or more subsystems of the computer to facilitate a new action based on the inferred context.

It is important that the event manager infers the context in which the event occurs and then bases the new action on the inferred context. These qualities of the event manager are important because they allow the system to make more educated decisions, rather than forcing the user to make the determinations himself or herself. The system becomes more automated and efficient in this way.

Negrino1 and 2 do not teach basing a new action on an inferred context of the previous step. Instead, Negrino1 and 2 merely teach basing the new step on the outcome of the previous step. Thus, Negrino1 and 2 teach different systems than Claim 1. With respect to Claim 2, the Office Action states that since the disclosed systems log information, one would be

2

motivated to include the information with the occurrence of a previous step in the automated system. It also states that the motivation would exist because one would need sufficient information with which to verify that the prior step had satisfactorily completed prior to initiating the subsequent step. Applicants assert that only the outcome of the previous step is needed prior to initiating the subsequent step in the Negrino systems. To further demonstrate this, examples will be discussed below.

Basing a new action upon the context of a previous event, as recited in Claim 1, is different than automated branching or other steps as described in Negrino1 and 2 where Negrino describes "every step of the sales process." Negrino's steps do not include inferring the context, and it would be impermissible to use hindsight to find that Negrino1 includes contextual inferences in the sentence "A sales plan spells out every step of the sales process and directs you or your sales staff to perform certain tasks based on the outcome of the previous step," pg. 1, lines 42–44. Also, keeping a database of information about clients, including detailed contact history, as presented at Negrino1 pg. 2, lines 9–13, is not referring to making contextual inferences of events. Automatically updating client history files does not involve making contextual inferences of events. This merely involves keeping records of events, rather than inferring the context of the event. Assigning leads to inactive steps, Negrino1 at pg. 2 line 48; and branching between plans and providing multiple result possibilities, Negrino 1 at pg. 3, lines 3 and 4, and Negrino2 at pg. 1 lines 28–30 and 39–40, also do not involve making contextual inferences. Assigning leads to inactive steps requires the user to adjust the steps a system performs on a lead, rather than a contextual inference leading the system to automatically place the lead on an inactive step. Branching between plans merely allows the set of steps to be altered depending upon the plan in use. Providing multiple result possibilities only adds flexibility, as will be discussed below, and does not involve context. Performing a task based on an outcome, as does Negrino, is also different from performing a new action based upon an inferred context, as will become clear from the examples below.

Inferring the context of an event, as previously discussed, permits the system to choose a new action that will be more efficient, for instance, than if the context were not considered. To demonstrate the difference between the invention recited in Claim 1 and the system described in Negrino1 and 2, examples from Negrino1 and 2 will be used. Negrino1 states that the system automatically schedules a follow up call after a letter is sent to a client. The only information the Negrino system would need in order to progress to the step of scheduling the follow up is to recognize that the letter has been sent, which is not a contextual

3

determination.  Thus, it would not be obvious to add contextual inferencing.  Rather than merely determine whether to proceed to the next step as Negrino teaches, the invention recited in Claim 1 can decide whether to proceed and what the next step should be.  As discussed above, the system of Negrino would know to progress to the next step just by completion of the prior step.  No contextual information is needed to realize that the prior step has completed.  This Negrino system involves no contextual inferences in deciding to schedule the call.  The invention recited in Claim 1 would infer the context of sending the letter to the client before scheduling the call.  Perhaps the letter was to terminate the relationship with the customer.  The invention in Claim 1 might infer that because this was a termination letter (one type of context), a follow up call was not necessary, and it would not schedule one.  Without inferring the context, the follow up call would be needlessly scheduled, leading to inefficiency.  The Negrino system might check to see if a letter has been sent.  There are multiple results in that case.  If a letter was sent, then a follow up is scheduled (a first result).  If no letter was sent, then a follow up is not scheduled (a second result).  Other cases might provide more possibilities for results, yet no contextual inferencing would be occurring.

As another example from Negrino, Negrino2 states that the system can automatically notify a salesperson to contact a particular customer if there has been no customer response for a specified number of days.  This system is not referring to the context for the customer's lack of response.  The invention of Claim 1 would again infer the context of receiving no response within a set number of days before a decision to notify a customer would be made.  Perhaps the customer was scheduled to make some transition during this period and a response would thus be delayed.  The invention of Claim 1 might infer from stored customer information that because the customer was in transition, the period should be extended before notifying the customer again.  Of course, the invention of Claim 1 is not limited to cases only involving contacting the customer, and these examples are not intended to limit the scope of Claim 1 in any way.  Negrino only describes the user assigning a lead to an inactive step.  Thus, the user would need to delay the call by intervening in the system's operation.  The invention of Claim 1 would require no such user intervention to delay the call, as it would rely upon the context to make that decision itself.

To take another example from the specification of the present invention, perhaps a new incentive program for a product is created.  If no context were inferred, as in Negrino, customers would be notified of the new incentive program, (i.e. the outcome – a new incentive program, was the basis for the next step in the process– notifying the customer).  The invention

4

of Claim 1 would infer the context before deciding to notify the customer. For instance, whether an outstanding product proposal existed, and whether the program provided a down payment compatible with a customer's profile would be considered. This contextual information would then lead the system to either notify the customer or not do so. Again, the invention of Claim 1 is not limited to cases involving contacting the customer, but applies to any other aspect of the sales process, such as training salespersons. This example is not intended to limit the scope of Claim 1 in any way.

From these examples, and the discussion preceding them, it can be seen that Negrino1 and 2 do not provide an event manager that infers the context in which an event occurs, and it would not have been obvious to add contextual inferencing. Therefore, Claim 1 defines over Negrino1 and 2 and is allowable. Applicant respectfully requests reconsideration and withdrawal of the pending rejection.

Similar to Claim 1, Claim 13 also recites that the context of the event be inferred and that the new action be based upon the inferred context. As stated, Negrino1 and 2 do not describe contextual inferences. Therefore, Claim 13 defines over Negrino1 and 2 and is allowable. Applicants respectfully request reconsideration and withdrawal of the pending rejection.

Similar to Claims 1 and 13, Claim 17 recites that the context of the event be inferred and that the action to be performed is based on the inferred context but also recites that the inferred event is linked with an action based on prior sales experience using the sales system. As stated, Negrino1 and 2 do not describe contextual inferences. Therefore, Claim 17 defines over Negrino1, 2, and Seideman and is allowable. Applicants respectfully request reconsideration and withdrawal of the pending rejection.

Claims 2–12 and 21–27 depend from an allowable Claim 1, Claims 14–16 and 28–43 depend from an allowable Claim 13, and Claims 18–20 depend from an allowable Claim 17. Thus, these dependent claims are also allowable. Applicants respectfully request reconsideration and withdrawal of these pending rejections.

Applicants assert that this is a full and complete response to the Office Action dated April 7, 1999 and request that favorable action be provided in the newly filed CPA to which this preliminary amendment applies. Applicants respectfully request the Examiner to advance the present application to allowance. Additionally, Applicants note that there may be additional arguments and/or amendments in support of patentability. The Applicant reserves the right to raise such arguments or make such amendments in the future.

5

Please contact the undersigned attorney if there are any questions.

Respectfully submitted,

JOHNSON ET AL.,

By their attorneys,

MERCHANT & GOULD P.C.
3100 Norwest Center
90 South Seventh Street
Minneapolis, MN  55402
(612) 332-5300

Date: _____25 Oct 99_____

Richard J. Gregson
Reg. No. 41,804

6



**UNITED STATES DEPA    MENT OF COMMERCE**
Patent and Trademark L   ice
Address: COMMISSIONER OF PATENTS AND TRADEMARKS
Washington, D.C. 20231

| APPLICATION NUMBER | FILING/RECEIPT DATE | FIRST NAMED APPLICANT | ATTY. DOCKET NO./TITLE |
|---|---|---|---|
| 08/550,089 | 10/30/95 | JOHNSON | 7709.72US01 |

MERCHANT GOULD SMITH EDELL
WELTER & SCHMIDT
3100 NORWEST CENTER
SOUTH SEVENTH STREET
MINNEAPOLIS MN 55402-4131

LM71/08                          POINVIL,F

DATE MAILED:
08/26/99

## NOTICE TO FILE MISSING PARTS OF APPLICATION (CPA)

*Filing Date Granted*

The Continued Prosecution Application (CPA) request filed on __8/9/99__ is entitled to a filing date under 37 CFR 1.53(d)(1). The CPA request, however, lacks the filing fee(s) and/or items indicated below.

Applicant is given **TWO MONTHS FROM THE DATE OF THIS NOTICE** within which to file the fee(s), item(s), and any surcharge required below to avoid abandonment of this CPA. Extensions of time may be obtained by filing a petition accompanied by the extension fee under the provisions of 37 CFR 1.136(a).

