EXHIBIT 6



**UNITED STATES DEPARTMENT OF COMMERCE**
**Patent and Trademark Office**
Address: COMMISSIONER OF PATENTS AND TRADEMARKS
Washington, D.C. 20231

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. |
|---|---|---|---|
| 08/550,089 | 10/30/95 | JOHNSON J | 7709.72US01 |

```
                        LM21/0303
  MERCHANT GOULD SMITH EDELL
  WELTER & SCHMIDT
  3100 NORWEST CENTER
  90 SOUTH SEVENTH STREET
  MINNEAPOLIS MN 55402-4131
```

| EXAMINER |
|---|
| HUGHET, W |

| ART UNIT | PAPER NUMBER |
|---|---|
| 2761 | 9 |

DATE MAILED: 03/03/98

**Please find below and/or attached an Office communication concerning this application or proceeding.**

Commissioner of Patents and Trademarks

PTO-90C (Rev. 2/95)
*U.S. GPO: 1996-404-496/40510

1- File Copy

| Office Action Summary | Application No. 08/550,089 | Applicant(s) Jerome D. Johnson, et al. |
|---|---|---|
| | Examiner William N. Hughet | Group Art Unit 2761 |

☒ Responsive to communication(s) filed on *Dec 10, 1997*

☒ This action is **FINAL**.

☐ Since this application is in condition for allowance except for formal matters, **prosecution as to the merits is closed** in accordance with the practice under *Ex parte Quayle*, 1935 C.D. 11; 453 O.G. 213.

A shortened statutory period for response to this action is set to expire ___3___ month(s), or thirty days, whichever is longer, from the mailing date of this communication. Failure to respond within the period for response will cause the application to become abandoned. (35 U.S.C. § 133). Extensions of time may be obtained under the provisions of 37 CFR 1.136(a).

Disposition of Claims

☒ Claim(s) *1-43* is/are pending in the application.

Of the above, claim(s) _____ is/are withdrawn from consideration.

☐ Claim(s) _____ is/are allowed.

☒ Claim(s) *1-43* is/are rejected.

☐ Claim(s) _____ is/are objected to.

☐ Claims _____ are subject to restriction or election requirement.

Application Papers

☐ See the attached Notice of Draftsperson's Patent Drawing Review, PTO-948.

☒ The drawing(s) filed on *Oct 30, 1995* is/are objected to by the Examiner.

☐ The proposed drawing correction, filed on _____ is ☐ approved ☐ disapproved.

☐ The specification is objected to by the Examiner.

☐ The oath or declaration is objected to by the Examiner.

Priority under 35 U.S.C. § 119

☐ Acknowledgement is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d).

☐ All ☐ Some* ☐ None of the CERTIFIED copies of the priority documents have been

☐ received.

☐ received in Application No. (Series Code/Serial Number) _____ .

☐ received in this national stage application from the International Bureau (PCT Rule 17.2(a)).

*Certified copies not received: _____

☐ Acknowledgement is made of a claim for domestic priority under 35 U.S.C. § 119(e).

Attachment(s)

☐ Notice of References Cited, PTO-892

☐ Information Disclosure Statement(s), PTO-1449, Paper No(s). _____

☐ Interview Summary, PTO-413

☐ Notice of Draftsperson's Patent Drawing Review, PTO-948

☐ Notice of Informal Patent Application, PTO-152

--- *SEE OFFICE ACTION ON THE FOLLOWING PAGES* ---

S. Patent and Trademark Office
TO-326 (Rev. 9-95)   WNH          Office Action Summary          Part of Paper No. ___9___

Serial Number: 08/550,089                                                                                                                  -2-
Art Unit: 2761

**Part III  DETAILED ACTION**

*Notice*

1.     **Effective November 16, 1997, the Examiner handling this application was assigned to a new Art Unit as a result of the consolidation into Technology Center 2700. See the Official Gazette notice dated November 11, 1997. For any written or facsimile communication submitted ON OR AFTER November 16, 1997, this Examiner, who was assigned to Art Unit 2411, will be assigned to Art Unit 2761. <u>Please include the new Art Unit in the caption or heading of any communication submitted after the November 16, 1997 date.</u> Your cooperation in this matter will assist in the timely processing of the submission and is appreciated by the Office.**

*Status of Claims*

2.     Of the original Claims 1 - 20, Claims 21 - 43 have been added by Applicants' amendment filed December 10, 1997. Therefore, Claims 1 - 43 are under prosecution in this application.

