# EXHIBIT 8



**UNITED STATES DE-ARTMENT OF COMMERCE**
**Patent and Trademark Office**
Address:   COMMISSIONER OF PATENTS AND TRADEMARKS
Washington, D.C. 20231

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | | ATTORNEY DOCKET NO. |
|---|---|---|---|---|
| 08/550,089 | 10/30/95 | JOHNSON | J | 7709.72US01 |

LM21/0915

MERCHANT GOULD SMITH EDELL
WELTER & SCHMIDT
3100 NORWEST CENTER
90 SOUTH SEVENTH STREET
MINNEAPOLIS MN 55402-4131

| EXAMINER |
|---|
| HUGHET,W |

| ART UNIT | PAPER NUMBER |
|---|---|
| 2761 | |

DATE MAILED:        09/15/98

**Please find below and/or attached an Office communication concerning this application or proceeding.**

Commissioner of Patents and Trademarks

| *Office Action Summary* | Application No. 08/550,089 | Applicant(s) Jerome D. Johnson, et al. |
|---|---|---|
| | Examiner William N. Hughet | Group Art Unit 2761 |

☒ Responsive to communication(s) filed on *CPA filed June 3, 1998; amendment filed July 14, 1998* _____ .

☐ This action is FINAL.

☐ Since this application is in condition for allowance except for formal matters, prosecution as to the merits is closed in accordance with the practice under *Ex parte Quayle*, 1935 C.D. 11; 453 O.G. 213.

A shortened statutory period for response to this action is set to expire ___3___ month(s), or thirty days, whichever is longer, from the mailing date of this communication. Failure to respond within the period for response will cause the application to become abandoned. (35 U.S.C. § 133). Extensions of time may be obtained under the provisions of 37 CFR 1.136(a).

**Disposition of Claims**

☒ Claim(s) *1-43* _____ is/are pending in the application.

Of the above, claim(s) _____ is/are withdrawn from consideration.

☐ Claim(s) _____ is/are allowed.

☒ Claim(s) *1-43* _____ is/are rejected.

☐ Claim(s) _____ is/are objected to.

☐ Claims _____ are subject to restriction or election requirement.

**Application Papers**

☐ See the attached Notice of Draftsperson's Patent Drawing Review, PTO-948.

☒ The drawing(s) filed on ___Oct 30, 1995___ is/are objected to by the Examiner.

☐ The proposed drawing correction, filed on _____ is  ☐approved  ☐disapproved.

☐ The specification is objected to by the Examiner.

☐ The oath or declaration is objected to by the Examiner.

**Priority under 35 U.S.C. § 119**

☐ Acknowledgement is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d).

☐ All  ☐ Some*  ☐ None   of the CERTIFIED copies of the priority documents have been

☐ received.

☐ received in Application No. (Series Code/Serial Number) _____ .

☐ received in this national stage application from the International Bureau (PCT Rule 17.2(a)).

*Certified copies not received: _____ .

☐ Acknowledgement is made of a claim for domestic priority under 35 U.S.C. § 119(e).

**Attachment(s)**

☒ Notice of References Cited, PTO-892

☐ Information Disclosure Statement(s), PTO-1449, Paper No(s). _____

☒ Interview Summary, PTO-413

☐ Notice of Draftsperson's Patent Drawing Review, PTO-948

☐ Notice of Informal Patent Application, PTO-152

--- *SEE OFFICE ACTION ON THE FOLLOWING PAGES* ---



Serial Number: 08/550,089                                           -2-
Art Unit: 2761

## Part III   DETAILED ACTION

### *Status of Claims*

1.      At the time of the last Office Action (final action mailed March 3, 1998), Claims 1 - 43 were under prosecution in this application.  The application is currently under a Continued Prosecution Application filed June 3, 1998.  Applicants further filed a preliminary amendment herein on July 14, 1998, traversing the prior office action and amending no claims.  Therefore, Claims 1 - 43 remain under prosecution in this Application.

2.      The Examiner notes that Applicants have requested, with their Continued Prosecution Application filing, entry of an amendment filed December 10, 1997, but allegedly unentered.  The Examiner respectfully notes that Applicants' December 10, 1997 amendment was entered upon receipt and that said amendment was the basis of the final Office Action mailed herein on March 3, 1998.


### *Summary of this Office Action*

3.      Applicants' arguments filed July 14, 1998 have been fully considered, are discussed in the next section below or within the following rejection under 35 U.S.C. § 103, and except as where expressly noted, are not deemed to be persuasive.  Therefore, Claims 1 - 43 are rejected under 35 U.S.C. § 103 as unpatentable over the art cited below; and Applicants' request for allowance is respectfully denied.


