IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| SFA SYSTEMS, LLC | § | |
| | § | CIVIL ACTION NO. 6:07-cv-067[LED] |
| v. | § | |
| | § | |
| INFOR GLOBAL SOLUTIONS | § | JURY DEMANDED |
| (MICHIGAN), INC. AND INFOR | § | |
| GLOBAL SOLUTIONS (CHICAGO), INC. | § | |

## DEFENDANTS' RESPONSIVE CLAIM CONSTRUCTION BRIEF

Alfred W. Zaher
zaher@blankrome.com
Bruce D. George
george@blankrome.com
Joel L. Dion
dion-j@blankrome.com
Nakul Krishnakumar
krishnakumar@blankrome.com
Blank Rome LLP
One Logan Square
Philadelphia, PA 19103
215/569-5500
Fax: 215/832-5788

Michael E. Jones
mikejones@potterminton.com
Diane V. DeVasto
dianedevasto@potterminton.com
POTTER MINTON
A Professional Corporation
110 N. College, Suite 500
Tyler, Texas 75702
903/597-8311
903/593-0846 Facsimile

**ATTORNEYS FOR DEFENDANTS
INFOR GLOBAL SOLUTIONS
(CHICAGO), INC. AND INFOR GLOBAL
SOLUTIONS (MICHIGAN), INC.**

# TABLE OF CONTENTS

I. INTRODUCTION ...................................................................................................1

II. APPLICABLE LAW AND CANONS OF CLAIM CONSTRUCTION ............................1

    A. Claim Terms Must Be Construed Based on Intrinsic Evidence .............................1

        1. The Specification Is of Primary Importance for Claim Construction..........2
        2. The Prosecution History Informs the Meaning of Claim Language...........2

    B. Extrinsic Evidence Cannot Overcome the Intrinsic Record ...................................3

III. ARGUMENT .......................................................................................................4

    A. The Claims of the '525 Patent Are Indefinite........................................................4

        1. The Claim Element "Inferring Occurrence of the Event and a Context in Which the Event Occurred" Is Indefinite......................................................4
        2. The Claim Term "State Characteristic of an Event" Is Indefinite .............11

    B. Construction of Disputed Terms ..........................................................................15

        1. Inferring .....................................................................................................15
        2. Inferring Occurrence of the Event ............................................................17
        3. Inferring . . . a Context in Which the Event Occurred ..............................17
        4. Changes in State Characteristic of an Event .............................................18
        5. Event Manager ..........................................................................................18
        6. Subsystem ..................................................................................................24
        7. Expert System ...........................................................................................26
        8. Context......................................................................................................28

IV. CONCLUSION..................................................................................................30

## TABLE OF AUTHORITIES

### FEDERAL CASES

*Amtel Corp. v. Information Storage Devices, Inc.*, 198 F.3d 1374 (Fed. Cir. 1999)................4, 12

*Athletic Alternatives, Inc. v. Prince Manufacturing, Inc.*, 73 F.3d 1573 (Fed. Cir. 1996)............18

*Autobytel, Inc. v. Dealix Corp.*, 2006 U.S. Dist. LEXIS 3381 (E.D. Tex. Jan. 18, 2006)..............2

*Badasa v. Mukasey*, No. 07-2276 (8th Cir. Aug. 29, 2008)..........................................28

*Bell Atlantic Network Services, Inc. v. Covad Communications Group, Inc.*, 262 F.3d 1258 (Fed. Cir. 2001)..................................................................2

*C.R. Bard, Inc. v. United States Surgical Corp.*, 388 F.3d 858 (Fed. Cir. 2004) .......................2, 3

*Chef America, Inc. v. Lamb-Weston, Inc.*, 358 F.3d 1371 (Fed. Cir. 2004) ...................................9

*Chimie v. PPG Industrial, Inc.*, 402 F.3d 1371 (Fed. Cir. 2005) ...................................................3

*Datamize LLC v. Plumtree Software Inc.*, 417 F.3d 1342 (Fed. Cir. 2005) ...................................6

*Decisioning.com, Inc. v. Federated Department Stores, Inc.*, 527 F.3d 1300 (Fed. Cir. 2008) ...............................................................................................3, 20, 25

*Energizer Holdings, Inc. v. International Trade Commission*, 435 F.3d 1366 (Fed. Cir. 2006) .............................................................................................8

*Exxon Research and Engineering Co. v. U.S.*, 265 F.3d 1371 (Fed. Cir. 2001)............................8

*Halliburton Energy Services, Inc. v. M-I Drilling Fluids LLC*, 514 F.3d 1244 (Fed. Cir. 2008) ............................................................................6, 10, 11, 16, 18

*Hewlett-Packard Co. v. Bausch & Lomb Inc.*, 909 F.2d 1464 (Fed. Cir. 1990)...........................26

*Honeywell International Inc., v. International Trade Commission*, 341 F.3d 1332 (Fed. Cir. 2003) ....................................................................................................5

*Hyperion Solutions Corp. v. OutlookSoft Corp.*, 422 F. Supp. 2d 760 (E.D. Tex. 2006)..............28

*Markman v. Westview Instruments, Inc.*, 52 F.3d 967 (Fed. Cir. 1995) ..........................................2

*Merck & Co., Inc. v. Teva Pharmaceuticals USA, Inc.*, 395 F.3d 1364 (Fed. Cir. 2005) .............28

*Morton International, Inc. v. Cardinal Chemical Co.*, 5 F.3d 1464 (Fed. Cir. 1994) ................8, 9

*Multiform Desiccants Inc. v. Medzam Ltd.*, 133 F.3d 1473 (Fed. Cir. 1998) ..........................14, 26

*Novo Industrial, L.P. v. Micro Molds Corp.*, 350 F.3d 1348 (Fed. Cir. 2003) ...............................5

*Oakley, Inc. v. Sunglass Hut International*, 316 F.3d 1331 (Fed. Cir. 2003) ..................................5

*On Demand Machine Corp. v. Ingram Industries, Inc.*,
  442 F.3d 1331 (Fed. Cir. 2006) ..............................................................................3, 20, 25, 26

*Orion IP, LLC v. Mercedes-Benz USA, LLC*, 2007 WL 1091025 (E.D. Tex.
  Apr. 10, 2007) ............................................................................................................6

*In re Paulsen*, 30 F.3d 1475 (Fed. Cir. 1994) ...............................................................13

*Phillips v. AWH Corp.*, 415 F.3d 1303 (Fed. Cir. 2005) ..................................................... *passim*

*RFID Tracker Ltd. v. Wal-mart Stores, Inc.*, 545 F. Supp. 2d 571 (E.D. Tex. 2008)....................21

*In re Rasmussen*, 650 F.2d 1212 (C.C.P.A. 1981)............................................................5

*Seachange International, Inc. v. C-COR Inc.*, 413 F.3d 1361 (Fed. Cir. 2005) ...........................26

*Standard Oil Co. v. America Cyanamid Co.*, 774 F.2d 448 (Fed. Cir. 1985)................................2

*Texas Digital System, Inc. v. Telegenix, Inc.*, 308 F.3d 1193 (Fed. Cir. 2002) ..........................3, 4

*Union Pacific Resources, Co. v. Chesapeake Energy Corp.*, 236 F.3d 684 (Fed. Cir.
  2001) ......................................................................................................................6, 8

*Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576 (Fed. Cir. 1996) ......................................2, 4

*Waldemar Link, GmbH & Co. v. Osteonics Corp.*, 32 F.3d 556 (Fed. Cir. 1994)..........................5

*ZMI Corp. v. Cardiac Resuscitator Corp.*, 844 F.2d 1576 (Fed. Cir. 1988) .................................3

## FEDERAL STATUTE

35 U.S.C. § 112 (2000) .......................................................................................4, 5, 12

**MISCELLANEOUS**

Albert J Marcella Jr. & James V. Rauff, *Utilizing Expert Systems to Evaluate Disaster Recovery Planning*, 11 J. of Applied Business Research 30 (1994)........................................17

Brian H. Kleiner & Vimal Thomas, *New Developments in Computer Software*, 95 Industrial Management & Data Systems 22 (1995)................................................................17

Douglas Downing, Michael Covington, and Melody Mauldin Covington, *Dictionary of Computer and Internet Terms* 165 (6th ed. 1998) ......................................................17, 27, 28

Susan J. Hazen, Sachi Sakthivel & John R. Slater, *On Selecting Appropriate Technology for Knowledge Systems; Expert Systems and Artificial Neural Network Knowledge System Technologies*, 44 J. of Sys. Mgmt. 10 (1993)............................................................27

Ting-Peng Liang, *Research in Integrating Learning Capabilities into Information Systems*, 9 J. of Mgmt. Info. Sys. 5 (1993) ............................................................................27

## I.   INTRODUCTION

Defendants Infor Global Solutions (Michigan), Inc. and Infor Global Solutions (Chicago), Inc. (collectively "Infor") provide the following claim constructions, which are based on the specification and prosecution history of U.S. Pat. No. 6,067,525 ("the '525 patent").[1]

By contrast, Plaintiff SFA Systems, LLC ("SFA") has submitted claim constructions that are largely based on self-serving extrinsic evidence dressed as "plain meaning," relying on a doctrine that has been rejected by this Court and the Federal Circuit.  In this vain attempt to secure the plain-meaning high ground, SFA abandons its own specification, claim terms, amendments, prosecution arguments and resulting limitations, relying instead on dictionary definitions to define terms in a vacuum, rather than in light of the intrinsic record.

