# EXHIBIT D



**UNITED STATES DEPARTMENT OF COMMERCE**
**Patent and Trademark Office**
Address: COMMISSIONER OF PATENTS AND TRADEMARKS
Washington, D.C. 20231

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | | ATTORNEY DOCKET NO. |
|---|---|---|---|---|
| 08/550,089 | 10/30/95 | JOHNSON | J | 7709.72US01 |

```
                              B3M1/0610
MERCHANT GOULD SMITH EDELL
WELTER & SCHMIDT
3100 NORWEST CENTER
90 SOUTH SEVENTH STREET
MINNEAPOLIS MN 55402-4131
```

| EXAMINER |
|---|
| HUGHET, W |

| ART UNIT | PAPER NUMBER |
|---|---|
| 2411 | |

DATE MAILED: 06/10/97

Please find below and/or attached an Office communication concerning this application or proceeding.

Commissioner of Patents and Trademarks

PTO-90C (Rev. 2/95)   ☆ U.S. GOVERNMENT PRINTING OFFICE 1996-411-816/40276   1- File Copy

| Office Action Summary | Application No. 08/550,089 | Applicant(s) e D. Johnson, David R. Lundberg, Michael P. Kre |
|---|---|---|
| | Examiner William Hughet | Group Art Unit 2411 |

☒ Responsive to communication(s) filed on <u>Oct 30, 1995</u>

☐ This action is **FINAL**.

☐ Since this application is in condition for allowance except for formal matters, prosecution as to the merits is closed in accordance with the practice under *Ex parte Quayle*, 1935 C.D. 11; 453 O.G. 213.

A shortened statutory period for response to this action is set to expire ___3___ month(s), or thirty days, whichever is longer, from the mailing date of this communication. Failure to respond within the period for response will cause the application to become abandoned. (35 U.S.C. § 133). Extensions of time may be obtained under the provisions of 37 CFR 1.136(a).

**Disposition of Claims**

☒ Claim(s) *1-20* is/are pending in the application.

Of the above, claim(s) _____ is/are withdrawn from consideration.

☐ Claim(s) _____ is/are allowed.

☒ Claim(s) *1-20* is/are rejected.

☐ Claim(s) _____ is/are objected to.

☐ Claims _____ are subject to restriction or election requirement.

**Application Papers**

☒ See the attached Notice of Draftsperson's Patent Drawing Review, PTO-948.

☒ The drawing(s) filed on <u>Oct 30, 1995</u> is/are objected to by the Examiner.

☐ The proposed drawing correction, filed on _____ is ☐ approved ☐ disapproved.

☐ The specification is objected to by the Examiner.

☐ The oath or declaration is objected to by the Examiner.

**Priority under 35 U.S.C. § 119**

☐ Acknowledgement is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d).

☐ All ☐ Some* ☐ None of the CERTIFIED copies of the priority documents have been

☐ received.

☐ received in Application No. (Series Code/Serial Number) _____ .

☐ received in this national stage application from the International Bureau (PCT Rule 17.2(a)).

*Certified copies not received: _____

☐ Acknowledgement is made of a claim for domestic priority under 35 U.S.C. § 119(e).

**Attachment(s)**

☒ Notice of References Cited, PTO-892

☒ Information Disclosure Statement(s), PTO-1449, Paper No(s). ___5___

☐ Interview Summary, PTO-413

☒ Notice of Draftsperson's Patent Drawing Review, PTO-948

☐ Notice of Informal Patent Application, PTO-152

--- *SEE OFFICE ACTION ON THE FOLLOWING PAGES* ---

U.S. Patent and Trademark Office
PTO-326 (Rev. 9-95)    Office Action Summary    Part of Paper No. __6__

Serial Number: 08/550,089 -2-
Art Unit: 2411

**Part III   DETAILED ACTION**

*Drawings*

1. This application has been filed with informal drawings which are acceptable for examination purposes only. Formal drawings will be required when the application is allowed.

2. The drawings are objected to because of irregularities as noted on PTO 948, enclosed. Appropriate correction is required.

*Claim Objections*

3. Claim 11 is objected to regarding duplication of the phrase, "for use in".

*Claim Rejections - 35 USC § 112*

4. Claims 14 - 16 and 18 are rejected under 35 U.S.C. § 112, second paragraph, as being indefinite for failing to particularly point out and distinctly claim the subject matter which applicant regards as the invention.

