# EXHIBIT H



**UNITED STATES DEPARTMENT OF COMMERCE**
**Patent and Trademark Office**
Address: COMMISSIONER OF PATENTS AND TRADEMARKS
Washington, D.C. 20231

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. |
|---|---|---|---|
| 08/550,089 | 10/30/95 | JOHNSON  J | 7709.72US01 |

LM02/0407

MERCHANT GOULD SMITH EDELL
WELTER & SCHMIDT
3100 NORWEST CENTER
90 SOUTH SEVENTH STREET
MINNEAPOLIS MN 55402-4131

| EXAMINER |
|---|
| POINVIL, F |

| ART UNIT | PAPER NUMBER |
|---|---|
| 2761 | 15 |

DATE MAILED: 04/07/99

Please find below and/or attached an Office communication concerning this application or proceeding.

Commissioner of Patents and Trademarks

PTO-90C (Rev. 2/95)
*U.S. GPO: 1996-404-496/40510

1- File Copy

| **Office Action Summary** | Application No. 08/550,089 | Applicant(s) Jerome D. Johnson et al. |
|---|---|---|
| | Examiner Frantzy Poinvil | Group Art Unit 2761 |

☒ Responsive to communication(s) filed on *Mar 15, 1999*

☒ This action is **FINAL**.

☐ Since this application is in condition for allowance except for formal matters, prosecution as to the merits is closed in accordance with the practice under *Ex parte Quayle*, 1935 C.D. 11; 453 O.G. 213.

A shortened statutory period for response to this action is set to expire ___*3*___ month(s), or thirty days, whichever is longer, from the mailing date of this communication. Failure to respond within the period for response will cause the application to become abandoned. (35 U.S.C. § 133). Extensions of time may be obtained under the provisions of 37 CFR 1.136(a).

**Disposition of Claims**

☒ Claim(s) *1-43* is/are pending in the application.

    Of the above, claim(s) _____ is/are withdrawn from consideration.

☐ Claim(s) _____ is/are allowed.

☒ Claim(s) *1-43* is/are rejected.

☐ Claim(s) _____ is/are objected to.

☐ Claims _____ are subject to restriction or election requirement.

**Application Papers**

☐ See the attached Notice of Draftsperson's Patent Drawing Review, PTO-948.

☐ The drawing(s) filed on _____ is/are objected to by the Examiner.

☐ The proposed drawing correction, filed on _____ is ☐ approved ☐ disapproved.

☐ The specification is objected to by the Examiner.

☐ The oath or declaration is objected to by the Examiner.

**Priority under 35 U.S.C. § 119**

☐ Acknowledgement is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d).

    ☐ All  ☐ Some*  ☐ None  of the CERTIFIED copies of the priority documents have been

       ☐ received.

       ☐ received in Application No. (Series Code/Serial Number) _____ .

       ☐ received in this national stage application from the International Bureau (PCT Rule 17.2(a)).

    *Certified copies not received: _____

☐ Acknowledgement is made of a claim for domestic priority under 35 U.S.C. § 119(e).

**Attachment(s)**

☐ Notice of References Cited, PTO-892

☐ Information Disclosure Statement(s), PTO-1449, Paper No(s). _____

☐ Interview Summary, PTO-413

☐ Notice of Draftsperson's Patent Drawing Review, PTO-948

☐ Notice of Informal Patent Application, PTO-152

--- SEE OFFICE ACTION ON THE FOLLOWING PAGES ---

U.S. Patent and Trademark Office
PTO-326 (Rev. 9-95)     Office Action Summary     Part of Paper No. __15__

Serial Number: 08/550,089 Page 2

Art Unit: 2761

## DETAILED ACTION

### *Status of Claims*

1.  Claims 1-43 were under prosecution in this application in the final action mailed September 15, 1998. The application is under a Continued Prosecution Application filed March 15,1999. No amendment has been filed. Therefore, Claims 1-43 remain under prosecution in this application.

2.  The Examiner notes that Applicants have requested, with their Continued Prosecution Application filing entry of an amendment filed December 10, 1997, but allegedly unentered. The Examiner respectfully notes that Applicant's December 10, 1997 amendment was entered upon receipt and that said amendment was the basis of the final Office action mailed herein on March 3, 1998.

