UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
TYLER DIVISION

SFA SYSTEMS, LLC

    v.                                         NO. 6:07-CV-067-LED

INFOR GLOBAL SOLUTIONS
(CHICAGO), INC., et al.

## PLAINTIFF'S REPLY CLAIM CONSTRUCTION BRIEF

Andrew W. Spangler - LEAD COUNSEL
Texas Bar No. 24041960
Spangler Law P.C.
208 N. Green Street, Suite 300
Longview, Texas 75601
(903) 753-9300
(903) 553-0403 (fax)
spangler@spanglerlawpc.com

David M. Pridham
Law Office of David Pridham
25 Linden Road
Barrington, Rhode Island 02806
(401) 633-7247
(401) 633-7247 (fax)
david@pridhamiplaw.com

John J. Edmonds
Texas Bar No. 00789758
The Edmonds Law Firm, PC
709 Sabine Street
Houston, Texas 77007
(713) 858-3320
(832) 415-2535 (fax)
johnedmonds@edmondslegal.com

ATTORNEYS FOR PLAINTIFF
SFA SYSTEMS, LLC

**TABLE OF CONTENTS**

I. INTRODUCTION .................................................................................................................. 1

II. ARGUMENT ...................................................................................................................... 2

    A. Legal Standard Regarding Indefiniteness ................................................................. 2

    B. Inferring......................................................................................................................... 3

    C. Inferring occurrence of the event ............................................................................... 6

    D. Inferring…a context in which the event occurred ...................................................... 7

    E. Changes in state characteristics of an event ............................................................... 9

    F. Expert System............................................................................................................... 11

    G. Event Manager ............................................................................................................. 14

    H. Context.......................................................................................................................... 17

    I. Subsystem...................................................................................................................... 19

II. CONCLUSION .................................................................................................................. 20

# TABLE OF AUTHORITIES

## Cases

*Aloft Media v. Adobe Sys.,* 570 F. Supp. 2d 887 (E.D. Tex. 2008)....................................... 3

*Anchor Wall Sys. v. Rockwood Retaining Walls,* 340 F.3d 1298 (Fed. Cir. 2003)..................... 20

*Bancorp Servs. v. Hartford Life Ins.,* 359 F.3d 1367 (Fed. Cir. 2004) ...................................... 2,4

*Chef Am., Inc. v. Lamb-Weston,* 358 F.3d 1371 (Fed. Cir. 2004) ................................. 6

*Datamize v. Plumtree Software,* 417 F.3d 1342 (Fed. Cir. 2005)............................................... 2,3

*Deep Nine v. McAfee,* 2008 U.S. Dist. LEXIS 92684,
9:06-CV-174-RC (E.D. Texas March 13, 2008)............................................................... 3,4

*Generation II Orthotics v. Medical Tech.,* 263 F.3d 1356 (Fed. Cir. 2001).................................. 3

*Halliburton Energy Servs. v. M-I,* 514 F.3d 1244 (Fed. Cir. 2008)............................................ 2,3

*Innova/Pure Water, Inc. v. Safari Water Filtration Sys.,* 381 F.3d 1111 (Fed. Cir. 2004) .......... 21

*Johnson & Johnston Assocs. v. R.E. Serv. Co.,* 285 F.3d 1046 (Fed. Cir. 2002) ........................ 21

*Johnson Worldwide Assocs. v. Zebco,* 175 F.3d 985 (Fed. Cir. 1999) ......................................... 17

*Liebel-Flarsheim v. Medrad,* 358 F.3d 898 (Fed. Cir. 2004) .................................................... 3, 4

*Mangosoft Intellectual Prop. v. Skype Techs.,* 2008 U.S. Dist. LEXIS 62281,
No. 2:06-CV-390 (E.D. Tex. August 14, 2008)............................................................... 2, 4

*MASS Engineered Design v. Ergotron,* 559 F. Supp. 2d 740 (E.D. Texas 2008)......................... 4

*Microsoft v. Commonwealth Sci. & Indus. Research Org.,*
572 F. Supp. 2d 786 (E.D. Texas 2008)......................................................................... 2,3

*Nat'l Prods. v. Palmetto W. Trading Co.,*
2006 U.S. Dist. LEXIS 28682 (W.D. Wa. May 4, 2006) ............................................... 17

*Oak Tech. v. ITC,* 248 F.3d 1316, 1329 (Fed. Cir. 2001) ............................................. 6

*Omega Engineering, Inc. v. Raytek Corp.,* 334 F.3d 1314 (Fed. Cir. 2003) ............................... 13

*OPTi v. nVidia,* 2006 WL 1133331 (E.D. Tex. Apr. 4, 2006)..................................................... 19

*Paradox Sec. Sys. v. ADT Sec. Servs.,* 2008 U.S. Dist. LEXIS 103612,
No. 2:06-CV-462-TJW (E.D. Tex, Dec. 23, 2008)....................................................... 1,2

*Phillips v. AWH,* 415 F.3d 1303 (Fed. Cir. 2005)........................................................... 1, 8, 20, 21

*PowerOasis v. T-Mobile USA,* 522 F.3d 1299 (Fed. Cir. 2008)................................................... 3

*Rockefeller Univ. v. Centocor,* No. 2:04-CV-168 at Dkt. 73 ...................................................... 13

*SanDisk v. Memorex Prods.,* 415 F.3d 1278 (Fed. Cir. 2005)..................................................... 14

*SunRace Roots Enter. v. SRAM,* 336 F.3d 1298 (Fed. Cir. 2003)............................................... 20

*Verizon Cal. v. Ronald A. Katz Tech. Licensing,* 326 F. Supp. 2d 1060 (C.D. Cal 2003)............ 17

*Young v. Lumenis,* 492 F.3d 1336 (Fed. Cir. 2007) ....................................................... 2

