# Exhibit 5

Page 1

**UNEDITED, UNCERTIFIED, ROUGH DRAFT ONLY**

Deposition of 7-21-2009.  Direct by George.

        VIDEOGRAPHER:  Today is July 21st, 2009. This is the videotaped deposition of Craig Thompson taken in the case of SFA Systems, LLC versus Infor Global Solutions, Incorporated, et al., Civil Action No. 6:07 CV 067.  The time is 10 o'clock a.m.  We're on the record at Thomspon & Knight in Dallas, Texas.  We're on the record.

        CRAIG WARREN THOMPSON,
having been first duly sworn, testified as follows:

        MR. GEORGE:  I'm Bruce George of Blank Rome Philadelphia for Defendant, Infor Global Solutions, with me is Joel Dion, also with Blank Rome.

        MR. PRIDHAM:  David Pridham here on behalf of the Plaintiff.

        THE WITNESS:  I'm Craig Thompson.

        EXAMINATION
BY MR. GEORGE:

    Q.  Hi, Dr. Thompson, thanks for coming today. Just to get started, when were you first retained in this matter?

    A.  The very end of April, I think, the 30th.

    Q.  Who contacted you?

```
 1      Q.   THE ATTORNEY:   Okay, Dr. Thompson, where we
 2  were on 36, thank you for your answer.  Maybe more
 3  specifically, based on what you said in paragraph 93
 4  that you were just commenting on but your statement, I
 5  did not discover explicit mention of any such
 6  limitation.  Okay.  Are you saying -- I'm not quite
 7  understanding what you said there.  Are you saying that
 8  you did not see in the '525 Patent where it says it
 9  couldn't?
10      A.   That is effectively what I was saying.
11           MR. PRIDHAM:  Object to form.
12      A.   Assume to be placing limitations in his, or
13  assuming some limitations, and I didn't see that those
14  limitations were necessary in the '525 Patent
15  specification.
16      Q.   Okay.  Did you see where in the '525
17  disclosure, though, that this capability was disclosed?
18  When we say "this capability," capability to apply
19  logical rules to known facts to derive factual
20  conclusions as to an event that has occurred?
21      A.   When I read the patent, I would divide it into
22  two larger chunks, an earlier chunk that described the
23  modules, the sales modules, a later chunk that described
24  the operation of the event manager.  And there were
25  examples in the first half of sharing information and
```

Gwendolyn Parker and Associates, Inc.
214-747-8007

1  improving one module by the use of information in
2  another module and also descriptions of what those
3  modules could be, example modules, if you will.  I
4  didn't take them to be a complete collection of exactly
5  those modules but they were representative modules.  In
6  the event manager, I -- there's several pages of
7  description on how the event manager operated, and so
8  while I don't know that I could point you without re-
9  reading that to exactly where examples are of -- if you
10 stated your question, there were several steps, but
11 inferring the existence of -- but concepts of context
12 and inferring and taking actions or using facts came
13 across to me as I was reading the patent, several
14 page -- I mean, it may be a third of the patent
15 description.
16      Q.  Okay.  Well, as you mentioned there --
17      A.  I don't know that I could go and find you the
18 example.
19      Q.  Where there might be disclosure that rather
20 than inferring or considering events and determining a
21 next action, you're --
22      A.  Certainly --
23          MR. PRIDHAM:  I would advise the witness to
24 wait till the question is asked and I can lodge an
25 objection, if applicable, and then you can answer.

1    A.  Right.

2         MR. PRIDHAM:  Can you read back that
3 question, please?

4         (THE RECORD WAS READ BACK.)

5         MR. PRIDHAM:  Just for a clear record, you
6 want to rephrase?

7    Q.  Yeah.  Let me rephrase.  I guess what we're
8 talking about is the location.  Can you locate in the
9 spec where we are detecting changes in state indicative
10 of an event and inferring an occurrence of a past event?

11    A.  I don't know.  I would have to re-read that
12 section.

13    Q.  Okay.  Well, let's just take a minute and see.

14    A.  But I do understand the concept.  And so as one
15 who understood the art of expert systems, inference
16 engines, systems and how such a system could operate, I
17 wouldn't be surprised by that description.  It would be
18 meaningful to me.

19    Q.  Okay.  Based on your experience and knowledge
20 of skilled in the art.

21    A.  Right.

22    Q.  Okay.  We'll leave it at that.  All right.
23 Let's go to, let me see, page 37, top of page 37.  Here
24 you mention, it is difficult to imagine how the
25 applicant could provide an enabling disclosure of

1  it.  And so you're commenting here, it is difficult to
2  imagine how the applicant can provide an enabling
3  disclosure of inferring, as acknowledged by the
4  examiner, without there being a written description of
5  it in the spec.
6              MR. PRIDHAM:  Object to form.
7     A.  I believe I commented on the examiner's
8  examination earlier in my report, so let me take a look
9  and see if I can spot that for a minute.  So, on page
10 11, I quoted, I guess, the final -- some of the final
11 comments.
12    Q.  Okay.  Right.
13    A.  Examiner statement of reasons for allowance,
14 and so you can either read it or I can read it to you.
15    Q.  Okay.  These are directed to reasons for
16 allowance, however.
17             MR. PRIDHAM:  Object to form.  Is there a
18 question pending?
19    Q.  Okay. Let's go back.  Let's go back.  You feel
20 that inferring is disclosed, it satisfies the written
21 description requirement.  That is your opinion.
22    A.  I do, because as one skilled in the art at the
23 time, I understood the concept of inferring.
24    Q.  Okay.  So, your written description --
25    A.  Which would have been consistent with the

1  follow-up the letter.
2              So, I think that you might -- one thing you
3  do with rules is you try to unitize information into
4  little chunks, so that you can throw them into the
5  system and not worry about the order in which you threw
6  them in.  And so if you wanted to first say, well, if
7  these situations are true, then send or don't send
8  letters, you might work on that portion of the system.
9  And then later on, you might have some other rules that
10 say, under certain conditions, you're sending a letter.
11 So if you're sending a letter and this and this is true,
12 then follow-up.  So you could have other rules about
13 that.
14     Q.  So if the rule said then send a letter --
15     A.  Yes.
16     Q.  -- that could infer that an event occurred.
17             MR. PRIDHAM:  Object to form.
18     A.  I wouldn't use the word "infer" in that way, I
19 don't think.  I'm not sure who's doing an inference and
20 if there is an inference there, it just means -- I mean,
21 assuming you're executing the send the letter, that
22 event could trigger other events in this system, in
23 this -- wherever it is, the '525 system.
24     Q.  Would it require another rule?
25     A.  Possibly.  There might be other rules about