**Exhibit 4**

S/N 08/550,089                                                              PATENT

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

| Applicant: | JOHNSON ET AL. | Examiner: | POINVIL, F. |
| Serial No.: | 08/550,089 | Group Art Unit: | 2761 |
| Filed: | OCTOBER 30, 1995 | Docket No.: | 7709.72USFI |
| Title: | INTEGRATED COMPUTERIZED SALES FORCE AUTOMATION SYSTEM | | |

CERTIFICATE UNDER 37 CFR 1.8: The undersigned hereby certifies that this correspondence is being deposited in the United States Postal Service, as first class mail, with sufficient postage, in an envelope addressed to: Assistant Commissioner for Patents, Washington, D.C. 20231 on *October 25, 1999*

By: _____

Name: *Susan Crook*

Preliminary Amendment

Assistant Commissioner for Patents
Washington, D.C. 20231

Dear Sir:

This is a preliminary amendment filed in accordance with 37 CFR 1.53(d).  This preliminary amendment is filed in response to the Office Action dated April 7, 1999 which was a final rejection of all the claims in the case.  That Office Action necessitated the CPA to which this amendment applies.  This Office Action is also responsive to the notice of missing parts dated August 26, 1999.

Remarks

The applicants provide the foregoing amendment and remarks in response to the office action mailed on April 7, 1999.  Claims 1–43 are pending.

The Examiner objected to the specification as not being in compliance with 37 CFR 1.77 for failing to reference co–pending applications.  Applicants respectfully traverse this objection.  This application is not claiming benefit of an earlier filing date through the related applications, and Applicant cannot find any law requiring that cross–references be made when no priority is being asserted.  Applicant has found that MPEP 201.11(c ) recites that cross–

es to other related applications not assigned the same application number as the CPA may be made when appropriate. Therefore, Applicant believes that cross–referencing the applications noted by the Examiner is optional. Applicant elects not to make such cross– references but agrees to fully disclose the existence of the related applications in the included Information Disclosure Statement. However, Applicant will gladly include such cross– references in the application if the Examiner will kindly point out where in the patent laws or rules such a requirement is found.

The Examiner rejected Claims 1–43 under 35 USC 103(a). Claims 1–3, 5, 7, 8, 10–16, 21–35, and 37–43 are rejected as being unpatentable over Tom Negrino, "Sales– Automation Software," (hereinafter referred to as Negrino1) and Tom Negrino, "Market Master Manager 3.5," (hereinafter referred to as Negrino2). Claims 4, 17–20, and 36 are rejected as being unpatentable over Negrino1 and Negrino2 and further in view of Tony Seideman, "Way Cool! (Sales Force Automation)," (hereinafter referred to as Seideman). Claim 6 is rejected as being unpatentable over Negrino1 and Negrino2 and further in view of John Hiatt, "Empowering the Global Sales Force," (hereinafter referred to as Hiatt). Claim 9 is rejected as being unpatentable over Negrino1 and Negrino2 and further in view of Colleen Frye, "Automation Integrating Phases of Sales Cycle," (hereinafter referred to as Frye). Applicants respectfully traverse these rejections.

Claim 1 recites that the computer implemented sales system comprises a plurality of subsystems and an event manager. Claim 1 further recites that the event manager detects one or more changes in state characteristics of an event, infers the occurrence of the event and a context in which the event occurred that is based at least in part on the detected change in state, and automatically initiates an operation in one or more subsystems of the computer to facilitate a new action based on the inferred context.

It is important that the event manager infers the context in which the event occurs and then bases the new action on the inferred context. These qualities of the event manager are important because they allow the system to make more educated decisions, rather than forcing the user to make the determinations himself or herself. The system becomes more automated and efficient in this way.

