EXHIBIT 3

IN THE UNITED STATE DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| SFA SYSTEMS LLC f/k/a | § | |
| TRITON IP, LLC | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 6:07-cv-067[LED] |
| | § | |
| INFOR GLOBAL SOLUTIONS | § | JURY |
| (MICHIGAN), INC., et al. | § | |

**DEFENDANT INFOR'S PROPOSED JURY INSTRUCTIONS**

[For the Court's convenience, the paragraphs of Infor's proposed jury instructions that are identical to SFA's proposed jury instructions are marked herein in italics.]

*MEMBERS OF THE JURY:*

*You have heard the evidence in this case. I will now instruct you on the law that you must apply. It is your duty to follow the law as I give it to you. On the other hand, you the jury are the judges of the facts. Do not consider any statement that I have made during the trial or make in these instructions as an indication that I have any opinion about the facts of this case.*

*After I instruct you on the law, the attorneys will have an opportunity to make their closing arguments. Statements and arguments of the attorneys are not evidence and are not instructions on the law. They are intended only to assist the jury in understanding the evidence and the parties' contentions.*

*GENERAL INSTRUCTIONS*

*Answer each question from the facts as you find them. Do not decide who you think should win and then answer the questions accordingly. Your answers and your verdict must be unanimous.*

In determining whether any fact has been proved in this case, you may, unless otherwise instructed, consider the testimony of all witnesses, regardless of who may have called them, and all exhibits received in evidence, regardless of who may have produced them.

## 1.1 Considering witness testimony

By the Court allowing testimony or other evidence to be introduced over the objection of an attorney, the Court did not indicate any opinion as to the weight or effect of such evidence. As stated before, you the jurors are the sole judges of the credibility of all witnesses and the weight and effect of all evidence.

When the Court sustained an objection to a question addressed to a witness, the jury must disregard the question entirely, and may draw no inference from the wording of it or speculate as to what the witness would have testified to, if he or she had been permitted to answer the question.

At times during the trial it was necessary for the Court to talk with the lawyers here at the bench out of your hearing, or by calling a recess. You should not speculate on what was discussed during such times.

In determining the weight to give to the testimony of a witness, you should ask yourself whether the witness' testimony is consistent with the evidence, or whether the witness testified falsely.

You should keep in mind, of course, that a simple mistake by a witness does not necessarily mean that the witness was not telling the truth as he or she remembers it, because people may forget some things or remember other things inaccurately. So, if a witness has made a misstatement, you need to consider whether that misstatement was an intentional falsehood or

2

*simply an innocent lapse of memory; and the significance of that may depend on whether it has to do with an important fact or with only an unimportant detail.*

## 1.2    *How to examine the evidence*

*Certain testimony in this case has been presented to you through a deposition. A deposition is the sworn, recorded answers to questions asked a witness in advance of the trial. Under some circumstances, if a witness cannot be present to testify from the witness stand, the witness' testimony may be presented, under oath, in the form of a deposition. Some time before this trial, attorneys representing the parties in this case questioned this witness under oath. A court reporter was present and recorded the testimony. This deposition testimony is entitled to the same consideration and is to be judged by you as to credibility and weight and otherwise considered by you insofar as possible the same as if the witness had been present and had testified from the witness stand in court.*

*While you should consider only the evidence in this case, you are permitted to draw such reasonable inferences from the testimony and exhibits as you feel are justified in the light of common experience. In other words, you may make deductions and reach conclusions that reason and common sense lead you to draw from the facts that have been established by the testimony and evidence in the case.*

*The testimony of a single witness may be sufficient to prove any fact, even if a greater number of witnesses may have testified to the contrary, if after considering all the other evidence you believe that single witness.*

*There are two types of evidence that you may consider in properly finding the truth as to the facts in the case. One is direct evidence - such as testimony of an eyewitness. The other is*

119645.00604/21812723v.2

*indirect or circumstantial evidence - the proof of a chain of circumstances that indicates the existence or nonexistence of certain other facts.*

### 1.3 Expert witnesses

*When knowledge of a technical subject matter may be helpful to the jury, a person who has special training or experience in that technical field - called an expert witness - is permitted to state his or her opinion on those technical matters.  However, you are not required to accept that opinion.  As with any other witness, it is up to you to decide whether to rely upon it.*

In deciding whether to accept or rely upon the opinion of an expert witness, you may consider any bias of the witness, including any bias you may infer from evidence that the expert witness has been or will be paid for reviewing the case and testifying, or from evidence that he testifies regularly as an expert witness and his income from such testimony represents a significant portion of his income.

### 1.4 What A Patent Is And How One Is Obtained

**[Infor believes that the Court's standard video presentation at trial obviates any need for such instructions]**

**STIPULATIONS**

The parties have agreed, or stipulated to the following facts.  This means that both sides agree that these are facts.

*1.    The patent-in-suit is U.S. Patent No. 6,067,525, which is sometimes referred to as "the '525 patent."  The '525 patent was issued on May 23, 2000.*

*2.    The asserted claims of the '525 patent are claims 1, 2, 3, 5, 12, 20, 24, 40, 41, and 42.*

3.    The prior art asserted by Infor is as follows:

- U.S. Patent No. 5,347,632 (Filepp et al.)