*The total amount owed by applicant is the sum of items 1(a) or (b), 2, and 3 (if checked) below.*

☒ 1. The statutory basic filing fee is:
   ☒ missing.
   ☐ insufficient.

   *(a). Applicant must submit $_____ to complete the basic filing fee and the $130.00 surcharge set forth in 37 CFR 1.16(e) (non-small entity), or $_____ to complete the basic filing fee as a small entity and the $65.00 surcharge set forth in 37 CFR 1.16(e) and file a small entity statement under 37 CFR 1.27 claiming such status (if the prior application was entitled to small entity status and such status is still proper and desired, a new small entity statement is not required (37 CFR 1.28)).*

   *(b). Applicant must submit $__380.__ to complete the basic filing fee as a small entity and the $65.00 surcharge set forth in 37 CFR 1.16(e).*

☐ 2. Additional claim fees of
   $_____ (non-small entity) or $_____ (small entity) for _____ independent claims over 3.
   $_____ (non-small entity) or $__207__ (small entity) for __25__ claims over 20.
   $_____ (non-small entity) or $_____ (small entity) for multiple dependent claim surcharge.

   *Applicant must either submit the additional claim fees or cancel additional claims for which fees are due.*

☐ 3. A $50.00 processing fee is required since your check was returned without payment (37 CFR 1.21(m)).

☐ 4. The CPA request is unsigned. Applicant must file a signed duplicate or ratification of the CPA request.

☐ 5. Other: _____

### *A copy of this Notice MUST be returned with the reply.*

Direct the reply and any questions about this Notice to:

*Ms. Patience Saegg*

Examining Group __2700__

(703) 30__5-9616__

FORM PTO-2016 (Rev. 12/97)          PART 1 - ATTORNEY/APPLICANT COPY

2368

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

| | | | |
|---|---|---|---|
| Applicant: | JOHNSON ET AL. | Examiner: | F. POINVIL |
| Serial No.: | 08/550,089 | Group Art Unit: | 2761 |
| Filed: | OCTOBER 30, 1995 | Docket: | 7709.72USF1 |
| Due Date: | OCTOBER 26, 1999 | | |
| Title: | INTEGRATED COMPUTERIZED SALES FORCE AUTOMATION SYSTEM | | |

CERTIFICATE UNDER 37 CFR 1.8: The undersigned hereby certifies that this Transmittal Letter and the paper, as described herein, are being deposited in the United States Postal Service, as first class mail, with sufficient postage; in an envelope addressed to: BOX MISSING PARTS  Assistant Commissioner for Patents, Washington, D.C. 20231, on October 25, 1999.

By: _Susan Clark_

BOX MISSING PARTS
Assistant Commissioner for Patents
Washington, D.C. 20231

OCT 27 1999

Sir:

We are transmitting herewith the attached:

☒ Transmittal Sheet in duplicate containing Certificate of Mailing
☒ Preliminary Amendment
☒ Check(s) in the amount of $587.00 to cover the filing fee and $65.00, for  Missing Parts surcharge
☒ Other:  Copy of PTO–2016
☒ Return postcard

Please consider this a PETITION FOR EXTENSION OF TIME for a sufficient number of months to enter these papers, if appropriate.  Please charge any additional fees or credit overpayment to Deposit Account No. 13–2725.  A duplicate of this sheet is enclosed.

MERCHANT & GOULD P.C.
3100 Norwest Center, Minneapolis, MN 55402
(612) 332–5300

By: _____

Name:  Richard J. Gregson
Reg. No.:  41,804
RG:PSTslc

(PTO TRANSMITTAL – GENERAL)

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

| | | | |
|---|---|---|---|
| Applicant: | JOHNSON ET AL. | Examiner: | F. POINVIL |
| Serial No.: | 08/550,089 | Group Art Unit: | 2761 |
| Filed: | OCTOBER 30, 1995 | Docket: | 7709.72USF1 |
| Due Date: | OCTOBER 26, 1999 | | |
| Title: | INTEGRATED COMPUTERIZED SALES FORCE AUTOMATION SYSTEM | | |

CERTIFICATE UNDER 37 CFR 1.8: The undersigned hereby certifies that this Transmittal Letter and the paper, as described herein, are being deposited in the United States Postal Service, as first class mail, with sufficient postage, in an envelope addressed to: BOX MISSING PARTS Assistant Commissioner for Patents, Washington, D.C. 20231, on October 25, 1999.

By: _Susan Clark_

BOX MISSING PARTS
Assistant Commissioner for Patents
Washington, D.C. 20231

Sir:

We are transmitting herewith the attached:

☒ Transmittal Sheet in duplicate containing Certificate of Mailing
☒ Preliminary Amendment
☒ Check(s) in the amount of $587.00 to cover the filing fee and $65.00, for Missing Parts surcharge
☒ Other: Copy of PTO-2016
☒ Return postcard

Please consider this a PETITION FOR EXTENSION OF TIME for a sufficient number of months to enter these papers, if appropriate. Please charge any additional fees or credit overpayment to Deposit Account No. 13-2725. A duplicate of this sheet is enclosed.

MERCHANT & GOULD P.C.
3100 Norwest Center, Minneapolis, MN 55402
(612) 332-5300

By: _____
Name: Richard J. Gregson
Reg. No.: 41,804
RG:PSTslc

(PTO TRANSMITTAL – GENERAL)



**UNITED STATES DEPARTMENT OF COMMERCE**
**Patent and Trademark Office**
Address:   COMMISSIONER OF PATENTS AND TRADEMARKS
               Washington, D.C. 20231

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. |
|---|---|---|---|
| 08/550,089 | 10/30/95 | JOHNSON | 7769.72US01 |

LM71/1220

MERCHANT GOULD SMITH EDELL
WELTER & SCHMIDT
3100 NORWEST CENTER
90 SOUTH SEVENTH STREET
MINNEAPOLIS MN 55402-4131

| EXAMINER |
|---|
| POINVIL,F |

| ART UNIT | PAPER NUMBER |
|---|---|
| 2768 | 20 |

DATE MAILED:   12/20/99

**Please find below and/or attached an Office communication concerning this application or proceeding.**

Commissioner of Patents and Trademarks

| | Application No. 08/550,089 | Applicant(s) Johnson et al. |
|---|---|---|
| ***Notice of Allowability*** | Examiner Frantzy Poinvil | Group Art Unit 2768 |

All claims being allowable, PROSECUTION ON THE MERITS IS (OR REMAINS) CLOSED in this application. If not included herewith (or previously mailed), a Notice of Allowance and Issue Fee Due or other appropriate communication will be mailed in due course.

[X] This communication is responsive to ___the CPA filed 8/9/99___

[X] The allowed claim(s) is/are ___1-43___

[ ] The drawings filed on _____ are acceptable.

[ ] Acknowledgement is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d).

    [ ] All [ ] Some* [ ] None of the CERTIFIED copies of the priority documents have been

        [ ] received.

        [ ] received in Application No. (Series Code/Serial Number) _____ .

        [ ] received in this national stage application from the International Bureau (PCT Rule 17.2(a)).

    *Certified copies not received: _____

[ ] Acknowledgement is made of a claim for domestic priority under 35 U.S.C. § 119(e).

A SHORTENED STATUTORY PERIOD FOR RESPONSE to comply with the requirements noted below is set to EXPIRE THREE MONTHS FROM THE "DATE MAILED" of this Office action. Failure to timely comply will result in ABANDONMENT of this application. Extensions of time may be obtained under the provisions of 37 CFR 1.136(a).

[ ] Note the attached EXAMINER'S AMENDMENT or NOTICE OF INFORMAL APPLICATION, PTO-152, which discloses that the oath or declaration is deficient. A SUBSTITUTE OATH OR DECLARATION IS REQUIRED.

[X] Applicant MUST submit NEW FORMAL DRAWINGS

    [ ] because the originally filed drawings were declared by applicant to be informal.

    [X] including changes required by the Notice of Draftsperson's Patent Drawing Review, PTO-948, attached hereto or to Paper No. ___6___ .

    [ ] including changes required by the proposed drawing correction filed on _____ , which has been approved by the examiner.

    [ ] including changes required by the attached Examiner's Amendment/Comment.

    **Identifying indicia such as the application number (see 37 CFR 1.84(c)) should be written on the reverse side of the drawings. The drawings should be filed as a separate paper with a transmittal letter addressed to the Official Draftsperson.**

[ ] Note the attached Examiner's comment regarding REQUIREMENT FOR THE DEPOSIT OF BIOLOGICAL MATERIAL.

Any response to this letter should include, in the upper right hand corner, the APPLICATION NUMBER (SERIES CODE/SERIAL NUMBER). If applicant has received a Notice of Allowance and Issue Fee Due, the ISSUE BATCH NUMBER and DATE of the NOTICE OF ALLOWANCE should also be included.