*Summary of this Office Action*

3.     Applicants' arguments filed December 10, 1997 have been fully considered, are discussed in the next section below or within the following rejections under 35 U.S.C. §§ 112 and 103, and except as where expressly noted, are not deemed to be persuasive. Therefore,

      - Claims 1 - 43 are rejected under 35 U.S.C. § 112;

      - Claims 1 - 43 are rejected under 35 U.S.C. § 103 as unpatentable over the art cited below; and

Applicants' request for allowance is respectfully denied.

Serial Number: 08/550,089 -3-
Art Unit: 2761

### *Response to Applicants' Amendment*

4.  The Examiner acknowledges Applicants' amendment to Claims 14 - 16 and 18 in response to the prior office action's rejection of these Claims under 35 U.S.C. § 112, second paragraph, and therefore withdraws the corresponding rejection.

5.  The Examiner acknowledges Applicants' amendment to Claim 11 and therefore withdraws the corresponding objection to this Claims as regards duplicative wording.

6.  As regards the Negrino being limited to sales contact management, the Examiner asserts that Negrino teaches in the art of sales automation software in which "every step of the sales process" is under control of the system and expressly discloses capturing initial sales leads, making sales presentations, scheduling meetings with customers, submitting and refining bids, closing a sale, and following up for future sales. See Negrino at pages 1, 2, and 4.

7.  As regards Negrino being a linear system the Examiner asserts that Negrino discloses a non-linear, automated branching system and for support therefore cites to page 2 of the article where Market Master is discussed as permitting branching to any part of the sales plan from any step and also permitting branching between plans.

8.  Applicants' remaining traversals are discussed under the 35 U.S.C. § 103 rejection below.

### *Drawings*

9.  This application has been filed with informal drawings which are acceptable for examination purposes only. Formal drawings will be required when the application is allowed.

10. The drawings are objected to because of irregularities as noted on PTO 948, enclosed. Appropriate correction is required.

Serial Number: 08/550,089
Art Unit: 2761

-4-

### *Specification*

11. The following is a quotation of the first paragraph of 35 U.S.C. § 112:

The specification shall contain a written description of the invention, and of the manner and process of making and using it, in such full, clear, concise, and exact terms as to enable any person skilled in the art to which it pertains, or with which it is most nearly connected, to make and use the same and shall set forth the best mode contemplated by the inventor of carrying out his invention.

(A)   The specification is objected to under 35 U.S.C. § 112, first paragraph, as not being written in such full, clear, concise, and exact terms as to enable any person skilled in the art to which it pertains, or with which it is most nearly connected, to make and use the same. In particular, the event manager is disclosed at page 15 of the Specification as recognizing the occurrence of events and determining the context in which the event occurred. The Examiner asserts that the recognition feature of the Specification appears to be contrary to the system recited in Claims 1, 13, and 17, in which the event manager "detect[s] one or more changes in state characteristic of an event . . . [and] infer[s] occurrence of the event". Furthermore, the Examiner was unable to find an explanation in the Specification of what constitutes "changes in state characteristic of an event".

### *Claim Rejections - 35 USC § 112*

12. Claims 1, 13, and 17 are rejected under 35 U.S.C. § 112, first paragraph, for the reasons set forth in the objection to the specification.

13. Claims 1 - 20 are rejected under 35 U.S.C. § 112, second paragraph, as being indefinite for failing to particularly point out and distinctly claim the subject matter which applicant regards as the invention. In particular, Claims 1, 13, and 17 recite the event

Serial Number: 08/550,089 -5-
Art Unit: 2761

manager inferring occurrence of an event based on detecting a change in state characteristic to said event. However, the Specification at page 15 discloses the event manager as recognizing the occurrence of events and then determining the context in which the event occurred.

14. Dependent Claims 2 - 12, 14 - 16, and 18 - 43 not specifically rejected under 35 U.S.C. § 112 above are rejected herein by virtue of their dependency on rejected independent claims.

### *Claim Rejections - 35 USC § 103*

15. The following is a quotation of 35 U.S.C. § 103 which forms the basis for all obviousness rejections set forth in this Office action:

> A patent may not be obtained though the invention is not identically disclosed or described as set forth in section 102 of this title, if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains. Patentability shall not be negatived by the manner in which the invention was made.
>
> Subject matter developed by another person, which qualifies as prior art only under subsection (f) or (g) of section 102 of this title, shall not preclude patentability under this section where the subject matter and the claimed invention were, at the time the invention was made, owned by the same person or subject to an obligation of assignment to the same person.