### *Response to Applicants' Amendment*

4.      The Examiner recognizes that Applicants can be their own lexicographers and accepts their explanation regarding "state characteristic of an event".  The corresponding objection to the Specification and rejection under 35 U.S.C. § 112 is therefore withdrawn.

5.      To the extent that an "event manager" is recited in the claims as detecting a change and therefore the occurrence of an event and subsequently initiating a following operation

Serial Number: 08/550,089                                                          -3-
Art Unit: 2761

in the sales process, Negrino1 discloses such a function at page 1, lines 38 - 44.
Negrino2 also teaches this feature at page 1, lines 28 - 30 and 39 - 40. (For a citation to
Negrino1 and Negrino2, please refer to the rejection under 35 U.S.C.§ 103 below.)

6.      As regards Negrino being a linear system, the Examiner asserts that Negrino
discloses a non-linear, automated branching system and for support therefore cites to
Negrino1 at page 1, lines 42 - 44 and page 2, line 48 - page 3, line 3, where the disclosed
sales automation system dynamically branches to a subsequent step based on the detected
outcome of a previous event. The system can automatically advise the salesperson the
next step to take, based on the occurrence of prior events (Negrino 2 at page 1, lines 28 -
30).

7.      As regards Negrino's method of deactivating a lead, since no such feature is
claimed herein, how Negrino fulfills such a function is irrelevant.

8.      As regards Negrino differing from the automatic prediction feature of Applicants'
invention as traversed on page 4 of their July 14, 1998 response, the Examiner
respectfully asserts that no such prediction feature is recited; and, therefore, such a
difference, if it does indeed exist, is irrelevant.

9.      As regards the Negrino being limited to sales contact management, the Examiner
asserts that Negrino teaches in the art of sales automation software in which "every step
of the sales process" is under control of the system and expressly discloses capturing
initial sales leads, making sales presentations, scheduling meetings with customers,
submitting and refining bids, closing a sale, and following up for future sales. See
Negrino1 at page 1, line 20 - page 3, line 5; Negrino2 at page 1, lines 20 - 41.
Furthermore, the claims recited herein do not exclude sales contact management from
from the recited event management. See Claims 1 and 13; Specification at page 7, line 15
- page 8, line 11; page 15, lines 8 - 29).

Serial Number: 08/550,089                                                                    -4-
Art Unit: 2761

10.     Applicants' remaining traversals are discussed under the 35 U.S.C. § 103 rejection
below.

## Drawings

11.     This application has been filed with informal drawings which are acceptable for
examination purposes only.  Formal drawings will be required when the application is
allowed.

12.     The drawings are objected to because of irregularities as noted on PTO 948,
enclosed.  Appropriate correction is required.

## Specification

13.     The application is objected to as not being in compliance with 37 C.F.R. § 1.77 regarding
the required elements of the application.  In particular, this application is lacking a section
entitled, "Cross-References to Related Applications" which should reference copending
application Nos. 08/798,850, filed February 12, 1997, and 08/879,070 filed June 19, 1997.

## Claim Rejections - 35 USC § 103

14.     The following is a quotation of 35 U.S.C. § 103 which forms the basis for all
obviousness rejections set forth in this Office action:

> A patent may not be obtained though the invention is not identically disclosed or
> described as set forth in section 102 of this title, if the differences between the
> subject matter sought to be patented and the prior art are such that the subject
> matter as a whole would have been obvious at the time the invention was made to
> a person having ordinary skill in the art to which said subject matter pertains.
> Patentability shall not be negatived by the manner in which the invention was
> made.
>
> Subject matter developed by another person, which qualifies as prior art only
> under subsection (f) or (g) of section 102 of this title, shall not preclude

Serial Number: 08/550,089
Art Unit: 2761

patentability under this section where the subject matter and the claimed invention were, at the time the invention was made, owned by the same person or subject to an obligation of assignment to the same person.

15.　　Claims 1 - 3, 5, 7, 8, 10 - 16, 21 - 35, and 37 - 43 are rejected under 35 USC § 103 as being unpatentable over Tom Negrino, "Sales-Automation Software", Macworld, v 10, n 10, pages 144 - 148, October, 1993 (hereinafter "Negrino1") and Tom Negrino, "Market Master Manager 3.5", Macworld, v 10, n 10, page 57, October, 1993 (hereinafter "Negrino2"). The Examiner will refer to Negrino1 and Negrino2 collectively as "Negrino". The Examiner asserts that it would have been obvious to the person of ordinary skill in the art of sales force automation systems to treat these two articles collectively. One would be motivated to do so because they deal with the same subject matter (sales automation software), were published in the same issue of a magazine, and were authored by the same person.