Ignoring the Federal Circuit's admonition that the specification provides the "outer boundary" for the scope of the claims,[2] SFA clearly states that "[t]he constructions offered by Plaintiff is [*sic*] consistent with, but not limited to, the specifications of the patents-in-suit [*sic*]."[3]

By disregarding its own limiting claim amendments and arguments during prosecution, SFA relies on extrinsic evidence to address clearly ambiguous claim terms by impermissibly offering them the broadest possible construction.  Unfortunately for SFA, it is beyond question that the full intrinsic record, and not the dictionary, must guide the Court's claim construction.  It is also clear that such tactics are a distortion and abuse of the patent law, and deprive the public of clear notice or any understanding of the metes and bounds of the patented invention.

## II.   APPLICABLE LAW AND CANONS OF CLAIM CONSTRUCTION

### A.   Claim Terms Must Be Construed Based on Intrinsic Evidence

"It is a 'bedrock principle' of patent law that 'the claims of a patent define the invention

---

[1] A copy of the '525 patent is attached hereto as Exhibit A.
[2] *On Demand Machine Corp. v. Ingram Industries, Inc.*, 442 F.3d 1331, 1338, 1344 (Fed. Cir. 2006).
[3] Plaintiff's Opening Claim Construction Brief ("Plaintiff's Brief") 29 (emphasis added).

to which the patentee is entitled the right to exclude.'"[4]  The starting point for construing the claims is the patent's intrinsic evidence, which includes the claim language itself, the patent specification, and the corresponding prosecution history of the patent.[5]

### 1.    The Specification Is of Primary Importance for Claim Construction

A patent's claims provide substantial guidance in determining a term's meaning.[6]  The claims must, however, "'be read in view of the specification, of which they are a part.'"[7]  As the Federal Circuit reaffirmed in *Phillips*, "[t]he specification is, thus, the primary basis for construing the claims."[8]  "[T]he specification 'is always highly relevant to the claim construction analysis. Usually, it is dispositive; it is the single best guide to the meaning of a disputed term.'"[9]

Since *Phillips*, the Federal Circuit has clarified that the specification is both the primary resource for proper claim construction, and an "outer boundary" for the scope of the claims:

> In general, the scope and outer boundary of claims is set by the patentee's description of his invention . . . . Although we agree with the district court that each term standing alone can be construed as having varying degrees of breadth, each term must be construed to implement the invention described in the specification. Care must be taken lest word-by-word definition, removed from the context of the invention, leads to an overall result that departs significantly from the patented invention.[10]

### 2.    The Prosecution History Informs the Meaning of Claim Language

Beyond the claims and the specification, a court must also consider the patent's

---

[4] *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (en banc) (quoting *Innova/Pure Water Inc. v. Safari Water Filtration Sys., Inc.*, 381 F.3d 1111, 1115 (Fed. Cir. 2004)); *Autobytel, Inc. v. Dealix Corp.*, 2006 U.S. Dist. LEXIS 3381, at *2 (E.D. Tex. Jan. 18, 2006).

[5] *See Phillips*, 415 F.3d at 1312, 1314; *C.R. Bard, Inc. v. United States Surgical Corp.*, 388 F.3d 858, 861 (Fed. Cir. 2004); *Bell Atl. Net. Servs., Inc. v. Covad Communications Group, Inc.*, 262 F.3d 1258, 1267 (Fed. Cir. 2001).

[6] *Phillips*, 415 F.3d at 1314.

[7] *Id.* at 1315 (quoting *Markman v. Westview Instr., Inc.*, 52 F.3d 967, 979 (Fed. Cir. 1995)).

[8] *Id.* (citing *Standard Oil Co. v. Am. Cyanamid Co.*, 774 F.2d 448, 452 (Fed. Cir. 1985)).

[9] *Id.* (quoting *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996)).

[10] *On Demand Machine Corp.*, 442 F.3d at 1344 (Fed. Cir. 2006) (citation omitted) (emphasis added); *see also Decisioning.com, Inc. v. Federated Dep't. Stores, Inc.*, 527 F.3d 1300, 1308-11 (Fed. Cir. 2008) (rejecting broad plain and ordinary meaning of term 'remote interface' because, in view of the specification, one of ordinary skill in the art would understand the term to be much more limited).

prosecution history.[11]   The prosecution history, which is part of the intrinsic record, "provides evidence of how the PTO and the inventor understood the patent," and is the patentee's attempt to explain the patent.[12]   Consideration of the prosecution history assures that a patentee does not reclaim during claim construction what he disclaimed or narrowed during prosecution.[13]

### B.   Extrinsic Evidence Cannot Overcome the Intrinsic Record

Extrinsic evidence plays a secondary role in claim construction and is "less significant than the intrinsic record in determining the legally operative meaning of claim language."[14] While dictionaries may provide helpful background, they often have definitions that are <u>overly broad or overly narrow and bear no relation to how the term is used in the patent</u>.[15]   Accordingly, the Federal Circuit has rejected any claim construction approach that elevates dictionary definitions over the intrinsic record, moving away from the claim construction rubric outlined in *Texas Digital Sys., Inc. v. Telegenix, Inc.*, 308 F.3d 1193 (Fed. Cir. 2002).[16]

In *Texas Digital*, the court described a methodology wherein a term was first defined by reference to dictionaries and other extrinsic evidence.[17]   Once the ordinary meaning was gleaned from extrinsic evidence, the court could consult the intrinsic record only for the limited purpose of determining if the dictionary definition was overcome by "an explicit definition of the term different from its ordinary meaning," or if the inventor "has disavowed or disclaimed scope of coverage. . . ."[18]

The *Phillips* court went on to flatly reject the *Texas Digital* approach, which "limits the

---

[11] *See Phillips*, 415 F.3d at 1317.
[12] *Id.*
[13] *See id.* (citing *Chimie v. PPG Indus., Inc.*, 402 F.3d 1371, 1384 (Fed. Cir. 2005) ("The purpose of consulting the prosecution history in construing a claim is to 'exclude any interpretation that was disclaimed during prosecution'") quoting *ZMI Corp. v. Cardiac Resuscitator Corp.*, 844 F.2d 1576, 1580 (Fed. Cir. 1988)).
[14] *Phillips*, 415 F.3d at 1317 (quoting *C.R. Bard., Inc.*, 388 F.3d at 862).
[15] *See id.* at 1318-24.
[16] *Id.* at 1320-21.
[17] *Texas Digital*, 308 F.3d at 1204.
[18] *Id.*

role of the specification in claim construction to serving as a check on the dictionary meaning of a claim term,"[19] because it ignores the Federal Circuit rulings holding that "the specification is 'the single best guide to the meaning of a disputed term.'"[20]  The court reasoned that a prominent role for dictionaries results in constructions based on abstract meanings, not the meaning of the term within the patent.[21]  "Properly viewed, the 'ordinary meaning' of a claim term is its meaning to the ordinary artisan after <u>reading the entire patent</u>."[22]  Reliance on dictionary definitions, without limitations from the intrinsic record's context, may extend protection beyond a patent's proper scope.[23]  Accordingly, the Court should not countenance SFA's attempt to ignore the specification and expand the scope of its patent through word-by-word construction.

## III.   ARGUMENT

### A.   <u>The Claims of the '525 Patent Are Indefinite</u>

#### 1.   **The Claim Element "Inferring Occurrence of the Event and a Context in Which the Event Occurred" Is Indefinite**[24]

The claim element "inferring occurrence of the event and a context in which the event occurred" is indefinite because it is impossible to determine the construction of each of the three parts of the element ("inferring," "inferring occurrence of the event," and "inferring…a context in which the event occurred") by the application of the canons of claim construction.[25] Specifically, a skilled artisan cannot understand the meaning of these terms from the claims and specification.