   (A) Claim 14 depends back to itself. Applicants likely intended Claim 14 to depend back to Claim 13, and the application has been examined on this basis.

   (B) Claim 14 recites determining whether an event has occurred prior to the first event, the latter being recited in Claim 13. However, the Examiner asserts that, by definition, a first event is the beginning event of the sales process and cannot be preceded by a prior event.

   (C) Claims 15 and 16 depend on Claim 14 and recite a first and second subsystem. However, Claim 14 does not recite a first or second subsystem, so there is insufficient antecedent basis for these limitations in Claims 15 and 16.. Applicants likely intended these claims to depend on Claim 13, and the Examiner has reviewed the application on this basis.

Serial Number: 08/550,089 -3-
Art Unit: 2411

    (D)    Claim 18 depends on Claim 19. Applicants likely intended Claim 18 to depend back to Claim 17, and the application has been examined on this basis.

### *Claim Rejections - 35 USC § 103*

5.    The following is a quotation of 35 U.S.C. § 103 which forms the basis for all obviousness rejections set forth in this Office action:

> A patent may not be obtained though the invention is not identically disclosed or described as set forth in section 102 of this title, if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains. Patentability shall not be negatived by the manner in which the invention was made.
>
> Subject matter developed by another person, which qualifies as prior art only under subsection (f) or (g) of section 102 of this title, shall not preclude patentability under this section where the subject matter and the claimed invention were, at the time the invention was made, owned by the same person or subject to an obligation of assignment to the same person.

6.    Claims 1 - 8 and 10 - 20 are rejected under 35 USC § 103 as being unpatentable over Tom Negrino, "Sales-Automation Software", Macworld, v 10, n 10, pages 144 - 148, October, 1993 (hereinafter "Negrino") in view of Tony Seideman, "Way Cool! (Sales Force Automation)", Sales & Marketing Management, v 146, n 6, pages 10 - 13, June, 1994 (hereinafter "Seideman"), and further in view of John Hiatt, "Empowering the Global Sales Force", International Business, v 7, n 9, pages 16 - 20, September, 1994 (hereinafter "Hiatt").

    (A)    As to Claim 1, Negrino discloses a computer-based sales automation system that is used to facilitate a sales process. Negrino teaches a plurality of subsystems, each corresponding to a step in the sales process and each facilitating that

Serial Number: 08/550,089 -4-
Art Unit: 2411

respective sales step. Negrino also discloses an automated branching, or event, manager that automatically initiates the next step in the automated sales process based on recognition of occurrence of a prior step.

Negrino differs from the invention by not expressly teaching the sequence of subsystems being initiated as "first" followed by "second". However, the Examiner asserts that both Negrino and the invention teach a sequence of logical steps, each initiated as a result of a prior step and that by arbitrarily designating a particular step as "first", it would follow that the next step initiated by the system would be the "second" step. It would therefore have been obvious to one of ordinary skill in the art of sales force automation systems to denote an initial sales subsystem step as "first", to be followed by a successive subsystem step designated "second" in order to identify the relative sequence between the two subsystem steps.

(B)   As to Claim 2 and 3, Negrino discloses that the context in which the current (recognized) task (event) occurs is a function of the occurrence of a prior event. Although Negrino does not expressly disclose available information related to a given step, it does disclose the automatic logging of information upon occurrence of events. The Examiner asserts that in order to log such information, the contextual environment of each step must necessarily include the related information which the system subsequently records in a central database. The Examiner further asserts that it would have been obvious to one of ordinary skill in the art to include information with respect to occurrence of a previous step in the automated sales/branching system disclosed by Negrino. One would be motivated to do so in order to have sufficient information with which to verify that the prior step had satisfactorily completed prior to initiating the subsequent step.

(C)   As to Claim 4, while Negrino does not teach a rule-based sales automation system, Seideman does disclose an expert sales automation system in

Serial Number: 08/550,089 -5-
Art Unit: 2411

which rules direct the next recommended action to be taken, upon occurrence of a given event or step. Although Seideman does not expressly disclose storing a plurality of rules, expert systems are well known to be comprised of a stored knowledge base of rules in conjunction with an inference engine that enables the system to make decisions and direct actions based on contextual knowledge (information) and rules defined by experts in the field. See Computer Dictionary, Microsoft Press, 150 (Second Ed., 1994).