### *Summary of this Office Action*

3.  Applicant's arguments filed July 14, 1998 been fully considered, are discussed in the next section below or within the following rejection under 35 USC 103, and except as where expressly noted, are moot deemed to be persuasive. Therefore, Claims 1-43 are rejected under 35 USC 103 as unpatentable over the art cited below; and Applicants' requests for allowance is respectfully denied.

Serial Number: 08/550,089 Page 3

Art Unit: 2761

*Response to Applicant's Amendment*

4. The Examiner recognizes that Applicants can be their own lexicographers and accepts their explanations regarding "state characteristics of an event". The corresponding objection to the Specification and rejection under 35 USC 112 is therefore withdrawn.

5. To the extent that an "event manager" is recited in the claims as detecting a change and therefore the occurrence of an event and subsequently initiating a following operation in the sales process, Negrino1 discloses such a function at page 1, lines 38-43. Negrino 2 also teaches this feature at page 1, lines 28-30 and 39-40. (For a citation to Negrino1 and Negrino2, please refer to the rejection under 35 USC 103 below).

6. As regards Negrino being linear system, the Examiner asserts that Negrino discloses a non-linear, automated branching system and for support therefore cites to Negrino1 at page 1, lines 42-44 and page 2, line 48-page 3 line 3, where the disclosed sales automation system dynamically branches to a subsequent step based on the detected outcome of a previous event. The system can automatically advise the salesperson the next step to take, based on the occurrence of prior events (Negrino2 at page 1, lines 28-30).

7. As regards, Negrino's method of deactivating a lead, since no such feature is claimed herein, how Negrino fulfills such a function is irrelevant.

8. As regards Negrino differing from the automated prediction feature of applicant's invention as traversed on page 4 of their July 14, 1998 response, the Examiner respectfully asserts

Serial Number: 08/550,089                                                                          Page 4

Art Unit: 2761

that no such prediction feature is recited; and, therefore, such a difference, if it does indeed exist, is irrelevant.

9.     As regards the Negrino being limited to sales contact management, the Examiner asserts that Negrino teaches in the art of sales automation software in which "<u>every step of the sales process</u>" is under control of the system and expressly discloses capturing initial sales leads, making sales presentations, scheduling meetings with customers, submitting and refining bids, closing a sale, and following up for future sales. See Negrino1 at page 1, line 20 - page 3, line 5,; Negrino2 at page 1, lines 20-41. Furthermore, the claims recited herein do not exclude sales contact management from the recited event management. See claims 1 and 13, specification at page 7, line 15- page 8, line 11 and page 15, lines 8-29.

10.     Applicant's remaining traversals are discussed under the 35 USC 103 rejection below.

*Drawings*

11.     This application has been filed with informal drawings which are acceptable for examination purposes only. Formal drawings will be required when the application is allowed.

12.     The drawings are objected to because of irregularities as noted on PTO 948. Appropriate correction is required.

*Specification*

13.     The application is objected to as not being in compliance with 37 CFR 1.77 regarding the required elements of the application. In particular, this application is lacking a section entitled,

Serial Number: 08/550,089 Page 5

Art Unit: 2761

"Cross-References to Related Applications" which should reference copending application Nos. 08/798,850, filed February 12, 1997, and 08/879,070 filed June 19,1997.

*Claim Rejections - 35 USC § 103*

14. The following is a quotation of 35 U.S.C. 103(a) which forms the basis for all obviousness rejections set forth in this Office action:

> (a) A patent may not be obtained though the invention is not identically disclosed or described as set forth in section 102 of this title, if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains. Patentability shall not be negatived by the manner in which the invention was made.

15. Claims 1-3, 5, 7, 8, 10-16, 21-35 and 37-43 are rejected under 35 U.S.C. 103(a) as being unpatentable over Ton Negrino, "Sales-Automation Software", Macworld, v10, n10 pages 144-148, October, 1993 (hereinafter "Negrino1") and Tom Negrino, "Market Master Manager 3.5", Macworld, v10, n10, page 57, October, 1993 (herein after "Negrino2"). The Examiner will refer to Negrino1 and Negrino2 collectively as "Negrino". The Examiner asserts that it would have been obvious to the person of ordinary skill in the art of sales force automation systems to treat these two articles collectively. One would have been motivated to do so because they deal with the same subject matter (sales automation software), were published in the same issue of a magazine and were authored by the same person.