## Other Sources

DICTIONARY.COM (2008) at www.dictionary.com...................................................................... 19

MICROSOFT PRESS DICTIONARY (1991) .................................................................................. 10

## I.   **INTRODUCTION**

A bedrock principle of claim construction is that claim terms are generally given their ordinary and customary meaning in context.[1] Infor seeks to duck this principal and pretend it does not exist. Infor's shifting claim constructions are an attempt to limit the claims of the '525 patent to selective details of certain preferred embodiments. When analyzing Infor's positions, it is enlightening that Infor agrees that no construction is needed for *inferred event*, *inferred context*, and detecting one or more *changes in state characteristics of an event*. The foregoing is an admission that jurors will readily understand the meaning of these terms, and that Infor's indefiniteness arguments relative to "*inferring occurrence of the event*," "*inferring . . . a context*," and "*state characteristic of an event*" lack merit. Infor's Response fails to explain this inconsistency.   Further, the fact that Infor has offered alternative constructions for each of these terms demonstrates that they are construable. Infor's arguments regarding indefiniteness amount to hollow citations to inapplicable cases and assertions unsupported by meaningful analysis.[2] Infor's Response also focuses on a slanted and selective view of the specification and prosecution history in order to distract from the fact that the terms/phrases at issue are discernable words with plain and commonly understood meanings.

---

[1] *See, e.g., Phillips v. AWH*, 415 F.3d 1303, 1313 (Fed. Cir. 2005); *Paradox Sec. Sys. v. ADT Sec. Servs.*, 2008 U.S. Dist. LEXIS 103612, *54-55, No. 2:06-CV-462-TJW (E.D. Tex, Dec. 23, 2008).

[2] Infor's Response purports to reserve the issue of written description, which has nothing to do with claim construction, for another day. However, Infor's Response is largely an effort to bootstrap meritless indefiniteness arguments onto Infor's erroneous assertion that the claims contain "new matter" not found in the specification. On this issue, Infor is simply incorrect. Just because a limitation is added to the claims during prosecution does not mean it is "new matter."

Further, Infor's assertion that the claim terms are not "sufficiently precise to permit a potential competitor to determine whether or not he is infringing" is curious, since it has asserted that eleven alleged prior art references anticipate the claims of the '525 patent.[3] If Infor could not tell whether its products meet the claim limitations, then one wonders how Infor could in good faith allege that prior art meets the same limitations.

## II.   ARGUMENT

### A.   Legal Standard Regarding Indefiniteness.[4]

A claim is indefinite only if it is not amenable to construction or insolubly ambiguous.[5] This depends on how a skilled artisan would read the claim in light of the specification, the prosecution history, relevant extrinsic evidence, and one's knowledge of the relevant art.[6] A claim is not indefinite merely because it poses a difficult issue of claim construction.[7] A claim term is definite if it can be given any reasonable meaning.[8]

To prevail on indefiniteness grounds, one must prove by clear and convincing evidence that a skilled artisan could not discern the boundaries of the claims.[9] Courts presume issued claims are valid, and a court may only find a claim indefinite if reasonable efforts at claim construction prove futile.[10] Embedded in the presumption that an issued patent is valid is the

---

[3] Infor is currently seeking leave to amend its invalidity contentions to add additional alleged prior art, and those invalidity contentions are of record with the court as Exhibit G to Dkt No. 179.
[4] SFA's Opening Brief contains legal authorities relative to claim construction. SFA did not brief the issue of indefiniteness in its Opening Brief because Infor's first disclosure of its theories of indefiniteness was made in Infor's Response.
[5] *Young v. Lumenis,* 492 F.3d 1336, 1346 (Fed. Cir. 2007); *Paradox Sec. Sys.*, 2008 U.S. Dist. LEXIS 103612, *54-55; *Microsoft v. Commonwealth Sci. & Indus. Research Org.*, 572 F. Supp. 2d 786, 802-03 (E.D. Texas 2008) ("CSIRO").
[6] *Halliburton Energy Servs. v. M-I*, 514 F.3d 1244, 1249-50 (Fed. Cir. 2008); *Mangosoft Intellectual Prop. v. Skype Techs.*, 2008 U.S. Dist. LEXIS 62281, *24.
[7] *Bancorp Servs. v. Hartford Life Ins.*, 359 F.3d 1367, 1372 (Fed. Cir. 2004); *Paradox*, 2008 U.S. Dist. LEXIS 103612, *16, No. 2:06-CV-462-TJW (E.D. Tex. Dec. 23, 2008).
[8] *Datamize v. Plumtree Software*, 417 F.3d 1342, 1347 (Fed. Cir. 2005); *CSIRO*, 572 F. Supp. 2d at 802-03.
[9] *Halliburton*, 514 F.3d at 1249-50; *CSIRO*, 572 F. Supp. 2d at 802-03.
[10] *Datamize*, 417 F.3d at 1348; *CSIRO*, 572 F. Supp. 2d at 802-03.

premise that patent examiners have at least ordinary skill in the art and have performed their duties in scrutinizing the claims for validity.[11]

The maxim that claim language should generally be construed to preserve validity applies where the court concludes, after applying the canons of claim construction, that the term at issue is still ambiguous.[12] In that situation, claims can be construed to preserve their validity where the proposed claim construction is practicable, is based on sound claim construction principles, and does not revise or ignore the explicit language of the claims.[13] As a general rule, claims need not be plain on their face in order to avoid condemnation for indefiniteness; rather, what the court will ask is that the claims be amenable to construction, however difficult that task may be.[14] Close questions of indefiniteness are properly resolved in favor of validity.[15]

In the *Mangosoft* case, the defendant argued, unsuccessfully, that a term was indefinite because it was not found in the specification.[16] However, the court properly held that terms not found in the specification are not necessarily indefinite, including if the prosecution history provides clarity as to their meaning.[17]

## B.    Inferring

Inferring is a simple and well understood term. It is simply "deriving based upon one or more facts or circumstances."[18] The fact that inferring has a plain, understandable meaning is

---

[11] *PowerOasis v. T-Mobile USA*, 522 F.3d 1299, 1304 (Fed. Cir. 2008); *Aloft Media v. Adobe Sys.*, 570 F. Supp. 2d 887, 901-02 (E.D. Tex. 2008).