Negrino1 and 2 do not teach basing a new action on an inferred context of the previous step. Instead, Negrino1 and 2 merely teach basing the new step on the outcome of the previous step. Thus, Negrino1 and 2 teach different systems than Claim 1. With respect to Claim 2, the Office Action states that since the disclosed systems log information, one would be

2

motivated to include the information with the occurrence of a previous step in the automated system. It also states that the motivation would exist because one would need sufficient information with which to verify that the prior step had satisfactorily completed prior to initiating the subsequent step. Applicants assert that only the outcome of the previous step is needed prior to initiating the subsequent step in the Negrino systems. To further demonstrate this, examples will be discussed below.

Basing a new action upon the context of a previous event, as recited in Claim 1, is different than automated branching or other steps as described in Negrino1 and 2 where Negrino describes "every step of the sales process." Negrino's steps do not include inferring the context, and it would be impermissible to use hindsight to find that Negrino1 includes contextual inferences in the sentence "A sales plan spells out every step of the sales process and directs you or your sales staff to perform certain tasks based on the outcome of the previous step," pg. 1, lines 42–44. Also, keeping a database of information about clients, including detailed contact history, as presented at Negrino1 pg. 2, lines 9–13, is not referring to making contextual inferences of events. Automatically updating client history files does not involve making contextual inferences of events. This merely involves keeping records of events, rather than inferring the context of the event. Assigning leads to inactive steps, Negrino1 at pg. 2 line 48; and branching between plans and providing multiple result possibilities, Negrino 1 at pg. 3, lines 3 and 4, and Negrino2 at pg. 1 lines 28–30 and 39–40, also do not involve making contextual inferences. Assigning leads to inactive steps requires the user to adjust the steps a system performs on a lead, rather than a contextual inference leading the system to automatically place the lead on an inactive step. Branching between plans merely allows the set of steps to be altered depending upon the plan in use. Providing multiple result possibilities only adds flexibility, as will be discussed below, and does not involve context. Performing a task based on an outcome, as does Negrino, is also different from performing a new action based upon an inferred context, as will become clear from the examples below.

Inferring the context of an event, as previously discussed, permits the system to choose a new action that will be more efficient, for instance, than if the context were not considered. To demonstrate the difference between the invention recited in Claim 1 and the system described in Negrino1 and 2, examples from Negrino1 and 2 will be used. Negrino1 states that the system automatically schedules a follow up call after a letter is sent to a client. The only information the Negrino system would need in order to progress to the step of scheduling the follow up is to recognize that the letter has been sent, which is not a contextual

3

determination. Thus, it would not be obvious to add contextual inferencing. Rather than merely determine whether to proceed to the next step as Negrino teaches, the invention recited in Claim 1 can decide whether to proceed and what the next step should be. As discussed above, the system of Negrino would know to progress to the next step just by completion of the prior step. No contextual information is needed to realize that the prior step has completed. This Negrino system involves no contextual inferences in deciding to schedule the call. The invention recited in Claim 1 would infer the context of sending the letter to the client before scheduling the call. Perhaps the letter was to terminate the relationship with the customer. The invention in Claim 1 might infer that because this was a termination letter (one type of context), a follow up call was not necessary, and it would not schedule one. Without inferring the context, the follow up call would be needlessly scheduled, leading to inefficiency. The Negrino system might check to see if a letter has been sent. There are multiple results in that case. If a letter was sent, then a follow up is scheduled (a first result). If no letter was sent, then a follow up is not scheduled (a second result). Other cases might provide more possibilities for results, yet no contextual inferencing would be occurring.

As another example from Negrino, Negrino2 states that the system can automatically notify a salesperson to contact a particular customer if there has been no customer response for a specified number of days. This system is not referring to the context for the customer's lack of response. The invention of Claim 1 would again infer the context of receiving no response within a set number of days before a decision to notify a customer would be made. Perhaps the customer was scheduled to make some transition during this period and a response would thus be delayed. The invention of Claim 1 might infer from stored customer information that because the customer was in transition, the period should be extended before notifying the customer again. Of course, the invention of Claim 1 is not limited to cases only involving contacting the customer, and these examples are not intended to limit the scope of Claim 1 in any way. Negrino only describes the user assigning a lead to an inactive step. Thus, the user would need to delay the call by intervening in the system's operation. The invention of Claim 1 would require no such user intervention to delay the call, as it would rely upon the context to make that decision itself.