4

- U.S. Patent No. 5,117,354 (Long et al.)
- U.S. Patent No. 4,567,359 (Lockwood)
- U.S. Patent No. 5,201,010 (Deaton)
- U.S. Patent No. 5,774,868 (Cragun)
- U.S. Patent No. 4,947,028 (Gorog)
- Stone, Robert W. & Good, David J., *Expert Systems and Sales Strategies*, Association of Computer Machinery 0-89791-416-3/90/0010/0052
- Spezialetti, Madalene, *An Approach to Reducing Delays in Recognizing Distributed Event Occurrences*, Association of Computer Machinery 0-89791-457-0/91/0011/0155

4.     The level of ordinary skill in the art is through education or practical experience, the equivalent of a Bachelor's Degree in Computer Science and 2-3 years of experience in programming business process automation and information systems.

## SUMMARY OF CONTENTIONS

*To help you follow the evidence, I will now give you a summary of the positions of the parties. I will then tell you what each side must prove to win on these issues.*

*The parties in this case are SFA, the plaintiff and the patent holder, and Infor, the defendant and alleged infringer.*

The patent involved in this case is United States Patent 6,067,525.  For convenience, the parties and I will often refer to this patent as the '525 patent.  525 are the last three digits of the patent number.  The inventors of the '525 patent were Jerome Dale Johnson, David Robert Lundberg, and Michael Paul Krebsbach, who were employees of a company called Clear with Computers.

## 3.1     SFA's Contentions

SFA contends that Infor infringes claims 1, 2, 3, 5, 12, 20, 24, 40, 41, and 42 of the '525 patent through the manufacture, use, sale and offer to sell certain Infor products and the methods performed by the products.  The Infor products that SFA has accused of infringement are

5

(i) Outbound Marketing, (ii) Interaction Advisor, and (iii) Sales & Service, when it is sold with Interaction Advisor. I may refer to these as the Accused Products.

**3.2     Infor's Contentions**

Infor contends that it does not infringe claims 1, 2, 3, 5, 12, 20, 24, 40, 41, and 42 of SFA's patent and that these claims are invalid. Infor's basis of invalidity includes: (i) the claims of the '525 patent are anticipated; (ii) the claims of the '525 patent are obvious; (iii) the '525 patent is invalid because it does not disclose sufficient information to allow one skilled in the art to make and use the claimed invention; (iv) and the claims of the '525 patent fail to provide an adequate written description of the claimed invention.

**3.3     *Burdens of Proof***

*There are two different burdens of proof involved in this case. The first is the "preponderance of the evidence" standard and the second is the "clear and convincing" standard.*

*The "preponderance of the evidence" standard means that the evidence persuades you that a claim is more likely true than not true.*

The "clear and convincing standard" means that the evidence must produce in your minds a firm belief or conviction that the truth of its factual contentions are highly probable. Although proof to an absolute certainty is not required, the clear and convincing evidence standard requires a greater degree of proof than is necessary for the preponderance of the evidence standard, but the clear and convincing standard is a lesser standard of proof than the beyond a reasonable doubt standard, which is used in criminal cases.

**3.4     Glossary of Patent Terms**

See Appendix A.

6

## CLAIMS OF THE PATENT IN SUIT

As I told you at the beginning of the trial, the claims of a patent are the numbered sentences at the end of the patent. The claims describe the invention made by the inventor and describe what the patent owner owns and what the patent owner may prevent others from doing. Claims may describe methods, products, such as machines, or processes for making or using a product. Each of the claims must be considered individually. You must use the same claim meaning for both your decision on infringement and your decision on invalidity. In this case, the asserted claims of SFA's patent include system and method claims. Before I instruction you about the meaning of the words of the claims, I will explain to you the different types of claims that are at issue in this case. It may be helpful to refer to the copy of the '525 patent that you have been given as I discuss the claims at issue here..

*Claims are usually divided into parts or steps, called "limitations" or "elements." For example, a claim that covers the invention of a table may recite the tabletop, four legs and the glue that secures the legs on the tabletop. The tabletop, legs and glue are each a separate limitation of the claim.*

Patent claims may exist in two forms referred to as independent claims and dependent claims. An independent claim does not refer to any other claim of the patent. Thus it is not necessary to look at any other claim to determine what an independent claim covers. Claims 1, 20, and 40 of the '525 patent, for example, are independent claims.

*A dependent claim refers to at least one other claim in the patent. A dependent claim includes each element of the other claim or claims to which it refers as well as the additional elements recited in the dependent claim itself. Therefore, to determine what a dependent claim covers, it is necessary to look at both the dependent claim and the other claim or claims to which it refers. For example, Claim 2 of the '525 patent is a dependent claim. It refers to Claim 1 of*

the '525 patent. To determine what a dependent claim covers, the words of that claim and all of the claims from which it depends must be read together.

### 4.1 Construction of the Claims

In deciding whether or not an accused product or method infringes a patent, the first step is to understand the meaning of the words used in the patent claims.

It is my job as Judge to determine what the patent claims mean and to instruct you about that meaning. You must accept the meanings I give you and use those meanings when you decide whether or not the patent claims are infringed, and whether or not it is invalid. Before I instruct you about the meaning of the words of the claims, I will explain to you the different types of claims that are at issue in this case. It may be helpful to refer to the copy of the '525 patent that you have been given as I discuss the claims at issue here.