**Attachment(s)**

    [ ] Notice of References Cited, PTO-892

    [ ] Information Disclosure Statement(s), PTO-1449, Paper No(s). _____

    [ ] Notice of Draftsperson's Patent Drawing Review, PTO-948

    [ ] Notice of Informal Patent Application, PTO-152

    [ ] Interview Summary, PTO-413

    [ ] Examiner's Amendment/Comment

    [ ] Examiner's Comment Regarding Requirement for Deposit of Biological Material

    [X] Examiner's Statement of Reasons for Allowance

*F. Poinvil*
**FRANTZY POINVIL**
PRIMARY EXAMINER
*AU 2768*

Serial Number: 08/550,089

Art Unit: 2768

## DETAILED ACTION

1.    The following is an Examiner's Statement of Reasons for Allowance:

The prior art taken alone or in combination fails to teach or suggest an event manager inferring occurrence of the event and a context in which the event occurred based at least in part of the detected changes in state characteristic and initiate an operation in one or more subsystems as argued in the remarks and as recited in independent claim 1.

The prior art taken alone or in combination fails to teach or suggest inferring occurrence of the event and a context in which the event occurred based at least in part on detected changes in state and initiating an operation in one or more subsystem as argued in the remarks and as recited in independent claim 13.

The prior art taken alone or in combination fails to teach or suggest an event manager to link the inferred event with an action to be performed during the sales process based on prior sales experience and initiate an operation using one or more subsystem to facilitate the action to be performed as argued in the remarks and as recited in independent claim 17.

Any comments considered necessary by applicant must be submitted no later than the payment of the Issue Fee and, to avoid processing delays, should preferably accompany the Issue Fee.  Such submissions should be clearly labeled "Comments on Statement of Reasons for Allowance."

Serial Number: 08/550,089                                                        Page 3

Art Unit: 2768


3.      Any inquiry concerning this communication or earlier communications from the examiner
should be directed to Frantzy Poinvil whose telephone number is (703) 305-9779.  The examiner
can normally be reached on Monday-Friday from 8:30AM to 5:00.
        The fax phone number for this Group is (703) 305-0040.
        Any inquiry of a general nature or relating to the status of this application or proceeding
should be directed to the Group receptionist whose telephone number is (703) 305-3900.


Frantzy Poinvil
December 19, 1999

FRANTZY POINVIL
PRIMARY EXAMINER
AU 2768



**UNITED STATES DEPARTMENT OF COMMERCE**
**Patent and Trademark Office**

## NOTICE OF ALLOWANCE AND ISSUE FEE DUE

HN717122M

MERCHANT GOULD SMITH EDELL
WELTER & SCHMIDT
3100 NORWEST CENTER
90 SOUTH SEVENTH STREET
MINNEAPOLIS MN 55402-4131

| APPLICATION NO. | FILING DATE | TOTAL CLAIMS | EXAMINER AND GROUP ART UNIT | | DATE MAILED |
|---|---|---|---|---|---|
| 08/550,089 | 10/30/95 | 043 | POHNIL, F | 2768 | 12/20/99 |

First Named Applicant    JOHNSON,                    35 USC 154(b) term ext. =    0 Days.

TLE OF VENTION INTEGRATED COMPUTERIZED SALES FORCE AUTOMATION SYSTEM

| ATTY'S DOCKET NO. | CLASS-SUBCLASS | BATCH NO. | APPLN. TYPE | SMALL ENTITY | FEE DUE | DATE DUE |
|---|---|---|---|---|---|---|
| 7709.72US01 | 395-210.000 | P95 | UTILITY | YES | $605.00 | 03/20/00 |

**THE APPLICATION IDENTIFIED ABOVE HAS BEEN EXAMINED AND IS ALLOWED FOR ISSUANCE AS A PATENT.**
**PROSECUTION ON THE MERITS IS CLOSED.**

**THE ISSUE FEE MUST BE PAID WITHIN THREE MONTHS FROM THE MAILING DATE OF THIS NOTICE OR THIS APPLICATION SHALL BE REGARDED AS ABANDONED. THIS STATUTORY PERIOD CANNOT BE EXTENDED.**

## HOW TO RESPOND TO THIS NOTICE:

Review the SMALL ENTITY status shown above.
If the SMALL ENTITY is shown as YES, verify your current SMALL ENTITY status:

A. If the status is changed, pay twice the amount of the FEE DUE shown above and notify the Patent and Trademark Office of the change in status, or
B. If the status is the same, pay the FEE DUE shown above.

If the SMALL ENTITY is shown as NO:

A. Pay FEE DUE shown above, or

B. File verified statement of Small Entity Status before, or with, payment of 1/2 the FEE DUE shown above.

I. Part B-Issue Fee Transmittal should be completed and returned to the Patent and Trademark Office (PTO) with your ISSUE FEE. Even if the ISSUE FEE has already been paid by charge to deposit account, Part B Issue Fee Transmittal should be completed and returned. If you are charging the ISSUE FEE to your deposit account, section "4b" of Part B-Issue Fee Transmittal should be completed and an extra copy of the form should be submitted.

II. All communications regarding this application must give application number and batch number.
Please direct all communications prior to issuance to Box ISSUE FEE unless advised to the contrary.

**IMPORTANT REMINDER: Utility patents issuing on applications filed on or after Dec. 12, 1980 may require payment of maintenance fees. It is patentee's responsibility to ensure timely payment of maintenance fees when due.**

**PATENT AND TRADEMARK OFFICE COPY**
PTOL-85 (REV. 10-96) Approved for use through 06/30/99. (0651-0033)          *U.S. GPO: 1999-454-457/24601

#21
aMW
04-24-00

S/N 08/550,089                                                                    PATENT

**Date of Notice of Allowance: DECEMBER 20, 1999**
**Batch No.: F95**

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

| | | | |
|---|---|---|---|
| Applicant: | JOHNSON ET AL. | Examiner: | F. POINVIL |
| Serial No.: | 08/550,089 | Group Art Unit: | 2768 |
| Filed: | OCTOBER 30, 1995 | Docket No.: | 7709.72USF1 |
| Title: | INTEGRATED COMPUTERIZED SALES FORCE AUTOMATION SYSTEM | | |

CERTIFICATE UNDER 37 CFR 1.8: The undersigned hereby certifies that this correspondence is being deposited in the United States Postal Service, as first class mail, with sufficient postage, in an envelope addressed to: BOX ISSUE FEE, Assistant Commissioner for Patents, Washington, D.C. 20231 on March 20, 2000.

MAR 2 7 2000

By: _Michele A. Read_
Name: _Michele A. Read_

**CHANGE OF ADDRESS**

BOX ISSUE FEE
Assistant Commissioner for Patents
Washington, D.C.  20231

Dear Sir:

Please change the correspondence address for the above—referenced patent application to:

Merchant & Gould P.C.
P.O. Box 2903
Minneapolis, Minnesota 55402—0903

If there are any questions regarding this matter, please call the undersigned at 612.332.5300.

Respectfully submitted,

MERCHANT & GOULD P.C.
P.O. Box 2903
Minneapolis, Minnesota 55402—0903
(613) 332—5300

Date: _20 March 2000_

Richard J. Gregson
Reg. No. 41,804
RG:PSTmar

B4

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

| | | | |
|---|---|---|---|
| Applicant: | JOHNSON ET AL. | Examiner: | F. POINVIL |
| Serial No.: | 08/550,089 | Group Art Unit: | 2768 |
| Filed: | OCTOBER 30, 1995 | Docket No.: | 7709.72USF1 |
| Notice of Allow. Date: | DECEMBER 20, 1999 | Batch No.: | F95 |
| Due Date: | MARCH 20, 2000 | | |
| Title: | INTEGRATED COMPUTERIZED SALES FORCE AUTOMATION SYSTEM | | |

CERTIFICATE UNDER 37 CFR 1.8:  The undersigned hereby certifies that this Transmittal Letter and the paper, as described herein, are being deposited in the United States Postal Service, as first class mail, with sufficient postage, in an envelope addressed to:  BOX ISSUE FEE Assistant Commissioner for Patents, Washington, D.C. 20231, on March 20, 2000.

By: _Michele A. Read_
Michele A. Read

BOX ISSUE FEE
Assistant Commissioner for Patents
Washington, D.C. 20231

Sir:

We are transmitting herewith the attached:

☒ Transmittal Sheet in duplicate containing Certificate of Mailing
☒ Small entity status has been previously submitted
☒ Issue Fee Transmittal Part B (PTOL – 85B)
☒ Submission of Formal Drawings, 30 Sheets of Formal Drawings
☒ Check(s) in the amount of $605.00 and $33.00, for Issue Fee and Advance Patent Copy Order
☒ Other: Change of Address
☒ Return postcard

Please consider this a PETITION FOR EXTENSION OF TIME for a sufficient number of months to enter these papers, if appropriate.  Please charge any additional fees or credit overpayment to Deposit Account No. 13–2725. A duplicate of this sheet is enclosed.