16. Claims 1 - 3, 5, 7, 8, 10 - 16, 21 - 35, and 37 - 43 are rejected under 35 USC § 103 as being unpatentable over Tom Negrino, "Sales-Automation Software", Macworld, v 10, n 10, pages 144 - 148, October, 1993 (hereinafter "Negrino").

   (A)   As to Claims 1, 13, 21, and 24, Negrino discloses a computer-based sales automation system that is used to facilitate the steps of a sales process. Negrino teaches a

Serial Number: 08/550,089                                                                                                                              -6-
Art Unit: 2761

plurality of subsystems, each corresponding to a step in the sales process and each facilitating that respective sales step. Negrino also discloses an automated branching, or event, manager that automatically initiates the next particular step in the automated sales process based on detecting the outcome characteristic of a prior step.

    (B)    As to Claim 2, 3, and 23, Negrino discloses that the context in which the current (recognized) task (event) occurs is a function of the occurrence of at least one prior event. Although Negrino does not expressly disclose available information related to a given step, it does disclose the automatic logging of information upon occurrence of events. The Examiner asserts that in order to log such information, the contextual environment of each step must necessarily include the related information which the system subsequently records in a central database. The Examiner further asserts that it would have been obvious to one of ordinary skill in the art to include information with respect to occurrence of a previous step in the automated sales/branching system disclosed by Negrino. One would be motivated to do so in order to have sufficient information with which to verify that the prior step had satisfactorily completed prior to initiating the subsequent step.

    (C)    As to Claim 5, Negrino teaches an initial event of spending time with a customer in the form of learning about the prospect's needs and making a sales presentation, with the intent of converting an initial lead into a closed sale. Negrino further discloses a lead management subsystem. Although Negrino does not expressly teach using the lead management subsystem in converting a name to a potential customer, the Examiner asserts that a primary goal of a sales system is to make a sale, which necessarily requires converting initial leads, or prospects, into buying customers.

    (D)    As to Claim 7, Negrino discloses a customer retention subsystem that includes post-sale contacts, letters, and meetings with clients for building a relationship

Serial Number: 08/550,089 -7-
Art Unit: 2761

with an existing customer for future sales. The remaining limitations of Claim 7 are found in Claim 5, and the remainder of this claim is rejected for the same reasons.

(F) As to Claim 8, Negrino teaches a self management subsystem of customer contact management, to-do lists, calendars, and schedulers for assisting the salesperson in fulfilling his/her sales responsibilities. The remaining limitations of Claim 8 are found in Claim 5, and the remainder of this claim is rejected for the same reasons.

(G) As to Claim 10, Negrino teaches a sales management subsystem that includes sales plans that implement enterprise-wide strategies and means for implementing said plans. The remaining limitations of Claim 10 are found in Claim 5, and the remainder of this claim is rejected for the same reasons.

(H) The limitations of Claim 11 are found in Claims 6 and 8, and this claim is rejected for the same reasons.

(I) The limitations of Claim 12 are found in Claims 5 and 8, and this claim is rejected for the same reasons.

(J) As to Claim 14, and as discussed above regarding Claims 2 and 3, Negrino teaches performance of events based on the occurrence of prior events. Although Negrino does not expressly disclose determining whether or not such prior events occurred, the Examiner asserts that such a determination would have been obvious prior to the initiation of a subsequent, dependent event. To do otherwise, would render the sequential dependency of events as disclosed by Negrino meaningless. Although Negrino does not disclose determining whether the prior event was part of the context of the first event, the Examiner asserts that recitation of "first" event is merely selection of one of a plurality of possible events within the sales process. The remaining limitations of Claim 14 are found in Claims 2 and 3, and the remainder of this claim is rejected for the same reasons.

Serial Number: 08/550,089  
Art Unit: 2761

-8-

 (K) The limitations of Claim 15 are found in Claims 1 and 6, and this claim is rejected for the same reasons.

 (L) The limitations of Claim 16 are found in Claims 1 and 5, and this claim is rejected for the same reasons.

 (M) As to Claim 22, the Examiner asserts that events occurring within the sales process are well known to be indicative of more that one step of a sales process. For example, a telephone call from a customer may occur in several steps of the sales process. See Negrino at page 1.

 (N) The limitations of Claims 25 and 33 are found in Claim 1, and these claims are rejected for the same reasons.

 (O) The limitations of Claims 26, 31, and 34 are found in Claim 23, and these claims are rejected for the same reasons.

 (P) The limitations of Claims 27, 32, and 35 are found in Claim 24, and these claims are rejected for the same reasons.