　　　　(A)　　As to Claims 1, 13, 21, and 24, Negrino discloses a computer-based sales automation system that is used to facilitate the steps of a sales process (Negrino1 at page 1, lines 25 - 44; Negrino2 at page 1, lines 20 - 32). Negrino teaches a plurality of subsystems, each corresponding to a step in the sales process and each facilitating that respective sales step (Id.). Negrino also discloses an automated branching, or event, manager that automatically initiates the next particular step in the automated sales process based on detecting the outcome characteristics of a prior step (Negrino1 at page 1, lines 42 - 44; page 2, lines 9 - 13; page 2, line 48 - page 3, line 3; Negrino2 at page 1, lines 28 - 30 and 39 - 40).

　　　　(B)　　As to Claim 2, 3, and 23, Negrino discloses that the system directs the initiation of a subsequent step within a phase of the sales process based on the context in which a previous event may have occurred (Negrino1 at page 1, lines 37 - 44; Negrino2 at page 1, lines 28 - 30). Although Negrino does not expressly disclose available

Serial Number: 08/550,089                                    -6-
Art Unit: 2761

information related to a given step, it does disclose the automatic logging of information
upon occurrence of events (Negrino1 at page 2, lines 9 - 13). The Examiner asserts that
in order to log such information, the contextual environment of each step must
necessarily include the related information which the system subsequently records in a
central database. The Examiner further asserts that it would have been obvious to one of
ordinary skill in the art to include information with respect to occurrence of a previous
step in the automated sales/branching system disclosed by Negrino. One would be
motivated to do so in order to have sufficient information with which to verify that the
prior step had satisfactorily completed prior to initiating the subsequent step.

(C)    As to Claim 5, Negrino teaches an initial event of spending time with a
customer in the form of learning about the prospect's needs and making a sales
presentation, with the intent of converting an initial lead into a closed sale (Negrino1 at
page 1, lines 25 - 28). Negrino further discloses a lead management subsystem (Negrino1
at page 1, lines 25 - 26; page 5, lines 19 - 21 and 44 - 46). Although Negrino does not
expressly teach using the lead management subsystem in converting a name to a potential
customer, the Examiner asserts that a primary goal of a sales system is to make a sale,
which necessarily requires converting initial leads, or prospects, into buying customers.

(D)    As to Claim 7, Negrino discloses a customer retention subsystem that
includes post-sale contacts, letters, and meetings with clients for building a relationship
with an existing customer for future sales (Negrino1 at page 1, lines 28 - 29; page 2, lines
9 - 13; page 3, lines 9 - 12). The remaining limitations of Claim 7 are found in Claim 5,
and the remainder of this claim is rejected for the same reasons.

(F)    As to Claim 8, Negrino teaches a self management subsystem of customer
contact management, to-do lists, calendars, and schedulers for assisting the salesperson in
fulfilling his/her sales responsibilities (Negrino1 at page 2, lines 27 - 34). The remaining

Serial Number: 08/550,089                                                       -7-
Art Unit: 2761

limitations of Claim 8 are found in Claim 5, and the remainder of this claim is rejected
for the same reasons.

(G)     As to Claim 10, Negrino teaches a sales management subsystem that
includes sales plans that implement enterprise-wide strategies and means for
implementing said plans (Negrino1 at page 1, lines 38 - 44). The remaining limitations of
Claim 10 are found in Claim 5, and the remainder of this claim is rejected for the same
reasons.

(H)     The limitations of Claim 11 are found in Claims 6 and 8, and this claim is
rejected for the same reasons.

(I)     The limitations of Claim 12 are found in Claims 5 and 8, and this claim is
rejected for the same reasons.

(J)     As to Claim 14, and as discussed above regarding Claims 1 - 3, Negrino
teaches performance of events based on the occurrence of prior events. Although
Negrino does not expressly disclose determining whether or not a particular prior event
occurred, the Examiner asserts that such a determination would have been obvious prior
to the initiation of a subsequent, dependent event in a sequence of events. To do
otherwise, would render the sequential dependency of events as disclosed by Negrino
meaningless (see Negrino1 at page 1, lines 42 - 44). The remaining limitations of Claim
14 are found in Claims 2 and 3, and the remainder of this claim is rejected for the same
reasons.