---

[19] *Phillips*, 415 F.3d at 1320.

[20] *Id.* at 1321 (citing *Vitronics*, 90 F.3d at 1582).

[21] *See Id.*

[22] *Id.* (emphasis added).

[23] *Id.* at 1322.

[24] In addition, Infor believes that the use of the term "inferring" renders the claims invalid due to lack of enablement and lack of written description.  Infor reserves these arguments until after the Court has construed the terms.  In contrast, the Court must consider indefiniteness in conjunction with its construction of the claims.  *Amtel Corp. v. Information Storage Devices, Inc.*, 198 F.3d 1374, 1379 (Fed. Cir. 1999) (indefiniteness under 35 U.S.C. § 112 ¶ 2 (2000) is "inextricably intertwined with claim construction.").

[25] *See Oakley, Inc. v. Sunglass Hut Int'l*, 316 F.3d 1331, 1340-41 (Fed. Cir. 2003) (noting that a determination of definiteness "requires a construction of the claims according to the familiar canons of claim construction").

First, the "inferring" clause, introduced as new matter during prosecution, is not disclosed, supported, or described in the specification.[26]  Second, "inferring" is not amenable to construction, since conflicting meanings of the term "infer" are argued in the prosecution history, rendering the claims insolubly ambiguous.[27]  Third, multiple possible inconsistent meanings for the term "inferring" can be construed by one skilled in the art, based upon the intrinsic evidence alone, and further upon additional consideration of extrinsic evidence (as in the parties' respective extrinsic evidence submitted herein).

In narrowing claim amendments, the inventors distinguished the "inferring" step by asserting that the prior art fails to teach "context recognition,"[28] but in a later amendment argued that the prior art fails to perform the step of "inferring the context."[29]  Further, the claims require the event manager to perform the "inferring."  Yet, in the detailed description of the preferred embodiments, the event manager only "notes,"[30] "recognizes,"[31] "checks,"[32] or otherwise "uses"[33] contexts in the system.  It does not "infer" contexts.  Finally, in the summary of the invention, the event manager "detects" or "recognizes" the occurrence of the event, and only "determines" the context in which the event occurs.[34]  In this way, there is no explanation of the term "inferring."

Accordingly, the term "infer" and the clause in which it appears violate the public policy that a patent's specification must provide unambiguous notice to the public in the form of a

---

[26] Subject matter not disclosed in the original application and added by amendment is rejected on the ground that it recites elements without support in the original disclosure under § 112 ¶ 1.  *Waldemar Link, GmbH & Co. v. Osteonics Corp.*, 32 F.3d 556, 559 (Fed. Cir. 1994); *In re Rasmussen*, 650 F.2d 1212, 1214 (C.C.P.A. 1981).

[27] *See, e.g., Novo Indus., L.P. v. Micro Molds Corp.*, 350 F.3d 1348, 1353 (Fed. Cir. 2003); *Honeywell Int'l Inc., v. Int'l Trade Comm'n*, 341 F.3d 1332, 1338 (Fed. Cir. 2003) (claims are indefinite if so "insolubly ambiguous" as to render them "[un]amenable to construction").

[28] Amend of Dec. 15, 1997 Ex. C at 16.

[29] Amend of Oct. 27, 1999 Ex. F at 3.

[30] '525 patent at col. 18:41-54.

[31] *Id.* at col. 19:21-25.

[32] *Id.* at col. 32:57-33:4.

[33] *Id.*

[34] *Id.* at col. 2:28-51.

"workable objective standard" for determining the meaning of every term used in the claim, as well as the claim as a whole.[35]   "[E]ven if a claim term's definition can be reduced to words, the claim is still indefinite if a person of ordinary skill in the art cannot translate the definition into meaningfully precise claim scope."[36]

Proper notice is essential; without it SFA's claims are indefinite.[37]   A patentee cannot cure ambiguities in claim terms, as in this case, by simply giving the terms their broadest possible construction.   As the Federal Circuit explained in *Halliburton*, any other result would allow the patentee to benefit from the ambiguity at the expense of the public.

This is especially true when a claim term has both a colloquial definition (as SFA relies upon) and a technical definition, known to those of skill in the art.[38]   As explained in *Union Pacific*, a term, such as "inferring," is indefinite when it:   (1) appears rarely, if at all, in the specification; (2) has a suggested, but inadequately explained, technical meaning in the specification; and (3) has a common dictionary meaning different than the technical meaning, such that multiple meanings can be construed by a person skilled in the art.

### a.     The Term "Inferring" Is Indefinite

As dictated by *Phillips*, the Court must first turn to the intrinsic record.   Here, however, the claims do not provide any guidance as to which of the many varied definitions, as discussed above in Section III.A.1., of the term "infer" are intended by the patentee.   Without a contextual reference in the claims, the next resource to resolve the ambiguity created by the term "infer" is the specification.   The specification, however, also provides no guidance.   In fact, a review of the

---

[35] *Datamize LLC v. Plumtree Software Inc.,* 417 F.3d 1342, 1350-51 (Fed. Cir. 2005) ("[s]ome objective standard must be provided [in the specification] in order to allow the public to determine the scope of the claimed invention.").

[36] *See Halliburton Energy Services, Inc. v. M-I Drilling Fluids LLC,* 514 F.3d 1244, 1251 (Fed. Cir. 2008).

[37] *Id.* at 1254.

[38] *See Union Pacific Resources, Co. v. Chesapeake Energy Corp.*, 236 F.3d 684, 692 (Fed. Cir. 2001); *see also Orion IP, LLC  v. Mercedes-Benz USA, LLC*, 2007 WL 1091025, at *16 (E.D. Tex. Apr. 10, 2007).

patent reveals that the term "infer" (including all forms) does not exist in the specification,[39] first appearing in the patent after being added during prosecution.[40]   Thus, the specification, like the claims, does not provide guidance as to of the scope and limitations of the term "inferring."

In its Brief, however, SFA boldly argues that the term "inferring," although new matter and not disclosed anywhere in the specification, is nonetheless capable of construction by use of dictionaries.   Indeed, SFA even suggests what it contends is a plain and ordinary meaning by self-selecting one of multiple definitions, not in a technical software dictionary or treatise, but in a common English dictionary.[41]   Upon close inspection, however, this dictionary does not even provide a definition for "infer" consistent with SFA's proposed construction.[42]

In its attempt to avoid seeming to rely solely on a common English dictionary, SFA misrepresents to the Court that "[t]he term 'inferring' is used throughout the specification in a manner consistent with its ordinary and plain meaning,"[43] when in fact the term does not appear anywhere in the specification.   SFA further misrepresents in its brief, "[a]lthough the patent focuses upon inferring relative to events and context, it never narrows the meaning of inferring in any way."[44]   In fact, SFA knows full well that the patent does not disclose or provide any meaning for the term inferring.

In the end, SFA's attempts at a construction based on a common dictionary definition do not save "inferring" from its inexorable fate.   Owing to the utter lack of guidance in the

---

[39] This is contrary to SFA's statements in Plaintiff's Brief.  Therein, SFA incorrectly contends that "[t]he term 'inferring' is used throughout the specification in a manner consistent with its ordinary and plain meaning." Plaintiff's Brief 19.  In actuality, the term "inferring" is never used in the specification.

[40] The independent claims as originally filed ("Original Claims" attached hereto as Exhibit B) with the application included the term "determining" in the respective method step.  Ex. B at 1.  Applicant amended the claims to include the term "inferring," substituting "determining," in their Amendment of December 15, 1997 (attached hereto as Exhibit C) to First Office Action of June 10, 1997 (attached hereto as Exhibit D).

[41] Plaintiff's Brief 19 & n.68.

[42] *See id.* at n.68.

[43] *Id.* at 19.

[44] *Id.*

specification, it is impossible to determine if the term "inferring" should be given one of its many colloquial definitions or subject to one of its technical definitions. Accordingly, the term "inferring" is not merely ambiguous but insolubly ambiguous – that is, the term is simply incapable of any rational construction in the context of the intrinsic record. [45]

> **b.** **The Phrase "Inferring Occurrence of the Event" Is Insolubly Ambiguous**

Putting aside that the inclusion of the term "inferring" renders the claims indefinite, the phrase "inferring occurrence of the event" is indefinite, even if the term "inferring" were not.