Although Seideman does not disclose identifying an express rule governing response to an event, the Examiner asserts that expert systems are well known to initiate a subsequent step upon being provided a relevant knowledge base and contextual information regarding the present event. It would have been obvious to one of ordinary skill in the art to modify Negrino with the expert system of Seideman. One would be motivated to do so in order to incorporate the well-known dynamic learning means of expert systems into the sales automation system of Negrino, and thereby permit Negrino's system to solve problems and initiate events based on the experience and rules of experts with minimal manual intervention.

(D)  As to Claim 5, Negrino teaches an initial event of spending time with a customer in the form of learning about the prospect's needs and making a sales presentation, with the intent of converting an initial lead into a closed sale. Negrino further discloses a lead management subsystem. Although Negrino does not expressly teach using the lead management subsystem in converting a name to a potential customer, the Examiner asserts that a primary goal of a sales system is to make a sale, which necessarily requires converting initial leads, or prospects, into buying customers.

(E)  As to Claim 6, while Negrino does not teach an order management system for ensuring that the ordered product or service is delivered, Hiatt discloses a sales automation system that provides for automatic entry of orders and subsequent

Serial Number: 08/550,089 -6-
Art Unit: 2411

shipment of flawless orders to the customer. It would have been obvious to modify Negrino with the order management subsystem of Hiatt in order to ensure timely and accurate order shipments. One would be motivated to do so in order to deliver that which was promised to the customer and in order to preserve the order. The remaining limitations of Claim 6 are found in Claim 5, and the remainder of this claim is rejected for the same reasons.

(F) As to Claim 7, Negrino discloses a customer retention subsystem that includes post-sale contacts, letters, and meetings with clients for building a relationship with an existing customer for future sales. The remaining limitations of Claim 6 are found in Claim 5, and the remainder of this claim is rejected for the same reasons.

(G) As to Claim 8, Negrino teaches a self management subsystem of customer contact management, to-do lists, calendars, and schedulers for assisting the salesperson in fulfilling his/her sales responsibilities. The remaining limitations of Claim 6 are found in Claim 5, and the remainder of this claim is rejected for the same reasons.

(H) As to Claim 10, Negrino teaches a sales management subsystem that includes sales plans that implement enterprise-wide strategies and means for implementing said plans. The remaining limitations of Claim 6 are found in Claim 5, and the remainder of this claim is rejected for the same reasons.

(I) The limitations of Claim 11 are found in Claims 6 and 8, and this claim is rejected for the same reasons.

(J) The limitations of Claim 12 are found in Claims 5 and 8, and this claim is rejected for the same reasons.

(K) As to Claim 13, and as discussed above regarding Claim 1, while Negrino does not expressly teach facilitating a first event within a first subsystem of a computer-based system, it does teach an automated, computer-based sales system that

Serial Number: 08/550,089  -7-
Art Unit: 2411

spells out every step of the sales process and directs subsequent steps based on the outcome of the immediately previous step. The Examiner asserts that any such sequence of steps within a plurality of subsystems as disclosed by Negrino necessarily has a beginning, or first, step and beginning, or first, subsystem. Otherwise, Negrino would have no starting point from which the sales process would be facilitated as taught within the Negrino publication. The remaining limitations of Claim 13 are found in Claim 1, and the remainder of this claim is rejected for the same reasons.

(L) As to Claim 14, and as discussed above regarding Claims 2 and 3, Negrino teaches performance of events based on the occurrence of prior events. Although Negrino does not expressly disclose determining whether or not such prior events occurred, the Examiner asserts that such a determination would have been obvious prior to the initiation of a subsequent, dependent event. To do otherwise, would render the sequential dependency of events as disclosed by Negrino meaningless. Although Negrino does not disclose determining whether the prior event was part of the context of the first event, the Examiner asserts that recitation of "first" event is merely selection of one of a plurality of possible events within the sales process. The remaining limitations of Claim 14 are found in Claims 2 and 3, and the remainder of this claim is rejected for the same reasons.

(M) The limitations of Claim 15 are found in Claims 1 and 6, and this claim is rejected for the same reasons.

(N) The limitations of Claim 16 are found in Claims 1 and 5, and this claim is rejected for the same reasons.