Serial Number: 08/550,089                                                              Page 6

Art Unit: 2761

(A)      As to Claims 1, 13, 21 and 24, Negrino discloses a computer-based sales automation system that is used to facilitate the steps of a sales process (Negrino1 at page 1, lines 25-44; Negrino2 at page 1, lines 20-32). Negrino teaches a plurality of subsystems, each corresponding to a step in the sales process and each facilitating that respective sales step (Id). Negrino also discloses an automated branching, or event, manager that automatically initiates the next particular step in the automated sales process based on detecting the outcome characteristics of a prior step (Negrino1 at page 1, lines 42-44; page 2, lines 9-13; page 2, line 48- page 3, line 3; Negrino2 at page 1, lines 28-30 and 39-40).

(B)      As to claims 2, 3 and 23, Negrino discloses that the system directs the initiation of a subsequent step within a phase of the sales process based on the context in which a previous event may have occurred (Negrino1 at page 1, lines 37-44; Negrino2 at page 1, lines 28-30). Although Negrino does not expressly disclose available information related to a given step, it does disclose the automatic logging of information upon occurrence of events (Negrino1 at page 2, lines 9-13). The Examiner asserts that in order to log such information, the contextual environment of each step must necessarily include the related information which the system subsequently records in a central database. The Examiner asserts that it would have been obvious to one of ordinary skill in the art to include information with respect to occurrence of a previous step in the automated sales/branching system disclosed by Negrino. One would be motivated to do so in order to have sufficient information with which to verify that the prior step had satisfactorily completed prior to initiating the subsequent step.

Serial Number: 08/550,089 Page 7
Art Unit: 2761

(C) As to claim 5, Negrino teaches an initial event of spending time with a customer in the form of learning about the prospect's needs and making a sales presentation, with the intent of converting an initial lead into a closed sale (Negrino1 at page 1, lines 25-28). Negrino further discloses a lead management subsystem (Negrino1 at page 1, lines 25-26; page 5, lines 19-21 and 44-46). Although Negrino does not expressly teach using the lead management subsystem in converting a name to a potential customer, the Examiner asserts that a primary goal of a sales system is to make a sale, which necessarily requires converting initial leads, or prospects, into buying customers.

(D) As to claim 7, Negrino discloses a customer retention subsystem that includes post-sale contacts, letters and meetings with clients for building a relationship with an existing customer for future sales (Negrino1 at page 1, lines 28-29; page 2, lines 9-13; page 3, lines 9-12). The remaining limitations of Claim 7 are found in Claim 5, and the remainder of this claim is rejected for the same reasons.

(F) As to Claim 8, Negrino teaches a self management subsystem of customer contact management, to-do-lists, calendars, and schedulars for assisting the sales person in fulfilling his/her sales responsibilities (Negrino1 at page 2, lines 27-34). The remaining limitations of Claim 8 are found in Claim 5, and the remainder of this claim is rejected for the same reasons.

(G) As to claim 10, Negrino teaches a sales management subsystem that includes sales plans that implement enterprise-wide strategies and means for implementing said plans (Negrino1

Serial Number: 08/550,089                                                                                       Page 8

Art Unit: 2761

at page 1, lines 38-44). The remaining limitations of claim 10 are found in claim 5 and the remainder of this claim is rejected for the same reasons.

(H)  The limitations of Claim 11 are found in claims 6 and 8 and this claim is rejected for the same reasons.

(I)  The limitations of claim 12 are found in claims 5 and 8, and this claim is rejected for the same reasons.

(J)  As to claim 14, and as discussed above regarding claims 1-3, Negrino teaches performance of events based on the occurrence of prior events. Although Negrino does not expressly disclose determining whether or not a particular prior event occurred, the Examiner asserts that such a determination would have been obvious prior to the limitation of a subsequent, dependent event in a sequence of events. To do otherwise, would render the sequential dependency of events as disclosed by Negrino meaningless (see Negrino1 at page 1, lines 42-44). The remaining limitations of claim 14 are found in claims 2 and 3 and the remainder of this claim is rejected for the same reasons.

(K)  The limitations of Claim 15 are found in claims 1 and 6 and this claim is rejected for the same reasons.

(L)  The limitations of claim 16 are found in claims 1 and 5 and this claim is rejected for the same reasons.

(M)  As to claim 22, the Examiner asserts that events occurring within the sales process are well known to be indicative of more that one step of a sales process. For example, a

Serial Number: 08/550,089                                                                     Page 9
Art Unit: 2761

telephone call from a customer may occur in several steps of the sales process. See Negrino 1 at page 1, lines 29-35.