[12] *Liebel-Flarsheim v. Medrad*, 358 F.3d 898, 911 (Fed. Cir. 2004); *Deep Nine v. McAfee*, 2008 U.S. Dist. LEXIS 92684, * 45-47, 9:06-CV-174-RC (E.D. Texas March 13, 2008).

[13] *Generation II Orthotics v. Medical Tech.*, 263 F.3d 1356, 1365 (Fed. Cir. 2001); *Deep Nines*, 2008 U.S. Dist. LEXIS 92684, * 45-47.

[14] *Deep Nines*, 2008 U.S. Dist. LEXIS 92684, * 45-47.

[15] *Bancorp Services*, 359 F.3d at 1371; *MASS Engineered Design v. Ergotron*, 559 F. Supp. 2d 740, 751 (E.D. Texas 2008).

[16] *Mangosoft Intellectual Prop. v. Skype Techs.*, 2008 U.S. Dist. LEXIS 62281, *24, No. 2:06-CV-390 (E.D. Tex. August 14, 2008).   , NO. 2:06-CV-390 (E.D. Tex. August 14, 2008).

[17] *Mangosoft Intellectual Prop.*, 2008 U.S. Dist. LEXIS 62281, *24.

[18] *See, e.g.,* AMERICAN HERITAGE DICTIONARY OF THE ENGLISH LANGUAGE: FOURTH EDITION (2000) @ www.bartleby.com (defining infer as "to conclude from evidence or premises. 2. To reason from circumstance).

evident from instructions that commonly instruct jurors that they may make inferences.[19] Infor asserts that conflicting meanings of infer are argued in the prosecution history; however, Infor fails to provide any support for this assertion. Infor also asserts that multiple possible inconsistent meanings for the term inferring "can be construed by one skilled in the art," but again Infor fails to provide any support for this assertion.

While it is true that the exact word "inferring" is not in the specification, it makes multiple references to a preferred embodiment comprising an "inference" engine.[20] Moreover, as noted above, the specification discloses, albeit without using the word "inferring," the process of inferring the occurrence of events by detecting state changes of events. When the Patent Examiner questioned whether this functionality was found in the specification, the Applicant directed the Patent Examiner to appropriate language, and the Patent Examiner agreed.

Infor criticizes SFA for relying upon "colloquial definitions" from English dictionaries, rather than relying upon technical dictionaries, for the meaning of "infer." However, Infor provides no evidence from a "technical" definition or otherwise that would suggest that a plain, straightforward definition is inappropriate for "infer." Likewise, Infor criticizes SFA for "self-selecting" definitions of "infer." However, Infor fails to point out why those definitions are inappropriate. Further, despite its opportunity to do so, Infor fails to point out any other definitions of "infer" that would be more appropriate. Further, Infor makes the bare assertion that the dictionary definitions cited by SFA are inconsistent with SFA's proposed construction. However, Infor provides no explanation for this assertion.

---

[19] For example, in multiple instances, the Fifth Circuit Pattern Jury Instructions provide that jurors may "draw such reasonable inferences from the testimony and exhibits as you feel are justified."
[20] See, e.g., '525 patent at Column 34:23-26 ("Thus, in accordance with one embodiment of the system, an inference engine may be employed to make the decision of whether particular subsequent action should be taken."). Further, the Patent Examiner was aware that one of ordinary skill in the art would understand inference engines. See 6/10/97 Office Action at p. 5.

When considering Infor's alternate construction, it is important to note that Infor does not dispute that SFA's construction for "inferring" is consistent with ordinary meaning in context. Instead, Infor seeks to limit ordinary meaning by including a limitation from a preferred embodiment. This is most clearly seen by Infor's statement that inferring must take place via an "inference[21] engine within an expert system within the event manager."[22]

As noted in SFA's Opening Brief, but never addressed by Infor in its Response, Claim 20 and its dependent claims do not include an event manager. However, Claim 20 specifically includes the "inferring" step. Thus, Infor seeks to import "event manager" into Claim 20 and its dependent claims even though such a term is not recited. Infor cannot re-write the claims.[23]

Moreover, the '525 patent states that "FIG 22 illustrates an **alternative** embodiment which incorporates an expert system…"[24] Applying Infor's construction of inferring would limit the claims to this "alternative embodiment" of the claimed invention. The '525 patent makes clear that Figure 22 is just one embodiment of the invention.[25] For example, Figure 19 "illustrates an event manager in accordance with an embodiment of the invention."[26] However, Figure 19 and its associated description in the specification does not include an expert system. Accordingly, Infor's construction of inferring, which would require that **all** systems have an inference engine, an expert system and an event manager would read out the preferred embodiment disclosed in Figure 19.[27] This is improper.[28]

---

[21] It is remarkable that Infor can simultaneously contend that "inferring" is insolubly ambiguous but that "inference" could properly be included in the Court's construction.

[22] In addition, the attempt to incorporate a "computerized logical process" limitation renders claim language moot and should therefore be rejected. *See* Claim 1 ("computer implemented"), Claim 20 ("using a computer arrangement"), etc.

[23] *See, e.g., Chef Am., Inc. v. Lamb-Weston*, 358 F.3d 1371, 1374 (Fed. Cir. 2004).

[24] '525 patent at Column 33:32-33 (emphasis added).

[25] "FIG 22 illustrates an *alternative* embodiment which incorporates an expert system…" '525 patent at Column 33:32-33 (emphasis added).