To take another example from the specification of the present invention, perhaps a new incentive program for a product is created. If no context were inferred, as in Negrino, customers would be notified of the new incentive program, (i.e. the outcome – a new incentive program, was the basis for the next step in the process– notifying the customer). The invention

4

of Claim 1 would infer the context before deciding to notify the customer. For instance, whether an outstanding product proposal existed, and whether the program provided a down payment compatible with a customer's profile would be considered. This contextual information would then lead the system to either notify the customer or not do so. Again, the invention of Claim 1 is not limited to cases involving contacting the customer, but applies to any other aspect of the sales process, such as training salespersons. This example is not intended to limit the scope of Claim 1 in any way.

From these examples, and the discussion preceding them, it can be seen that Negrino1 and 2 do not provide an event manager that infers the context in which an event occurs, and it would not have been obvious to add contextual inferencing. Therefore, Claim 1 defines over Negrino1 and 2 and is allowable. Applicant respectfully requests reconsideration and withdrawal of the pending rejection.

Similar to Claim 1, Claim 13 also recites that the context of the event be inferred and that the new action be based upon the inferred context. As stated, Negrino1 and 2 do not describe contextual inferences. Therefore, Claim 13 defines over Negrino1 and 2 and is allowable. Applicants respectfully request reconsideration and withdrawal of the pending rejection.

Similar to Claims 1 and 13, Claim 17 recites that the context of the event be inferred and that the action to be performed is based on the inferred context but also recites that the inferred event is linked with an action based on prior sales experience using the sales system. As stated, Negrino1 and 2 do not describe contextual inferences. Therefore, Claim 17 defines over Negrino1, 2, and Seideman and is allowable. Applicants respectfully request reconsideration and withdrawal of the pending rejection.

Claims 2-12 and 21-27 depend from an allowable Claim 1, Claims 14-16 and 28-43 depend from an allowable Claim 13, and Claims 18-20 depend from an allowable Claim 17. Thus, these dependent claims are also allowable. Applicants respectfully request reconsideration and withdrawal of these pending rejections.

Applicants assert that this is a full and complete response to the Office Action dated April 7, 1999 and request that favorable action be provided in the newly filed CPA to which this preliminary amendment applies. Applicants respectfully request the Examiner to advance the present application to allowance. Additionally, Applicants note that there may be additional arguments and/or amendments in support of patentability. The Applicant reserves the right to raise such arguments or make such amendments in the future.

5

Please contact the undersigned attorney if there are any questions.

Respectfully submitted,

JOHNSON ET AL.,

By their attorneys,

MERCHANT & GOULD P.C.
3100 Norwest Center
90 South Seventh Street
Minneapolis, MN  55402
(612) 332-5300

Date: 15 Oct 99

Richard J. Gregson
Reg. No. 41,804

6



UNITED STATES DEPA MENT OF COMMERCE
Patent and Trademark C ice
Address: COMMISSIONER OF PATENTS AND TRADEMARKS
Washington, D.C. 20231

| APPLICATION NUMBER | FILING/RECEIPT DATE | FIRST NAMED APPLICANT | ATTY. DOCKET NO./TITLE |
|---|---|---|---|
| 08/580, | 10/30/95 | JOHNSON | 7709. |

MERCHANT GOULD SMITH EDELL
WELTER & SCHMIDT
3100 NORWEST CENTER
SOUTH SEVENTH STREET
MINNEAPOLIS MN 454

OIPE
OCT 27 1999
PATENT & TRADEMARK OFFICE

DATE MAILED:

## NOTICE TO FILE MISSING PARTS OF APPLICATION (CPA)
### *Filing Date Granted*

The Continued Prosecution Application (CPA) request filed on 8/9/99 is entitled to a filing date under 37 CFR 1.53(d)(1). The CPA request, however, lacks the filing fee(s) and/or items indicated below.