### 4.2 Interpretation of Claims

As I stated earlier, it is my job as Judge to determine what the patent claims mean and to instruct you about that meaning. In accordance with that duty, I have interpreted the meaning of some of the language in the patent claims involved in this case. My interpretation of those claims appear in Section 4.3. Within the following text of the claims of the patent-in-suit, I have bolded and underlined the terms which I have defined for you. You must accept as correct the interpretations contained in Section 4.3 as defined by the Court. All claim language in the claims that I have not interpreted for you in these instructions or in Section 4.3 is to be given its ordinary and accustomed meaning as understood by one of ordinary skill in the art.

### 4.3 Court's Construction of Claim Terms

The meaning of some of the words used in the patent claims at issue that the Court interpreted are set forth in Appendix B.

## INFRINGEMENT

In this case, SFA asserts that Infor has infringed the '525 patent. A patent is infringed when a person or business entity, without the patent owner's permission, makes, uses, offers for sale, or sells within the United States any product or method that is covered by at least one claim of the patent. SFA has the burden of proving infringement by a preponderance of the evidence.

### 5.1 Direct Infringement - Generally

Direct infringement results if what is accused of infringement is covered by at least one claim of the patent. In order to find direct infringement, you must find that each and every element as claimed in at least one claim can be found in the accused software products.

You must consider each claim individually and find that each and every limitation as claimed is found to exist in the accused software products, in accordance with the meaning and scope of the claims, the legal requirements for infringement, and the evidence presented to you by the parties.

### 5.2 *Indirect Infringement - Generally*

SFA also alleges that Infor indirectly infringed the patent. Indirect infringement results if the defendant induces another to infringe a patent or contributes to the infringement of a patent by another.

The act of encouraging or inducing others to infringe a patent is called "inducing infringement." The act of contributing to the infringement of others by, for example, supplying them with components for use in the patented invention, is called "contributory infringement."

### 5.3 *Inducing Infringement*

SFA alleges that Infor also is liable for infringement by inducing others to directly infringe the '525 patent. A party induces patent infringement if it purposefully causes, urges, or

9

encourages another to infringe the claims of a patent. As with direct infringement, you must determine whether there has been inducement on a claim-by-claim basis.

To show induced infringement, SFA must prove that it is more likely than not that someone has directly infringed the '525 patent claims and that Infor has actively and knowingly aided and abetted that direct infringement.

A person is liable for inducing infringement of a patent claim only if:

the person takes action during the time the patent is in force that encourages acts by someone else; and

the encouraged acts constitute direct infringement of that claim; and

the person is aware of the patent, and knows or should have known that the encouraged acts constitute infringement of that patent; and

the person has an intent to cause the encouraged acts; and

the encouraged acts are actually carried out by someone else.

In considering whether Infor has induced infringement by others, you may consider all the circumstances, including whether or not Infor obtained the advice of a competent lawyer, whether or not Infor knew of the patent when designing and manufacturing the accused products and whether or not Infor removed or diminished the allegedly infringing features. You may not assume that merely because Infor did not obtain an opinion of counsel the opinion would have been unfavorable.

Inducing infringement cannot occur unintentionally. This is different from direct infringement, which can occur unintentionally. Intent to cause the acts that constitute direct infringement may be demonstrated by evidence of active steps taken to encourage direct infringement, such as advertising an infringing use or instructing customers or others how to

10

engage in an infringing use. In order to establish active inducement of infringement, it is not sufficient that the accused infringer was aware of the act(s) that allegedly constitute the direct infringement. Rather, you must find specifically that Infor intended to cause the acts that constitute the direct infringement and must have known or should have known that its action would cause the direct infringement. If you do not find that Infor specifically meets these intent requirements, then you must find that Infor has not actively induced the alleged infringement.

If you find that any of the Accused Products has capability or functionality such that it meets all of the limitations of an asserted claim of the '525 patent, then you must find that element ii above, "the encouraged acts constitute direct infringement of that claim," is satisfied for that asserted claim. If you so find, you must still consider if SFA has proven the remaining elements of inducing infringement by a preponderance of the evidence.

## 5.4    Contributory Infringement[1]

SFA also alleges that Infor is liable for contributory infringement by contributing to the direct infringement of the '525 patent by another. As with direct infringement, you must determine whether there has been contributory infringement on a claim-by-claim basis.

It is not necessary to show that Infor has directly infringed as long as you find that someone has directly infringed. If there is no direct infringement by anyone, Infor cannot have contributed to the infringement of the patent.

If you find that someone has directly infringed the '525 patent, then contributory infringement exists if SFA establishes by a preponderance of the evidence that:

    i.      Infor sold, offered for sale, or supplied to another:

---

[1] Based on Judge Davis's Instructions given in *i4i Limited Partnership v. Microsoft Corp.*, Civil Action No. 6:07CV113.

119645.00604/21812723v.2

ii.    a material or apparatus for use in practicing a patented method, that is not a staple of commerce suitable for substantial non-infringing use;

iii.    with knowledge that the material or apparatus was especially made or adapted for use in an infringing manner.