MERCHANT & GOULD P.C.
P.O. Box 2903, Minneapolis, MN 55402–0903
(612) 332–5300

By: _Richard J. Gregson_
Name: Richard J. Gregson
Reg. No.: 41,804
RG:PSTmar

OK to Enter

(PTO TRANSMITTAL – GENERAL)

S/N 08/550,089                                                    PATENT

Date of Notice of Allowance: **DECEMBER 20, 1999**
                                        **Batch No.: F95**

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

| Applicant: | JOHNSON ET AL. | Examiner: | F. POINVIL |
|---|---|---|---|
| Serial No.: | 08/550,089 | Group Art Unit: | 2768 |
| Filed: | OCTOBER 30, 1995 | Docket No.: | 7709.72USF1 |
| Title: | INTEGRATED COMPUTERIZED SALES FORCE AUTOMATION SYSTEM | | |

CERTIFICATE UNDER 37 CFR 1.8:
I hereby certify that this correspondence is being deposited with the United States Postal Service as first class mail, with sufficient postage, in an envelope addressed to: Assistant Commissioner for Patents, Washington, D.C. 20231 on March 20, 2000.

*Michele A. Reed*
( Michele A. Reed

## SUBMISSION OF FORMAL DRAWINGS

Assistant Commissioner for Patents
Attn: Official Draftsman
Washington, D.C. 20231

Dear Sir:

Submitted herewith are 30 sheet(s) of Formal Drawings for completion of this application, and in compliance with the requirements of the Official Communication from the Examiner dated December 20, 1999.

Respectfully submitted,

MERCHANT & GOULD P.C.
P.O. Box 2903
Minneapolis, Minnesota 55402−0903
612/332−5300

Dated: 20 March 2000

Richard J. Gregson
Reg. No. 41,804
RG:PSTmar

6067525

## *Fig.1*





*Fig.2*

10
102
104
106
108
110
112A
LEAD GENER-ATION
TIME WITH CUSTOMER
ORDER MGMT
CUSTOMER RETENTION
SELF MGMT
SALES MGMT
API
202A
202
204A
204
206A
206
208
208A
210A
210
212A
212
216
216A
DATA
116A
EVENT MANAGER
203A
201A
203B
218
218A
COMMUNICATIONS
118A
214A
TRAINING
114
205A
SYSTEM ADMIN.
205
215
215A
1104
116B
216B
203C
201B
203D
116
226
228
233
225
205A
207A
227
229
231
209A
211A
DATA TOOLS
SYSTEM TOOLS
ENTERPRISE SYSTEMS
DEALER SYSTEMS
205
207
209
208A
211
213
200
20

*Fig.3*



*Fig.4*



## *Fig.5*



*Fig.6*



## *Fig.7*



*Fig.8*

*Fig.9*



*Fig.10A*

API
EVENT MANAGER
201A
API
DATA
1050
MANUFACTURER
1011
SERVICES
1012
TESTIMONIALS
1013
ORDER REQUIREMENTS
1014
FINANCIAL
FINANCE AND LEASE RATES, TERMS,INCENTIVES,ETC.
1015
TEMPLATES OF PROPOSALS AND PRESENTATIONS DEFAULTS
1016
PRODUCT INFORMATION
FEATURES & BENEFITS
SPECS
COMPETITIVE SPECIFICATIONS
COMPETITIVE PRICING
HEAD- TO- HEAD
WARRANTY
1017
CONFIGURATION
BASE MODEL
STANDARD EQUIPMENT
OPTIONS,PRICES
WEIGHTS
CHARACTERISTICS
RELATIONSHIPS
1010
INTERNATIONAL
1021
SCREENS,MENUS AND PRINT TEXT
1022
COUNTRY-SUPPLIED PRODUCTS
COUNTRY RULES, CURRENCIES,ETC.
1023
1020
LOCALE
1031
LOCALE RULES
1032
TEMPLATES OF PROPOSAL AND PRESENTATIONS DEFAULTS
1033
LOCALLY-SUPPLIED PRODUCTS AND SERVICES
1034
ARCHIVE
1030
SALESPERSON
1041
PRESENTATIONS AND PROPOSALS
1042
ORDERS
1043
CONTACTS, CALENDAR AND TO-DO
1044
CUSTOMERS, LEADS AND OTHER NAMES
1040



*Fig.10B*

1065
1066
1070
116B
MANUFACTURER
1061
SERVICES
1062
TESTIMONIALS
1063
FINANCIAL
FINANCE AND
LEASE RATES,
TERMS,
INCENTIVES,
ETC.
1064
TEMPLATES OF
PROPOSALS AND
PRESENTATIONS
DEFAULTS
PRODUCT INFORMATION
FEATURES AND
BENEFITS SPECS
COMPETITIVE
SPECIFICATIONS
COMPETITIVE
PRICING
HEAD-TO-HEAD
WARRANTY,ETC.
CONFIGURATION
BASE MODEL
STANDARD
EQUIPMENT
OPTIONS
PRICES
WEIGHTS
CHARACTERISTICS
RELATIONSHIPS
ADMINISTRATION
1071
ACCOUNT DATA
1072
RELEASE DATA
INTERNATIONAL
1081
SCREENS,MENUS
AND
PRINT TEXT
1082
COUNTRY-SUPPLIED
PRODUCTS
1083
COUNTRY RULES,
CURRENCIES,ETC.
API
DATA
MANAGER
1090
1060
1080
API
EVENT
MANAGER
201B



*Fig.11*

# Fig.12



*Fig.13*



# *Fig.14*



# Fig.15A

| Local Information Storage | Time With Customer | | | | | | Self Management | | | | | | | | Training | | | Pre-Sales | | Order Management | Customer Retention | Sales Management | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | Customer | Product | Configuration | Order | Follow-up | Prospecting | Opportunity | Scheduling | Contact | Filing | Territory | Time | Reach | Competition | System | Products | Skills | Kiosks | Leads | Order Submittal | Direct Mktg | Opportunity | Contact | Filing | Company |
| **Customer Info** | | | | | | | | | | | | | | | | | | | | | | | | | |
| ID Number | • | # | # | # | # | # | | # | • | # | # | | | # | | | | | • | • | # | • | # | • | # | # |
| Account Number | • | # | # | # | # | # | | # | • | # | # | | | # | | | | | • | • | # | • | # | • | # | # |
| Address | • | # | # | # | # | # | | # | • | # | # | | | # | | | | | • | • | # | • | # | • | # | # |
| Business Name | • | # | # | # | # | # | | # | • | # | # | | | # | | | | | • | • | # | • | # | • | # | # |
| City | • | # | # | # | # | # | | # | • | # | # | | | # | | | | | • | • | # | • | # | • | # | # |
| County | • | # | # | # | # | # | | # | • | # | # | | | # | | | | | • | • | # | • | # | • | # | # |
| State | • | # | # | # | # | # | | # | • | # | # | | | # | | | | | • | • | # | • | # | • | # | # |
| Zip Code | • | # | # | # | # | # | | # | • | # | # | | | # | | | | | • | • | # | • | # | • | # | # |
| Country | • | # | # | # | # | # | | # | • | # | # | | | # | | | | | • | • | # | • | # | • | # | # |
| Phone Number | • | # | # | # | # | # | | # | • | # | # | | | # | | | | | • | • | # | • | # | • | # | # |
| Fax Number | • | # | # | # | # | # | | # | • | # | # | | | # | | | | | • | • | # | • | # | • | # | # |
| Type of Customer | • | # | # | # | # | # | | # | • | # | # | | | # | | | | | • | • | # | • | # | • | # | # |
| Initial Contact Date | • | | | | | | | • | | | | | | | | | | | | • | | • | | | | |
| Last Update Date | • | | | | | | | • | | | | | | | # | | | | | • | | • | | | | |
| **Product Info** | | | | | | | | | | | | | | | | | | | | | | | | | |
| Product Graphics | | • | # | | | # | | | | | | | | | # | # | | # | | | | | | | |
| Specifications | | # | # | | | # | | | | | | | | | # | # | | # | | | | | | | |
| Competitive Specs | | | • | | | # | | | | | | | | | # | # | | # | | | | | | | |
| Head-to-Head Info | | # | | | | # | | | | | | | | | # | # | | # | | | | | | | |
| Bid Spec Info | | # | | | | # | | | | | | | | | # | | | # | | | | | | | |
| Dealership Mktg Info | | # | | | | # | | | | | | | | | # | | | # | | | | | | | |
| Salesperson Info | | # | | | | # | | | | | | | | | # | | | # | | | | | | | |
| **Configuration Info** | | | | | | | | | | | | | | | | | | | | | | | | | |
| Model(s) Selected | | • | # | • | # | # | # | | # | | | | | | | | | # | • | # | | # | | # | # |
| Description | | • | # | | # | # | | | | | | | | | | | | # | • | # | | # | | # | # |
| Total Price | | • | # | # | # | # | # | | # | | | | | | | | | # | • | # | | # | | # | # |
| Freight Cost | | • | | | # | # | | | | | | | | | | | | # | • | # | | # | | # | # |
| Total Weight | | • | | | # | # | | | | | | | | | | | | # | • | # | | | | | |
| Spec ID | | • | # | | # | # | | | | | | | | | | | | # | • | # | | | | | |
| Date Created | | • | | | # | # | | | | | | | | | | | | # | • | # | | | | | |
| Quote ID | | • | # | | # | # | | | | | | | | | | | | # | • | # | | | | | |
| Selected Options | | • | # | # | # | # | # | | # | | | | | | | | | # | • | # | | # | | # | # |
| Option Descriptions | | • | # | | # | # | # | | # | | | | | | | | | # | • | # | | # | | # | # |
| Option Codes | | • | # | | # | # | | | | | | | | | | | | # | • | # | | # | | # | # |
| Option Weights | | • | | | # | # | | | | | | | | | | | | # | • | # | | | | | |
| Option Prices | | • | | | # | # | | | | | | | | | | | | # | • | # | | | | | |
| Option Compatibility | | • | | | # | # | | | | | | | | | | | | # | • | # | | | | | |
| Option Notes | | • | | | # | # | | | | | | | | | | | | # | • | # | | | | | |
| Option Quantities | | • | | | # | # | | | | | | | | | | | | # | • | # | | # | | # | # |
| Incentive Info | | • | | | # | # | | | | | | | | | | | | # | • | # | | | | | |
| Desired Performance | | • | | | # | # | # | | # | | | | | | | | | # | • | # | | | | | |
| Special Opt Desc. | | • | | | # | # | | | | | | | | | | | | # | • | # | | # | | # | # |
| Special Opt Codes | | • | | | # | # | | | | | | | | | | | | # | • | # | | # | | # | # |
| Special Opt Weights | | • | | | # | # | | | | | | | | | | | | # | • | # | | | | | |
| Special Opt Prices | | • | | | # | # | | | | | | | | | | | | # | • | # | | | | | |
| Special Opt Notes | | • | | | # | # | | | | | | | | | | | | # | • | # | | | | | |
| **Order Info** | | | | | | | | | | | | | | | | | | | | | | | | | |
| Order ID | | | | • | # | # | # | | # | | | | | | | | | # | • | • | | # | | # | # |
| Billing Information | | | | • | # | # | # | | # | | | | | | | | | # | • | • | | # | | # | # |
| Special Ordering Instructions. | | | | • | # | # | # | | # | | | | | | | | | # | • | • | | # | | # | # |
| **Trade-In Info** | | | | | | | | | | | | | | | | | | | | | | | | | |
| Description | | | | • | # | # | # | | # | | | | | | | | | # | • | | | # | | # | # |
| Quantity | | | | • | # | # | # | | # | | | | | | | | | # | • | | | # | | # | # |
| Allowance | | | | • | # | # | # | | # | | | | | | | | | # | • | | | # | | # | # |
| Debt | | | | • | # | # | # | | # | | | | | | | | | # | • | | | # | | # | # |
| Refurbish | | | | • | # | # | # | | # | | | | | | | | | # | • | | | # | | # | # |
| Expected Sales Value | | | | | | | # | | # | | | | | | | | | | | | | # | | # | # |
| Lien Holder Info | | | | | | | | | | | | | | | | | | | | | | | | | |