 (Q) The limitations of Claim 28 are found in Claims 21 and 23, and this claim is rejected for the same reasons.

 (R) The limitations of Claim 29 are found in Claim 21, and this claim is rejected for the same reasons.

 (S) The limitations of Claim 30 are found in Claim 22, and this claim is rejected for the same reasons.

 (T) The limitations of Claim 37 are found in Claims 1 and 5, and this claim is rejected for the same reasons.

 (U) The limitations of Claim 38 are found in Claims 1 and 7, and this claim is rejected for the same reasons.

 (V) The limitations of Claim 39 are found in Claims 1 and 8, and this claim is rejected for the same reasons.

Serial Number: 08/550,089                                                                                                          -9-
Art Unit: 2761

    (W)    The limitations of Claim 40 are found in Claims 1 and 9, and this claim is rejected for the same reasons.

    (X)    The limitations of Claim 41 are found in Claims 1 and 10, and this claim is rejected for the same reasons.

    (Y)    The limitations of Claim 42 are found in Claims 1 and 11, and this claim is rejected for the same reasons.

    (Z)    The limitations of Claim 43 are found in Claims 1 and 12, and this claim is rejected for the same reasons.

17.    Claims 4, 17 - 20, and 36 are rejected under 35 USC § 103 as being unpatentable over Tom Negrino, "Sales-Automation Software", Macworld, v 10, n 10, pages 144 - 148, October, 1993 (hereinafter "Negrino") in view of Tony Seideman, "Way Cool! (Sales Force Automation)", Sales & Marketing Management, v 146, n 6, pages 10 - 13, June, 1994 (hereinafter "Seideman").

    (A)    As to Claim 4, while Negrino does not teach a rule-based sales automation system, Seideman does disclose an expert sales automation system in which rules direct the next recommended action to be taken, upon occurrence of a given event or step. Although Seideman does not expressly disclose storing a plurality of rules, expert systems are well known to be comprised of a stored knowledge base of rules in conjunction with an inference engine that enables the system to make decisions and direct actions based on contextual knowledge (information) and rules defined by experts in the field. See Computer Dictionary, Microsoft Press, 156, (Second Ed., 1994).

Although Seideman does not disclose identifying an express rule governing response to an event, the Examiner asserts that expert systems are well known to initiate a subsequent step upon being provided a relevant knowledge base and contextual information regarding the present event. It would have been obvious to one of ordinary skill in the art to modify Negrino with the expert system of Seideman. One would be

Serial Number: 08/550,089 -10-
Art Unit: 2761

motivated to do so in order to incorporate the well-known dynamic learning means of expert systems into the sales automation system of Negrino, and thereby permit Negrino's system to solve problems and initiate events based on the experience and rules of experts with minimal manual intervention.

(B) As to Claim 17, and as discussed above regarding Claim 1 and 4, Negrino discloses a computer-based sales automation system that is used to facilitate the sales process. Although Negrino does not teach "electronically" facilitating sales events, Negrino does disclose use of computers with which to direct events, and the Examiner asserts that computers are well known to be powered by electricity. While Negrino does not expressly disclose linking to subsequent steps based on prior experience, it does disclose linking to subsequent steps based on the occurrence of prior steps. Also, Seideman teaches incorporating prior sales experience with which to direct the operation of the automated system. It would have been obvious to modify Negrino with the experience means of Seideman. One would be motivated to do so to take advantage of existing practical knowledge within the sales process so as to avoid prior mistakes and to use past successful sequences of events and subsystems with which to close a sale. The remaining limitations of Claim 17 are found in Claims 1 and 4, and the remainder of this claim is rejected for the same reasons.

(C) As to Claims 18, 19, and 20, although Negrino does not disclose an expert system, Seideman does disclose an expert sales automation system that uses prior sales experience with which to build rules to drive the system. As discussed above regarding Claim 4, expert systems are well known to be comprised of knowledge bases of rules that represents expert experience in the field, and Seideman teaches learning from the sales process so as to implement strategies that will work best and further teaches guiding the system to direct the most efficient courses of action. Although Seideman does not expressly disclose monitoring sales process events, the Examiner asserts that it would

Serial Number: 08/550,089 -11-
Art Unit: 2761

have been obvious, in view of Seideman, for an expert system to monitor those events comprising the system so as to "learn" what works and what leads to undesirable results and incorporate that knowledge in the expert system's well-known knowledge base. It would have been obvious to modify Negrino with the expert system of Seideman for the reasons discussed regarding claim 4.