(K)     The limitations of Claim 15 are found in Claims 1 and 6, and this claim is
rejected for the same reasons.

(L)     The limitations of Claim 16 are found in Claims 1 and 5, and this claim is
rejected for the same reasons.

(M)     As to Claim 22, the Examiner asserts that events occurring within the sales
process are well known to be indicative of more that one step of a sales process. For

Serial Number: 08/550,089                                                    -8-
Art Unit: 2761

example, a telephone call from a customer may occur in several steps of the sales process. See Negrino1 at page 1, lines 29 - 35.

    (N)    The limitations of Claims 25 and 33 are found in Claim 1, and these claims are rejected for the same reasons.

    (O)    The limitations of Claims 26, 31, and 34 are found in Claim 23, and these claims are rejected for the same reasons.

    (P)    The limitations of Claims 27, 32, and 35 are found in Claim 24, and these claims are rejected for the same reasons.

    (Q)    The limitations of Claim 28 are found in Claims 21 and 23, and this claim is rejected for the same reasons.

    (R)    The limitations of Claim 29 are found in Claim 21, and this claim is rejected for the same reasons.

    (S)    The limitations of Claim 30 are found in Claim 22, and this claim is rejected for the same reasons.

    (T)    The limitations of Claim 37 are found in Claims 1 and 5, and this claim is rejected for the same reasons.

    (U)    The limitations of Claim 38 are found in Claims 1 and 7, and this claim is rejected for the same reasons.

    (V)    The limitations of Claim 39 are found in Claims 1 and 8, and this claim is rejected for the same reasons.

    (W)    The limitations of Claim 40 are found in Claims 1 and 9, and this claim is rejected for the same reasons.

    (X)    The limitations of Claim 41 are found in Claims 1 and 10, and this claim is rejected for the same reasons.

    (Y)    The limitations of Claim 42 are found in Claims 1 and 11, and this claim is rejected for the same reasons.

Serial Number: 08/550,089                                                                -9-
Art Unit: 2761

(Z)     The limitations of Claim 43 are found in Claims 1 and 12, and this claim is
rejected for the same reasons.

16.     Claims 4, 17 - 20, and 36 are rejected under 35 USC § 103 as being unpatentable
over Negrino1 and Negrino2 as applied to Claims 1 and 13 above, and further in view of
Tony Seideman, "Way Cool! (Sales Force Automation)", Sales & Marketing
Management, v 146, n 6, pages 10 - 13, June, 1994 (hereinafter "Seideman").

(A)     As to Claim 4, while Negrino does not teach a rule-based sales automation
system, Seideman does disclose an expert sales automation system in which rules direct
the next recommended action to be taken, upon occurrence of a given event or step
(Seideman at page 1, lines 37 - 45). A decision subsystem directs the salesperson to the
next proper step based on the context in which the prior steps occurred (page 4, lines 34 -
40). Although Seideman does not expressly disclose storing a plurality of rules, expert
systems are well known to be comprised of a stored knowledge base of rules in
conjunction with an inference engine that enables the system to make decisions and direct
actions based on contextual knowledge (information) and rules defined by experts in the
field. See Seideman at page 4, lines 39 - 43; Computer Dictionary, Microsoft Press, 156,
(Second Ed., 1994).

Although Seideman does not disclose identifying an express rule governing
response to an event, the Examiner asserts that expert systems are well known to initiate a
subsequent step upon being provided a relevant knowledge base and contextual
information regarding the present event. It would have been obvious to one of ordinary
skill in the art to modify Negrino with the expert system of Seideman. One would be
motivated to do so in order to incorporate the well-known dynamic learning means of
expert systems into the sales automation system of Negrino, and thereby permit Negrino's
system to solve problems and initiate events based on the experience and rules of experts
with minimal manual intervention.

Serial Number: 08/550,089                                                          -10-
Art Unit: 2761

(B)    As to Claim 17, and as discussed above regarding Claim 1 and 4, Negrino
discloses a computer-based sales automation system that is used to facilitate the sales
process.  Although Negrino does not teach "electronically" facilitating sales events,
Negrino does disclose use of computers with which to direct events, and the Examiner
asserts that computers are well known to be powered by electricity.  While Negrino does
not expressly disclose linking to subsequent steps based on prior experience, it does
disclose linking to subsequent steps based on the occurrence of prior steps.  Also,
Seideman teaches incorporating prior sales experience with which to direct the operation
of the automated system (Seideman at page 4, lines 39 - 43).  It would have been obvious
to modify Negrino with the experience means of Seideman.  One would be motivated to
do so to take advantage of existing practical knowledge within the sales process so as to
avoid prior mistakes and to use past successful sequences of events and subsystems with
which to close a sale (see Seideman at page 4, lines 41 - 43).  The remaining limitations
of Claim 17 are found in Claims 1 and 4, and the remainder of this claim is rejected for
the same reasons.