The definiteness inquiry "focuses on whether those skilled in the art would understand the scope of the claim when the claim is read in light of the rest of the specification." [46] Here, in light of the specification, one skilled in the art would not understand the scope of the claim due to the phrase "inferring occurrence of the event," because this phrase is not "sufficiently precise to permit a potential competitor to determine whether or not he is infringing." [47]

The use of the phrase "inferring occurrence of the event" undoubtedly introduces ambiguity into the claim. First, according to the claims of the '525 patent, the event manager detects the status of an event (*i.e.*, recognizes whether the event occurred). [48] Second, the event manager infers the fact that <u>the</u> event (*i.e.* the event that the event manager just recognized to have occurred) occurred. The reference in the "inferring" step to "the event" has only one possible antecedent basis; it must refer back to "the event" that was introduced in the detecting step. This is confirmed by the prosecution history, where the inventors state that, "[i]t is

---

[45] *See Exxon Research and Engineering Co. v. U.S.*, 265 F.3d 1371, 1375 (Fed. Cir. 2001) (The standard for indefiniteness is whether "one skilled in the art would understand the bounds of the claim when read in light of the specification."); *Union Pacific Resources, Co.*, 236 F.3d at 692.
[46] *Energizer Holdings, Inc. v. Int'l Trade Comm'n*, 435 F.3d 1366, 1370 (Fed. Cir. 2006).
[47] *Morton Int'l, Inc. v. Cardinal Chem. Co.*, 5 F.3d 1464, 1470 (Fed. Cir. 1994).
[48] *See* Amendment of July 14, 1998 at 2 (attached hereto as Exhibit E) ("the event manager recognizes events [detects state characteristics] occurring in the system . . . [t]he 'detecting state characteristics function' in claim 1 is the same as the 'recognizes events' function described on page 15 of the specification.").

important that the event manager infers the context in which the event occurs and then bases the new action on the inferred context."[49]

The claim as written is thus logically indiscernible.  The event manager first detects that an event has occurred, and then must derive – based upon one or more facts or circumstances – the fact that the same event occurred.  In light of the fact that the term "infer" does not exist in the specification, there is no example in the specification describing how the event manager and the system would infer that the event occurred, when the fact that the event occurred is already available to the system by simple detection, because the event manager had detected the event.  Because of this ambiguity, a skilled artisan cannot discern the boundaries of the claim, making it invalid.[50]

To avoid the ambiguity introduced by the indefinite claim terms, SFA asks the court to rewrite the claims, but the Federal Circuit has consistently refused to permit this type of drastic construction.[51]  In its proposed construction, SFA ignores the antecedent basis, and proposes that the "inferring" step means deriving the occurrence of any event (*i.e.*, not "the" event introduced in the detecting step) and deriving information relevant to the occurrence of any event (*i.e.*, not the event introduced in the detecting step, or the event whose occurrence was just inferred).

SFA proposes to cure ambiguity by giving the claims the broadest possible construction.  Under SFA's proposal, the event manager could derive that an event occurred, while deriving a context of another event, after detecting the occurrence of still another event.  This extremely broad reading of the claims is <u>not</u> supported anywhere in the intrinsic record.  As in *Halliburton*, SFA should not be allowed to benefit from the ambiguity; rather, SFA must "give proper notice

---

[49] Amendment of October 27, 1999 at 2 (attached hereto as Exhibit F).
[50] *See Morton Int'l*, 5 F.3d at 1470.
[51] *Chef Am., Inc. v. Lamb-Weston, Inc.*, 358 F.3d 1371, 1374 (Fed. Cir. 2004) ("A court must take a claim as it finds it and 'may not redraft claims, whether to make them operable or to sustain their validity.").

of the scope of its claims to competitors,"[52] which it failed to do.

### c.      The Phrase "Inferring . . . a Context" Is Indefinite

As is the case for "inferring occurrence of the event," the phrase "inferring . . . a context in which the event occurred," is indefinite.  The phrase "inferring . . . a context in which the event occurred" does not appear in the specification and did not appear in the claims as filed. When the '525 patent application was filed, the phrase was originally presented as: "determining a context in which the recognized event occurs."[53]   The inventors amended the phrase to "inferring . . . a context in which the event occurred,"[54] when the patent office rejected the language "determining a context in which the recognized event occurs,"[55] as obvious in view of a prior art reference by Negrino.[56]  Despite the amendment, the prosecution history fails to provide a meaningful definition of the phrase "inferring…a context in which the event occurred."

In relevant part, in their attempt to maintain the claims' validity over Negrino, the inventors said the amendment was important because Negrino does not teach or suggest context-sensitive event recognition, and asserted that "<u>context recognition</u>" was what made the claims patentably distinct.[57]  This argument was repeated in subsequent argument to the Patent Office.[58] In so arguing, the inventors suggested that "inferring" merely means recognizing because "inferring...a context in which the event occurred" means "context-sensitive <u>event recognition</u>."

But in an October 27, 1999 reply, the inventors defined the phrase entirely differently:

> Negrino's steps do not include <u>inferring the context</u>, and it would be impermissible to use hindsight to find that Negrino 1 includes <u>contextual inferences</u> in the sentence "A sales plan spells out . . . [.]"  Also, keeping a database of information about clients, including detailed contact history . . . is not

---

[52] *Halliburton*, 514 F.3d at 1254.

[53] Original Claims Ex. B at 1.

[54] Amend. of Dec. 15, 1997 Ex. C at 2-14.

[55] *See* First Office Action of Jun. 10, 1997 Ex. D at 3-9.

[56] *See* Amend. of Dec. 15 1997 Ex. C at 2-14.

[57] *Id.* at 15-16 (emphasis added).

[58] Amend. of Jul. 14, 1998 Ex. E at 7.

referring to making contextual inferences of events.[59]

Here, the inventors state that inferring does not mean "recognizing," but means "making contextual inferences." Throughout prosecution, the inventors offered different, inconsistent meanings for the element "inferring . . . a context in which the event occurred," to suit their needs at that time. The inventors' inconsistent definitions leave the public without guidance as to what "inferring a context" means.

Further, because the verb "inferring" was substituted during prosecution to overcome prior art, it must have a different meaning than the original verb "determining." Nonetheless, at times, the inventors argued that the invention carries out "context recognition," *i.e.* determining context. And, unfortunately, the specification also provides no teaching to allow one to discern "determining" from "recognizing," or to confirm that "determining" is "recognizing."

Finally, it is unclear how the system would "infer . . . a context." The inventors offer that "inferring…a context" could mean: (1) "detect," (2) "context recognition," (3) "context sensitive event recognition" or (4) "contextual inference." These four inconsistent definitions result in claims that are indefinite because a person of ordinary skill cannot translate the definition into any meaningfully precise claim scope.[60]

### 2. The Claim Term "State Characteristic of an Event" Is Indefinite[61]

#### a. Plaintiff's Construction Relies on a Dictionary Definition of the Term "State," Ignoring the Intrinsic Evidence and Prosecution History

The term "state characteristic of an event" was not introduced in the specification, and was not in the claims as originally filed. The inventors amended the original claim language of

---

[59] Amend. of Oct. 27, 1999 Ex. F at 3.

[60] *See Halliburton*, 514 F.3d at 1254.

[61] In addition, Infor believes that the term "state characteristic of an event" renders the claims invalid due to lack of enablement and lack of written description. Infor reserves these arguments until after the Court has construed the terms. In contrast, the Court must consider indefiniteness in conjunction with its construction of the claims. *Amtel Corp.*, 198 F.3d at 1379 (indefiniteness under § 112 ¶ 2 is "inextricably intertwined with claim construction.").

"recognizing an event carried out by a first subsystem of the plurality of subsystems" to "detecting one or more changes in state characteristic of an event occurring within the system."[62] The examiner of the '525 patent noted that "the recognition feature of the specification appears to be <u>contrary</u> to the system recited in Claims 1, 13, and 17, in which the event manager 'detect[s] one or more changes in state characteristic of an event . . . [and] infer[s] occurrence of the event.'"[63]   The examiner rejected the amended claims under 35 U.S.C. § 112, second paragraph.[64]   The examiner, however, ultimately accepted the inventors' explanation of the term, acknowledging that inventors can be their own lexicographer.[65]

Having expressly defined the term during prosecution, SFA cannot run from those definitions now.   SFA, however, goes directly to a dictionary definition and ignores the full extent of the inventors' arguments made in the prosecution history.