(O) As to Claim 17, and as discussed above regarding Claim 1 and 4, Negrino discloses a computer-based sales automation system that is used to facilitate the sales process. Although Negrino does not teach "electronically" facilitating sales events, Negrino does disclose use of computers with which to direct events, and the

Serial Number: 08/550,089 -8-
Art Unit: 2411

Examiner asserts that computers are well known to be powered by electricity. While Negrino does not expressly disclose linking to subsequent steps based on prior experience, it does disclose linking to subsequent steps based on the occurrence of prior steps. Also, Seideman teaches incorporating prior sales experience with which to direct the operation of the automated system. It would have been obvious to modify Negrino with the experience means of Seideman. One would be motivated to do so to take advantage of existing practical knowledge within the sales process so as to avoid prior mistakes and to use past successful sequences of events and subsystems with which to close a sale. The remaining limitations of Claim 17 are found in Claims 1 and 4, and the remainder of this claim is rejected for the same reasons.

(P) As to Claims 18, 19 and 20, although Negrino does not disclose an expert system, Seideman does disclose an expert sales automation system that uses prior sales experience with which to build rules to drive the system. As discussed above regarding Claim 4, expert systems are well known to be comprised of knowledge bases and rules that represents expert experience in the field, and Seideman teaches learning from the sales process so as to implement strategies that will work best and further teaches guiding the system to direct the most efficient courses of action. Although Seideman does not expressly disclose monitoring sales process events, the Examiner asserts that it would have been obvious, in view of Seideman, for an expert system to monitor those events comprising the system so as to "learn" what works and what leads to undesirable results and incorporate that knowledge in the expert system's well known knowledge base. It would have been obvious to modify Negrino with the expert system of Seideman for the reasons discussed regarding claim 4.

7. Claim 9 is rejected under 35 USC § 103 as being unpatentable over Tom Negrino, "Sales-Automation Software", Macworld, v 10, n 10, pages 144 - 148,

Serial Number: 08/550,089 -9-
Art Unit: 2411

October, 1993 (hereinafter "Negrino") in view of Colleen Frye, "Automation Integrating Phases of Sales Cycle", Software Magazine, v 13, n 14, pages 61 - 72, September, 1993 (hereinafter "Frye").

    (A)    As to Claim 9, Negrino discloses a computer-based sales automation system that is used to facilitate the sales process, said system being comprised of a plurality of subsystems, each corresponding to a step in the sales process and each facilitating that respective sales step. Although Negrino does not teach a training subsystem, Frye does disclose a sales force automation system in which the users (salespersons) are trained on the system. Although Frye is not clear whether or not the system actually does the training, the Examiner asserts that, in view of Frye and the well-known benefits that accrue from a well-trained staff, it would have been obvious to one of ordinary skill in the art of sales automation systems to provide for system-directed training of salespersons. One would be motivated to do so in order to take advantage of the automation and the knowledge (rules) built into the system to detect the progress of each individual salesperson and to provide training information relevant to his/her particular experience level and products being sold. One would be further motivated to do so to automatically load updated product information into the databases disclosed in Negrino and Frye to provide the salespersons with up to date information.

### *Conclusion*

8.    Any inquiry concerning this communication or earlier communications from the examiner should be directed to William Hughet, whose telephone number is (703) 305-9770. The examiner can be reached on Monday through Friday from 8:00 a.m. to 5:00 p.m.

Serial Number: 08/550,089                                                      -10-
Art Unit: 2411

    If attempts to reach the examiner by telephone are unsuccessful, the examiner's supervisor, Gail Hayes, can be reached at (703) 305-9711. The fax phone number for this Group is (703) 305-9731.

    Any inquiry of a general nature or relating to the status of this application should be directed to the Group receptionist whose telephone number is (703) 305-3900.

William N. Hughes
June 04, 1997

(08550089.AC1)

*Gail Hayes*
GAIL O. HAYES
SUPERVISORY PATENT EXAMINER
GROUP 2400

# File History Report

☐   Paper number _____ is missing from the United States Patent and Trademark Office's original copy of the file history. No additional information is available.

☒   The following page(s) <u>PTO 892</u> of paper number _____ is/are missing from the United States Patent and Trademark Office's original copy of the file history. No additional information is available

Additional comments: _____

# File History Report

☐ Paper number _____ is missing from the United States Patent and Trademark Office's original copy of the file history. No additional information is available.

☒ The following page(s) <u>PTO 948</u> of paper number _____ is/are missing from the United States Patent and Trademark Office's original copy of the file history. No additional information is available

Additional comments: _____