(N)   The limitations of claims 25 and 33 are found in claim 1, and these claims are rejected for the same reasons.

(O)   The limitations of claims 26, 31, and 34 are found in claim 23 and these claims are rejected for the same reasons.

(P)   The limitations of claims 27, 32 and 35 are found in claim 24, and these claims are rejected for the same reasons.

(Q)   The limitations of claim 28 are found ind in claims 21 and 23, and this claim is rejected for the same reasons.

(R)   The limitations of claim 29 are found in claim 21, and this claim is rejected for the same reasons.

(S)   The limitations of claim 30 are found in claim 22 and this claim is rejected for the same reasons.

(T)   The limitations of claim 37 are found in claims 1 and 5, and this claim is rejected for the same reasons.

(U)   The limitations of claim 38 are found in claims 1 and 7, and this claim is rejected for the same reasons.

(V)   The limitations of claim 39 are found in claims 1 and 8, and this claim is rejected for the same reasons.

Serial Number: 08/550,089 Page 10

Art Unit: 2761

    (W)    The limitations of claim 40 are found in claims 1 and 9, and this claim is rejected for the same reasons.

    (X)    The limitations of claim 41 are found in claims 1 and 10, and this claim is rejected for the same reasons.

    (Y)    The limitations of claim 42 are found in claims 1 and 11, and this claim is rejected for the same reasons.

    (Z)    The limitations of claim 43 are found in claims 1 and 12, and this claim is rejected for the same reasons.

16.    Claims 4, 17-20 and 36 are rejected under 35 U.S.C. 103(a) as being unpatentable over Negrino1 and Negrino2 as applied to claims 1 and 13 above, and further in view of Tony Seideman, "Way Cool! (Sales Force Automation)", Sales & Marketing Management, v146, n6 pages 10-13, June, 1994, (hereinafter "Seideman").

    (A)    As to claim 4, while Negrino does not teach a rule-based sales automation system, Seideman does disclose an expert sales automation system in which rules direct the next recommended action to be taken, upon occurrence of a given event or step (Seideman at page 1, lines 37-45). A decision subsystem directs the salesperson to the next proper step based on the context in which the prior steps occurred (page 4, lines 34-40). Although Seideman does not expressly disclose storing a plurality of rules, expert systems are well known to be comprised of a stored knowledge base of rules in conjunction with an inference engine that enables the system to make decisions and direct actions based on contextual knowledge (information) and rules defined

Serial Number: 08/550,089 Page 11
Art Unit: 2761

by experts in the field. See Seideman at page 4, lines 39-43; Computer Dictionary, Microsoft Press, 156, (Second Ed. 1994).

Although Seideman does not disclose identifying an express rule governing response to an event, the Examiner asserts that expert systems are well known to initiate a subsequent step upon being provided a relevant knowledge base and contextual information regarding the present event. It would have been obvious to one of ordinary skill in the art to modify Negrino with the expert system of Seideman. One would have been motivated to do so in order to incorporate the well known dynamic learning means of expert systems into the sales automation system of Negrino, and thereby permit Negrino's system to solve problems and initiate events based on the experience and rules of experts with minimal manual intervention.

(B) As to claim 17, and as discussed above regarding claims 1 and 4, Negrino discloses a computer-based sales automation system that is used to facilitate the sales process. Although Negrino does not teach "electronically" facilitating sales events, Negrino does disclose use of computers with which to direct events, and the Examiner asserts that computers are well known to be powered by electricity. While Negrino does not expressly disclose linking to subsequent steps based on prior experience, it does disclose linking to subsequent steps based on the occurrence of prior steps. Also, Seideman teaches incorporating prior sales experience with which to direct the operation of the automated system (Seideman at page 4, lines 39-43). It would have been obvious to modify Negrino with the experience means of Seideman. On would be motivated to do so to take advantage of existing practical knowledge within the sales process

Serial Number: 08/550,089                                                                                          Page 12

Art Unit: 2761

so as to avoid prior mistakes and to use past successful sequences of events and subsystems with which to close a sale (see Seideman at page 4, lines 41-43). The remaining limitations of claim 17 are found in claims 1 and 4, and the remainder of this claim is rejected for the same reasons.