[26] '525 patent at Column 36-37.

[27] *Anchor Wall Sys. v. Rockwood Retaining Walls*, 340 F.3d 1298, 1308 (Fed. Cir. 2003) (internal citations omitted).

Further, the "expert system" limitation suggested by Infor for all 43 claims is found only in dependent claims 41, 42 and 43. In fact, Claim 41 could not be clearer that every event manager does not include an expert system, because its purpose is to claim: "the event manager compris[ing] an expert system." Infor's construction thus runs afoul of claim differentiation.

Because an event manager need not always include an expert system, and an expert system need not always include an inference engine,[29] Infor's attempt to require the limitation of "an inference engine" is incorrect. Infor is attempting to use the term "inferring" to back door an event manager and an expert system comprising an inference engine into every claim.

### C.      Inferring occurrence of the event

Infor cannot credibly contend that the phrase "inferring occurrence of the event" is insolubly ambiguous when Infor admits that the terms "event" and "inferred event" are definite and need no construction. Infor's suggestion that "inferring occurrence of the event" is indefinite, including because it allegedly constitutes "new matter," is mistaken. As taught by the specification and as made clear by the language of the claims and the prosecution history, the occurrence of events is inferred, *i.e.*, derived, because it is based (in part) upon changes in state characteristics of the events.[30] In response to the Patent Examiner's initial rejection of the claims,[31] the Patentee added the "inferring occurrence of the event . . . based at least in part on the detected changes in state."[32] The Patent Examiner noted the change in claim language and

---

[28] *Oak Tech. v. ITC*, 248 F.3d 1316, 1329 (Fed. Cir. 2001).
[29] The impropriety of including "inference engine" in the construction of "expert system" is discussed below relative to the appropriate construction for expert system.
[30] *See* '525 patent at Claims 1, 20 and 40, and Column 32:13-56.
[31] *See* 6/10/97 Office Action.
[32] 12/10/97 Response to 6/10/97 Office action, pp. 2 - 14.

requested the Patentee to point out where it was found in the specification.[33] The Patentee

complied.[34] The Patent Examiner agreed with the Patentee on the issue.[35]

Infor's assertions relative to the antecedent basis of "event" are mistaken. Exemplary

Claim 1 introduces the term "event" by having the event manager perform the step of "detecting

one or more changes in state characteristic of *an event* occurring within the system." Next, the

event manager performs the step of "inferring occurrence of *the event* . . . based at least in part

on the detected changes in state." According to Infor, this means that, "[t]he event manager first

detects that an event has occurred, and then must derive – based upon one or more facts or

circumstances – the fact that the same event occurred." Infor is simply wrong. The detecting step

involves detecting changes in state characteristics of an event. Next, the inferring step involves

inferring the occurrence of the event based upon the detected changes.

As to the alternative construction offered by Infor, SFA's Opening Brief explained why

SFA's construction is correct and the multiple deficiencies inherent in Infor's construction.

Infor's response relies upon its meritless § 112 argument and provides no argument or support

for its proposed construction.

> ### D.      Inferring…a context in which the event occurred

Infor's allegation of indefiniteness regarding the phrase "inferring…a context in which

the event occurred" suffers from essentially the same problems described above. Infor does not

allege, and it cannot credible allege, that the term "context" is indefinite.[36]

Infor's suggestion that "inferring . . . a context" is indefinite, including because it

allegedly constitutes "new matter," is also mistaken. Here again, Infor's Response focuses upon

---

[33] 3/3/98 Office Action, p. 4.
[34] 7/14/98 Supplemental Response to 3/3/98 Office action, p. 2.
[35] 9/15/98 Office Action, p. 2.
[36] The notion of "context" is certainly one familiar to the claim construction process. *See Phillips*, 415 F.3d at 1312-13. Moreover, as shown above, Infor admits that the terms "inferred" and "occurring in the system" are definite.

a slanted and selective view of the specification and prosecution history in order to distract from the fact that "inferring" and "context" are easily discernable words with plain and commonly understood meanings, with such meanings being clear in the context of the intrinsic evidence.

As taught by the specification and as made clear by the language of the claims and the prosecution history, the context of events is inferred, *i.e.*, derived, because it is based (in part) upon changes in state characteristics of the events.[37] When addressing the Patent Examiner's initial rejection, the applicant added the word "inferring" relative to both "events" and "context." As described above, the Patent Examiner noted the change in claim language and requested the Patentee to point out where it was found in the specification.[38] The Patentee complied.[39] The Patent Examiner agreed with the Patentee on the issue.[40]

Infor's assertion of "inconsistent definitions" in the intrinsic evidence of inferring context is mistaken. In this regard, Infor purports to be confused about the difference between determining, recognizing and inferring context. This purported confusion between a word included in the claims and words not included, even if justified, would not justify invalidating the claim for indefiniteness. Nonetheless, Infor's purported confusion is mistaken. The terms "recognizing and "determining" are readily understandable words which are used interchangeably in the '525 patent. In fact, in response to the Examiner's initial rejection of the claims, the Patentee substituted the term "inferring" for both "recognizing" (i.e., inferring events for recognizing events) and "determining" (i.e., determining context for recognizing context).[41] When questioned about the change, the Patentee noted that "detecting" was the same as

---

[37] *See* '525 patent at Claims 1, 20 and 40, and Column 32:13 – Column 14:4.
[38] 3/3/98 Office Action, p. 4.
[39] 7/14/98 Supplemental Response to 3/3/98 Office action, p. 2.
[40] 9/15/98 Office Action, p. 2.
[41] *See* amendments at 12/10/97 Response to 6/10/97 Office action, pp. 2 - 14.