**Applicant is given TWO MONTHS FROM THE DATE OF THIS NOTICE** within which to file the fee(s), item(s), and any surcharge required below to avoid abandonment of this CPA. Extensions of time may be obtained by filing a petition accompanied by the extension fee under the provisions of 37 CFR 1.136(a).

*The total amount owed by applicant is the sum of Items 1(a) or (b), 2, and 3 (if checked) below.*

☒ 1. The statutory basic filing fee is:
    ☒ missing.
    ☐ insufficient.

    (a) Applicant must submit $_____ to complete the basic filing fee and the $130.00 surcharge set forth in 37 CFR 1.16(e) (non-small entity), or $_____ to complete the basic filing fee as a small entity and the $65.00 surcharge set forth in 37 CFR 1.16(e) and file a small entity statement under 37 CFR 1.27 claiming such status (if the prior application was entitled to small entity status and such status is still proper and desired, a new small entity statement is not required (37 CFR 1.28)).

    (b) Applicant must submit $ 380. to complete the basic filing fee as a small entity and the $65.00 surcharge set forth in 37 CFR 1.16(e).

☐ 2. Additional claim fees of
    $_____ (non-small entity) or $_____ (small entity) for _____ independent claims over 3.
    $_____ (non-small entity) or $ 207 (small entity) for 23 claims over 20.
    $_____ (non-small entity) or $_____ (small entity) for multiple dependent claim surcharge.

    Applicant must either submit the additional claim fees or cancel additional claims for which fees are due.

☐ 3. A $50.00 processing fee is required since your check was returned without payment (37 CFR 1.21(m)).

☐ 4. The CPA request is unsigned. Applicant must file a signed duplicate or ratification of the CPA request.

☐ 5. Other: _____

### *A copy of this Notice MUST be returned with the reply.*

Direct the reply and any questions about this Notice to:

*Mr. Patience Bregg*

Examining Group 2700

(703) 30 5- 9616

FORM PTO-2016 (Rev. 12/97)    PART 1 - ATTORNEY/APPLICANT COPY

2768

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

| | | | |
|---|---|---|---|
| Applicant: | JOHNSON ET AL. | Examiner: | F. POINVIL |
| Serial No.: | 08/550,089 | Group Art Unit: | 2761 |
| Filed: | OCTOBER 30, 1995 | Docket: | 7709.72USF1 |
| Due Date: | OCTOBER 26, 1999 | | |
| Title: | INTEGRATED COMPUTERIZED SALES FORCE AUTOMATION SYSTEM | | |

CERTIFICATE UNDER 37 CFR 1.8: The undersigned hereby certifies that this Transmittal Letter and the paper, as described herein, are being deposited in the United States Postal Service, as first class mail, with sufficient postage, in an envelope addressed to: BOX MISSING PARTS  Assistant Commissioner for Patents, Washington, D.C. 20231, on October 25, 1999.

By: _Susan Creek_

BOX MISSING PARTS
Assistant Commissioner for Patents
Washington, D.C. 20231

Sir:

We are transmitting herewith the attached:

☒ Transmittal Sheet in duplicate containing Certificate of Mailing
☒ Preliminary Amendment
☒ Check(s) in the amount of $587.00 to cover the filing fee and $65.00, for Missing Parts surcharge
☒ Other: Copy of PTO-2016
☒ Return postcard

Please consider this a PETITION FOR EXTENSION OF TIME for a sufficient number of months to enter these papers, if appropriate. Please charge any additional fees or credit overpayment to Deposit Account No. 13-2725. A duplicate of this sheet is enclosed.

MERCHANT & GOULD P.C.
3100 Norwest Center, Minneapolis, MN 55402
(612) 332-5300

By: _____
Name: Richard J. Gregson
Reg. No.: 41,804
RG:PST:slc

(PTO TRANSMITTAL – GENERAL)