*A "staple article of commerce suitable for substantial non-infringing use" is something that has uses other than as a component of the patented method. A substantial non-infringing use is one that is not occasional, farfetched, impractical, experimental or hypothetical.*

*In determining whether or not the component is a staple article of commerce suitable for substantial non-infringing use, you should focus on whether the component itself, not the product in which the component is embedded, is or is not suitable for substantial non-infringing use. Whether the product in which the component is embedded is or is not suitable for substantial non-infringing use is not relevant.*

If you find that any of the Accused Products has capability or functionality such that it meets all of the limitations of an asserted claim of the '525 patent, then you must find that that someone other than Infor has directly infringed that asserted claim. If you so find, you must still consider if SFA has proven the remaining elements of contributory infringement by a preponderance of the evidence.

## INVALIDITY[2]

Even if you do find infringement, you may still decide that SFA should not get a damage award if you decide that the infringed claims are proven to be invalid. Only a valid patent can be infringed. Thus, you must determine whether each of the asserted claims is invalid.

---

[2] Based on AIPLA Model Jury Instructions.

Infor contends that claims 1, 2, 3, 5, 12, 20, 24, 40, 41, and 42 of the '525 patent are invalid for the following reasons:

      i.      each claim is anticipated by the prior art;

      ii.     each claim is obvious in light of the prior art;

     iii.     each claim is invalid for lack of enablement (it does not disclose sufficient information to allow one skilled in the art to make and use the claimed invention);

     iv.     each claim is invalid for lack of adequate written description;

A claim is invalid if Infor proves by clear and convincing evidence that any one of these four reasons renders the claim is invalid. I will now explain to you each of Infor's grounds for invalidity in detail. In making your determination as to invalidity, you should consider each claim separately.

## 6.1    Invalidity - Anticipation

A person cannot obtain a patent if someone else already has made an identical invention. Simply put, the invention must be new. An invention that is not new or novel is said to be "anticipated by the prior art." Under the U.S. patent laws, an invention that is "anticipated" is not entitled to patent protection. To prove anticipation, Infor must prove with clear and convincing evidence that the claimed invention is not new.

To anticipate a claim, each and every element in the claim must be present in a single item of prior art. You may not combine two or more items of prior art to prove anticipation. In determining whether every one of the elements of the claimed invention is found in the prior patent or publication, you should take into account what a person of ordinary skill in the art would have understood from his or her examination of the particular patent or publication.

In determining whether the single item of prior art anticipates a patent claim, you should take into consideration not only what is expressly disclosed in the particular prior patent or

13

publication, but also what inherently resulted from its practice. This is called "inherency." To establish inherency, the evidence must make clear that the prior art either necessarily resulted in the missing descriptive matter and that it would be so recognized by a person of ordinary skill in the art at the time the patent application was filed. It is not required, however, that the person of ordinary skill would have recognized the inherent disclosure. Thus, the prior use of the patented invention that was unrecognized and unappreciated can still be an invalidating anticipation.

You must keep these requirements in mind and apply them to each kind of anticipation you consider in this case. There are additional requirements that apply to the both categories (prior patents and prior publications) of anticipation that Infor contends apply in this case. I will now instruct you about those.

### 6.2.1 Invalidity Based on Prior Patents

A patent claim is invalid if the invention defined by that claim was patented in the United States or a foreign country more than one year before the application for the '525 patent was filed.

To show anticipation of a particular claim of the '525 patent, Infor must show by clear and convincing evidence that before October 30, 1994, a third party patented an invention that included all of the elements of that claim.

Infor contends that claims 1, 2, 3, 5, 7, 20, 24, 34, and 40 of the '525 patent were anticipated because the inventions defined in those claims were patented by Filepp, et al. in U.S. Patent Number 5,347,632, more than one year before the application for the '525 patent was filed.

Infor contends that claims 1, 2, 3, 5, 12, 20, 24, and 40 of the '525 patent were anticipated because the inventions defined in those claims were patented by Long, et al. in U.S.

14

Patent Number 5,117,354, more than one year before the application for the '525 patent was filed.

Infor contends that claims 1, 2, 3, 5, 20, 24, and 40 of the '525 patent were anticipated because the inventions defined in those claims were patented by Lockwood in U.S. Patent Number 4,567,359, more than one year before the application for the '525 patent was filed.

Infor contends that claims 1, 2, 3, 5, 12, 20, 24, 40, 41, and 42 of the '525 patent were anticipated because the inventions defined in those claims were patented by Deaton in U.S. Patent Number 5,201,010, more than one year before the application for the '525 patent was filed.

Infor contends that claims 1, 2, 3, 5, 12, 20, 24, 40, 41, and 42 of the '525 patent were anticipated because the inventions defined in those claims were patented by Cragun in U.S. Patent Number 5,774,868, more than one year before the application for the '525 patent was filed.

Infor contends that claims 1, 2, 3, 5, 20, 24, 40, 41, and 42 of the '525 patent were anticipated because the inventions defined in those claims were patented by Gorog in U.S. Patent Number 4,947,028, more than one year before the application for the '525 patent was filed.

### 6.2.2 Invalidity Based on a Prior Written Publication

A patent claim is invalid if the invention defined by that claim was described in a printed publication more than one year before the application for the '525 patent was filed.

A printed publication must be reasonably accessible to those members of the public who would be interested in its contents. It is not necessary that the printed publication be available to every member of the public. The information must, however, have been maintained in some

15

form, such as printed or typewritten pages. An issued patent is a printed publication. A published patent application is a printed publication as of its publication date.