# Fig.15B

| Local Information Storage | Time With Customer | Self Management | Training | Pre-Sales | Order Management | Customer Retention | Sales Management |
|---|---|---|---|---|---|---|---|

**Quote Info**
- Unit Quantity
- Quoted Price
- Discount Description
- Discount Amount
- Addition Description
- Addition Amount
- Tax/Fee Description
- Tax/Fee Amount
- Tax/Fee Basis
- Tax/Fee Percent
- Tax/Fee Type
- Profit Margin

**Finance Info**
- Plan Name
- Plan Price
- Plan Amount Down
- Insurance Descriptions
- Insurance Costs
- Payment Method
- Payment Type
- Interest Type
- Interest Rate
- Term
- Contract Date
- Interest Start Date
- Payment Start Date
- # of Skip Payments
- Balloon Amount
- Payment Amount
- Incentive Info
- Feature/Benefit Info
- Credit App Info
- Contract Info

**Graphics**

**Life Cycle Info**
- Cost Category Names
- Cost Category Amounts
- Comparison Unit Description
- Comparison Unit Amounts

**Set-Up Info**
- Dealership Number
- Dealership Name
- Dealership Address
- Dealership County
- Dealership State
- Dealership Zip Code
- Dealership Phone #
- Dealership Fax #

**Dealership Mktg Info**

**Dealer Option Descs**
- Dealer Option Prices
- Dealer Option Codes
- Dealer Option Wghts

**Salesperson Resumes**

## Fig.15C

| Local Information Storage | Time With Customer | | | | | | | | Self Management | | | | | | | | | Training | | | Pre-Sales | | Order Management | Customer Retention | Sales Management | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | Customer | Prospect | Colleague | QuoteFollowup | Literature | PhoneCall | Presentation | Proposal | Quote | SpecialConcert | Config | Forecast | TestDrive | Training | ReferralScan | Recruit | CallResolution | Syllabus | ProductInfo | Slides | Leads | LeadsDistribute | Orders | Demolishing | Opportunity | Plan | Finance | Comission |
| **Salesperson Passwords** | s | s | s | s | s | s | s | s | s | s | s | s | s | s | s | s | | | | | | | | | | | s | s | s | s |
| **Salesperson Privileges** | s | s | s | s | s | s | s | s | s | s | s | s | s | s | s | s | | | | | | | | | | | s | s | s | s |
| | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| *Proposal Templates* | | | | | | s | | | | | | | | | | | | | | | | | | | | | | | | |
| *Presentation Templates* | | | | | | | s | | | | | | | | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| *Finance Plan Parameters* | | | | s | | | | | | | | | | | | | | | | | | | | | | | | | | |
| *Finance Plan Defaults* | | | | s | | | | | | | | | | | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| *Quote Tax Defaults* | | | s | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| *Quote Profit Margin Default* | | | s | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| *Default Model Configuration* | | s | | | | | | | | | | | | | | | | | | | | | s | | | | | | | |
| | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| *Presentation Info* | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| Template Definition | | | | | | | | s | | | | | | | | | | | | | | | | | | | | | | |
| Setup Definition | | | | | | | | s | | | | | | | | | | | | | | | | | | | | | | |
| Slide Contents | | | | | | | | s | | | | | | | | | | s | | | | | | | | | s | | | |
| | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| *Proposal Info* | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| Template Definition | | | | | | | | s | | | | | | | | | | | | | | | | | | | | | | |
| Setup Definition | | | | | | | | s | | | | | | | | | | | | | | | | | | | | | | |
| Report Contents | | | | | | | | s | | | | | | | | | | s | | | | | | | | | s | | | |



*Fig.16*

ACCESS/GENERATE CUSTOMER INFORMATION — S101

TAG FEATURES, BENEFITS COMPETITIVE INFORMATION WITH PRODUCT MODULE — S102

GENERATE CUSTOMER SOLUTION WITH CONFIGURATOR MODULE — S103

PREPARE QUOTE, FINANCE AND OTHER INFORMATION WITH RESPECTIVE MODULES — S104

EDIT PROPOSAL — S105

GENERATE,PRINT AND SAVE PROPOSAL — S106

UPDATE OPPORTUNITY AND FORCAST DATA STATUS — S107

TRANSMIT OPPORTUNITY STATUS TO BACK OFFICE AT NEXT CONNECTED SESSION — S108

RECEIVE OPPORTUNITY STATUS UPDATE IN BACK OFFICE — S109

UPDATE SALES MANAGEMENT FORCAST — S110

END

*Fig.17*

INITIATE ORDER PROCESS
S201
CHECK ORDER REQUIREMENTS
S202
RETRIEVE CONFIGURATION
S203
CREATE WORK SESSION FILE
S204
SYSTEM ACCESS CONFIGURATION MODULE TO MODIFY CONFIGURATION
S205
SYSTEM ACCESS CUSTOMER MODULE TO UPDATE CUSTOMER INFORMATION
S206
PROMPT USER FOR ADDITIONAL ORDER INFORMATION
S207
CHECK USER STATUS
S208
TRANSFER ORDER TO OUTBOX
S209
STORE RECORD OF ORDER
S210
UPDATE OPPORTUNITY STATUS
S211
ADD FOLLOW-UP ITEMS TO TO-DO LIST
S212
TRANSMIT ORDER TO BACK OFFICE AT NEXT CONNECTION
S213
RECEIVE ORDER
S214
TRANSFER ORDER TO ENTERPRISE SYSTEM FOR PROCESSING
S215
UPDATE SALES MANAGEMENT TO REFLECT ORDER
S216
TRANSMIT ORDER ACKNOWLEDGEMENT
S217
NOTIFY SALESPERSON OF ACKNOWLEDGEMENT
S218
END