(D) The limitations of Claim 36 are found in Claim 4, and this claim is rejected for the same reasons.

18. Claim 6 is rejected under 35 USC § 103 as being unpatentable over Tom Negrino, "Sales-Automation Software", Macworld, v 10, n 10, pages 144 - 148, October, 1993 (hereinafter "Negrino") in view of John Hiatt, "Empowering the Global Sales Force", International Business, v 7, n 9, pages 16 - 20, September, 1994 (hereinafter "Hiatt").

(A) As to Claim 6, while Negrino does not teach an order management system for ensuring that the ordered product or service is delivered, Hiatt discloses a sales automation system that provides for automatic entry of orders and subsequent shipment of flawless orders to the customer. It would have been obvious to modify Negrino with the order management subsystem of Hiatt in order to ensure timely and accurate order shipments. One would be motivated to do so in order to deliver that which was promised to the customer and in order to preserve the order. The remaining limitations of Claim 6 are found in Claim 5, and the remainder of this claim is rejected for the same reasons.

19. Claim 9 is rejected under 35 USC § 103 as being unpatentable over Tom Negrino, "Sales-Automation Software", Macworld, v 10, n 10, pages 144 - 148, October, 1993 (hereinafter "Negrino") in view of Colleen Frye, "Automation Integrating Phases of Sales Cycle", Software Magazine, v 13, n 14, pages 61 - 72, September, 1993 (hereinafter "Frye").

(A) As to Claim 9, Negrino discloses a computer-based sales automation system that is used to facilitate the sales process, said system being comprised of a plurality of

Serial Number: 08/550,089 −12−
Art Unit: 2761

subsystems, each corresponding to a step in the sales process and each facilitating that respective sales step. Although Negrino does not teach a training subsystem, Frye does disclose a sales force automation system in which the users (salespersons) are trained on the system. Although Frye is not clear whether or not the system actually does the training, the Examiner asserts that, in view of Frye and the well-known benefits that accrue from a well-trained staff, it would have been obvious to one of ordinary skill in the art of sales automation systems to provide for system-directed training of salespersons. One would be motivated to do so in order to take advantage of the automation and the knowledge (rules) built into the system to detect the progress of each individual salesperson and to provide training information relevant to his/her particular experience level and products being sold. One would be further motivated to do so to automatically load updated product information into the databases disclosed by Negrino and Frye to provide the salespersons with up to date information.

## *Conclusion*

20.   Applicants' amendment necessitated new grounds of rejection. Accordingly, **THIS ACTION IS MADE FINAL.** Applicants are reminded of the extension of time policy as set forth in 37 C.F.R. § 1.136(a).

> A SHORTENED STATUTORY PERIOD FOR RESPONSE TO THIS FINAL ACTION IS SET TO EXPIRE THREE MONTHS FROM THE DATE OF THIS ACTION. IN THE EVENT A FIRST RESPONSE IS FILED WITHIN TWO MONTHS OF THE MAILING DATE OF THIS FINAL ACTION AND THE ADVISORY ACTION IS NOT MAILED UNTIL AFTER THE END OF THE THREE-MONTH SHORTENED STATUTORY PERIOD, THEN THE SHORTENED STATUTORY PERIOD WILL EXPIRE ON THE DATE THE ADVISORY ACTION IS MAILED, AND ANY EXTENSION FEE PURSUANT TO 37 C.F.R. § 1.136(a) WILL BE CALCULATED FROM THE MAILING DATE OF THE ADVISORY ACTION. IN NO EVENT WILL THE

Serial Number: 08/550,089 -13-
Art Unit: 2761

STATUTORY PERIOD FOR RESPONSE EXPIRE LATER THAN SIX
MONTHS FROM THE DATE OF THIS FINAL ACTION.

21. Any inquiry concerning this communication or earlier communications from the examiner should be directed to William Hughet, whose telephone number is (703) 305-9770. The examiner can be reached on Monday through Friday from 8:00 a.m. to 5:00 p.m.

If attempts to reach the examiner by telephone are unsuccessful, the examiner's supervisor, Gail Hayes, can be reached at (703) 305-9711. The fax phone number for this Group is (703) 308-5357.

Any inquiry of a general nature or relating to the status of this application should be directed to the Group receptionist whose telephone number is (703) 305-3900.

William N. Hughet
March 01, 1998
(08550089.AC2)

*Gail Hayes*
GAIL O. HAYES
SUPERVISORY PATENT EXAMINER
GROUP 2700