(C)    As to Claims 18,19, and 20, although Negrino does not disclose an expert
system, Seideman does disclose an expert sales automation system that uses prior sales
experience with which to build rules to drive the system.  As discussed above regarding
Claim 4, expert systems are well known to be comprised of knowledge bases of rules that
represents expert experience in the field, and Seideman teaches learning from the sales
process so as to implement strategies that will work best and further teaches guiding the
system to direct the most efficient courses of action (Seideman at page 4, lines 39 - 43).
Although Seideman does not expressly disclose monitoring sales process events, the
Examiner asserts that it would have been obvious, in view of Seideman, for an expert
system to monitor those events comprising the system so as to "learn" what works and
what leads to undesirable results and incorporate that knowledge in the expert system's

Serial Number: 08/550,089                                                -11-
Art Unit: 2761

well-known knowledge base. It would have been obvious to modify Negrino with the
expert system of Seideman for the reasons discussed regarding claim 4.

(D)    The limitations of Claim 36 are found in Claim 4, and this claim is rejected
for the same reasons.

17.    Claim 6 is rejected under 35 USC § 103 as being unpatentable over Negrino1 and
Negrino2 as applied to Claim 1 above, and further in view of John Hiatt, "Empowering
the Global Sales Force", International Business, v 7, n 9, pages 16 - 20, September, 1994
(hereinafter "Hiatt").

(A)    As to Claim 6, while Negrino does not teach an order management system
for ensuring that the ordered product or service is delivered, Hiatt discloses a sales
automation system that provides for automatic entry of orders and subsequent shipment
of flawless orders to the customer. It would have been obvious to modify Negrino with
the order management subsystem of Hiatt in order to ensure timely and accurate order
shipments. One would be motivated to do so in order to deliver that which was promised
to the customer and in order to preserve the order. The remaining limitations of Claim 6
are found in Claim 5, and the remainder of this claim is rejected for the same reasons.

18.    Claim 9 is rejected under 35 USC § 103 as being unpatentable over Negrino1 and
Negrino2 as applied to Claim 1 above, and further in view of Colleen Frye, "Automation
Integrating Phases of Sales Cycle", Software Magazine, v 13, n 14, pages 61 - 72,
September, 1993 (hereinafter "Frye").

(A)    As to Claim 9, Negrino discloses a computer-based sales automation system
that is used to facilitate the sales process, said system being comprised of a plurality of
subsystems, each corresponding to a step in the sales process and each facilitating that
respective sales step. Although Negrino does not teach a training subsystem, Frye does
disclose a sales force automation system in which the users (salespersons) are trained on
the system. Although Frye is not clear whether or not the system actually does the

Serial Number: 08/550,089                                                                    -12-
Art Unit: 2761

training, the Examiner asserts that, in view of Frye and the well-known benefits that

accrue from a well-trained staff, it would have been obvious to one of ordinary skill in the

art of sales automation systems to provide for system-directed training of salespersons.

One would be motivated to do so in order to take advantage of the automation and the

knowledge (rules) built into the system to detect the progress of each individual

salesperson and to provide training information relevant to his/her particular experience

level and products being sold.  One would be further motivated to do so to automatically

load updated product information into the databases disclosed by Negrino and Frye to

provide the salespersons with up to date information.

### Conclusion

19.     Any inquiry concerning this communication or earlier communications from the
examiner should be directed to William Hughet, whose telephone number is (703) 305-
9770.  The examiner can be reached on Monday through Friday from 8:00 a.m. to 5:00
p.m.
        If attempts to reach the examiner by telephone are unsuccessful, the examiner's
supervisor, Todd Voeltz, can be reached at (703) 305-9714.  The fax phone number for
this Group is (703) 308-5357.
        Any inquiry of a general nature or relating to the status of this application should
be directed to the Group receptionist whose telephone number is (703) 305-3900.

William N. Hughet
September 9, 1998
(08550089 AC3)          WNH

STEPHEN R. TKACS
PRIMARY EXAMINER