### b.   The Inventors Provided Multiple Inconsistent Definitions of "State Characteristic of an Event" During Prosecution.

Being their own lexicographer, the inventors argued to the examiner that the "event manager recognizes events [detects state characteristics] occurring in the system and determines, on the basis of the event and the context in which the event occurs [state characteristics] . . . "[66] The inventors provided at least two inconsistent meanings for the term "state characteristic" in this sentence.[67]   The first half of this sentence stated that "detecting state characteristic" was the same as recognizing an event, *i.e.*, state characteristic is the occurrence of an event.   The second half equated "state characteristic" to "the context in which the event occurred."   However, this term could also mean "the event and the context in which the event occurred."   The inventors

---

[62] Amend. of Dec. 15, 1997 Ex. C at 7.
[63] Office Action of March 3, 1998 (attached hereto as Exhibit G) at 4-5 (emphasis added).
[64] *See id.*
[65] *See* Office Action of April 7, 1999 (attached hereto as Exhibit H) at 3.
[66] Amend. of Jul. 14, 1998 Ex. E at 2.
[67] It is worth noting that the claim language uses the term "state characteristic" in singular form, and the inventors refers to the term in plural in their arguments.

further went on to state that "detecting of state characteristic function in claim 1 is the same as the 'recognizes events' function described on page 15 of the specification[68] because actual occurring events are state characteristics for future events."[69]   Although this statement seemed to reiterate the first meaning of "state characteristic," the reasoning provided points to yet a third meaning of "state characteristic" – the occurrence of a previous event.  Instead of clarifying the meaning of the term "state characteristic of an event," the inventors provided multiple inconsistent definitions.

The Plaintiff's proposed construction clearly ignores all the contradictory meanings proffered by the inventors during prosecution, and attempts to give the term yet another meaning.

### c.    The Inventors' Definition of "State Characteristic" Is Not Supported by the Specification.

An inventor may define terms, but the definition must be made "with reasonable clarity, deliberateness, and precision" and must "'set out his uncommon definition in some manner within the patent disclosure' so as to give one of ordinary skill in the art notice of the change."[70]  Any meaning "must be sufficiently clear in the specification that any departure from common usage would be so understood by a person of experience in the field of the invention."[71]

The term "state characteristic of an event" does not exist in the specification.  The term "state" appears three times in the specification in three different contexts without reference to any event.  In one instance, it is used to describe operation modes of the product module, *e.g.*, "graphic states."[72]  In the second instance, the specification describes a messaging function that enables the business objects to communicate "state and status information with each other."[73]  In

---

[68] '525 patent at col. 8:34-44.
[69] Amend. of Jul. 14, 1998 Ex. E at 2.
[70] *In re Paulsen*, 30 F.3d 1475, 1480 (Fed. Cir. 1994) (internal citation omitted).
[71] *Multiform Desiccants Inc. v. Medzam Ltd.*, 133 F.3d 1473, 1477 (Fed. Cir. 1998).
[72] '525 patent at col. 12:43-51.
[73] *Id.* at col. 32:8-10.

the third instance, the specification refers to "rules and state information stored in the event manager database."[74]  The specification of the '525 patent never refers to an event as having one or more states, let alone providing any guidance as to what a state characteristic of an event is.

In response to the Patent Office, where the inventors acted as their own lexicographer, the inventors referred to a paragraph of the specification[75] in an attempt to further define the "connection between state characteristic and event."[76]  The inventors relied on a single sentence which included the phrase "rules and state information" for support.[77]  Other than stating that "rules and state information" are "stored in the event manager database," the phrase is not further explained. In fact, the phrase only appears once in the specification.

Within the specification, there is no indication that "state information" is related to any event.  Rather, in the paragraph immediately preceding the paragraph cited by SFA, the phrase "state information" is used in conjunction with business objects.[78]  Although business objects may be used to trap application events (*e.g.*, provide or receive information to or from a user), they are used to implement the functionality of the various modules and subsystems of the present invention through the use of object oriented programming (OOP).[79]  Importantly, business objects are conceptually distinct from events.

Without regard for the specification, SFA proposes to substitute the term "state" with the term "status."  SFA has suggested that the terms "state" and "status" are used interchangeably in the field of computers.  However, the inventors of the '525 patent did not treat the two terms as

---

[74] *Id.* at col. 32:21-26.
[75] *Id.* at col. 32:13-29.
[76] Amend. of Jul. 14, 1998 Ex. E at 2.
[77] '525 patent at col. 32:21-26 ("On the basis of rules and state information stored in the event manager database 1904, the event managing unit 1902 may be configured to dynamically bind event handlers (in the form of an event map) to the exposed events (as represented by line 1916).").
[78] *Id.* at col. 32:8-10.
[79] *Id.* at col. 30:24-34.

interchangeable.  The specification used "status" to describe, among other things, order,[80] unit,[81] customer,[82] opportunity,[83] training,[84] and buying status.[85]  The specification did not connect any event with status.  The specification also states that the messaging function might be used to enable the communication of "state and status information" among business objects.[86]  Here "state" information and status information apparently represent different information.  In this way, the specification cannot be used by SFA to construe "state" as "status."

**d.      The Inventors' Definition of "State Characteristic" Is Insolubly Ambiguous**

The definitions of the term "state characteristic of an event" are contradictory and insolubly ambiguous.  The inventors provided no less than three different definitions for the term.  The state characteristic may be the occurrence of the event, the context in which the event occurred, or the occurrence of a previous event.[87]  Nowhere in the specification or prosecution history did the inventors provide any indication as to which meaning should apply to the claim.  Accordingly, a skilled artisan – using the knowledge of the relevant art area – can not discern the boundaries of the claim based on the claim language, the specification and prosecution history, which means the claim is "insolubly ambiguous," and must be held to be indefinite.[88]

**B.      <u>Construction of Disputed Terms</u>**[89]

**1.      Inferring**

| PLAINTIFF'S CONSTRUCTION | DEFENDANT'S CONSTRUCTION |
| --- | --- |
| Deriving based upon one or more facts or | Indefinite.  Alternatively, the computerized |

---

[80] *Id.* at col. 5:54; col. 18:11-16.
[81] *Id.* at col. 13:57.
[82] *Id.* at col. 18:54.
[83] *Id.* at col. 21:9.
[84] *Id.* at col. 22:2.
[85] *Id.* at col. 21:22-23.
[86] *Id.* at col. 32:8-10 (emphasis added).
[87] Amend. of Jul. 14, 1998 Ex. E at 2.
[88] *Halliburton*, 514 F.3d at 1249-50.
[89] Infor believes that the terms "action" and "coupled" do not need to be construed by the Court.

| circumstances | logical process by which a factual conclusion is derived from known facts by the application of logical rules using the inference engine of an expert system within the event manager. |
|---|---|

Infor believes that the term "inferring" cannot be construed because it is not disclosed in the specification, and is indefinite.  Nonetheless, Infor offers a proposed construction that, while lacking any written description or enablement in the '525 patent, represents Infor's best attempt to understand the term's meaning in the context of the '525 patent.

In its attempt to construe "inferring," Infor followed the claim construction canon that when the intrinsic record is insufficient to construe a term, extrinsic evidence may provide guidance, although the extrinsic evidence must be considered in light of the intrinsic record.[90] For this reason, it is important to use the extrinsic evidence that is most closely related to the subject matter of the patent.[91]  Because the '525 patent is directed to a computerized system, the use of a computer related dictionary is most appropriate to determine how one skilled in the art may understand a claim term.   Under these conditions, "inferring" may be defined as a "computerized logical process by which a factual conclusion is derived from known facts by the application of logical rules."[92]

Further, to the extent that the specification can support any definition of "inferring," such support is limited to the one disclosure that even tangentially refers to the ability to infer – an inference engine within an expert system contained within the event manager:  "to predict the most successful course of action based on the information available to the system at the time a

---

[90] *See Phillips*, 415 F.3d at 1322-23.
[91] *See id.* at 1321.
[92] "Inference: The logical process by which new facts are derived from known facts by the application of inference rules." Interference from FOLDOC, *Free On-Line Dictionary of Computing* (2008), http://foldoc.org/index.cgi?query=inference.   "Inference: A process of deriving new facts from facts already known, by means of the rules of logic."  Inference, *ComputerUser* (2008), http://www.computeruser.com (follow "Dictionary" tab, then search for "inference").

sales event occurs," and "to select an appropriate course of action when prior events of interest suggest different, conflicting courses of action."[93]   There are no other disclosures concerning the ability to infer, thus the only possible understanding of the claim term "inferring," in view of the specification, requires an inference engine within an expert system within the event manager.[94]

### 2.   Inferring Occurrence of the Event

| PLAINTIFF'S CONSTRUCTION | DEFENDANT'S CONSTRUCTION |
|---|---|
| Deriving the occurrence of an event based upon one or more facts or circumstances | Indefinite.  Alternatively, deriving the conclusion that the event has occurred by the application of logical rules using the inference engine of an expert system within the event manager |

As discussed in detail above in Section III.A., the phrase "inferring occurrence of the event" is indefinite both because it includes the indefinite term "inferring" and also because the intrinsic record provides no workable standard to understand this phrase; and, consequently, there is no adequate public notice of the scope of the claim.  Nonetheless, if the Court does not find that this term is indefinite, Infor's construction of "inferring," which applies equally to construction of this phrase, is the only potential construction of "inferring."