© As to claims 18, 19 and 20, although Negrino does not disclose an expert system, Seideman does disclose an expert sales automation system that uses prior sales experience with which to build rules to drive the system. As discussed above regarding claim 4, expert systems are well known to be comprised of knowledge bases of rules that represents expert experience in the field, and Seideman teaches learning from the sales process so as to implement strategies that will work best and further teaches guiding the system to direct the most efficient courses of action (Seideman at page 4, lines 39-43). Although Seideman does not expressly disclose monitoring sales process events, the Examiner asserts that it would have been obvious, in view of Seideman, for an expert system to monitor those events comprising the system so as to learn what works and what leads to undesirable results and incorporate that knowledge in the expert system's well known knowledge base. It would have been obvious to modify Negrino with the expert system of Seideman for the reasons regarding claim 4.

(D)     The limitations of claim 36 are found in claim 4 and this claim is rejected for the same reasons.

17.     Claim 6 is rejected under 35 U.S.C. 103(a) as being unpatentable over Negrino1 and Negrino2 as applied to claim 1 above, and further in view of John Hiatt, "Empowering the Global Sales Force", International Business, v7, n9, pages 16-20, September, 1994 (hereinafter "Hiatt").

Serial Number: 08/550,089                                                              Page 13

Art Unit: 2761

As to claim 6, while Negrino does not teach an order management system for ensuring that the ordered product or service is delivered, Hiatt discloses a sales automation system that provides for automatic entry of orders and subsequent shipment of flawless orders to the customer. It would have been obvious to modify Negrino with the order management subsystem of Hiatt in order to ensure timely and accurate order shipments. One would be motivated to do so in order to deliver that which was promised to the customer and in order to preserve the order. The remaining limitations of claim 6 are found in claim 5, and the remainder of this claim is rejected for the same reasons.

18.      Claim 9 is rejected under 35 U.S.C. 103(a) as being unpatentable over Negrino1 and Negrino2 as applied to claim 1 above, and further in view of Colleen Frye, "Automation Integrating Phases of Sales Cycle", Software Magazine, v13, n14, pages 61-72, September, 1993 (hereinafter "Frye").

(A)      As to claim 9, Negrino discloses a computer-based sales automation system that is used to facilitate the sales process, said system being comprised of a plurality of subsystems, each corresponding to a step in the sales process and each facilitating that respective sales step. Although Negrino does not teach a training subsystem, Frye does disclose a sales force automation in which users (salespersons) are trained on the system. Although Frye is not clear whether or not the system does the training, the Examiner asserts that, in view of Frye and the well-known benefits that accrue from a well-trained staff, it would have been obvious to one of ordinary skill in the art of sales automation systems to provide for system-directed training of

Serial Number: 08/550,089 Page 14

Art Unit: 2761

sales persons. One would be motivated to do so in order to take advantage of the automation and the knowledge (rules) built into the system to detect the progress of each individual salsesperson and to provide training information relevant to his/her particular experience level and products being sold. One would be further motivated to do so to automatically load updated product information into the databases disclosed by Negrino and Frye to provide the salespersons with up-to-date information.

19. **THIS ACTION IS MADE FINAL.** Applicant is reminded of the extension of time policy as set forth in 37 CFR 1.136(a).

A shortened statutory period for reply to this final action is set to expire THREE MONTHS from the mailing date of this action. In the event a first reply is filed within TWO MONTHS of the mailing date of this final action and the advisory action is not mailed until after the end of the THREE-MONTH shortened statutory period, then the shortened statutory period will expire on the date the advisory action is mailed, and any extension fee pursuant to 37 CFR 1.136(a) will be calculated from the mailing date of the advisory action. In no event, however, will the statutory period for reply expire later than SIX MONTHS from the mailing date of this final action.

20.

*Conclusion*

Serial Number: 08/550,089 Page 15

Art Unit: 2761

Any inquiry concerning this communication or earlier communications from the examiner should be directed to Frantzy Poinvil, whose telephone number is (703) 305-9779. The examiner can normally be reached on Monday through Friday from 8:30 AM to 5:00 PM.

The fax phone number for this Art Unit is (703) 308-5397.

Any inquiry of a general nature or relating to the status of this application should be directed to the Group receptionist whose telephone number is (703) 305-3800.

FP
28Mar99

/FPo m/
**Frantzy Poinvil
Primary Examiner
Art Unit 2761**