"recognizing."[42] In addition, Infor misunderstands the mention of "context recognition" in the prosecution history. This mention comes in connection with the Patentee's discussion of the Negrino reference, which had been cited by the Patent Examiner in rejecting the claims. The Patentee noted that "context recognition" distinguished the invention from Negrino.[43] Because Negrino did not teach using context at all, it was not necessary for the Patentee to be more specific and say that Negrino fails to teach "inferring context."

As to the alternative construction offered by Infor, SFA's Opening Brief describes in detail why SFA's construction is correct, and the multiple deficiencies inherent in Infor's construction. Infor's response was to rely on its § 112 argument and provided no argument or support for its proposed construction. Accordingly, the Court should adopt SFA's construction.

### E.      Changes in state characteristics of an event

Infor's suggestion that "state characteristics of an event" is indefinite must be rejected. The terms "state," "characteristic" and "event" are easily discernable words with plain and commonly understood meanings. In accordance with plain English, as taught by the specification, and as made clear by the prosecution history, state characteristics of an event are information relating to the status of an event.[44] Further, as noted in the cited extrinsic evidence, the words "state" and "status" are used interchangeably in computer science.[45]

As shown above regarding the "inferring" terms, the Patent Examiner scrutinized the issue of state characteristics, from which he ultimately agreed with the Patentee's explanation. Further, Infor erroneously asserts that the Patentee stated "contradictory meanings" of state characteristic, and that the Applicant "defined" state characteristic in an indefinite manner. In the

---

[42] 7/14/98 Supplemental Response to 3/3/98 Office action, p. 2.
[43] 12/10/97 Response to 6/10/97 Office action, p. 16.
[44] *See* '525 patent at Claims 1, 20 and 40, and Column 32:13 - 57.
[45] MICROSOFT PRESS DICTIONARY (1991) (defining state as "see status" and defining status as "also called state").

prosecution history the Patentee referred to state characteristics as "state information," not in the manner suggested by Infor.[46] And the specification uses the terms "state" and "status" interchangeably,[47] and it refers to state characteristics as "status information."[48]

Infor's assertion that, "[w]ithin the specification, there is no indication that 'state information" is related to any event," is remarkable. To the contrary, the specification specifically states that, "[o]n the basis of rules and *state information* stored in the *event* manager database 1904, the *event* managing unit 1902 may be configured to dynamically bind *event* handlers (in the form of an *event* map) to the exposed *events* (as represented by line 1916)."[49]

Other than the alleged indefinite arguments, Infor does not address any of the facts and analyses provided by SFA in its Opening Brief. In response, Infor spends a total of two short paragraphs to try and support its shifting construction. As will be shown below, in many respects Infor's new construction is even more incorrect.

The only support Infor offers for its construction is that because the Patentee discloses an embodiment where state information is stored in an event manager database, all state information must be stored in one. However, the part of the specification that Infor relies on begins with the phrase "[t]ypical operation of the event manager 201 will now be described."[50] Thus, Infor's sole support for its construction comes from a (1) single example of (2) a typical operation of (3) one embodiment.

Further, Infor's new construction is simultaneously improperly narrow and improperly broad. Infor's construction is too narrow because it is limited to data and information located

---

[46] *See* 7/14/98 Supplemental Response to 3/3/98 Office action, p. 2 ("Specifically, the event manager data base includes rules and *state information* that may be used to bind event handlers to the (current) exposed. events.") (emphasis added).
[47] This is consistent with accepted usage in the art. *See* MICROSOFT PRESS DICTIONARY (1991).
[48] '525 patent at Column 32:8-10 & 21-26.
[49] '525 patent at Column 32:13 - 21.
[50] *Id*. at Column 32:13.

only in an event manager database. However, besides the fact that nothing in the '525 patent limits the storage of state information in this manner, the patent discloses that data regarding the state of the sales process and the information related thereto is stored in numerous components and their respective databases.[51] Moreover, independent Claim 20 and its dependent claims do not even require an event manager. Infor is thus using its proposed construction of "changes in state characteristics of an event" to import an "event manager" limitation into claims that lack it.

Infor's construction is over inclusive because it includes any "changes in the database of the event manager," whether or not the changes are related to state characteristics of events.

### F.    Expert System

As the Court can see from the briefing, the principle (albeit not only) dispute regarding the term "expert system" is whether or not the system requires an inference engine. As will be shown below, limiting expert systems to this preferred embodiment must be rejected. First, SFA's construction is consistent with the preferred embodiment disclosed in the specification: "FIG. 22 illustrates an alternative embodiment which incorporates an expert system 2002 which *allows the system to learn successful sales approaches* **and** *automatically implement such approaches in future sales process*.[52]

Infor's admission that the specification "may be read to suggest that there are embodiments of the expert system without an inference engine" is an understatement. The specification makes it unambiguously clear that an inference engine, while sometimes preferred, is not required in an expert system, for example:

> "***For example***, an inference engine ***may*** be incorporated into the expert system 2002[.]"[53]

---

[51] '525 patent at Column 9:5-6; *see also* Figures 10A, 10B, 12 and 14, and Column 4:28-30.

[52] '525 patent at Column 33:32-37 (emphasis added).
[53] *Id*. at Column 33:63-64 (emphasis added).

. . .

"Thus, in accordance with **one embodiment** of the system, an inference engine **may** be employed to make the decision of whether particular subsequent action should be taken."[54]

The two citations above evidence that the specification is describing just one embodiment of an expert system – in this case one with an inference engine. The specification makes clear it is not limiting expert systems to those with inference engines, and that this is just an "example" that is "one embodiment." This language alone evidences that the patent is not limiting expert systems to this embodiment. Second, the qualification in both statements that expert systems "may" include an inference engine indicates that they need not include one. [55]

Further, Claim 42 makes clear that its expert system need only perform three tasks, none of which require an inference engine. Claim 42 covers "[a] system as recited in claim 40, wherein the event manager comprises an expert system configured to (a) automatically monitor events occurring in the sales process, (b) identify which events lead to a desired outcome in a use of the sales system, and (c) produce a knowledge database for use in subsequent operations as the prior sales experience using the sales system." Since an inference engine is not required to perform these steps, it would be improper to import this limitation into Claim 42 or any others.