For a printed publication to anticipate a patent claim, it must, when read by a person of ordinary skill in the art, expressly or inherently disclose each element of the claimed invention to the reader. The disclosure must be complete enough to enable one of ordinary skill in the art to practice the invention without undue experimentation. In determining whether the disclosure is enabling, you should take into account what would have been within the knowledge of a person of ordinary skill in the art more than one year before the application for the '525 patent was filed, and you may consider evidence that sheds light on the knowledge such a person would have had.

Infor contends that claims 1, 2, 3, 5, 12, 20, 24, 40, 41, and 42 of the '525 patent were anticipated because the invention defined in those claims was described in the 1990 article published by Robert W. Stone and David J. Good in ASSOCIATION OF COMPUTER MACHINERY, a printed publication which was published more than one year before the application for the '525 patent was filed.

## 6.3 Invalidity - Obviousness

Infor contends that claims 1, 2, 3, 5, 12, 20, 24, 40, 41, and 42 of the '525 patent are invalid because the claimed invention is "obvious" in view of one, or a combination of two or more of the prior art references.

A claimed invention is invalid as "obvious" if it would have been obvious to a person of ordinary skill in the art of the claimed invention at the time the invention was made. Unlike anticipation, which allows consideration of only one item of prior art, obviousness may be shown by considering more than one item of prior art.

16

The following factors must be evaluated to determine whether Infor has established that the claimed inventions are obvious:

      i.      the scope and content of the prior art relied upon by Infor;

      ii.     the difference or differences, if any, between each claim of the '525 patent that Infor contends is obvious and the prior art;

      iii.    the level of ordinary skill in the art at the time the invention of the '525 patent was made; and

      iv.    additional considerations, if any, that indicate that the invention was obvious or not obvious.

Each of these factors must be evaluated, although they may be analyzed in any order, and you must perform a separate analysis for each of the claims.

Infor must prove obviousness by clear and convincing evidence.

I will now explain each of the four factors in more detail.

### 6.3.1 Scope and Content of the Prior Art

The prior art that you considered previously for anticipation purposes is also prior art for obviousness purposes and one additional piece of prior art. The prior art includes the following items received into evidence during the trial:

- U.S. Patent No. 5,347,632 (Filepp et al.)
- U.S. Patent No. 5,117,354 (Long et al.)
- U.S. Patent No. 4,567,359 (Lockwood)
- U.S. Patent No. 5,201,010 (Deaton)
- U.S. Patent No. 5,774,868 (Cragun)
- U.S. Patent No. 4,947,028 (Gorog)
- Stone, Robert W. & Good, David J., *Expert Systems and Sales Strategies*, Association of Computer Machinery 0-89791-416-3/90/0010/0052
- Spezialetti, Madalene, *An Approach to Reducing Delays in Recognizing Distributed Event Occurrences*, Association of Computer Machinery 0-89791-457-0/91/0011/0155

You must determine what is the prior art that may be considered in determining whether the '525 patent is obvious. A prior art reference may be considered if it discloses information

17

designed to solve the same problem faced by the inventors or if the reference discloses information that has obvious uses beyond its main purpose that a person of ordinary skill in the art would reasonably examine to solve the same problem faced by the inventors.

### 6.3.2 Differences Between the Claimed Invention and the Prior Art

You should analyze whether there are any relevant differences between the prior art and the claimed invention from the view of a person of ordinary skill in the art at the time of the invention. Your analysis must determine the impact, if any, of such differences on the obviousness or nonobviousness of the invention as a whole, and not merely some portion of it.

In analyzing the relevance of the differences between the claimed invention and the prior art, you do not need to look for precise teaching in the prior art directed to the subject matter of the claimed invention. You may take into account the inferences and creative steps that a person of ordinary skill in the art would have employed in reviewing the prior art at the time of the invention. For example, if the claimed invention combined elements known in the prior art and the combination yielded results that were predictable to a person of ordinary skill in the art at the time of the invention, then this evidence would make it more likely that the claim was obvious. On the other hand, if the combination of known elements yielded unexpected or unpredictable results, or if the prior art teaches away from combining the known elements, then this evidence would make it more likely that the claim that successfully combined those elements was not obvious.

Importantly, a claim is not proved obvious merely by demonstrating that each of the elements was independently known in the prior art. Most, if not all, inventions rely on building blocks long since uncovered, and claimed discoveries almost of necessity will likely be combinations of what is already known. Therefore, you should consider whether a reason existed

18

at the time of the invention that would have prompted a person of ordinary skill in the art in the relevant field to combine the known elements in the way the claimed invention does. The reason could come from the prior art, the background knowledge of one of ordinary skill in the art, the nature of the problem to be solved, market demand, or common sense.

If you find that a reason existed at the time of the invention to combine the elements of the prior art to arrive at the claimed invention, this evidence would make it more likely that the claimed invention was obvious.

Again, you must undertake this analysis separately for each claim that Infor contends is obvious.

### 6.3.3  Level of Ordinary Skill

The determination of whether a claimed invention is obvious is based on the perspective of a person of ordinary skill in the computer science field. The person of ordinary skill is presumed to know all prior art that you have determined to be reasonably relevant. The person of ordinary skill is also a person of ordinary creativity that can use common sense to solve problems.