*Fig.18*



UPDATE PRICE WITH CONFIGURATION DATA TOOL — S301

TRANSFER PRICE CHANGE TO GLOBAL INFORMATION STORAGE — S302

TRANSFER UPDATED DATA TO COMMUNICATIONS COMPONENT — S303

CHECK USER DATA FILE — S304

RECEIVE ORDER — S305

TRANSFER ORDER TO ENTERPRISE SYSTEM FOR PROCESSING — S306

UPDATE SALES MANAGEMENT TO REFLECT ORDER — S307

TRANSMIT ORDER ACKNOWLEDGEMENT — S308

NOTIFY SALESPERSON OF ACKNOWLEDGEMENT — S309

END

*Fig.19*



*Fig.20*



# Fig.21A

| Component | Event | Related Module | "Paired" Event - *System Intelligence* |
|---|---|---|---|
| | | | *EXAMPLES* |
| 1. Pre-Sales (Lead Management) | a) Salesperson identifies leads for particular products | Contact Management | • Linked to 1(d) and 1(e) to bring leads to the salesperson and to 3(a, b, c) to notify salesperson of the recommended actions and process |
| | b) A directed mailing for a particular product is sent out | Contact Management, Product | • Linked to 1(a), 2(a), and 2(c) to send out product information targeted at the specific market audience |
| | c) Promotional materials on new incentive program for product are mailed out | Contact Management | • Linked to 2(c), 2(h), and 5(a) to send out information on new incentive program to customers to which proposals for the product have been generated but an order is not yet submitted. |
| | d) A customer contacts an Internet Web-site to get product information | Product | • Linked to 1(a) and 3(a) to notify to salesperson of the contact and schedule a follow-up and to 2(a) to communicate known requirements directly to the sales person |
| | e) A customer uses a kiosk to gain information on a product or service and request follow-up call from company representative | | • Linked to 1(a) and 3(a) to notify to salesperson of the contact and schedule a follow-up and to 2(a) to communicate known requirements directly to the sales person |
| | f) Salesperson profiles the lead based on key criteria | Contact Management, Product | • Linked to 2(a) and 1(d, e) to profile the client according to best recommended practices |
| | g) Salesperson identifies a lead as "qualified" and begins the sales process to close the sale | Objective Management, Contact Management, Time Management | • Linked to 3(a, i) to prompt the salesperson to schedule follow-up<br>Linked to 1(f) and 3(f) to assign an appropriate process with steps to close the sale<br>Linked to 3(d) and 7(a) to revise the forecast based on the new sales opportunity |
| | h) *Salesperson fails to make any initial contact or follow-up to a qualified lead* | | • Linked to 7(b, c, e) to advise the sales manager of this inactivity.<br>Linked to 3(j) to automatically add a training element into the salesperson's curriculum and schedule |
| 2. Time With the Customer | a) Salesperson interacts with the customer to build a needs analysis | Contact Management, Configurator | • Linked to 2(c-g) which enables the system to use the profile information to direct or limit available solutions |
| | b) Salesperson presents product and service information (features and benefits) to the customer | Product | • Linked to 3(f) to identify this step of the sales process as complete |
| | c) Salesperson configures a product and service solution for a customer | Configurator | |

# Fig.21B

| Component | Event | Related Module | "Paired" Event - *System Intelligence* |
|---|---|---|---|
| 2. Time With the Customer | d) Salesperson verifies the accuracy and applicability of the solution with business requirements and customer requirements | Configurator, Contact Management | • Linked to 2(c), the system will prompt the salesperson for additional information to assure the best solution has been identified |
| | e) Salesperson calculates a total cost of the solution for the customer based on quantity, discounts, taxes, programs, etc. | Quote | |
| | f) Salesperson identifies purchasing and financing options for the product(s) offered to the customer | Finance | |
| | g) Salesperson identifies delivery options and timing for the solution by reviewing available inventory or manufacturing slots | Inventory | |
| | h) Salesperson prints a proposal for a customer | Proposal | • The system marks the sales step as complete (3f), recalculates the probability of closing the sale(3d, 7a) and prompts the salesperson to accept or confirm the schedule for the follow-up (3i). |
| | i) Salesperson presents the proposed product and service solution to other decision makers at the customer | Presentation | • The system marks the sales step as complete (3f), recalculates the probability of closing the sale(3d, 7a) and prompts the salesperson to accept or confirm the schedule for the follow-up (3i). |
| | *j) A salesperson frequently fails to offer creative finance options when proposing a finance payment for a product purchase* | | • The system adds and schedules a required product training item to the training curriculum; linked to 6(a, b) |
| | *k) A salesperson's frequency of proposing a particular product or service is below the geographic or divisional norm* | | • The system adds and schedules a required product training item to the training curriculum; linked to 6(a, b) |

The labels above the table: 2101 (Component), 2102 (Event), 2103 (Related Module), 2104 ("Paired" Event)

# Fig.21C

| Component | Event | | Related Module | "Paired" Event - *System Intelligence* |
|---|---|---|---|---|
| 2101 | 2102 | | 2103 | 2104 |
| 3. Self-Management | a) | Salesperson qualifies a lead and schedules a customer visit | Contact Management, Time Management | • Linked to 1(a, g) for lead qualification, 3(f) to assign a process for closing the sale, 3(i) to schedule the process steps, and to 3(d) and 7(a) to trigger a change to the calculated forecast |
| | b) | Salesperson creates a prioritized list of contacts and customers | Objective Management | |
| | c) | Salesperson creates a list of active sales opportunities | Objective Management, Contact Management | • Linked with 3(d) and 7(a) to calculate a forecast |
| | d) | Salesperson develops a forecast | Forecasting | • Linked to all steps of the sales process and subsequently linked to 3(d) and 7(a) to calculate maintain an accurate forecast relative to process status |
| | e) | Salesperson identifies sales objectives | Objective Management | • Linked to 3(d, f) to track against the forecast and 3(c) to check status |
| | f) | Salesperson completes planned steps of a process related to closing a sale | Objective Management | • Linked to all steps of the sales process and subsequently linked to 3(d) and 7(a) to calculate maintain an accurate forecast relative to process status |
| | g) | Salesperson calculates commission | Forecasting | • Automated by links to sales manager 7(a-d) |
| | h) | Salesperson reports sales status and contact history to sales manager | Forecasting, Contact Management | • Linked to all aspects of the sales process |
| | i) | Salesperson and customer generate an action item (task) for follow-up | Time Management | • Linked to 3(i), 6(b-d), and 7(c) Linked to other sales processes by systematically identifying areas for improvement and scheduling targeted training |
| | j) | Salesperson schedules time to meet training requirements | Time Management, Training | • Linked to 2(f) to automatically identify the date of pay-off |
| | k) | Salesperson schedules a sales call follow-up for sixty days before the end of a customers financing pay-off date | Time Management | • The system adds and schedules a required skills training item to the training curriculum; linked to 6(a, b) |
| | l) | *A salesperson's length of time to close a sales is significantly longer than the norm* | | |

# *Fig.21D*

| Component | Event | | Related Module | "Paired" Event - *System Intelligence* |
|---|---|---|---|---|
| 3. Self-Management | m) | *A salesperson's profit per sale is significantly lower than the norm* | | • The system adds and schedules a required skills training item to the training curriculum; linked to 6(a, b) |
| 4. Customer Retention | a) | Salesperson maintains a list of customers that have purchased product | Contact Management, Order Management | • Linked to 5(a,b) to mark contacts and sales opportunities as current customers |
| | b) | Salesperson follows-up on customer satisfaction | Objective Management, Contact Management | • Linked to 3(f) to track recommended steps t identify new opportunities at existing customers |
| | c) | Salesperson and customer work together to set expectations and plans for next 12 months (business/purchase/support plan) | Objective Management, Time Management | • Linked to 3(b) to schedule follow-up activities |
| | d) | Customer directly contacts the manufacturer regarding a product problem | Contact Management | • Associated with Contact Management which enables the salesperson to receive and share all information related to that customer's contact with the company - the system reacts to key events and series of events based on business rules to identify tasks |
| | e) | Customer brings the product to the dealer for service. | Contact Management | • Associated with Contact Management which enables the salesperson to receive and share all information related to that customer's contact with the company - the system reacts to key events and series of events based on business rules to identify tasks |
| | f) | Marketing materials are sent to customers that have purchased a particular product regarding an available upgrade | Contact Management, Product | • Linked to 5(a,b) and linked to 1(a) to identify Customer as a potential customer for upgrades for the product ordered and linked to 1(b) to automatically send out product upgrade mailing to the customer |
| 5. Order Management | a) | Customer approves the proposal and signs the order | Order Management | • The system marks the sales step as complete (3f), recalculates the probability of closing the sale(3d, 7a) and prompts the salesperson to accept or confirm the schedule for the follow-up (3i). |
| | b) | Salesperson creates and submits an order for a particular product for a customer | Order Management | • Linked to 1(a) to identify Customer as a potential customer for accessories for the product ordered and linked to 1(b) to automatically send out product accessories mailing to the customer |
| | c) | Salesperson requests a change to an order already submitted | Order Management | • Linked to 2(c) to reference configuration requirements and 3(f, g) to re-forecast sales and commissions |