### 3.   Inferring . . . a Context in Which the Event Occurred

| PLAINTIFF'S CONSTRUCTION | DEFENDANT'S CONSTRUCTION |
|---|---|
| Deriving information relevant to the occurrence of an event based upon one or more facts or circumstances | Indefinite.  Deriving the conclusion of contextual facts by the application of logical rules using the inference engine of an expert system within the event manager |

---

[93] '525 patent at col. 33:60-66.
[94] *Accord* Douglas Downing, Michael Covington, and Melody Mauldin Covington, *Dictionary of Computer and Internet Terms* 165 (6th ed. 1998) ("Inference Engine: the part of an Expert System that draws conclusions by reasoning logically from information"); *see also* Albert J Marcella Jr. & James V. Rauff, *Utilizing Expert Systems to Evaluate Disaster Recovery Planning*, 11 J. of Applied Business Research 30 (1994) (attached hereto as Exhibit I, with relevant portion highlighted on page 2); Brian H. Kleiner & Vimal Thomas, *New Developments in Computer Software*, 95 Industrial Management & Data Systems 22 (1995) (attached hereto as Exhibit J, with relevant portion highlighted on pages 4-5).

Similarly, the phrase "inferring . . . a context in which the event occurred" is indefinite both because it includes the indefinite term "inferring" and also because the intrinsic record provides no workable standard to understand this phrase and, consequently, no adequate public notice of the scope of the claim. Nonetheless, if the Court does not find that this term is indefinite, Infor's construction of "inferring," which applies equally to construction of this phrase, is the only possible construction of "inferring."

### 4.    Changes in State Characteristic of an Event

| PLAINTIFF'S CONSTRUCTION | DEFENDANT'S CONSTRUCTION |
|---|---|
| Changes in information relating to the status of an event | Indefinite. Alternatively, changes in the database of the event manager |

If the Court does not find the term above insolubly ambiguous, then Infor's suggested construction should apply. In circumstances, such as here, where a claim is at a minimum ambiguous as to its scope, a narrowing construction should be adopted when doing so would still serve the notice function of the claims.[95]

In relevant part, the only disclosure marginally related to "state characteristic" is the disclosure about "state information."[96] Specifically, the specification referred to the "state information" as being "stored in the event manager database." Accordingly, this term should reflect this lone disclosure and receive the construction "changes in the database of the event manager," which is the only construction suggested by the disclosure.

### 5.    Event Manager

| PLAINTIFF'S CONSTRUCTION | DEFENDANT'S CONSTRUCTION |
|---|---|

---

[95] *See Halliburton*, 514 F.3d at 1253; *Athletic Alternatives, Inc. v. Prince Mfg., Inc.*, 73 F.3d 1573, 1581 (Fed. Cir. 1996) (when a claim term is subject to "an equal choice between a broader and a narrower meaning of a claim" the notice function of the claim is best served by adopting the narrower meaning).
[96] '525 patent at col. 32:21-26.

| Hardware and/or software that takes or directs an action relative to an event | A hardware and/or software module functionally separate and apart from the subsystems that intelligently controls the flow of information between the subsystems[97] |
|---|---|

Infor proposes a construction of "event manager" that is both mindful of the plain and ordinary meaning of the words used to make up the term, while being the only construction consistent with, and necessitated by, the '525 patent's specification. On the other hand, SFA offers a construction for the term "event manager" that, while consistent with the dictionary definition of the term, is divorced entirely from the '525 patent's claims and specification.

The parties agree that the event manager is a hardware and/or software component of the system. In addition, SFA apparently concedes that the event manager is functionally separate and apart from the subsystems, as SFA does not offer any evidence or argument to the contrary. Therefore, it appears the only remaining difference in the parties' proposals is SFA's proposal that the event manager "takes or directs an action relative to an event," and Infor's proposal that it "intelligently controls the flow of information between the subsystems." However, as discussed below, it seems there is also not any actual disagreement on these points.

### a. The Event Manager Must Be Separate From the Subsystems

Although SFA does not dispute in its brief that the event manager is separate from the subsystems, SFA does not include that requirement in its proposed construction. The separateness of the event manager and the subsystems, however, is a necessary limitation.

While the claims are not necessarily limited to the preferred embodiments, neither can the claims be expanded beyond what is described and disclosed in the specification. The specification is an "outer boundary" for the permissible scope of the claims.[98]

---

[97] Infor has modified its construction to include that the Event Manager can be "hardware and/or software."

[98] *See On Demand Machine Corp.*, 442 F.3d at 1338, 1344 ("[T]he scope and outer boundary of claims is set by the patentee's description of his invention. . . . [E]ach term must be construed to implement the invention described in

Infor's construction of event manager is consistent with the specification.  For example, when it is first introduced, it is disclosed that "the event manager 201A intelligently controls the flow of data and other information through the system."[99]  Moreover:

> the event manager 201A provides intelligent integration of the components in the system.  The event manager 201A recognizes events occurring in the system and determines, on the basis of the event and the context in which the event occurs, what if any other actions or operations should be carried out by the system.  If actions are necessary, the event manager 201A notifies the appropriate component of the needed action, grants the component access to any needed data or other information and instructs the component to carry out the operation.[100]

Thus, as can be seen from these illustrative passages, the event manager, by necessity, functions as a separate component from the subsystems and controls the flow of information between and among the different parts of the system.

In fact, there is no disclosure to suggest that any arrangement other than the event manager being separate from the subsystems was contemplated by the inventors, or covered by the claims.  For example, every figure in the '525 patent that includes an event manager shows that it is a separate component from the subsystems.  Moreover, the '525 patent states that each of the various subsystems "are communicatively coupled to an event manager 201A via respective lines."[101]  Similarly, it states the "product module 402 is integrated to the rest of the system via the event manager 201A."[102]  In short, everywhere the event manager is disclosed, described, or discussed it is necessarily and importantly separate from the subsystems.  Any construction that does not include this limitation is impermissibly broad and would allow SFA to expand the scope of its claims beyond the specification through word-by-word definitions.

---

the specification.  Care must be taken lest word-by-word definition, removed from the context of the invention, leads to an overall result that departs significantly from the patented invention"); *see also Decisioning.com, Inc.*, 527 F.3d at 1308-11.

[99] '525 patent at col. 8:28-29.

[100] *Id.* at col. 8:34-43.

[101] *Id.* at col. 8:22-24.

[102] *Id.* at col. 12:58-59.

Moreover, Infor's construction is not only required by the specification, it is also the construction that the inventors urged in an effort to overcome prior art during the prosecution of the '525 patent.[103]  "The event manager of the present invention is gathering information from a number of different modules and directing events in accordance therewith."[104]  Applicant's own statements during prosecution dictate that the event manager is communicating and coordinating with software (via use of the term "modules") and is directing all events.

Further, and again while arguing patentability over Negrino, Applicant asserts that:

> this type of [the event manager's] 'automatic initiation of operation' in separate and distinct subsystems . . . is not disclosed in Negrino.  Negrino is limited to automatic initiation of operation within a contact management environment, not across and between individual subsystems as managed by the present invention's event manager.  In contrast...to Negrino, the present invention automatically and intelligently manages communication . . .[105]

In other words, to overcome prior art, the patentee stated that the event manager "intelligently controls the flow of information between the subsystems," which is exactly what Infor proposes as the claim construction.  Any construction that is broader than or excludes this limitation is inconsistent with the boundaries set by the specification and is also an improper attempt to regain in claim construction what the patentee disclaimed during prosecution.