Infor's final argument is that the Patentee "disclaimed" expert systems not having inference engines. Although Infor's argument is difficult to understand, Infor appears to contend that amending all 43 claims to add the term "inferring" requires the inclusion of an inference engine in the 3 dependent claims that include an expert system. Infor asserts, erroneously, that the only inferring that takes place is via an inference engine and thus, limiting an expert system is the only "feasible embodiment." Infor provides no case law to support its unique "feasibility" argument. Infor simply ignores the Federal Circuit's admonition that for a disclaimer of scope to

---

[54] *Id*. at Column 34:24-26 (emphasis added).
[55] *See Rockefeller Univ. v. Centocor*, Cause No. 2:04-CV-168 at Dkt. 73, pg. 9.

prevail over the plain language of a claim, the statement must be clear and unmistakable such that the public should be entitled to rely on it as a "definitive statement."[56]

Further, Infor is incorrect that use of an inference engine is the only method of inferring disclosed in the specification. As noted in the discussion above relative to "inferring the occurrence of an event" and "inferring…a context in which the event occurred," the specification discloses that events and their context are inferred, *i.e.*, derived, because they are based (in part) upon changes in state characteristics of the events.[57] In response to the Patent Examiner's initial rejection of the claims,[58] the Patentee added "inferring . . ." to the claims."[59] The Patent Examiner noted the change in claim language and requested the Patentee to point out where it was found in the specification,[60] the Patentee complied,[61] and the Patent Examiner agreed.[62]

Further, even if an inference engine was the only embodiment of "inferring" disclosed by the specification, which it is not, this would not justify limiting the claims to a preferred embodiment. Even when the specification describes only one embodiment, the claims of the patent will not be read restrictively unless the patentee has demonstrated a clear intention to limit the claim scope using words or expressions of manifest exclusion or restriction.[63]

---

[56] *Omega Engineering, Inc. v. Raytek Corp.*, 334 F.3d 1314, 1324 (Fed. Cir. 2003). Additionally, there is no "clear and unmistakable" disclaimer "if a prosecution argument is subject to more than one reasonable interpretation, one of which is consistent with a proffered meaning of the disputed term." *SanDisk v. Memorex Prods.*, 415 F.3d 1278, 1287 (Fed. Cir. 2005).

[57] *See* '525 patent at Claims 1, 20 and 40, and Column 32:13-56.

[58] *See* 6/10/97 Office Action.

[59] 12/10/97 Response to 6/10/97 Office action, pp. 2 - 14.

[60] 3/3/98 Office Action, p. 4.

[61] 7/14/98 Supplemental Response to 3/3/98 Office action, p. 2.

[62] 9/15/98 Office Action, p. 2.

[63] *Liebel-Flarsheim v. Mallinckrodt*, 358 F.3d 898, 906 (Fed. Cir. 2004); *Geomas v. Idearc Media Services-West*, 2008 U.S. Dist. LEXIS 97170, *17 n. 3, No. 2:06-CV-475-CE (E.D. Tex. Nov. 20, 2008).

Infor's proposed construction seeks to limit a claim to one preferred embodiment to the exclusion of others. "[A] claim construction that excludes a preferred embodiment . . . is rarely, if ever, correct and would require highly persuasive evidentiary support."[64]

### G.      Event Manager

Infor erroneously asserts that the parties are essentially in agreement regarding the term "event manager." In addition, Infor has adjusted its construction by adding "a hardware and/or software module," and thus it alleges, erroneously, that this is the same language as SFA proposes. Although the parties agree that an event manager can be hardware and/or software, there is nothing in the specification or the claims that requires an event manager to be limited to a "module." The word "module" is used numerous times in the specification, but never when referring to an event manager.[65] An event manager can be any combination of hardware and/or software, and there is no basis for limiting event manager software to software "modules."

An event manager is literally hardware and/or software that manages events. In this case, Plaintiff has formulated a construction that captures what an event manager is while at the same time allowing for the abilities of the event manager as described in the claims and specification.

The event manager of independent Claims 1 and 40 must be able to detect changes in the state characteristics of events, infer the occurrence of events and their context, and automatically initiate operations. Plaintiff's construction makes clear that an event manager can take or direct an action (e.g., detect, infer and initiate) relative to an event. This construction, unlike Infor's: (1) incorporates the necessary functions of an event manager; and (2) supports the varied abilities of

---

[64] *Anchor Wall Sys. v. Rockwood Retaining Walls*, 340 F.3d 1298, 1308 (Fed. Cir. 2003) (internal citations omitted).
[65] *See, e.g.,* Column 5, lns. 13 - 20("Customer requirements modules, configuration modules, features and benefits modules, performance modules, quotation and financing modules, life cycle modules, services modules, comparative presentation modules, goods, etc., provide assistance to sales personnel making the maximum amount of information regarding a potential product or service available to the potential customer in order to successfully complete the sales process.").

event managers described in the specification. In addition, Plaintiff's construction is consistent with the plain meaning of the word "manage," which is to direct or control use.[66]

In addition, the other portion of Infor's proposed construction of event manager is overbroad. Infor's construction would result in an event manager being any hardware or software that controls the flow of data. It is not hard to conceive of numerous devices or software that do this every day but that are not an event manager as claimed and described in the specification. The claims and specification make clear that an event manager has more specific functions than merely control the flow of information in the system.

The primary functions of an event manager are to detect changes in the state characteristics of events (i.e., recognize events),[67] infer the occurrence of events and their context, and to automatically initiate operations. This is seen in the Summary of the Invention: "The system also includes an ***event manager*** coupled to each of the subsystems which ***recognizes an event*** carried out by one of the subsystems**, *determines the context*** in which the recognized event occurs and automatically ***initiates an operation*** in a another subsystem to facilitate a new event in the sales process on the basis of the context in which the recognized event occurs."[68] Thus, the specification evidences that functions of an event manager are not limited to controlling the flow of information.