As I provided to you previously, SFA and Infor contend that the level of ordinary skill in the art is through education or practical experience, the equivalent of a Bachelor's Degree in Computer Science and 2-3 years of experience in programming business process automation and information systems.

### 6.3.4  Factors Indicating Nonobviousness

Before deciding the issue of obviousness, you must also consider certain factors, which, if established, may indicate that the invention would not have been obvious. No factor alone is

19

dispositive, and you must consider the obviousness or nonobviousness of the invention as a whole.

**[The following is complete list of the possible secondary considerations of non-obviousness. Infor believes that the jury should only be instructed to consider items on this list for which SFA actually offered evidence at trial.]**

> i.      Were products covered by the claim commercially successful due to the merits of the claimed invention rather than due to advertising, promotion, salesmanship, or features of the product other than those found in the claim?

> ii.      Was there long felt need for a solution to the problem facing the inventors, which was satisfied by the claimed invention?

> iii.      Did others try, but fail, to solve the problem solved by the claimed invention?

> iv.      Did others copy the claimed invention?

> v.      Did the claimed invention achieve unexpectedly superior results over the closest prior art?

> vi.      Did others in the field, or Infor praise the claimed invention or express surprise at the making of the claimed invention?

> vii.      Did others accept licenses under '525 patent because of the merits of the claimed invention?

Answering any, or all, of these questions "yes" may suggest that the claim was not obvious.

## 6.4     Invalidity – Lack of Written Description

A patent must contain a written description of the product or process claimed in the patent. The written description requirement helps to ensure that the patent applicant actually invented the claimed subject matter. To satisfy the written description requirement, the patent must describe each and every limitation of a patent claim, in sufficient detail, although the exact words found in the claim need not be used. The written description requirement is satisfied if a person of ordinary skill in the field reading the patent application as originally filed would recognize that the patent application described the invention as finally claimed in the patent. It is

unnecessary to spell out every detail of the invention in the specification; only enough must be included to convince a person of skill in the art that the inventor possessed the full scope of the invention.

Infor contends that claims 1, 2, 3, 5, 12, 20, 24, 40, 41, and 42 of the '525 Patent are invalid for lack of adequate written description of the phrases "inferring occurrence of the event", "inferring…a context in which the event occurred," and for the term "inferring." Infor bears the burden of establishing lack of written description by clear and convincing evidence.

If you find that Infor has proved that it is highly probable that the '525 patent does not contain a written description of the invention covered by any of these claims, then you must find that the claim is invalid.

## 6.5    Invalidity - Enablement

The written description set forth in a patent must disclose sufficient information to enable or teach one skilled in the field of the invention to make and use the full scope of the claimed invention. This requirement is known as the enablement requirement. If a patent claim is not enabled, it is invalid.

A patent is enabling if its disclosure is sufficient to enable a person of ordinary skill in the art to make and use the claimed invention without undue experimentation. In considering whether the written description of a patent satisfies the enablement requirement, you must keep in mind that patents are written for persons of skill in the field of the invention. Thus, a patent need not expressly state information that skilled persons would be likely to know or could obtain. Infor bears the burden of establishing lack of enablement by clear and convincing evidence.

Infor also contends claims 1, 2, 3, 5, 12, 20, 24, 40, 41, and 42 of the '525 Patent are invalid for lack of enablement of the terms "inferring" and "expert system," and for the phrases

"inferring occurrence of the event" and "inferring…a context in which the event occurred." The fact that some experimentation may be required for a skilled person to practice the claimed invention does not mean that a patent's written description does not meet the enablement requirement. Factors that you may consider in determining whether the written description would require undue experimentation include: (1) the quantity of experimentation necessary; (2) the amount of direction or guidance disclosed in the patent; (3) the presence or absence of working examples in the patent; (4) the nature of the invention; (5) the state of the prior art; (6) the relative skill of those in the art; (7) the predictability of the art and (8) the breadth of the claims.

### DAMAGES

I have now instructed you as to the law governing SFA's claims of patent infringement and Infor's claims of invalidity. If you find that Infor has infringed a valid claim of the '525 patent, then you must determine what damages Infor must pay to SFA for that infringement. If, on the other hand, you find that Infor has not infringed any valid claim of the '525 patent, then SFA is not entitled to any damages, and you should not make any findings about damages for that claim.

The fact that I am instructing you about damages does not mean that SFA is or is not entitled to recover damages. You should not interpret the fact that I have given instructions about SFA's damages as an indication in any way that I believe that SFA should, or should not, win this case. I am instructing you on damages only so that you will have guidance in the event you decide that Infor is liable and that SFA is entitled to recover money from Infor.

### 7.1   Damages - Generally

The type of patent damages SFA is seeking in this case is called a reasonable royalty. I will discuss reasonable royalty later in more detail. Generally, a reasonable royalty is defined

by the patent laws as the reasonable amount that someone wanting to use the patented invention should expect to pay to the patent owner and the owner should expect to receive.

If you find that any claim of the '525 patent is infringed and not proven to be invalid, then SFA is entitled to damages adequate to compensate for the infringement of that claim. These damages may not be less than what a reasonable royalty would be for the use made of the invention by Infor. You may not add anything to the amount of damages to punish Infor, or to set an example.