# *Fig.21D*

| Component | | Event | Related Module | "Paired" Event - *System Intelligence* |
|---|---|---|---|---|
| 3. Self-Management | m) | *A salesperson's profit per sale is significantly lower than the norm* | | • The system adds and schedules a required skills training item to the training curriculum; linked to 6(a, b) |
| 4. Customer Retention | a) | Salesperson maintains a list of customers that have purchased product | Contact Management, Order Management | • Linked to 5(a,b) to mark contacts and sales opportunities as current customers |
| | b) | Salesperson follows-up on customer satisfaction | Objective Management, Contact Management | • Linked to 3(f) to track recommended steps t identify new opportunities at existing customers |
| | c) | Salesperson and customer work together to set expectations and plans for next 12 months (business/purchase/support plan) | Objective Management, Time Management | • Linked to 3(b) to schedule follow-up activities |
| | d) | Customer directly contacts the manufacturer regarding a product problem | Contact Management | • Associated with Contact Management which enables the salesperson to receive and share all information related to that customer's contact with the company - the system reacts to key events and series of events based on business rules to identify tasks |
| | e) | Customer brings the product to the dealer for service. | Contact Management | • Associated with Contact Management which enables the salesperson to receive and share all information related to that customer's contact with the company - the system reacts to key events and series of events based on business rules to identify tasks |
| | f) | Marketing materials are sent to customers that have purchased a particular product regarding an available upgrade | Contact Management, Product | • Linked to 5(a,b) and linked to 1(a) to identify Customer as a potential customer for upgrades for the product ordered and linked to 1(b) to automatically send out product upgrade mailing to the customer |
| 5. Order Management | a) | Customer approves the proposal and signs the order | Order Management | • The system marks the sales step as complete (3f), recalculates the probability of closing the sale(3d, 7a) and prompts the salesperson to accept or confirm the schedule for the follow-up (3i). |
| | b) | Salesperson creates and submits an order for a particular product for a customer | Order Management | • Linked to 1(a) to identify Customer as a potential customer for accessories for the product ordered and linked to 1(b) to automatically send out product accessories mailing to the customer |
| | c) | Salesperson requests a change to an order already submitted | Order Management | • Linked to 2(c) to reference configuration requirements and 3(d, g) to re-forecast sales and commissions |

## Fig.21E

| Component 2101 | Event 2102 | Related Module 2103 | "Paired" Event - *System Intelligence* 2104 |
|---|---|---|---|
| 5. Order Management | d) Customer requests to know delivery date for product and salesperson investigates order status | Order Management | |
| 6. Training | a) Company's training department analyzes training requirements and develops training course and curriculum for product knowledge and skills improvement | Training | |
| | b) Sales manager analyzes training requirements, identifies available material and assigns a plan for training requirements to a salesperson | Sales Management, Training | • Linked to 7(a-c) to evaluate training needs of salesperson and assign training elements and linked to 3(objective management and time management) to communicate, plan, and schedule the training plan |
| | c) Salesperson reads/reviews training material | Training | |
| | d) Salesperson completes a certification test | Training | • Linked to 3 to mark the step or task as complete and to 2(all) to allow access to elements of the Time with Customer functionality that requires certification prior to use. |
| 7. Sales Management | a) A sales manager reviews a sales person's forecast and compiles totals | Sales Management - Forecasting | • System automatically notifies sales manager when sales persons' forecast falls behind goals |
| | b) A sales manager analyzes a salesperson's close ratio and other measurement criteria | Sales Management - Forecasting, Objective Management | |
| | c) Sales manager reviews best practices of successful sales personnel and communicates those practices to other sales persons | Objective Management | • Linked to 3(f) to assign the recommended steps as a part of the objective management process |
| | d) Sales manager sets sales and territory goals for sales personnel | Objective Management, Forecasting | • Linked to 3 to communicate requirements to salesperson |
| | e) Sales manager completes performance reviews of sales personnel by reviewing accomplishments, status, and sales. | Training, Objective Management | |

Fig. 21E

# Fig.22



*Fig.23*



**PART B—ISSUE FEE TRANSMITTAL**

Complete and mail this form, together with ~~applicable fees, to:~~   **Box ISSUE FEE**
**Assistant Commissioner for Patents**
**Washington, D.C. 20231**

*MAILING INSTRUCTIONS:* This form should be used for transmitting the ISSUE FEE. Blocks 1 through 4 should be completed where appropriate. All further correspondence including the Issue Fee Receipt, the Patent, advance orders and notification of maintenance fees will be mailed to the current correspondence address as indicated unless corrected below or directed otherwise in Block 1, by (a) specifying a new correspondence address; and/or (b) indicating a separate "FEE ADDRESS" for maintenance fee notifications.

CURRENT CORRESPONDENCE ADDRESS (Note: Legibly mark-up with any corrections or use Block 1)

LM71/1220

MERCHANT GOULD ~~SMITH EDELL~~
~~WELTER & SCHMIDT~~  P.O. BOX 2903
~~3100 NORWEST CENTER~~
~~90 SOUTH SEVENTH STREET~~
MINNEAPOLIS MN 55402-~~4131~~
                           0903

Note: The certificate of mailing below can only be used for domestic mailings of the Issue Fee Transmittal. This certificate cannot be used for any other accompanying papers. Each additional paper, such as an assignment or formal drawing, must have its own certificate of mailing.

**Certificate of Mailing**

I hereby certify that this Issue Fee Transmittal is being deposited with the United States Postal Service with sufficient postage for first class mail in an envelope addressed to the Box Issue Fee address above on the date indicated below.

Michele A. Read                      (Depositor's name)

Michele A. Read                      (Signature)

20 March 2000                        (Date)

| APPLICATION NO. | FILING DATE | TOTAL CLAIMS | EXAMINER AND GROUP ART UNIT | DATE MAILED |
|---|---|---|---|---|
| 08/550,089 | 10/30/95 | 043 | POINVIL, F          2768 | 12/20/99 |

First Named Applicant   JOHNSON,          35 USC 154(b) term ext. = 0 Days.

TITLE OF INVENTION  INTEGRATED COMPUTERIZED SALES FORCE AUTOMATION SYSTEM

| ATTY'S DOCKET NO. | CLASS-SUBCLASS | BATCH NO. | APPLN. TYPE | SMALL ENTITY | FEE DUE | DATE DUE |
|---|---|---|---|---|---|---|
| 2   7709.72US01 | 395-210.000 | F95 | UTILITY | YES | $605.00 | 03/20/00 |

1. Change of correspondence address or indication of "Fee Address" (37 CFR 1.363). Use of PTO form(s) and Customer Number are recommended, but not required.

☒ Change of correspondence address (or Change of Correspondence Address form PTO/SB/122) attached.

☐ "Fee Address" indication (or "Fee Address" Indication form PTO/SB/47) attached.

2. For printing on the patent front page, list (1) the names of up to 3 registered patent attorneys or agents OR, alternatively, (2) the name of a single firm (having as a member a registered attorney or agent) and the names of up to 2 registered patent attorneys or agents. If no name is listed, no name will be printed.

1  MERCHANT & GOULD P.C.

2 _____

3 _____

3. ASSIGNEE NAME AND RESIDENCE DATA TO BE PRINTED ON THE PATENT (print or type)
PLEASE NOTE: Unless an assignee is identified below, no assignee data will appear on the patent. Inclusion of assignee data is only appropriate when an assignment has been previously submitted to the PTO or is being submitted under separate cover. Completion of this form is NOT a substitute for filing an assignment.

(A) NAME OF ASSIGNEE
CLEAR WITH COMPUTERS
(B) RESIDENCE: (CITY & STATE OR COUNTRY)
MANKATO, MINNESOTA

Please check the appropriate assignee category indicated below (will not be printed on the patent)

☐ individual  ☒ corporation or other private group entity  ☐ government

4a. The following fees are enclosed (make check payable to Commissioner of Patents and Trademarks):

☒ Issue Fee
☒ Advance Order - # of Copies  11

4b. The ~~following fees or~~ deficiency in these fees should be charged to:

DEPOSIT ACCOUNT NUMBER 13-2725
(ENCLOSE AN EXTRA COPY OF THIS FORM)

☐ Issue Fee
☐ Advance Order - # of Copies _____

The COMMISSIONER OF PATENTS AND TRADEMARKS IS requested to apply the Issue Fee to the application identified above.