### b.      SFA's Objections to Infor's Proposed Construction Are Irrelevant

SFA's objection that the event manager can be hardware and/or software is mooted by Infor's revision of its proposal to include both.

SFA also objects to Infor's proposed construction because SFA believes Infor is attempting to limit the construction of an event manager to a single function.[106]  This

---

[103] *RFID Tracker Ltd. v. Wal-mart Stores, Inc.*, 545 F. Supp. 2d 571, 579 (E.D. Tex. 2008) (statements in the prosecution history distinguish the invention from prior art and may narrow a term's ordinary meaning).
[104] Amend. of Jul. 14, 1998 Ex. E at 5.
[105] *Id.*
[106] Plaintiff's Brief 15.

characterization misconstrues Infor's construction.  SFA asserts the event manager "must be able to detect changes in the state characteristics of events, infer the occurrence of events and their context, and to automatically initiate operations."[107]   Infor does not dispute that the claim includes more than one function, but, as discussed below, inserting these functions into the term event manager is extraneous.

SFA's proposed inclusion of the language "that takes or directs an action relative to an event" is extraneous and unnecessary to the proper construction of event manager.  This proposed language serves no purpose in light of the fact that the functions (or actions) of the event manager are listed in the claims.  Claim 1, for example, recites an event manager "detecting one or more changes in state characteristic of an event occurring within the system, inferring occurrence of the event and a context in which the event occurred based at least in part on the detected changes in state, and automatically initiating an operation in one or more particular subsystems of the computer to facilitate a new action based on the inferred context."[108] In view of the specific recitation of these functions in the claim, it is axiomatic that the event manager must be capable of performing these functions.  It is also axiomatic, however, that including the capacity to perform these functions within the construction of event manager is redundant and unnecessary.

By contrast, Infor's inclusion of the language "that intelligently controls the flow of information between the subsystems" – which is required by the specification and the prosecution history – is not inconsistent with the event manager's performance of the claimed functions.  Despite SFA's characterization, Infor's construction does not limit the event manager

---

[107] *Id.* at 13.
[108] '525 patent at col. 36:3-10 (Claim 1).

to a single function.[109]  It merely states that intelligently controlling the flow of information is a required function of the event manager – a limitation that is required by the prosecution history but missing from SFA's proposed construction of the claims.

In the final analysis, it appears that the parties actually agree that the proper construction of event manager is Infor's proposed construction.  As discussed above, the parties agree that the event manager is hardware or software that intelligently controls the flow of information between the subsystems.  In addition, the parties agree that the event manager has additional functionality as described in the claims.  Only Infor's construction, however, incorporates the elements required by the prosecution history without unnecessary or redundant limitations.

### c.     SFA's Proposed Construction Is Devoid of Necessary Context

Once again, SFA openly asks the Court to adopt a construction based on a methodology rejected by the Federal Circuit.[110]  SFA supports its proposed construction by stating that "an event manager is literally something that manages events."[111]  In the abstract this may be true, but the Court must determine the meaning of the term event manager in the context of the '525 patent.  SFA's attempt to elevate the dictionary definitions of the word "event" and "manager" above the meaning of the term "event manager" as used in the '525 patent is improper and must be rejected.[112]

As discussed above, Infor's proposed construction is consistent with the claims, specification, and prosecution history.  In addition, Infor's proposed construction does not suffer from any of the defects SFA alleges.

---

[109] *See* Plaintiff's Brief 15.
[110] *See Phillips*, 415 F.3d at 1320-21 (rejecting the approach taken in *Texas Digital,* 308 F.3d 1193).
[111] Plaintiff's Brief 13.
[112] *See Phillips*, 415 F.3d at 1321.

### 6.      Subsystem

| PLAINTIFF'S CONSTRUCTION | DEFENDANT'S CONSTRUCTION |
| --- | --- |
| A system that is part of a larger system | A hardware or software module independent of the event manager and corresponding to a phase of the sales process |

Like it did with its construction of event manager, SFA offers a construction of subsystem that is devoid of any context, is based solely on dictionary definitions, and is broader than the '525 patent's disclosure. Tellingly, SFA barely defends its proposed construction. Rather, SFA merely attacks Infor's proposed construction. Infor's construction, however, is consistent with the specification and gives meaning to the term, in the context of the patent.

SFA offers that a subsystem is "a system that is part of a larger system." This construction is directly out of dictionary definitions. Clearly, this is a commonly understood definition of subsystem, and Infor does not dispute that all subsystems, including those described in the '525 patent are part of a larger system. However, the '525 patent very clearly uses the term subsystem in a way that introduces more limitations than just being part of a larger system, and Infor's proposed constructions properly consider those limitations.

### a.      The Subsystems Are Separate From the Event Manager

As discussed in detail above, the event manager is necessarily separate from the subsystems. An obvious corollary to this conclusion is that fact that the subsystems are likewise separate from the event manager. Once again, SFA does not appear to dispute this fact.

### b.      The Subsystems Are Hardware or Software

SFA objects to limiting the subsystems to hardware or software. This objection is nonsensical. As even SFA must admit, the subsystems are part of the larger system, *i.e.* the computer implemented sales system. Computer systems are made up of only two types of

- 24 -

components – hardware and software – and SFA does not offer any third alternative. Nonetheless, SFA argues that the subsystems should not be limited to hardware or software, but SFA's argument begs the question:  if the subsystems are not hardware or software, what are they?  Because SFA cannot answer this question, and there are not any other alternatives, it is clear that the subsystems are hardware or software.

**c.**   **Each Subsystem Corresponds to a Phase in the Sales Process**

SFA looks to the claims to suggest that the subsystems need not correspond to a phase of the sales process.[113]  This reliance on only the claims, however, highlights SFA's attempt to use word-by-word definitions to expand the scope of the claims beyond the outer boundaries set by the specification, an approach which must be rejected.[114]  The specification clearly discloses that each subsystem corresponds to a phase in the sales process.

The inventors' description reveals that the subsystems correspond to phases of the sales process.  The '525 patent's summary of the invention describes the invention as having "a plurality of subsystems each corresponding to a phase of the sales process."[115]  This is also shown visually in the figures, such as Figures 1 and 2, where a number of subsystems are shown, each relating to a phase of the sales process.[116]  Similarly, in each preferred embodiment the subsystems described correspond to a phase of the sales process.

While it is improper to limit the claims based on preferred embodiments, that is not what Infor does.  Infor is not suggesting that the subsystems have to correspond to specifically listed phases of the sales process in the preferred embodiments.  Rather, Infor properly suggests that the specification provides the outer boundaries of the invention as described by the inventors,

---

[113] Plaintiff's Brief 27-28.
[114] *See On Demand Machine Corp.*, 442 F.3d at 1338; *Decisioning.com, Inc.*, 527 F.3d at 1308-11.
[115] '525 patent at col. 2:25-26.
[116] *Id.* at Fig. 1-2.

rather than construing the term in the abstract, divorced from any context.[117]

### 7.    Expert System

| PLAINTIFF'S CONSTRUCTION | DEFENDANT'S CONSTRUCTION |
|---|---|
| A system that learns successful actions and automatically implements them in the future. | A system that includes an inference engine to provide rules-based decision making using a knowledge base and a set of rules |

System claims, like "apparatus claims cover what a device *is*, not what a device *does*."[118] Infor's construction describes what an expert system is in light of the evidence, while SFA's construction only concerns the function of an expert system, not what it is.

The term expert system only appears in a dependent claim, but the presumption of claim differentiation is overcome by a contrary construction dictated by the written description or prosecution history. "[T]he doctrine of claim differentiation cannot broaden claims beyond their correct scope, determined in light of the specification and the prosecution history and any relevant extrinsic evidence. . . . Claims that are written in different words may ultimately cover substantially the same subject matter."[119]

The specification of the '525 patent may be read to suggest that there are embodiments of the expert system without an inference engine. However, the prosecution history clearly indicates that the inventors disclaimed any embodiments of the invention that do not include an inference engine.