Moreover, as noted above, the event manager of independent claims 1 and 40 must be able to detect changes in the state characteristics of events, infer the occurrence of events and their context, and to automatically initiate operations. Thus, the claim language tracks the

---

[66] *See, e.g.,* American Heritage Dictionary of the English Language: Fourth Edition (2000) @ www.bartleby.com (Manage: To direct or control the use of; handle) (Exhibit 11 to SFA's Opening Brief).
[67] As noted in Section V.B above, during the prosecution of the '525 patent, the patentee and Examiner agreed that detecting changes in the state characteristics of events equates with recognizing events.
[68] '525 patent at Column 2:28-34 (emphasis added).

specification.[69] Infor's proposed construction of "event manager" would limit the event manager so it could not meet the three necessary requirements of Claims 1 and 40 and their dependent claims. A construction in conflict with the requirements of the claims is plainly wrong.

Infor makes much of the fact that SFA did not specifically address Infor's "separate" argument in the Opening Brief. This is because SFA believed that its arguments and positions regarding the rest of Infor's flawed construction necessarily required rejection of this.

Infor's argument for the event manager being "functionally separate" from the subsystems is based upon the embodiments in the Figures providing examples with a separate logical "block" for an event manager. SFA does not understand what Infor means by "functionally separate." Those words were never used in the intrinsic evidence. In any event, being logically separate for purposes of an illustrative diagram does not equate with being "functionally separate." The relevant language to the relationship between the event manager and the rest of the claimed system is the claim language itself. Claims 1 and 40 (and their dependent claims) set forth that the event manager is "coupled" to the subsystems. The term coupled is broad,[70] and it connotes a broad range of associations.[71] SFA and Infor have agreed that "coupled" is readily understandable with no construction being necessary for the jury to understand it. As long as the event manager is coupled to the subsystems, the elements of those claims including an event manager are satisfied. There is no "functionally separate" requirement.

In addition, SFA and Infor agree that an event manager can be hardware or software. Infor fails to explain how event manager software would be "functionally separate" from the

---

[69] Infor alleges that this construction would render that claim language moot. Far from it. That claim language goes into far greater detail of what is exactly being done in order to infringe. Requiring hardware and/or software to be able to perform those functions is required.

[70] *Johnson Worldwide Assocs. v. Zebco*, 175 F.3d 985, 992 (Fed. Cir. 1999) (holding that coupled is a "broad and general term"); *Nat'l Prods. v. Palmetto W. Trading Co.*, 2006 U.S. Dist. LEXIS 28682, *17 (W.D. Wa. May 4, 2006) ("The court declines to read a limitation into the broad term 'coupled.'").

[71] *Verizon Cal. v. Ronald A. Katz Tech. Licensing*, 326 F. Supp. 2d 1060, 1077 (C.D. Cal 2003) ("One of ordinary skill in the art understands the term 'coupled' to connote a broad range of associations between two things.").

other software in the system. To the contrary, the claims and specification make clear that event manager and subsystems function together to perform the claimed methods. Further, the '525 patent repeatedly discusses that software modules are integrated to permit an efficient exchange of information.[72] Nothing in the claims, specification or prosecution history excludes the ability of a system to include integration of the event manager as well.

In the specification, the '525 patent also discusses a system implemented on a single main-frame.[73] In that embodiment, the system would be implemented entirely by software with all of that software located on the server. There is simply nothing in the specification that would require that the event manager functionality be embodied in a separate module on that server. Infor's construction would require reading in such a limitation even though it exists nowhere in the specification or prosecution history.

What Infor also ignores is that the Figures it relies upon are merely embodiments of the claimed invention. The specification expressly states how the system (which includes an event manager) may be foundational in nature with a coupling of the various components.[74] Such a statement necessarily discloses that a modular construct is not the only way to implement the invention. Again, Infor improperly seeks to limit terms to preferred embodiments. This approach to claim construction has been rejected time and time again and should be rejected here again.

## H.      Context

There is nothing in the specification or prosecution history that would require the Court to construe this phrase as anything other than its ordinary meaning in context. In fact, context is such a well known term that absent the dispute over Infor's proposed negative limitation, no construction would even be necessary. That being said, the ordinary meaning of context that is

---

[72] '525 patent at Column 5:20-24.
[73] *Id*. at Column 10:-19.
[74] *Id*. at Column 7:50-56.

consistent with the specification is "information relevant to the occurrence of an event."[75] SFA's construction is based on the plain meaning in context, for example:

> "[E]valuate the context in which the event occurred (e.g., the significance of other information in the system)."[76]

> "[T]he context in which the sales event occurs (e.g., whether outstanding proposals exists, whether the incentive is inconsistent with customer profile information)…"[77]

Infor recognizes the correctness of Plaintiff's construction but goes one step further in what is yet another attempt to limit claim terms to preferred embodiments. According to Infor's negative limitation, relevant information can include any information about an event other than the fact that it occurred. Infor has not explained how logically one should divorce information about an event from the fact of its occurrence. In addition, Infor has not explained why the occurrence of an event must be irrelevant to its context. Finally, Infor has failed to point to any statement of express exclusion in the specification or prosecution history that supports its assertion that the occurrence of an event must be divorced from its context.

Moreover, Infor takes the surprising position that SFA's position would somehow make other claim language redundant. This is simply incorrect.