It is SFA's burden to persuade by a preponderance of the evidence that it suffered the damages it seeks. SFA must prove the amount of damages with reasonable certainty, but mathematical precision is not required. Although SFA is not entitled to damages that are remote or speculative, any uncertainty in the amount of damages, for example due to inaccurate or incomplete records, must be resolved against Infor.

In this case, you should assess damages beginning on February 9, 2001. SFA and Infor have agreed upon this date.

### 7.2    *Reasonable Royalty*

A royalty is a payment made to a patent holder in exchange for the right to make, use or sell, or offer to sell, the claimed invention. A reasonable royalty is the amount of money a willing patent owner and a willing prospective licensee would have agreed upon at the time of the infringement for a license to make the invention. It is the royalty that would have resulted from an arms-length negotiation between a willing licensor and a willing licensee, assuming that both parties understood the patent to be valid and infringed and that the licensee would respect the patent. Unlike a real world negotiation, in the hypothetical negotiation, all parties are presumed to know that the patent is infringed and valid.

23

In making your determination of the amount of a reasonable royalty, it is important that you focus on the time period when Infor first infringed the patent and the facts that existed at that time. Your determination does not depend on the actual willingness of the parties to this lawsuit to engage in such negotiations; you must assume that SFA and Infor were willing to enter an agreement, and your role is to determine what that agreement would have been. Your focus should be on what the parties' expectations would have been had they entered negotiations for royalties at the time of the infringing activity. The infringer's actual profits may or may not bear on the reasonableness of an award based on a reasonable royalty.

In determining the reasonable royalty, you should consider all the facts known and available to the parties at the time the infringement began. I will list for you a number of factors that you may consider. This list does not include every possible factor, but it will give you an idea of the kinds of things that normally prudent business people would consider in negotiating the hypothetical license.

1. Whether the licensor has established a royalty for the patented invention.

2. Royalty rates paid by the licensee or others for the use of other patents comparable to the '525 patent.

3. The nature and scope of the license, as exclusive or non-exclusive, or as restricted or non-restricted in terms of its territory or with respect to whom the manufactured product may be sold.

4. Whether the licensor had an established policy and marketing program to maintain its patent exclusivity by not licensing others to use the invention or by granting licenses under special conditions designed to preserve that exclusivity.

119645.00604/21812723v.2

5.     *The commercial relationship between the licensor and licensee, such as whether they are competitors in the same territory and the same line of business, or whether they are inventor and promoter.*

6.     *Whether being able to use the patented invention helps promoting or generating sales of other products or services and the value of the invention to the licensor as a generator of sales of its non-patented items and extent of derivative sales.*

7.     *The duration of the patent and the term of the license.*

8.     *The established profitability of the product made under the patent and whether it is commercially successful or popular.*

9.     *The utility and advantages of the patented invention over the old modes or devices, if any, that had been used for achieving similar results.*

10.     *The nature of the patented invention; the character of the commercial embodiment of it as owned and produced by the licensor; and the benefits to those who have used the invention.*

11.     *The extent to which the infringer has made use of the invention and any evidence probative of the value of that use.*

12.     *The portion of the profit or of the selling price that may be customary in the particular business or in comparable businesses to allow for the use of the invention or analogous inventions.*

13.     *The portion of the realizable profit that should be credited to the invention as distinguished from non-patented elements, the manufacturing process, business risks, or significant features or improvements added by the accused infringer.*

119645.00604/21812723v.2

14.     The opinion testimony of qualified experts as to what would be a reasonable royalty.

15.     The amount that a licensor (such as the patentee) and a licensee (such as the accused infringer) would have agreed upon (at the time the infringement began) if both had been reasonably and voluntarily trying to reach an agreement; that is, the amount that a prudent licensee—who desired, as a business proposition, to obtain a license to manufacture and sell a particular article embodying the patented invention—would have been willing to pay as a royalty and yet be able to make a reasonable profit and which amount would have been acceptable by a patent owner who was willing to grant a license.

### INSTRUCTIONS FOR DELIBERATIONS

You must perform your duties as jurors without bias or prejudice as to any party.  The law does not permit you to be controlled by sympathy, prejudice, or public opinion.  All parties expect that you will carefully and impartially consider all the evidence, follow the law as it is now being given to you, and reach a just verdict, regardless of the consequences.

It is your sworn duty as jurors to discuss the case with one another in an effort to reach agreement if you can do so.  Each of you must decide the case for yourself, but only after full consideration of the evidence with the other members of the jury.  While you are discussing the case, do not hesitate to re-examine your own opinion and change your mind if you become convinced that you are wrong.  However, do not give up your honest beliefs solely because the others think differently, or merely to finish the case.

Remember that in a very real way you are the judges-judges of the facts.  Your only interest is to seek the truth from the evidence in the case.

You should consider and decide this case as a dispute between persons of equal standing in the community, of equal worth, and holding the same or similar stations in life. A corporation is entitled to the same fair trial as a private individual. All persons, including corporations, and other organizations stand equal before the law and are to be treated as equals.