(Authorized Signature)                      (Date)
                                            5 20/2000

NOTE: The Issue Fee will not be accepted from anyone other than the applicant; a registered attorney or agent; or the assignee or other party in interest as shown by the records of the Patent and Trademark Office.

*Burden Hour Statement:* This form is estimated to take 0.2 hours to complete. Time will vary depending on the needs of the individual case. Any comments on the amount of time required to complete this form should be sent to the Chief Information Officer, Patent and Trademark Office, Washington, D.C. 20231. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. SEND FEES AND THIS FORM TO: Box Issue Fee, Assistant Commissioner for Patents, Washington D.C. 20231

Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

03/28/2000 SLWANG3  00000013 08550089
01 FC:142                    605.00 OP
02 FC:561                     33.00 OP

**TRANSMIT THIS FORM WITH FEE**

IN T.... UNITED STATES PATENT AND TRADEM..rK OFFICE

| | | | |
|---|---|---|---|
| Applicant: | JOHNSON ET AL. | Examiner: | F. POINVIL |
| Serial No.: | 08/550,089 | Group Art Unit: | 2768 |
| Filed: | OCTOBER 30, 1995 | Docket: | 7709.72USF1 |
| Notice of Allow. Date: | DECEMBER 20, 1999 | Batch No.: | F95 |
| Due Date: | MARCH 20, 2000 | | |
| Title: | INTEGRATED COMPUTERIZED SALES FORCE AUTOMATION SYSTEM | | |

CERTIFICATE UNDER 37 CFR 1.8:  The undersigned hereby certifies that this Transmittal Letter and the paper, as described herein, are being deposited in the United States Postal Service, as first class mail, with sufficient postage, in an envelope addressed to:  BOX ISSUE FEE, Assistant Commissioner for Patents, Washington, D.C. 20231, on March 20, 2000.

By: *Michele A. Reed*

MAR 2 7 2000

BOX ISSUE FEE
Assistant Commissioner for Patents
Washington, D.C. 20231

Sir:

We are transmitting herewith the attached:

☒ Transmittal Sheet in duplicate containing Certificate of Mailing
☒ Small entity status has been previously submitted
☒ Issue Fee Transmittal Part B (PTOL − 85B)
☒ Submission of Formal Drawings, 30 Sheets of Formal Drawings
☒ Check(s) in the amount of $605.00 and $33.00, for  Issue Fee and Advance Patent Copy Order
☒ Other:  Change of Address
☒ Return postcard

Please consider this a PETITION FOR EXTENSION OF TIME for a sufficient number of months to enter these papers, if appropriate.  Please charge any additional fees or credit overpayment to Deposit Account No. 13−2725.  A duplicate of this sheet is enclosed.

MERCHANT & GOULD P.C.
P.O. Box 2903, Minneapolis, MN 55402−0903
(612) 332−5300

By:
Name:  Richard J. Gregson
Reg. No.: 41,804
RG:PSTmar

(PTO TRANSMITTAL − GENERAL)

**PATENT APPLICATION FEE DETERMINATION RECORD**
Effective October 1, 1995

Application or Docket Number

*550089*

## CLAIMS AS FILED - PART I

| FOR | NUMBER FILED (Column 1) | NUMBER EXTRA (Column 2) | SMALL ENTITY RATE | FEE | OR | OTHER THAN SMALL ENTITY RATE | FEE |
|---|---|---|---|---|---|---|---|
| BASIC FEE | | | | 375.00 | OR | | 750.00 |
| TOTAL CLAIMS | 20 minus 20 = | * | x$11= | | OR | x$22= | |
| INDEPENDENT CLAIMS | 3 minus 3 = | * | x39= | | OR | x78= | |
| MULTIPLE DEPENDENT CLAIM PRESENT | | | +125= | | OR | +250= | |
| | | | TOTAL | | OR | TOTAL | 750 |

\* If the difference in column 1 is less than zero, enter "0" in column 2

## CLAIMS AS AMENDED - PART II

| AMENDMENT A | | CLAIMS REMAINING AFTER AMENDMENT (Column 1) | | HIGHEST NUMBER PREVIOUSLY PAID FOR (Column 2) | PRESENT EXTRA (Column 3) | SMALL ENTITY RATE | ADDI-TIONAL FEE | OR | OTHER THAN SMALL ENTITY RATE | ADDI-TIONAL FEE |
|---|---|---|---|---|---|---|---|---|---|---|
| | Total | * 43 | Minus | ** 20 | = 23 | x$11= | 253.00 | OR | x$22= | |
| | Independent | * 3 | Minus | *** 3 | = | x39= | | OR | x78= | |
| | FIRST PRESENTATION OF MULTIPLE DEPENDENT CLAIM | | | | | +125= | | OR | +250= | |
| | | | | | | TOTAL ADDIT. FEE | | OR | TOTAL ADDIT. FEE | |

| AMENDMENT B | | CLAIMS REMAINING AFTER AMENDMENT (Column 1) | | HIGHEST NUMBER PREVIOUSLY PAID FOR (Column 2) | PRESENT EXTRA (Column 3) | SMALL ENTITY RATE | ADDI-TIONAL FEE | OR | OTHER THAN SMALL ENTITY RATE | ADDI-TIONAL FEE |
|---|---|---|---|---|---|---|---|---|---|---|
| | Total | * | Minus | ** | = | x$11= | | OR | x$22= | |
| | Independent | * | Minus | *** | = | x39= | | OR | x78= | |
| | FIRST PRESENTATION OF MULTIPLE DEPENDENT CLAIM | | | | | +125= | | OR | +250= | |
| | | | | | | TOTAL ADDIT. FEE | | OR | TOTAL ADDIT. FEE | |

| AMENDMENT C | | CLAIMS REMAINING AFTER AMENDMENT (Column 1) | | HIGHEST NUMBER PREVIOUSLY PAID FOR (Column 2) | PRESENT EXTRA (Column 3) | SMALL ENTITY RATE | ADDI-TIONAL FEE | OR | OTHER THAN SMALL ENTITY RATE | ADDI-TIONAL FEE |
|---|---|---|---|---|---|---|---|---|---|---|
| | Total | * | Minus | ** | = | x$11= | | OR | x$22= | |
| | Independent | * | Minus | *** | = | x39= | | OR | x78= | |
| | FIRST PRESENTATION OF MULTIPLE DEPENDENT CLAIM | | | | | +125= | | OR | +250= | |
| | | | | | | TOTAL ADDIT. FEE | | OR | TOTAL ADDIT. FEE | |

\* If the entry in column 1 is less than the entry in column 2, write "0" in column 3.
\*\* If the "Highest Number Previously Paid For" IN THIS SPACE is less than 20, enter "20."
\*\*\* If the "Highest Number Previously Paid For" IN THIS SPACE is less than 3, enter "3."
The "Highest Number Previously Paid For" (Total or Independent) is the highest number found in the appropriate box in column 1.

FORM PTO-875
(Rev. 10/95)

Patent and Trademark Office, U.S. DEPARTMENT OF COMMERCE

FORM PTO 1133
(REV 2-84)

## PACE DATA ENTRY CODING SHEET

U.S. DEPARTMENT OF COMMERCE
Patent and Trademark Office

| 1ST EXAMINER | Stanback | DATE | 12/27/95 |
| 2ND EXAMINER | Stanback | DATE | 3/26/96 |

| APPLICATION NUMBER | TYPE APPL | FILING DATE | | | SPECIAL HANDLING | GROUP ART UNIT | CLASS | SHEETS OF DRAWING |
|---|---|---|---|---|---|---|---|---|
| | | MONTH | DAY | YEAR | | | | |
| 08/550089 | 1 | 1 0 | 3 0 | 9 5 | 0 | 2 4 1 1 | 3 6 4 | 2 9 |

| TOTAL CLAIMS | INDEPENDENT CLAIMS | SMALL ENTITY? | FILING FEE | FOREIGN LICENSE | ATTORNEY DOCKET NUMBER |
|---|---|---|---|---|---|
| 2 0 | 3 | 2 | 4 4 0 | Y | 7 7 0 9 1 . 7 2 U S 0 1 |

### CONTINUITY DATA

| CONT CODE | STATUS CODE | PARENT APPLICATION SERIAL NUMBER | | PCT APPLICATION SERIAL NUMBER | | PARENT PATENT NUMBER | PARENT FILING DATE | | |
|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | MONTH | DAY | YEAR |
| | | | | P C T / | / | | | | |
| | | | | P C T / | / | | | | |
| | | | | P C T / | / | | | | |
| | | | | P C T / | / | | | | |
| | | | | P C T / | / | | | | |

### PCT/FOREIGN APPLICATION DATA

| FOREIGN PRIORITY CLAIMED | COUNTRY CODE | PCT/FOREIGN APPLICATION SERIAL NUMBER | FOREIGN FILING DATE | | |
|---|---|---|---|---|---|
| | | | MONTH | DAY | YEAR |
| | | | | | |

☆ U.S.G.P.O.: 1994 - 384-021