During the prosecution of the '525 patent, the inventors, for reasons related to patentability, amended the claims to include a step of "inferring occurrence of the event and a context." The word "infer" does not appear in the specification. Upon close inspection of the

---

[117] *See On Demand Machine Corp.*, 442 F.3d at 1338.
[118] *Hewlett-Packard Co. v. Bausch & Lomb Inc.*, 909 F.2d 1464, 1468 (Fed. Cir. 1990) (emphasis in original).
[119] *Seachange International, Inc. v. C-COR Inc.*, 413 F.3d 1361, 1369 (Fed. Cir. 2005) (citing *Multiform Desiccants, Inc. v. Medzam, Ltd.*, 133 F.3d 1473, 1480 (Fed. Cir. 1998)).

specification, an "inferring" capability <u>can only be found</u> in the description of an alternative embodiment of the expert system, which includes an inference engine.[120]   An inference engine is incorporated into an expert system of the event manager "to predict the most successful course of action based on the information available to the system at the time a sales event occurs," and "to select an appropriate course of action . . . when prior events of interest suggest different, conflicting courses of action."[121]   Accordingly, one skilled in the art would understand that the inference engine, as disclosed in this embodiment, is the only feasible embodiment of the '525 patent seemingly capable of providing the necessary inferring capability.

Infor's construction of "expert system" is also consistent with the ordinary and customary meaning of the term in the field of computer technology at the time of the invention.[122]   For example, the Dictionary of Computer and Internet Terms defines expert system as:

> A computer program that uses stored information to draw conclusions about a particular case.   It differs from a database, which merely calls up stored information and presents it to the user unchanged.   Expert systems are widely used to troubleshoot defects in machines; they have also been used successfully to diagnose diseases or recommend manufactured products.   Every expert system consists of three parts: (1) user interface, which is a way of communicating with the user through such devices as menus, commands, or short-answer questions; (2) a knowledge base containing stored expertise; and (3) an inference engine, which draws conclusions by performing simple logical operations on the knowledge base and the information supplied by the user.[123]

In line with the above definition, the specification describes an inference engine as relying on "a number of independent rules which may be conceptualized as a number of

---

[120] '525 patent at col. 34:16-col. 35:24.

[121] *Id.* at col. 33:60-66.

[122] *See* Susan J. Hazen, Sachi Sakthivel & John R. Slater, *On Selecting Appropriate Technology for Knowledge Systems; Expert Systems and Artificial Neural Network Knowledge System Technologies*, 44 J. of Sys. Mgmt. 10 (1993) (attached hereto as Exhibit K, with relevant portion highlighted on page 2); *See also* Ting-Peng Liang, *Research in Integrating Learning Capabilities into Information Systems*, 9 J. of Mgmt. Info. Sys. 5 (1993) (attached hereto as Exhibit L, with relevant portion highlighted on page 10) (traditional expert system is composed of a knowledge base, a database, and an inference engine); Downing, *supra* note 94, at 165.

[123] Downing, *supra* note 94, at 165.

statements in the form of IF X THEN Y."[124]   The inference engine uses stored rules to examine

vast amounts of information gathered during the sales process to initiate action.[125]   The disclosed

inference engine is clearly rule-based, which is consistent with the understanding of one skilled

in the art at the time of invention.[126]

Instead of relying on a technical dictionary and learned treatise in the relevant art, SFA

used general purpose dictionaries and on-line resources as its extrinsic evidence, which provide

definitions that do not help define the metes and bounds of the claim language.   For example,

SFA cited a Wikipedia article as its leading authority even through Wikipedia is a self-described

"free encyclopedia that anyone can edit," and whose "radical openness means that any given

article may be, at any given moment, in a bad state:  for example, it could be in the middle of a

large edit or it could have been recently vandalized."[127]   In fact, the Eighth Circuit recently found

it improper for an immigration judge to use Wikipedia as an authority.[128]

### 8.   Context

| PLAINTIFF'S CONSTRUCTION | DEFENDANT'S CONSTRUCTION |
|---|---|
| Information relevant to the occurrence of an event | Information relevant to the occurrence of an event, but not the fact the event occurred |

The Plaintiff abandoned its initial construction of the term, and largely adopted Infor's

construction of the term "context" in its opening brief.[129]   The remaining difference is whether

the term "context" as used in the claims includes the fact that the event occurred.

"Bedrock principles of claim construction counsel against a construction that renders

---

[124] '525 patent at col. 34:27-29.
[125] *Id.* at col. 34:50-54.
[126] *See supra* note 94.
[127] Wikipedia:Researching with Wikipedia, http://en.wikipedia.org/wiki/Wikipedia:Researching_with_Wikipedia#Notable_weaknesses_of_Wikipedia.
[128] *See Badasa v. Mukasey*, No. 07-2276, slip op. at 2-4 (8th Cir. Aug. 29, 2008).
[129] *See* Joint Claim Construction and Prehearing Statement 4; Plaintiff's Brief 9.

additional limitations superfluous."[130]   The claim language clearly shows that the fact an event

has occurred is not part of the information contained in the term "context."   When introducing

the term "context," independent claims 1, 20, and 40 uniformly refer to "inferring occurrence of

the event and a context in which the event occurred."   The claim language dictates that the

inferring step derives two factual conclusions from known facts.   First, that a sales event

occurred, and second, other information relevant to the occurrence of the sales event.

The information included in a "context" is directly related to a particular event, *i.e.* the

current event.   Divorcing context from a particular event would make the term omni-inclusive

and without definable boundaries.   Further, information included in a context cannot include the

occurrence of the event.   Plaintiff's construction that context also includes the occurrence of the

event would dictate that inferring "a context in which the event occurred" would also include

inferring the occurrence of the event, which makes the claim language "inferring the occurrence

of the event" superfluous.

The specification is also consistent with Infor's construction.   In one instance, "the

context in which the sales event occurs (*e.g.* the significance of <u>other</u> information in the system)"

is used to provide further intelligence.[131]   Also, the context "may be used in connection with the

occurrence of the event to determine what if any subsequent action should be taken by the

system."   For example, whether outstanding proposals exist, or whether an incentive is

inconsistent with customer profile information, is considered before the decision is automatically

made whether to send an incentive program to a customer.   In another instance, the event

manager first recognizes order events, such as a customer placing a product order, and then links

a customer name with a product:   "The event manager will <u>further</u> note the context in which a

---

[130] *Hyperion Solutions Corp. v. OutlookSoft Corp.*, 422 F. Supp. 2d 760, 772 (E.D. Tex. 2006) (citing *Merck & Co., Inc. v. Teva Pharma. USA, Inc.*, 395 F.3d 1364, 1372 (Fed. Cir. 2005)).
[131] '525 patent at col. 32:57-col. 33:4.

customer is linked to a product."[132]    In this way, the term "context" in the specification unmistakably refers to information in the system other than the occurrence of the event.

Finally, Infor's construction is also consistent with the language of claim 3 that "the inferred context includes information related to whether a previous event has occurred in the sales process."  Claim 3 contemplates the occurrence of two events.  The system of claim 3 first infers the occurrence of an event, *i.e.*, the current event, from detecting one or more changes in state characteristic of the event.  The system then infers a context in which the current event occurred, which is said to include information related to whether a previous event has occurred. Infor's construction only excludes the occurrence of the current event from the term "context" to avoid making the "inferring the occurrence of the event" element superfluous.  The occurrence of a previous event, *i.e.*, an event that occurred prior to the current event, is other information as to the current event, and not excluded by this construction.

## IV.    CONCLUSION

For these reasons, Infor requests that the Court adopt its proposed constructions.

DATED: December 18, 2008                         Respectfully submitted,

                                                 */s/ Alfred W. Zaher*
                                                 Alfred W, Zaher
                                                 zaher@blankrome.com
                                                 Bruce D. George
                                                 george@blankrome.com
                                                 Joel L. Dion
                                                 dion-j@blankrome.com
                                                 Nakul Krishnakumar
                                                 krishnakumar@blankrome.com
                                                 BLANK ROME LLP
                                                 One Logan Square
                                                 Philadelphia, PA 19103
                                                 215/569-5500

---

[132] *Id.* at col. 18:37-54.  In this example, the event manager determines whether the order is submitted by an existing customer or a first time customer.  If the context of the product order is determined to be from a first time customer, a letter can be automatically generated which reflects the new customer status.

Fax: 215/832-5788

Michael E. Jones
State Bar No. 10929400
mikejones@potterminton.com
Diane V. DeVasto
State Bar No. 05784100
dianedevasto@potterminton.com
POTTER MINTON
110 N. College, Suite 500
Tyler, Texas 75702
903/597-8311
903/593-0846 Facsimile

**ATTORNEYS FOR DEFENDANTS
INFOR GLOBAL SOLUTIONS
(CHICAGO), INC. AND INFOR GLOBAL
SOLUTIONS (MICHIGAN), INC.**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that all counsel of record who have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3) on this the 18th day of December 2008.  Any other counsel of record will be served by first class U.S. mail on this same date.

*/s/ Joel L. Dion*
Joel L. Dion