In any event, Infor's attempt to incorporate its negative limitation[78] ignores express claim language. Claim 3 states that the context includes information related to whether a previous event has occurred.[79] This dependent claim therefore contemplates that relevant information can include whether an event has occurred. Infor's construction would read out the preferred

---

[75] *See* DICTIONARY.COM (2008) at www.dictionary.com (defining context as "the set of circumstances or facts that surround a particular event, situation, etc.).
[76] '525 patent at Column 32:57-59.
[77] *Id.* at Column 32:66 – 33:2 (providing examples of contextual facts that would be significant or relevant to a given event).
[78] Negative limitations are generally disfavored. *See OPTi v. nVidia*, 2006 WL 1133331 (E.D. Tex. Apr. 4, 2006).
[79] A similar limitation is expressed in Claim 21.

embodiment set forth in Claim 3 and render the claim inoperative.[80] "[I]t is axiomatic that a claim construction that excludes a preferred embodiment . . . is rarely, if ever, correct and would require highly persuasive evidentiary support."[81]

In addition, claim differentiation controls. Claim 3 depends directly from Claim 1. As the only difference between Claim 1 and Claim 3 is that the context information includes information of a previous event occurring, Claim 1 necessarily includes information related to previous *and* current events occurring. "The presence of a dependent claim that adds a particular limitation gives rise to a presumption that the limitation in question is not present in the independent claim."[82] This presumption is "especially strong when the limitation in dispute is the only meaningful difference between an independent and dependent claim."[83]

## I.     Subsystem

To construe the term "subsystem," the Court need only start with the maxim that words have an "ordinary and customary meaning."[84] Plaintiff's construction does so and Infor admits it:

> "Clearly, this [SFA's construction] is *a commonly understood definition of a subsystem*, and Infor *does not dispute that all subsystems*, including those described in the '525 patent *are part of a larger system*."[85]

However, Infor ignores the plain meaning it recognizes is correct and admits that it seeks to incorporate extra limitations. Infor provides no legal or factual basis requiring that extra limitations should overcome the plain meaning of subsystem.

---

[80] Infor states that SFA's construction would render this claim language moot. Infor is incorrect. Claim 3 requires the context to include the fact the event occurred. SFA's construction properly allows the other claims lacking this limitation to either include or not include this information when inferring context . Infor's construction on the other hand reads out express claim language.

[81] *Anchor Wall Sys. v. Rockwood Retaining Walls*, 340 F.3d 1298, 1308 (Fed. Cir. 2003) (internal citations omitted).

[82] *Phillips*, 415 F.3d at 1314-15.

[83] *SunRace Roots Enter. v. SRAM*, 336 F.3d 1298, 13030 (Fed. Cir. 2003).

[84] *Phillips*, 415 F.3d. at 1312.

[85] Infor's Responsive Claim Construction Brief at pg. 25.

To support its improper incorporation, Infor criticizes that SFA relies in part upon the claims themselves to determine the proper construction,[86] but this approach is entirely appropriate. The claims of a patent are part of the specification, and "[t]he claims of the patent, not its specification, measure the invention."[87]

To support its assertion that subsystems must correspond to a phase of the sales process, Infor says that it is merely limiting the construction to the alleged "outer boundary" of the invention.[88] However, the specification is not so limiting and the claims require that the Court reject this limitation.

As discussed in SFA's Opening Brief, at least one preferred embodiment discussed how a subsystem need only "*generally* relate to various phases of the sales process."[89] This statement alone requires rejection of Infor's construction. Further, each of independent Claims 1, 20 and 40 require subsystems configured to facilitate actions performed during at least one phase of the sales process, and independent Claim 40 requires subsystems configured to facilitate actions performed during the sales process. Infor's proposed construction requiring the subsystems themselves to correspond to a phase in the sales process, as opposed to the clamed actions corresponding, imports a limitation not present in any of the claims.

## II.   <u>CONCLUSION</u>

For the reasons stated in SFA's Opening *Markman* Brief and the reasons stated herein, the Court should reject Infor's arguments and adopt SFA's proposed constructions.

---

[86] *Id.*
[87] *Innova/Pure Water, Inc. v. Safari Water Filtration Sys.*, 381 F.3d 1111, 1115-16 (Fed. Cir. 2004), *expressly reaffirmed in Phillips*, 415 F.3d at 1312; *Johnson & Johnston Assocs. v. R.E. Serv. Co.*, 285 F.3d 1046, 1052 (Fed. Cir. 2002) ("a patent applicant defines his invention in the claims, not in the specification").
[88] Infor's Responsive Claim Construction Brief at pg. 25.
[89] '525 patent at Column 3:61-64 (emphasis added).

January 2, 2009                          Respectfully submitted,

                                         By:/s/ Andrew W. Spangler (by permission JJE)
                                         Andrew W. Spangler - LEAD COUNSEL
                                         Texas Bar No. 24041960
                                         Spangler Law P.C.
                                         208 N. Green Street, Suite 300
                                         Longview, Texas 75601
                                         (903) 753-9300
                                         (903) 553-0403 (fax)
                                         spangler@spanglerlawpc.com

                                         David M. Pridham
                                         Law Office of David Pridham
                                         25 Linden Road
                                         Barrington, Rhode Island 02806
                                         (401) 633-7247
                                         (401) 633-7247 (fax)
                                         david@pridhamiplaw.com

                                         John J. Edmonds
                                         Texas Bar No. 00789758
                                         The Edmonds Law Firm, PC
                                         709 Sabine Street
                                         Houston, Texas 77007
                                         (713) 858-3320
                                         (832) 415-2535 (fax)
                                         johnedmonds@edmondslegal.com

                                         ATTORNEYS   FOR   PLAINTIFF   SFA
                                         SYSTEMS, LLC


# CERTIFICATE OF SERVICE

        I hereby certify that the counsel of record who are deemed to have consented to
electronic service are being served today with a copy of this document via the Court's
CM/ECF system per Local Rule CV-5(a)(3).

January 2, 2009                          /s/ John J. Edmonds
                                         John J. Edmonds