When you retire to the jury room to deliberate on your verdict, you may take this charge with you as well as exhibits which the Court has admitted into evidence. Select your Foreperson and conduct your deliberations. If you recess during your deliberations, follow all of the instructions that the Court has given you about your conduct during the trial. After you have reached your unanimous verdict, your Foreperson is to fill in on the form your answers to the questions. Do not reveal your answers until such time as you are discharged, unless otherwise directed by me. You must never disclose to anyone, not even to me, your numerical division on any question.

Any notes that you have taken during this trial are only aids to memory. If your memory should differ from your notes, then you should rely on your memory and not on the notes. The notes are not evidence. A juror who has not taken notes should rely on his or her independent recollection of the evidence and should not be unduly influenced by the notes of other jurors. Notes are not entitled to any greater weight than the recollection or impression of each juror about the testimony.

If you want to communicate with me at any time, please give a written message or question to the bailiff, who will bring it to me. I will then respond as promptly as possible either in writing or by having you brought into the courtroom so that I can address you orally. I will always first disclose to the attorneys your question and my response before I answer your question.

119645.00604/21812723v.2

After you have reached a verdict, you are not required to talk with anyone about the case unless the Court orders otherwise.  You may now retire to the jury room to deliberate.

119645.00604/21812723v.2

# Appendix A

## Glossary of Patent Terms

The following are definitions for patent terms that you should use in this case.

**Application** - The initial papers filed by the applicant in the United States Patent and Trademark Office (also called the "Patent Office" or "PTO").

**Claims** - Claims are the numbered sentences appearing at the end of the patent that define the invention. The words of the claims define the scope of the patent owner's exclusive rights during the life of the patent.

**Comprising -** The beginning, or preamble, portion of each of the asserted independent claims uses the word "comprising." "Comprising" means "including" or "containing." A claim that uses the word "comprising" is not limited to products or methods having only the elements that are recited in the claim limitations, but also covers products or methods that have all of the elements and add additional elements without changing the required limitations.

Take as an example a claim that covers a table. If the claim recites a table "comprising" a tabletop, legs and glue, the claim will cover any table that contains these structures, even if the table also contains other structures, such as a leaf or wheels on the legs. However, if a table contains a tabletop, legs, but no glue, then the claim does not cover the table.

**File Wrapper** - See prosecution history below.

**License** - Permission to use the patented invention, which may be granted by a patent owner (or a prior licensee) in exchange for a fee called a "royalty" or other consideration.

**Office Action** - Communication from the patent examiner regarding the specification of the patent application and/or the claims pending in the patent application.

**Patent Examiners** - Personnel employed by the United States Patent and Trademark Office ("PTO") who review (examine) patent applications, each in a specific technical area, to determine whether the claims of a patent application are patentable and whether the disclosure adequately describes the invention.

**Patent Owner** - The patent owner may be the original applicant inventor or any assignee who has acquired the patent by an assignment, which is similar to how a piece of real property would be conveyed by a deed.

**Prior art** - Prior art is not art as one might generally understand the word art. Rather, prior art is a technical term relating to patents. In general, it includes things that existed before the claimed invention and might typically be a patent or a printed publication. The prior art is that provided by the Court.

**Prosecution history** - The written record of proceedings in the United States Patent and Trademark Office ("PTO") between the applicant and the PTO. It includes the original patent application and later communications between the PTO and the applicant. The prosecution history may also be referred to as the "File wrapper" of the patent during the course of this trial.

**References** - Any item of prior art used to determine patentability.

**Specification** - The specification is the information, which appears in the patent and concludes with one or more claims. The specification includes the written text, the claims and the drawings. In the specification, the inventor sets forth a description telling what the invention is, how it works, and how to make and use it so as to enable others skilled in the art to do so.

**Ordinary Skill in the Art** - From time to time in these instructions I will refer to a hypothetical person of "ordinary skill in the art." This hypothetical person is presumed to be aware of all of the prior art and knowledge that existed in the field during the relevant time

30

period.  The skill of the actual inventor and experts is irrelevant because they may possess something that distinguishes them from workers of ordinary skill in the art.  Factors to consider in determining the level of ordinary skill in the art include the educational level and experience of people working in the art, the types of problems faced by workers in the art and the solutions found to those problems, and the sophistication of the technology in the field.  The ordinary skill in the art is that provided by the Court.

119645.00604/21812723v.2

## Appendix B

## The Court's Claim Construction

The meaning of some of the words used in the patent claims at issue that the Court interpreted are as follows:

"**changes in state characteristic of an event**"

"changes in state characteristic of an event means" "a change in a unique configuration of information within the system that is indicative of the occurrence of an event within the system"

"**context**"

"context" means "information already existing within the system that becomes relevant upon the occurrence of an event"

"**event manager**"

"event manager means "hardware and/or software"

"**expert system**"

"expert system" means "a software program operating on a set of rules which can be automatically updated based upon successful sales approaches"

"**inferring**"

"inferring" means a "logical process by which a factual conclusion is derived from known facts by the application of logical rules"

"**inferring … a context in which the event occurred**"

"inferring … a context in which the event occurred" means a "logical process by which the fact that information already existing within the system that becomes relevant upon the occurrence of an event is derived by application of logical rules"

"**inferring occurrence of an event**"

"inferring occurrence of an event" means a "logical process by which the fact that an event has occurred is derived by application of logical rules"

"**subsystem**"

"subsystem" means a system that is part of a larger system